## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VENETEC INTERNATIONAL, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No.: 07-CV-0057 *** |
| ) | |
| NEXUS MEDICAL, LLC ) | |
| ) | |
| Defendant. ) | |
| ) | |

**NEXUS MEDICAL LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION
TO STAY ALL PROCEEDINGS PENDING REEXAMINATION OF U.S. PATENT NO.
6,447,485 BY THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
Telephone:  302-888-6800
Facsimile:   302-571-1750
mmatterer@morrisjames.com

Of Counsel:

Scott R. Brown  (Admitted *Pro Hac Vice*)
Jennifer C. Bailey  (Admitted *Pro Hac Vice*)
HOVEY WILLIAMS LLP
2405 Grand Boulevard, Suite 400
Kansas City, Missouri 64108
T:  816-474-9050
F:  816-474-9057

*ATTORNEYS FOR DEFENDANT
AND COUNTERCLAIM-PLAINTIFF
NEXUS MEDICAL, LLC*

Dated:  June 25, 2007

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................1

II. STATEMENT OF FACTS ..................................................................................................2

III. ARGUMENT........................................................................................................................3

    A. A Stay Pending Reexamination Is Proper and Has Many Advantages. ..................3

    B. The Relevant Factors All Weigh in Favor of Staying this Case. .............................5

        1. A Stay Will Not Unduly Prejudice or Present a Clear Tactical Disadvantage to Venetec..............................................................................5

        2. A Stay Will Simplify the Issues in Question and Trial of the Case.............6

        3. Discovery Is Not Complete, and a Trial Date Has Not Been Set. .............11

        4. A Stay Will Reduce the Burden of Litigation on the Parties and on the Court........................................................................................................12

IV. CONCLUSION..................................................................................................................14

# **TABLE OF AUTHORITIES**

## **Statutes**

35 U.S.C. § 315..................................................................................................................4, 7

## **Cases**

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, 2006 WL 2375035 (D. Del. 2006) .......................5, 12

*Alloc, Inc. v. Unilin Décor N.V.*, 2003 WL 21640372 (D. Del. 2003) ...............................3, 4, 5, 11

*ASCII Corp. v. STD Entm't VSA, Inc.*, 844 F.Supp. 1378 (N.D. Cal. 1994) ................................11

*Bausch & Lomb, Inc. v. Alcon Lab, Inc.*, 914 F.Supp. 951 (W.D.N.Y. 1996) ..................12, 13, 14

*Bloom Eng'g Co. v. North Am. Mfg. Co.*, 129 F.3d 1247 (Fed. Cir. 1997).......................................8

*Broadcast Innovation, LLC v. Charter Communications, Inc.*,
       2006 WL 1897165 (D. Colo. 2006)..........................................................................3, 4, 13

*Canady v. Erbe Elektronedizin GmbH*, 271 F.Supp. 64 (D.D.C. 2002) ........................................13

*Coffland Bros. Co. v. Mid-Western Energy Corp.*, 225 USPQ 886 (W.D. Okla. 1985)................14

*Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58 (3d Cir. 1985).............................................3

*Cygnus Telecomms. Tech., LLC v. United World Telecom, L.C.*,
       385 F.Supp. 2d 1022 (N.D. Cal. 2005) ...........................................................................10

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*, 3 USPQ2d 1889 (N.D. Ill. 1987) ..........................14

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988) ................................................................13

*Gioello Enterprises LTD. v. Mattel, Inc.*, 2001 WL 125340 (D. Del. 2001)...............................4, 6

*Gould v. Control Laser Corp.*, 705 F.2d 1340 (Fed. Cir. 1983).............................................10, 13

*Grayling Indus., Inc. v. GPAC, Inc.*, 19 USPQ2d 1872 (N.D. Ga. 1991) .....................................12

*Hewlett-Packard Co. v. Acuson Corp.*, 1993 WL 149994 (N.D. Cal. 1993).................................13

*Kla-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661 (N.D. Cal. 2006) .................................8

*KSR Int'l v. Teleflex Inc.*, 127 S.Ct. 1727 (2007) ........................................................................... 7

*In re Laughlin Prods., Inc. Patent Litigation*, 265 F.Supp.2d 525 (E.D. Pa. 2003) ...................... 11

*Medicis Pharm. Corp. v. Upsher-Smith Labs, Inc.*, ____ F.Supp.2d ____,
    2007 WL 1446617 (D. Az. 2007) ....................................................................................... 11

*Methode Elecs., Inc. v. Infineon Techs. Corp.*, 2000 WL 35357130 (N.D. Cal. 2000) ................. 11

*Middleton, Inc. v. Minnesota Mining and Mfg. Co.*, 2004 WL 1968669 (S.D. Iowa 2004) .......... 13

*Patlex Corp. v. Mossinghoff*, 758 F.2d 594 (Fed. Cir. 1985) ........................................................... 3

*Pegasus Development Corp., L.L.C. v. DirecTV, Inc.*,
    2003 WL 21105073 (D. Del. 2003) .......................................................................... 4, 5, 7, 13

*Robert H. Harris Co. v. Metal Mfg. Co.*, 1991 WL 217666 (E.D. Ark. 1991) ........................ 13, 14

*Tap Pharm. Prods v. Atrix Labs., Inc.*, 70 USPQ2d 1319 (N.D. Ill. 2004) ................................... 11

*United Sweetner USA, Inc. v. Nutrasweet Co.*, 766 F.Supp. 212 (D. Del. 1991) ............................ 5

*Werre v. Battenfeld Techs., Inc.*, 2004 WL 2554568 (D. Or. 2004) .............................................. 11

**I.  INTRODUCTION**

On June 25, 2007, Defendant Nexus Medical, LLC ("Nexus") filed a Request for Reexamination with the United States Patent and Trademark Office ("PTO") regarding Plaintiff, Venetec International, Inc.'s ("Venetec"), U.S. Patent No. 6,447,485 ("the '485 patent"), which is one of the two Patents-in-Suit.  Nexus provided the PTO with four pieces of prior art that raise substantial new questions of patentability for the independent claims and several dependent claims.  In particular, Nexus provided the PTO with prior art that renders anticipated and obvious the only claim asserted by Venetec in the '485 patent as infringing, namely claim 22.  Moreover, claim 49 of U.S. Patent No. 6,213,979 ("the '979 patent"), the only asserted claim from the remaining Patent-in-Suit, is nearly identical to claim 22 of the '485 patent, such that any determinations by the PTO with respect to claim 22 must inform this Court with respect to claim 49 of the '979 patent.  The Request for Reexamination creates an approximately 71.3% probability that action by the PTO will render this entire case, and any decisions rendered by this Court, moot.  The Court should stay all proceedings in this case pending the outcome of the Request for Reexamination of the '485 patent by the PTO for at least the following reasons:

1. It is highly likely the PTO will find invalid or substantially alter the claims of Venetec's '485 patent.  Because claims altered in reexamination can only be asserted against *future* conduct, there is an approximately 71.3% chance, based on PTO statistics, that any claims in this case will have to be dismissed as moot.

2. The two Patents-in-Suit are analogs of each other, one being drawn to apparatus claims and the other being drawn to method claims for using the apparatus.  Because the claims of the '485 patent are very similar and in some instances identical to the claims of the '979 patent, any action taken by the PTO affecting

    the scope of the '485 patent's claims will directly impact this Court's determinations with respect to the scope of the '979 patent's claims.

3.  Because this motion comes at the earliest stage of litigation – at the beginning of the discovery period – maximum conservation of resources will be realized by a stay.

  Congress and the PTO provided the reexamination mechanism as the preferred forum to address patent invalidity based on prior art. Neither the Court nor the parties should expend additional resources when it is uncertain whether the asserted patent claims will survive the reexamination process. Because the administrative proceedings before the PTO may moot or resolve the issues presented in this case, the law firmly recommends staying this action as a prudential matter pending conclusion of the PTO's review of the '485 patent.

## II. STATEMENT OF FACTS

  This is a patent infringement suit in which Venetec alleges that Nexus infringes the claims of the Patents-in-Suit. Venetec alleges infringement by virtue of Nexus's manufacture, use, sale, offer for sale, and/or importation into the United States of its site securement devices for securing a catheter to the body of a patient, sold under the name "The BONE®."

  Nexus denies infringement and alleges that the Patents-in-Suit are invalid under 35 U.S.C. §§ 102, 103, and/or 112. On June 25, 2007, Nexus filed its Request for Reexamination of the claims of the '485 patent, which raises substantial questions about the validity and patentability of claims 1-3, 5-8, 11-13, 15-18, and 21-22 in light of four prior art references. (Declaration of Scott R. Brown in Support of Nexus's Memorandum in Support of Its Motion to Stay Pending Reexamination of U.S. Patent No. 6,447,485 by the United States Patent and Trademark Office ("Brown Dec."), Ex. A, Request for Reexamination).

At present, the parties have proffered and responded to document requests and interrogatories. Subsequent to Nexus requesting from Venetec whether it would oppose the present Motion last Monday, June 18, 2007, Venetec noticed depositions of two Nexus employees on June 20, 2007, and produced documents today, June 25, 2007. No other discovery has taken place. No trial date has been scheduled, and the case is currently assigned to the "open slot" in this District.

## III. ARGUMENT

### A. A Stay Pending Reexamination Is Proper and Has Many Advantages.

A district court's inherent power to control and manage its docket includes the discretion to stay proceedings. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *Alloc, Inc. v. Unilin Decor N.V.*, No. Civ.A. 03-253-GMS, 2003 WL 21640372, at *2 (D. Del. July 11, 2003) (Brown Dec., Ex. B). It is well-established that the PTO's reexamination of patents subject to litigation is grounds for a stay. *Id*. ("The decision to stay a case is firmly within the discretion of the court. This authority applies equally to patent cases in which a reexamination by the PTO has been requested.") (citations omitted); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 606 (Fed. Cir. 1985) ("The stay of pending litigation to enable PTO review of contested patents was one of the specified purposes of the reexamination legislation."), *rev'd on other grounds*, 771 F.2d 480 (Fed. Cir. 1985). Congress instituted the reexamination process to shift the burden of reexamination of patent validity from the courts to the PTO. Patent validity is a commonly asserted defense in litigation, and courts are cognizant of Congress' intention of utilizing the PTO's specialized expertise to reduce costly and timely litigation. *Broadcast Innovation, LLC v. Charter Communications, Inc.*, No. 03-cv-2223-ABJ-BNB, 2006 WL 1897165, at *3 (D. Colo. July 11, 2006) (citing H.R. REP. NO. 1307, 96th Cong., 2d sess., pt

3

7 at 4 (1980), reprinted in 1980 U.S.C.C.A.N. 6460) (Brown Dec., Ex. C).  Thus, "there exists a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." *Id.* at *4 (internal citations omitted); *see Pegasus Development Corp., L.L.C. v. DirecTV, Inc.*, No. Civ.A. 00-1020-GMS, 2003 WL 21105073, at *1 (D. Del. May 14, 2003) (Brown Dec., Ex. D).  Because this case is in its infancy, staying the case now will effectuate Congress' purposes in creating the reexamination procedure.

The District of Delaware has recognized numerous advantages of granting a stay pending possible PTO reexamination:

(1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise[1];

(2) many discovery problems relating to the prior art can be alleviated;

(3) if the patent is declared invalid, the suit will likely be dismissed;

(4) the outcome of the reexamination may encourage a settlement without further involvement of the court;

(5) the record of the reexamination would probably be entered at trial, reducing the complexity and the length of the litigation;

(6) issues, defenses and evidence will be more easily limited in pre-trial conferences; and

(7) the cost will likely be reduced both for the parties and the court.

*Gioello Enterprises LTD. v. Mattel, Inc.,* No. C.A. 99-375 GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001) (Brown Dec., Ex. E); *see Alloc*, 2003 WL 21640372, at *2 (listing similar advantages) (Brown Dec., Ex. B).

---

[1] Because an *inter partes* reexamination has been filed, Nexus has elected to allow the PTO process to reach a final determination on any prior art presented to the PTO with respect to the '485 patent.  35 U.S.C. § 315(c).  (See also Section III(B)(2), *infra*).

4

**B.     The Relevant Factors All Weigh in Favor of Staying this Case.**

In deciding whether to grant a stay pending reexamination, the District of Delaware generally considers three factors:

(1)  whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party;

(2)  whether a stay will simplify the issues in question and trial of the case; and

(3)  whether discovery is complete and whether a trial date has been set.

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 05-590 GMS, 2006 WL 2375035, at *5 (D. Del. 2006) (Brown Dec., Ex. F); *see also Pegasus*, 2003 WL 21105073, at *1 (Brown Dec., Ex. D); *United Sweetner USA, Inc. v. Nutrasweet Co.*, 766 F.Supp. 212, 217 (D. Del. 1991) (stating a similar test). In this case, all three factors weigh heavily in favor of a stay of all proceedings pending the outcome of the PTO's administrative review of the Request for Reexamination and any subsequent reexamination proceedings.

**1.     A Stay Will Not Unduly Prejudice or Present a Clear Tactical Disadvantage to Venetec.**

The first factor the District of Delaware considers is whether a stay would unduly prejudice the non-moving party or present a clear tactical advantage for the moving party. *Alloc*, 2003 WL 21640372, at *2 (Brown Dec., Ex. B); *Abbott*, 2006 WL 2375035, at *5 (holding that a stay was justified, even though the non-moving party would suffer some prejudice, because the prejudice was not undue and there was no clear tactical disadvantage) (Brown Dec., Ex. F).

In the present case, if the PTO does not invalidate or alter the claims of the '485 patent, Venetec's legal remedy will not be affected. Venetec will still be able to litigate the Patents-in-Suit against Nexus after the reexamination is complete. *Id*.

5

In contrast, allowing this case to proceed in conjunction with the PTO proceedings would not only forgo efficiencies but would also create a substantial risk of multiple, inconsistent rulings. *See Gioello*, 2001 WL 125340, at *1 ("Not staying the proceedings runs the risk of inconsistent adjudications or issuance of advisory opinions.") (Brown Dec., Ex. E). While the PTO must conclude its administrative review, the Court has the discretion to stay this litigation. Thus, only the Court can take steps to avoid the potential conflict. *Id.* at *2 ("Since the PTO cannot stay the reexamination once a request has been granted, the court's issuance of a stay is the only way to avoid the potential for conflict.").

Any advantage Nexus attains by the grant of the stay will be shared by Venetec. A significant advantage is the cost savings associated with a stay. Any narrowing of the scope of the case as a result of the reexamination lessens the litigation fees and the time involved. Additionally, should the scope of the claims change during reexamination, some issues will not need to be tried twice.

### 2. A Stay Will Simplify the Issues in Question and Trial of the Case.

Invalidity of the '485 patent as anticipated under 35 U.S.C. § 102 or obvious under 35 U.S.C. § 103 is a primary issued raised by Nexus in this case. If the '485 patent is invalid, there can be no infringement. Moreover, because the claims of the '485 patent are very similar to the claims of the '979 patent, any change in scope of the claims of the '485 patent during reexamination will materially alter and affect the scope of the claims of the '979 patent.

The claims are directed to a site securement device for securing a medical line to a patient. In its Request for Reexamination, Nexus provided the PTO with four prior art references that anticipate or render obvious claims 1-3, 5-8, 11-13, 15-18, and 21-22 of the '485 patent. One of the patents that anticipates and renders obvious the requested claims was not of record

during prosecution of the '485 patent application. Three of these references are primary references that anticipate, or at the least render obvious, the independent claims of the '485 patent.

The prior art references cited in the Request raise at least the following issues that, absent a stay, will concurrently be litigated (including by summary judgment motions) in this Court:

1. Whether U.S. Patent No. 4,517,971 to Sorbonne anticipates the independent claims by disclosing a method of securing a medical device to a patient using a retainer or device including a base, an openable cover or lid, and adhesive strips.

2. Whether WO 96/10435 to Bierman anticipates the only asserted independent claim by disclosing a method for securing a medical line using an anchoring system that includes an anchor base or retainer.

3. Whether U.S. Patent No. 4,297,647 to Gordon anticipates or, in combination with U.S. Patent No. 4,250,880, renders obvious the independent claims by disclosing a method for securing a medical line, such as a catheter tube, to the body of a patient using a stabilizing fitting.

Nexus's request would invalidate the only asserted claim in the '485 patent. Allowing the PTO to first address these issues is the most efficient course of action for the parties and the Court[2]. It would be most efficient to wait for the PTO to first decide whether the newly offered art raises substantial new questions of patentability and renders the asserted claims invalid. *See Pegasus*, 2003 WL 21105073 at *2 (Brown Dec., Ex. D). Moreover, because Nexus requested

---

[2] The Supreme Court's recent decision in *KSR Int'l v. Teleflex Inc.*, 127 S.Ct. 1727 (2007) implemented more stringent standards for patentees in reexamination to prove that an invention is non-obvious. Nexus fully anticipates that Venetec will not be able to convince the PTO that its anchoring system, as presently claimed in the Patents-in-Suit, is patentable, especially under the criteria set forth in *KSR*.

7

*inter partes* reexamination of the '485 patent, it is estopped from asserting in the present litigation any grounds for invalidity that it raised or could have raised during the reexamination with respect to the claims of that patent. 35 U.S.C. 315(c). Therefore, the issues needed to be tried by this Court will be significantly lessened, and there is no concern that Nexus will try to present to this Court the same grounds of invalidity rejected by the PTO should the reexamination be unsuccessful.

The parties have agreed that this case should be tried by a jury. A jury trial will require, at a minimum, that each of the parties (1) hire technical and patent experts and consultants; (2) prepare and exchange expert reports; (3) produce and propound extensive discovery regarding non-infringement, invalidity, and damages; (4) take and defend multiple depositions; (5) file and defend dispositive motions; and (6) try the case to a jury. If the PTO amends or cancels the asserted claims of the '485 patent during reexamination, each of the above six tasks will be changed or eliminated altogether. If the Request for Reexamination is granted, the statistical likelihood that the PTO will at least alter the asserted claims is 76%. *See Kla-Tencor Corp. v. Nanometrics, Inc.*, No. C 05-03116 JSW, 2006 WL 708661, at *4 (N.D. Cal. March 16, 2006) ("statistical information regarding reexamination indicates that the PTO confirms all claims in approximately 24% of the cases, cancels all claims in approximately 12% of the cases, and changes some claims in approximately 64% of the cases.") (Brown Dec., Ex. G).

Any substantive change in the asserted claims of the '485 patent will have the same legal effect as if the claims were canceled because amended claims have no retroactive effect. *Bloom Eng'g Co. v. North Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) ("Unless a claim granted or confirmed upon reexamination is identical to an original claim, the patent can not be enforced against infringing activity that occurred before issuance of the reexamination certificate.").

Thus, if the PTO grants the Request for Reexamination, there is a 76% chance that this entire case will be unnecessary.[3]

Moreover, any change in the claims of the '485 patent will directly impact the validity and patentability of the claims of the other Patent-in-Suit, the '979 patent. The claims of the '485 patent are directed to a method of using an anchoring system, whereas the claims of the '979 patent are directed to the anchoring system itself. However, the claims of the '485 patent recite the exact same or very similar structure as the claims of the '979 patent. For example, claim 22 of the '485 patent, the only asserted claim of the patent, recites a method of securing a medical line by providing:

> a retainer, the retainer including a base that defines a receiving area for receiving a portion of the medical line and a cover coupled to the base, means for releasably latching the cover to the base, and means for limiting longitudinal movement of the medical line relative to the retainer . . the cover lies at least partially over the movement limiting means.

(Brown Dec., Ex. H, '485 Patent, Cols. 23-24, Claim 22). Claim 49 of the '979 patent, the only asserted claim of that patent, recites an anchoring system for securing a medical line, wherein the anchoring system includes the **exact same structure** that is recited in claim 22, namely:

> a retainer, the retainer including a base that defines a receiving area for receiving a portion of the medical line and a cover coupled to the base, means for releaseably latching the cover to the base, and means for limiting longitudinal movement of the medical line relative to the retainer, said movement limiting means located at least partially beneath the cover when the cover is latched to the base.

---

[3] There is a slight chance that the PTO will not grant the Request for Reexamination. In 2006, the PTO denied 28 of 453 Requests for *Ex Parte* Reexaminations (6.18%), and 4 out of 47 Requests for *Inter Partes* Reexaminations (8.51%). (Brown Dec., Ex. P, PTO's Performance and Accountability Report: Fiscal Year 2006, Tables 13A and 13B). Factoring in that possibility, the statistical probability that issues related to the '485 patent will become moot is 69.5%.

9

(Brown Dec., Ex. I, '979 Patent, Col. 24, Claim 49).  There are additional instances of the claims of the '485 patent and '979 patent reciting very similar structure.  It is highly probable that any change in scope to the claims of the '485 patent will strongly inform this Court with respect to the validity of the claims of the '979 patent, as the patents are related and contain very similar claims.  Therefore, it is proper to stay the litigation regarding both Patents-in-Suit while the Patent Office reexamines the '485 patent.

Even if the claims of the patent are left intact by the PTO, the case will be streamlined by the PTO's consideration of the Request for Reexamination.  *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) *or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding"*)) (emphasis added).  In addition, the reexamination process will create additional prosecution history, which will aid the parties in developing claim construction positions.  *See, e.g., Cygnus Telecomms. Tech.*, *LLC v. United World Telecom, L.C.*, 385 F.Supp.2d 1022, 1024 (N.D. Cal. 2005) ("For those claims that survive the reexamination, this court may have a richer prosecution history upon which to base necessary claim construction determinations or reconsideration.").

The Request for Reexamination raises claim construction issues that have never been litigated and will benefit from the PTO's expertise.  For example, one claim construction issue raised in the Request for Reexamination that will soon be addressed in this court absent a stay is the scope and interpretation of the disclosed structure corresponding to the means plus function limitations.  Litigating that issue alone will require expert declarations, a *Markman* hearing, and extensive briefing.  In contrast, the PTO and its corps of trained examiners have the expertise and

10

authority to decide that issue on the papers during the *inter partes* reexamination. Additionally, reexamination of the '485 patent in view of the prior art will provide additional prosecution history that will further develop the meaning of the claim terms.

### 3. Discovery Is Not Complete, and a Trial Date Has Not Been Set.

The third factor the District of Delaware and other courts consider when deciding whether to stay a case pending reexamination is whether discovery is complete and whether a trial date has been set. *Alloc*, 2003 WL 21640372, at *2-3 (Brown Dec., Ex. B); *Medicis Pharm. Corp. v. Upsher – Smith Labs., Inc.*, ____ F.Supp.2d ____, No. CV-05-3458-PHX-SMM, 2007 WL 1446617, at *3 (D. Az. Feb. 5, 2007) (staying case pending reexamination because, among other reasons, "no trial date has been scheduled," the "case is still in the early stages and the parties have not yet conducted 'significant discovery' or invested 'substantial expense' into the litigation") (citation omitted) (Brown Dec., Ex. J). Courts routinely stay matters in favor of patent reexamination where, as here, the case is in its initial stages and little or no discovery has occurred. *See, e.g.*, *Werre v. Battenfeld Techs., Inc.*, No. 03-1471-AA, 2004 WL 2554568 at *1 (D. Or. November 9, 2004) (Brown Dec., Ex. K); *Tap Pharm. Prods. v. Atrix Labs., Inc.*, 70 USPQ2d 1319, 1320 (N.D. Ill. 2004); *In re Laughlin Prods, Inc. Patent Litigation*, 265 F.Supp.2d 525, 532 (E.D. Pa. 2003); *Methode Elecs., Inc. v. Infineon Techs. Corp.*, No. C99-21142 JW, 2000 WL 35357130 at *2-3 (N.D. Cal. August 7, 2000) (Brown Dec., Ex. L); *ASCII Corp. v. STD Entertainment VSA, Inc.*, 844 F.Supp. 1378, 1381 (N.D. Cal. 1994). In this case, no trial date has been scheduled, nor has the date for the pre-trial conference been set. Indeed, because this case has been assigned to the "empty slot," it does not yet even have a judge.

Regarding discovery, the parties have only participated in a first round of written discovery. Subsequent to Nexus requesting from Venetec whether it would oppose the present

11

Motion last Monday, June 18, 2007, Venetec noticed the depositions of two Nexus employees on June 20, 2007. Venetec's first production of documents was received today, June 25, 2007. It is more than fair to state that discovery is in the beginning stages in this matter. The early stage of the litigation and the lack of discovery weigh strongly in favor of staying this case.

> **4.     A Stay Will Reduce the Burden of Litigation on the Parties and on the Court.**

A related factor considered by some courts, although not always by the District of Delaware, is whether a stay will reduce the burden of litigation on the parties and on the Court. In addition to the invalidity issues that will be streamlined by the PTO reexamination, a stay pending reexamination will lessen the burden on the parties and the Court to develop and consider the non-infringement issues in this case.

As explained above, Nexus has brought four pieces of prior art to the attention of the PTO in the Request for Reexamination. This prior art raises the issues of whether the '485 patent is anticipated under 35 U.S.C. § 102 or obvious under 35 U.S.C. § 103. It is undeniable that waiting to litigate the above issues pending reexamination proceedings before the PTO will reduce the burden on the parties and the Court. As courts have recognized:

> [T]he court finds that granting the stay will simplify the issues and focus the litigation. For example, if the PTO determines that some or all of the claims of the [patents] undergoing reexamination are invalid, then many of the issues in the litigation will become moot. Additionally, it is beyond dispute that the court, as well as the parties, would benefit from a narrowing of the variety of complex issues relating to the numerous claims at issue, which, if clearly defined, would streamline the discovery process and the remainder of the litigation. A stay, therefore, will conserve the resources of the parties and the court, thereby promoting efficiency.

*Abbott*, 2006 WL 2375035, at *6 (Brown Dec., Ex. F); s*ee also Grayling Indus., Inc. v. GPAC, Inc.*, 19 USPQ2d 1872 (N.D. Ga. 1991) (stay appropriate despite case being late in discovery so as not to parallel the reexamination procedure); *Bausch & Lomb, Inc. v. Alcon Lab, Inc.*, 914

F.Supp. 951, 953 (W.D.N.Y. 1996) (granting stay pending reexamination to avoid wasting "the time, resources, and significant efforts of all those involved").

In addition, the court should not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers. *Pegasus*, 2003 WL 21105073, at *2 (Brown Dec., Ex. D); *Hewlett-Packard Co. v. Acuson Corp.*, No. C-93-0808 MHP, 1993 WL 149994, at *2 (N.D. Cal. May 6, 1993) (citation omitted) (Brown Dec., Ex. M). For this reason, the courts regularly stay cases pending the completion of reexamination proceedings "to wait for reexamination results that will simplify litigation by eliminating, clarifying, or limiting the claims." *Canady v. Erbe Elektronedizin GmbH*, 271 F.Supp. 64, 68 (D.D.C. 2002), *citing Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988).

Courts often act to reduce the burden of litigation upon the litigants and itself, even before the PTO has granted the request for reexamination. *See, e.g., Broadcast Innovation*, 2006 WL 1897165, at *8, n.8 (Brown Dec., Ex. C); *Robert H. Harris Co. v. Metal Mfg. Co.*, No. J-C-90-179, 1991 WL 217666, at *4 (E.D. Ark. June 21, 1991) (stay issued pending the PTO's response to the reexamination request) (Brown Dec., Ex. N). Moreover, courts have granted stays, even where much time and money have already been spent, in order to prevent further waste of resources. *See Gould*, 705 F.2d at 1341-42 (upholding a 1983 stay of litigation pending for four years); *Broadcast Innovation*, 2006 WL 1897165 at *8 (granting stay after remand from Federal Circuit and 60 days before trial) (Brown Dec., Ex. C); *Middleton, Inc. v. Minnesota Mining and Mfg. Co.*, No. 4:03-cv-40493, 2004 WL 1968669, at *5, 10 (S.D. Iowa August 24, 2004) (granting a stay eight years into the litigation and two months before trial) (Brown Dec., Ex. O); *Bausch & Lomb*, 914 F.Supp. at 952-53 (granting stay despite the fact that discovery was

13

complete and a trial date set); *Robert H. Harris Co.*, 1991 WL 217666, at *4 (stay granted where case set for trial the next month) (Brown Dec., Ex. N); *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*, 3 USPQ2d 1889 (N.D. Ill. January 30, 1987) (granting Defendant's motion to stay patent infringement action even though all discovery completed); *Coffland Bros. Co. v. Mid-Western Energy Corp.*, 225 USPQ 886 (W.D. Okla. 1985) (stay granted despite the fact that one trial date had already been extended).

Because the burden of litigation for both parties and the court would undeniably be greatly reduced, granting the motion to stay is entirely appropriate. To hold otherwise would result in needless expenditure of time and resources.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Nexus respectfully requests a complete stay of the entire proceedings pending a final ruling on the reexamination of the '485 patent.

Date:   June 25, 2007

    */s/ Mary B. Matterer*
Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
Telephone:  302-888-6800
Facsimile:   302-571-1750
mmatterer@morrisjames.com

Of Counsel:
Scott R. Brown  (Admitted *Pro Hac Vice*)
Jennifer C. Bailey  (Admitted *Pro Hac Vice*)
HOVEY WILLIAMS LLP
2405 Grand Boulevard, Suite 400
Kansas City, Missouri 64108
T:  816-474-9050
F:  816-474-9057

*ATTORNEYS FOR DEFENDANT*
*AND COUNTERCLAIM-PLAINTIFF*
*NEXUS MEDICAL, LLC*