## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VENETEC INTERNATIONAL, INC.    )
               Plaintiff,        )
                      )
          v.             )
                      )  Case No.: 07-CV-0057 ***
NEXUS MEDICAL, LLC       )
              Defendant.    )
                      )

## DECLARATION OF SCOTT R. BROWN IN SUPPORT OF NEXUS MEDICAL LLC'S MOTION TO CLARIFY OR AMEND THE STIPULATED PROTECTIVE ORDER

I, Scott R. Brown, declare:

1.     I am a member in good standing of the bar of the state of Missouri and am a partner in the law firm of Hovey Williams LLP, responsible for representation of Nexus Medical, LLC ("Nexus") in this matter. I have personal knowledge of the statements made herein.

2.     This Declaration accompanies Nexus Medical, LLC's Motion to Clarify or Amend the Stipulated Protective Order.

3.     I did not understand the language of the Protective Order to prohibit Ms. Bailey or me from preparing the Request for Reexamination.

4.     Hovey Williams LLP is in compliance with Paragraphs 5(c)-(e) of the Protective Order (D.I. 32).

5.     Nexus's lead counsel prepared and filed the Request for Reexamination of the '485 patent with the United States Patent and Trademark Office on June 25, 2007.

6.     Neither Ms. Bailey nor myself used any confidential information of Venetec in preparing the Request for Reexamination.

1

7.    Attached hereto as Exhibit A is a copy of e-mail correspondence between Maximilian A. Grant and Scott R. Brown dated May 15, 2007 through May 17, 2007.

8.    Attached hereto as Exhibit B is a copy of a draft protective order dated May 15, 2007.

9.    Attached hereto as Exhibit C is a copy of a letter dated July 9, 2007 from Maximilian A. Grant to Scott R. Brown.

10.    Attached hereto as Exhibit D is a copy of excerpts from DONALD S. CHISUM AND MICHAEL A. JACOBS, UNDERSTANDING INTELLECTUAL PROPERTY LAW § 2D[1] 2-105 (1999).

11.    Attached hereto as Exhibit E is a copy of excerpts from 3 JOHN GLADSTONE MILLS III, ET AL., PATENT LAW FUNDAMENTALS § 15.1 (2d ed. 2007).

12.    Attached hereto as Exhibit F is a copy of excerpts from ROGER E. SCHECHTER AND JOHN R. THOMAS, INTELLECTUAL PROPERTY – THE LAW OF COPYRIGHTS, PATENTS AND TRADEMARKS 422 (2003).

13.    Attached hereto as Exhibit G is a copy of excerpts FROM DONALD S. CHISUM, ET AL., PRINCIPLES OF PATENT LAW 73 (3rd ed. 2004).

14.    Attached hereto as Exhibit H is a copy of *Motorola, Inc. v. Interdigital Tech. Corp.*, No. Civ.A. 93-488-LON, 1994 WL 16189689 (D. Del. Dec. 19, 1994).

15.    Attached hereto as Exhibit I is a copy of *Visto Corp. v. Seven Networks, Inc.*, No. 2:03-CV-333-TJW, 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: July 13, 2007

Scott R. Brown

2

# Exhibit A

**Katie R. Bray**

| | |
|---|---|
| **From:** | Scott Brown |
| **Sent:** | Thursday, May 17, 2007 3:13 PM |
| **To:** | Litigation |
| **Subject:** | FW: Venetec v. Nexus - C.A. 07-57 - revised protective order |

---

**From:** Max.Grant@lw.com [mailto:Max.Grant@lw.com]
**Sent:** Thursday, May 17, 2007 3:02 PM
**To:** Scott Brown
**Cc:** MNoreika@MNAT.com; David.Farnum@lw.com; RHerrmann@morrisjames.com; Hassen.Sayeed@lw.com
**Subject:** RE: Venetec v. Nexus - C.A. 07-57 - revised protective order

Thank you for your prompt response Scott. We'll get you a smooth version reflecting our agreement this evening and will handle getting the proposed order submitted tomorrow.

    Max

---

**From:** Scott Brown [mailto:srb@hoveywilliams.com]
**Sent:** Thursday, May 17, 2007 1:37 PM
**To:** Grant, Max (DC)
**Cc:** MNoreika@MNAT.com; Farnum, David (DC); RHerrmann@morrisjames.com; Sayeed, Hassen (NY)
**Subject:** RE: Venetec v. Nexus - C.A. 07-57 - revised protective order

Max -- See my numbered responses below

1) Thank you.

2) After further consideration, we agree to keep Confidential information under the "prosecution bar."

3) Two years from final judgment is acceptable. My main concern was there was no specified date from which your 3 year proposal ran.

4) The listing is preliminary and we will supplement it.

Scott

---

**From:** Max.Grant@lw.com [mailto:Max.Grant@lw.com]
**Sent:** Thursday, May 17, 2007 11:44 AM
**To:** Scott Brown
**Cc:** MNoreika@MNAT.com; David.Farnum@lw.com; RHerrmann@morrisjames.com; Hassen.Sayeed@lw.com
**Subject:** RE: Venetec v. Nexus - C.A. 07-57 - revised protective order

Scott --

1) We are fine w/ your changes to the Highly Confidential information, thank you for providing them.

2) I disagree with your removing "Confidential" information from the prosecution bar. The practical effect of this is that if there is any doubt about whether information should be protected from prosecutors it will be designed Highly Confidential. Moreover, as a practical matter, Confidential and HC material is often maintained together at firms, and this increases the probability that prosecutors will receive access to HC information.

More importantly, I can envision no reason why a prosecutor should be permitted access to any Bard non-public/confidential information. Please promptly provide the basis in writing why any person prosecuting patents for Nexus should have access to any Bard non-public/proprietary/confidential information. I anticipate we will move to the court on this issue, but I want to ensure I have your written rationale before so deciding.

3) Your decision to change the relevant time from 2 to 3 year from the close of discovery is also unacceptable. We are willing to compromise and agree to a 2 year limitation, but that must be from the entry of final judgment. As you know, both parties are under an ongoing obligation to supplement their discovery, consequently lawyers admitted under the PO will almost certainly be provided with more current information prior to trial. *See* FRCP 26(e). If you are unwilling to accept our compromise, please provide your basis in writing so we can perfect our meet and confer on this issue because I anticipate that this is also an issue we will raise with the Court.

4) I want to reiterate the need for the listing of persons in paragraphs 5(a) and 5(b) must include paralegals, patent agents, and any other non-attorney staff who fall under those categories. I realize your listing may be preliminary, but the identification of Prosecution Staff and Litigation Staff expressly includes those persons assisting the attorneys.

We look forward to your prompt response so we can address these issues consistent with the Court's schedule.


**Maximilian A. Grant**

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW
Ste. 1000
Washington, DC 20004-1304
V (202) 637-2267
F (202) 637-2201
E max.grant@lw.com
www.lw.com

---

**From:** Scott Brown [mailto:srb@hoveywilliams.com]
**Sent:** Thursday, May 17, 2007 12:28 PM
**To:** Sayeed, Hassen (NY)
**Cc:** MNoreika@MNAT.com; Grant, Max (DC); Farnum, David (DC); RHerrmann@morrisjames.com
**Subject:** RE: Venetec v. Nexus - C.A. 07-57 - revised protective order

Max and Hassen,

Please see attached redline of the proposed protective order. We have slightly changed the descriptions of what can be designated as Highly Confidential. We have indicated that it is access to Highly Confidential material that trips the "prosecution bar," because that appears to be the only type of information deserving of that prohibition. We have also changed the length of the "prosecution bar" to 2 years from the close of discovery. We think this should address your concerns and clears up a slight ambiguity in your draft. Please feel free to call if you wish to discuss any of these.


**Scott R. Brown**

Hovey Williams LLP
2405 Grand Boulevard, Suite 400
Kansas City, MO 64108

T 816.474.9050 | F 816.474.9057
http://www.hoveywilliams.com

**Where Ingenuity Thrives®**


7/13/2007

**From:** Hassen.Sayeed@lw.com [mailto:Hassen.Sayeed@lw.com]
**Sent:** Tuesday, May 15, 2007 1:22 PM
**To:** Scott Brown
**Cc:** Hassen.Sayeed@lw.com; MNoreika@MNAT.com; Max.Grant@lw.com; David.Farnum@lw.com
**Subject:** Venetec v. Nexus - C.A. 07-57 - revised protective order

Scott:

Further to the teleconference last night and Max's email this afternoon, attached please find a revision of the proposed stipulated protective order in this case.

Please let us have your comments.

Regards,
HAS


<<1281014_1.DOC>>

**Hassen A. Sayeed**

**LATHAM & WATKINS LLP**
885 Third Avenue, Suite 1000
New York, NY  10022-4834
Direct Tel:  (212) 906-2966
Fax:  (212) 751-4684
E-mail:  hassen.sayeed@lw.com
www.lw.com

*********************

To comply with IRS regulations, we advise you that any discussion of federal tax issues in this email was not intended or written to be used, and cannot be used by you, (i) to avoid any penalties imposed under the Internal Revenue Code or (ii) to promote, market or recommend to another party any transaction or matter addressed herein.

For more information please go to http://www.lw.com/docs/irs.pdf

*******************

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP


NOTICE: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and may contain confidential and legally privileged information intended for the use of the person(s) named above. If you received this electronic transmission in error, please reply to the above-referenced sender about the error and permanently delete the original message and any attachments. Unauthorized use, copying, review and/or distribution to unauthorized persons is strictly prohibited. Further, the Missouri Bar Disciplinary Counsel requires all Missouri lawyers to notify all recipients of e-mail that (1) e-mail communication is not a secure method of communication, (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from us to you or vice versa, (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or computers or even some computer unconnected to either of us which the e-mail passed through. We are communicating to you via e-mail because you have consented to receive communications via this medium. If you change your mind and want future communication to be sent in a different fashion, please let

*********************

To comply with IRS regulations, we advise you that any discussion of federal tax issues in this email was not intended or written to be used, and cannot be used by you, (i) to avoid any penalties imposed under the Internal Revenue Code or (ii) to promote, market or recommend to another party any transaction or matter addressed herein.

For more information please go to http://www.lw.com/docs/irs.pdf

*******************

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

*********************

To comply with IRS regulations, we advise you that any discussion of federal tax issues in this email was not intended or written to be used, and cannot be used by you, (i) to avoid any penalties imposed under the Internal Revenue Code or (ii) to promote, market or recommend to another party any transaction or matter addressed herein.

For more information please go to http://www.lw.com/docs/irs.pdf

*******************

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

# Exhibit B

**Katie R. Bray**

| | |
|---|---|
| **From:** | Hassen.Sayeed@lw.com |
| **Sent:** | Tuesday, May 15, 2007 1:22 PM |
| **To:** | Scott Brown |
| **Cc:** | Hassen.Sayeed@lw.com; MNoreika@MNAT.com; Max.Grant@lw.com; David.Farnum@lw.com |
| **Subject:** | Venetec v. Nexus - C.A. 07-57 - revised protective order |
| **Attachments:** | 1281014_1.DOC |

Scott:

Further to the teleconference last night and Max's email this afternoon, attached please find a revision of the proposed stipulated protective order in this case.

Please let us have your comments.

Regards,
HAS


<<1281014_1.DOC>>

**Hassen A. Sayeed**

**LATHAM & WATKINS** [LLP]
885 Third Avenue, Suite 1000
New York, NY  10022-4834
Direct Tel:  (212) 906-2966
Fax:  (212) 751-4684
E-mail:  hassen.sayeed@lw.com
www.lw.com

********************

To comply with IRS regulations, we advise you that any discussion of federal tax issues in this email was not intended or written to be used, and cannot be used by you, (i) to avoid any penalties imposed under the Internal Revenue Code or (ii) to promote, market or recommend to another party any transaction or matter addressed herein.

For more information please go to http://www.lw.com/docs/irs.pdf

********************

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VENETEC INTERNATIONAL, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **C.A. No. 07-57-\*\*\*** |
| v. | ) | |
| | ) | |
| NEXUS MEDICAL, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## [PROPOSED] STIPULATED PROTECTIVE ORDER

Venetec International, Inc. ("Venetec") and Nexus Medical, LLC ("Nexus") (collectively, the "Parties"), have agreed that certain information subject to discovery in this action may be claimed to contain proprietary or confidential trade secret, technical, business, or financial information of the producing party or applicable non-party within the meaning of Rule 26(c)(7) of the Federal Rules of Civil Procedure (hereinafter, "Protected Information"). To facilitate discovery in this action, the parties accordingly stipulate, subject to the approval of the Court, to the following Stipulated Protective Order:

1.     Designation of Protected Information

(a)     The term "Designating Party" means the party or person designating documents or information as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" under this Order. The term "Designating Party" is defined to include the Parties as well as non-party persons or entities that provide discovery in this action.

(b)     With respect to such Protected Information that has been or will be sought or produced during discovery, the Designating Party may identify or

otherwise designate such matter as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

(c)    Information, documents, and things that a Designating Party in good faith believes constitutes or contains trade secret or other confidential research, development or commercial information within the meaning of Federal Rule of Civil Procedure 26(c)(7) shall be designated as "CONFIDENTIAL." The parties will use reasonable care to avoid designating any documents or other information as "CONFIDENTIAL" for which the Designating Party does not have a good faith belief that the documents or information satisfy the criteria set forth in this subparagraph 1(c).

(d)    The following information, documents and things that a Designating Party in good faith believes constitutes or contains proprietary financial or technical data or commercially sensitive competitive information shall be designated as "HIGHLY CONFIDENTIAL":

(i)    information, documents and things relating to future products not yet commercially released;

(ii)    information, documents and things obtained from a nonparty pursuant to a current Nondisclosure Agreement (NDA);

(iii)    strategic plans;

(iv)    marketing information;

(v)    financial information;

(v)    consumer account or transaction information;

(vi)    current research and development information; and

2

(vii)    Any other information, the disclosure of which to another party to this litigation can reasonably be expected to lead to competitive harm to the Designating Party.

Use of this highly restrictive designation is limited to information of the highest competitive sensitivity, and the parties will use reasonable care to avoid designating any documents or other information as "HIGHLY CONFIDENTIAL" for which the Designating Party does not have a good faith belief that the documents or information satisfy the criteria set forth in this subparagraph 1(d).

(e)    Any copies of documents designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," abstracts, summaries, or information derived therefrom, and any notes or other records regarding the contents thereof, shall also be designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," and the same terms regarding confidentiality of these documents and materials shall apply as apply to the originals.

(f)    Designations    of    "CONFIDENTIAL"    or    "HIGHLY CONFIDENTIAL" shall constitute a representation that such information has been reviewed by an attorney for the Designating Party and that there is a valid basis for such designation.

2.    <u>Uses of Protected Information</u>. No person shall use any Protected Information, or information derived therefrom, for purposes other than the prosecution or defense of this action.    The parties agree to designate Protected Information as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" on a good faith basis and not for purposes of harassing the Discovering Party or for purposes of unnecessarily restricting

the Discovering Party's access to information concerning the lawsuit. This paragraph also incorporates by reference all other restrictions on the use and disclosure of Protected Information as set forth in this Stipulated Protective Order.

3.      Identification of Documents and Things. All documents and things produced in discovery by each Designating Party shall bear identifying numbers when a copy or copies are produced to the Discovering Party. The identity of the Designating Party shall be clearly identified by identifying numbers and/or letters stamped or printed on the documents or things pursuant to this paragraph 3. All documents and things that contain "CONFIDENTIAL" information shall be designated by conspicuously affixing a legend in the form of "CONFIDENTIAL" on every page. All documents and things that contain "HIGHLY CONFIDENTIAL" information shall be designated by conspicuously affixing a legend in the form of "HIGHLY CONFIDENTIAL" on every page. If any document or thing is inadvertently produced without such legend, the Designating Party shall promptly furnish written notice to the Discovering Party that the relevant document or information shall be "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" under this Order, as further discussed in paragraph 20.

4.      "HIGHLY CONFIDENTIAL" Information - Permitted Disclosure. Information, documents, and things designated as "HIGHLY CONFIDENTIAL" by a Designating Party in accordance with Paragraph 1, shall not be disclosed, given, shown, made available, or communicated in any way, directly or indirectly, by the Discovering Party to anyone other than the following persons:

(a)    the Court, persons employed by the Court, and stenographers transcribing the testimony or argument at a hearing, trial, or deposition in this action or any appeal therefrom;

(b)    any person who is listed on the face of the designated document as an author, sender, addressee, recipient, or copyee;

(c)    outside consultants or independent experts, including their staff, who are not current employees of any party in this matter, who are not affiliated on a regular basis with any party, and who have been retained by counsel for one of the parties for the sole purpose of providing expert consultation or testimony in this action or otherwise to assist in the preparation of this action for trial, (each referred to herein as an "Expert"), but such disclosure shall be subject to the requirements of Paragraph 8 below;

(d)    court reporting and deposition videography services and other third party vendors who provide jury consulting, document management, document copying, database, graphics and design, or other litigation support services in connection with this action and who are not employees of or affiliated on a regular basis with any party; and

(e)    the outside counsel who appears for a party in this action and who has not prosecuted patents for that party within the last two years, and photocopy services personnel retained by counsel, their respective legal assistants, law clerks, stenographic, and clerical employees whose duties and responsibilities require access to such materials, except as limited by Paragraph 5 below.

5.    <u>Additional Protections Related To Patent Prosecution</u>. To the extent that an outside law firm representing a party in this litigation has also prosecuted patent(s) for that party, or will continue to do so, the following restrictions will be

observed by that firm to protect "HIGHLY CONFIDENTIAL" and "CONFIDENTIAL" information of the Designating Party:

(a)    the following attorneys, paralegals or patent agents are identified as having previously prosecuted patent(s) for a party, as currently engaged in prosecution of patent(s) for a party or as persons who are reasonably expected to prosecute patent(s) for a party in the future (hereafter "Prosecution Staff"):

Counsel for Venetec: _____None_____

Counsel for Nexus: _____

_____

_____

Such listed Prosecution Staff are not permitted access to any materials designated as "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL" and each such person identified in Paragraph 5(a) must sign a declaration stating that they will neither receive nor use any information gained from this litigation in any subsequent patent prosecution for any party, with a copy of such declaration to be provided to opposing counsel within ten (10) days of entry of this protective order.  For any Prosecution Staff who are subsequently identified, they must sign a declaration stating that they will neither receive nor use any information gained from this litigation in any subsequent patent prosecution for any party, with a copy of such declaration to be provided to opposing counsel ten (10) days prior to commencing any patent prosecution related work, so that opposing counsel may raise objections if warranted;

(b)    the following attorneys, paralegals or patent agents are identified as having access to "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL" materials and

being employed by a law firm conducting prosecution of patents before the U.S. Patent and Trademark Office for a party (hereafter, "Litigation Staff"):

Counsel for Venetec:  _____None_____

Counsel for Nexus:  _____

_____

_____

Such listed Litigation Staff identified in Paragraph 5(b) must sign a declaration stating that they will not participate, directly or indirectly, in any subsequent patent prosecution for any party for at least three (3) years, with a copy of such declaration to be provided to opposing counsel within ten (10) days of entry of this protective order.  For any Litigation Staff who are subsequently identified, they must sign a declaration stating that they will not participate, directly or indirectly, in any subsequent patent prosecution for any party for at least three (3) years, with a copy of such declaration to be provided to opposing counsel ten (10) days prior to having access to "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL" materials, so that opposing counsel may raise objections if warranted;

(c)    prosecution files for a party will be labeled prominently so that they may only be delivered to the Prosecution Staff referenced in Paragraph 5(a);

(d)    prosecution files for a party will be kept in a locked file cabinet;

(e)    electronic versions of the prosecution files for a party will be password-protected and only the Prosecution Staff referenced in Paragraph 5(a) may access them;

(f)    all material produced in the lawsuit will be segregated and kept in a locked file cabinet so that the Prosecution Staff referenced in Paragraph 5(a) may not access them;

(g)    all electronically stored files from the lawsuit will be password-protected so that the Prosecution Staff referenced in Paragraph 5(a) may not access them; and

(h)    all Litigation Staff identified in Paragraph 5(b) agree not to discuss any "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL" information with the Prosecution Staff identified in Paragraph 5(a).

6.    "CONFIDENTIAL" Information - Permitted Disclosure. Information and things designated as "CONFIDENTIAL" by a Designating Party in accordance with Paragraph 1, shall not be disclosed, given, shown, made available, or communicated in any way, directly or indirectly, by the Discovering Party to anyone other than the following persons:

(a)    all of the persons and entities listed in paragraph 4 to whom "HIGHLY CONFIDENTIAL" information may be disclosed; and

(b)    the following personnel of the parties (no more than two):

For Venetec:    _Charles Krauss, Esq._____

_Brian Burn, Esq. _____

For Nexus:    _W. Cary Dikeman_____

_____

As a condition precedent to disclosure of Protected Information to any persons described in this subparagraph (b), he or she must sign the Confidentiality Undertaking

attached hereto as Exhibit A. Outside counsel shall maintain a file of all such Declarations until the conclusion of the litigation. The parties shall have the right to substitute new personnel in their respective employ for existing personnel, provided that the previous personnel are no longer in the employ of the respective party and provided that the substituted personnel comply with the procedures set forth in this subparagraph (b). To the extent that any such personnel is substituted, the opposing party shall be notified of the identity of the personnel who left the party's employ and the identity of the substitute personnel no less than 5 business days before such substituted personnel are allowed access to Protected Information. This subparagraph (b) may be expanded by mutual agreement in writing by counsel for Venetec and Nexus.

      7.    <u>Recipients of Protected Information.</u>

      (a)    Protected Information shall be maintained by the Discovering Party under the overall supervision of outside counsel. The attorneys of record for the parties shall exercise best efforts to ensure that the information and documents governed by this Stipulated Protective Order are (i) only used for the purposes set forth herein, and (ii) disclosed only to authorized persons. Moreover, any person in possession of Protected Information shall exercise reasonably appropriate care with regard to the storage, custody, or use of such Protected Information in order to ensure that the confidential, restricted, or highly confidential nature of the same is maintained.

      (b)    All individuals to whom Protected Information is to be disclosed shall be instructed that Protected Information may not be used other than in the prosecution or defense of this litigation, and may not be disclosed to anyone other than those persons authorized by this Stipulated Protective Order. Counsel for all parties other

9

than the Designating Party shall take reasonable steps to ensure adherence to the terms and conditions of this Stipulated Protective Order by their respective employees.

8.    Requirements for Disclosure to Experts. The following provisions shall apply to the disclosure of Protected Information to an Expert pursuant to Paragraphs 4(c) and 6(a) above:

(a)    Not less than ten (10) business days prior to the disclosure of Protected Information to an Expert, the party contemplating such disclosure shall give written notice to the Designating Party. The required Notice shall include at least the following information: the full name and business address of the person to whom the party proposes to make disclosure; the person's curriculum vitae, resume, or other document identifying, at a minimum, the person's post-secondary educational degrees, current employer, and title/position, and any titled positions currently held by such person with industrial or trade organizations; identification of each of the person's employers, positions with such employers, and consulting clients over the preceding ten (10) years; and a list of the cases in which the Expert has testified at deposition, at a hearing, or at trial within the preceding four (4) years. Identification of a person pursuant to this paragraph 8 shall not, itself, give rise to a right to depose the person as an expert or consultant.

(b)    Such Expert shall acknowledge in writing, by signing the Confidentiality Undertaking attached hereto as Exhibit A, that he or she has been informed of this Stipulated Protective Order, that he or she has been provided with a copy thereof, and that he or she fully understands and agrees to his or her obligations pursuant to this Stipulated Protective Order; and that he or she fully understands that the

intentional or willful violation of the terms of the Stipulated Protective Order constitutes violation of a Court order and may subject him or her to sanctions or other remedies that may be imposed by the Court and potentially liable in a civil action for damages by the disclosing party. A copy of such Confidentiality Undertaking shall be served on counsel for the Designating Party.

(c)    If the Designating Party does not object in writing within eight (8) business days after service of the written notice and Confidentiality Undertaking, disclosure of the Protected Information to such individual may occur. If the Designating Party objects to the proposed disclosure, whether in whole or in part, the Designating Party shall fully state the reason(s) for its objection(s) in writing at the time the objection is made. If the Designating Party objects to the proposed disclosure, the parties shall meet-and-confer within five (5) business days in a good faith attempt to resolve any challenge on an expedited and informal basis. If the parties are unable to resolve the dispute expeditiously and informally, the Designating Party shall apply for appropriate ruling(s) from the Court no later than seven (7) business days after the service of its objections to the proposed disclosure. The Designating Party shall apply for appropriate ruling(s) from the Court by following Section 3(e) of this Court's April 27, 2007, Scheduling Order. Failure to apply for appropriate ruling(s) from the Court in a timely fashion shall constitute waiver by the Designating Party of its objections and approval of the proposed disclosure. Notwithstanding the Designating Party's obligation to seek appropriate ruling(s) from the Court, the party proposing to make the disclosure also may seek appropriate ruling(s) from the Court. No party shall oppose an application made pursuant to this subparagraph on the ground that the application is

made on an expedited basis. While any such timely filed application is pending, and during the interim between a timely filed objection and the timely filing of a corresponding application, the party seeking to make the proposed disclosure shall refrain from so doing. The Designating Party shall bear the burden of demonstrating that disclosure of the Protected Information to the proposed non-party expert or consultant would prejudice the Designating Party.

9.    <u>Non-Testifying Experts</u>.  To the extent a designated individual to whom Protected Information may be disclosed pursuant to subsections 4(c) and 6(a) of this Stipulated Protective Order is or may be a non-testifying Expert consulted by counsel, the following provisions are applicable:

(a)    No party will be deemed to have waived any privilege by disclosing the name of a non-testifying Expert to whom counsel intends to show Protected Information.

(b)    No non-testifying Expert disclosed pursuant to paragraph 8 will be subject to deposition or subpoena as a witness at trial based solely on the fact that he/she was the subject of such disclosure. This provision is not intended to preclude the deposition or trial testimony of any individual whom a party believes in good faith has pre-existing independent knowledge of facts relevant to the case.

(c)    The identity of a non-testifying Expert disclosed pursuant to paragraph 8 may be disclosed to counsel and employees of the opposing party or parties only to the extent necessary to determine if an objection to the proposed disclosure is warranted.

(d)    Nothing in this paragraph 9 is intended to limit discovery of or with regard to Experts who produce reports in this case in anticipation of testifying at trial.

10.    <u>Designation of Interrogatory Answers or Other Written Discovery Responses</u>.  In the case of interrogatory answers or other written discovery responses disclosing Protected Information, designation shall be made by placing the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" on each page of such answer in the same manner as the underlying documents or information, or next to the case caption on the face page of such answer designating those portions of the answer which are "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

11.    <u>Designation of Deposition Testimony</u>. For depositions taken in this litigation, a party may designate specific portions of the testimony as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by indicating on the record at the deposition the specific testimony which contains "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL INFORMATION" that is to be made subject to the provisions of this Order or, alternatively, by notifying all parties in writing within ten (10) business days of the Designating Party's receipt of the official transcript, of the specific pages and lines of the transcript that contain "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information.

Notwithstanding the foregoing, any individual may attend a deposition at which Protected Information may be disclosed. In the event that such individual is not authorized to receive Protected Information under paragraphs 4 or 6, the Designating Party shall have the right to exclude such persons from the deposition only during the

period any Protected Information is disclosed or discussed, and the Designating Party must designate on the record at the deposition that specific testimony or information as "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL INFORMATION" and indicate on the record at the deposition that such testimony or information is subject to the provisions of this Stipulated Protective Order.

12.    Designation of Documents Filed in Court.

(a)    Any discovery papers, including deposition transcripts, exhibits, or other documents, and any court documents such as briefs or motions, to be filed with the Court and that include Protected Information shall be sealed in an envelope and accompanied by a cover sheet that includes the following: (i) the caption of the case, including the case number; and (ii) the title "CONFIDENTIAL, FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER."

(b)    The parties agree that all papers or documents containing Protected Information shall be filed with the Court in accordance with CM/ECF procedures for filings under seal.

13.    Use of Protected Information in Examining Witnesses. Protected Information produced by a party may be utilized in examining or cross-examining any witness in deposition or at trial who (i) is authorized to be shown the Protected Information pursuant to paragraphs 4 or 6; (ii) is a current employee of the party producing such Protected Information, or a representative of that same party; or (iii) is a former employee of the party producing such Protected Information so long as the witness is either authorized to see the Protected Information under paragraphs 4 or 6, or was (either at the time of the creation of the Protected Information or the commencement

of this action) employed by the Designating Party and reasonably likely to have had prior legitimate access to the document or the information contained therein, during his or her employment with the Designating Party.

14.    Limitations on Restrictions.

(a)    The restrictions of this Stipulated Protective Order shall not apply to any Protected Information which in the future (i) is deemed (either by agreement of the parties or by order of the Court) to be no longer entitled to protection under this Order, (ii) is made known to the Discovering Party on a non-confidential basis by the Designating Party, (iii) is otherwise subsequently and lawfully made known to the Discovering Party on any basis by any source other than the Designating Party, which source is completely independent of the Discovering Party, or (iv) is used as an exhibit in Court (unless such exhibit was filed under seal or protected from public disclosure); further, said restrictions shall not apply to any information which the Discovering Party shall establish was already lawfully known to it at the time of disclosure, or has been or becomes a matter of public knowledge, or publicly available, subsequent to disclosure through no act or fault of the Discovering Party, or any agent or representative of said party.

(b)    Nothing in this Stipulated Protective Order shall preclude any party or its counsel of record from disclosing or using, in any manner or for any purpose, any information or documents from the party's own files which the party itself has designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

(c)    Notwithstanding any other provisions of this Stipulated Protective Order, nothing herein shall prohibit counsel for a party from disclosing an item of

15

Protected Information, whether designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL", to any person who was an author, addressee, or carbon copy recipient of such item; and if such item makes reference to the actual or alleged conduct or statements of such author, addressee, or carbon copy recipient who is a potential witness, counsel may discuss such conduct or statements with such witness without revealing any portion of the Protected Information, other than that which specifically refers to such conduct or statement, and such discussion shall not constitute a violation of this Stipulated Protective Order.

15.    Providing Legal Advice.  Subject to the provisions of paragraph 2, nothing in this Stipulated Protective Order shall bar or otherwise restrict any outside counsel or persons who are employed as in-house counsel for a party from discussing this action and/or rendering legal advice to his or her client with respect to this litigation and, in the course thereof, relying upon his or her examination of Protected Information, provided, however, that in rendering such advice and in otherwise communicating with his or her client, such person shall not make any disclosure of Protected Information to any person not entitled to have access to it.

16.    Prohibited Use of Protected Information.  Subject to the provisions of paragraphs 14 and 15, regardless of the classification of document and things as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," any Protected Information produced by either party in connection with this litigation, and any information contained therein, may not be used by a Discovering Party for any reason other than the prosecution or defense of this litigation, without the prior, express written consent of the Designating Party. By way of example and not of limitation, a Discovering Party may not use

Protected Information of a Designating Party in connection with business or marketing efforts, or any press releases, press announcements or news conferences, without the prior, express written consent of the Designating Party. Any person receiving Protected Information shall not disclose it to any person who is not entitled to receive such information under this Order. If Protected Information is disclosed to any person who is not entitled to receive such information under this Order, the person responsible for the disclosure will inform counsel for the Designating Party and make a reasonable good faith effort to retrieve such material and to prevent further disclosure of it by the person who received such information.

17.    <u>Limited Intent of Stipulated Protective Order</u>.

(a)    It is not the intention of this Stipulated Protective Order to deal with any discovery objection to produce, answer, or respond, including those on the grounds of attorney-client privilege or work product doctrine.

(b)    This Stipulated Protective Order has been agreed to by the parties to facilitate discovery and the production of relevant evidence in this action. Neither the agreement of the parties, nor the designation of any information, document, or the like as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information, nor the failure to make such designation shall constitute evidence with respect to any issue in this action.

18.    <u>Challenging a Designation</u>.  At any time, the Discovering Party may notify the Designating Party, in writing, of an objection to the designation of certain information, documents or things by identifying each document or thing which the party contends is not protectable as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" and stating why it believes each document or thing is not protectable. No later than ten (10)

business days after the Designating Party's receipt of such notice, the parties shall meet and confer in a good faith attempt to resolve any challenge on an expedited and informal basis. If the parties are unable to reach an agreement on the disputed confidentiality designation, the Discovering Party may apply to the Court for an Order removing such designation, and the Designating Party shall respond with its reasons for making the designation. The Designating Party shall apply for appropriate ruling(s) from the Court by following Section 3(e) of this Court's April 27, 2007 Scheduling Order. The party claiming confidentiality shall bear the burden of establishing the confidential nature of the information. Until a determination by the Court, the information in issue shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information subject to the terms of this Order. Any failure to object to any material being designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall not be construed as an admission by any party that the material constitutes or contains a trade secret or other confidential information.

This Order shall not preclude any party from seeking and obtaining, on an appropriate showing, such additional protection with respect to the confidentiality of any documents and other materials, whether or not constituting Protected Information, as that party may consider appropriate. Nor shall any party be precluded from (1) claiming that any Protected Information is not entitled to the protections of this Order, (2) applying to the Court for an order permitting the disclosure or use of the Protected Information, or (3) applying for a further order modifying this Order.

19.    <u>Inadvertent Disclosure</u>. Information produced without the designation of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" may be so designated subsequent

18

to production if the Designating Party provides replacement materials bearing appropriate designations and notifies the Discovering Party promptly after becoming aware of same that the Designating Party failed to make such designation at the time of production. Upon receipt of any such re-designation, the Discovering Party promptly shall collect all copies of the documents and either (a) return them to the Designating Party or (b) certify in writing that they have been destroyed and take reasonable steps to prevent any further dissemination of the Protected Information.

20.    <u>Recall of Inadvertently Produced Privileged Information</u>.  The inadvertent disclosure by a Designating Party of information subject to a claim of attorney-client privilege, work product immunity, or other applicable privilege shall not be deemed a waiver in whole or in part of any such claim of privilege, either as to the specific information disclosed or as to any other information relating thereto. If a Designating Party has inadvertently produced or disclosed documents or information subject to a claim of immunity or privilege, the Designating Party may request in writing that the Discovering Party return or destroy the inadvertently produced documents and information, and all copies thereof that may have been made.  Within five (5) business days of the Discovering Party's receipt of the written request to return or destroy the documents, the Discovering Party must either (1) move the Court for an order compelling production of such information and file under seal with the Court any remaining copies of the documents in its possession, or (2) return or destroy all copies of the documents in its possession to the Designating Party.  If the Discovering Party moves the Court for an Order compelling production of such information, it may not use or disclose that information while such motion is pending.  In addition, the Designating Party must

preserve the information until the claim is resolved. Lastly, if the Discovering Party disclosed the information before being notified, it must take reasonable steps to retrieve it.

21. Applicability to Third Parties. The terms of this Stipulated Protective Order shall be applicable to any third party who produces information which is designated by such third party as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." Nothing in this paragraph permits a party to designate as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" any information produced in this litigation by a third party which that third party did not itself designate as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," unless the third party has confidential information of a party that it is legally obligated to maintain as confidential.

22. Termination of This Action.

(a) All provisions of this Stipulated Protective Order restricting the use of information obtained during discovery shall continue to be binding on the parties and all persons who have received information under this Stipulated Protective Order, after the conclusion of this action, including all appeals until further Order of the Court except (i) that there shall be no restriction on documents that are used as exhibits in Court (unless such exhibits were filed under seal or protected from public disclosure); and (ii) that a party may seek the written permission of the producing party or further order of the Court with respect to dissolution or modification of this Stipulated Protective Order.

(b) Within sixty (60) calendar days after final disposition of this litigation, including all appeals therefrom, all Protected Information, copies of Protected Information, and all excerpts therefrom, in the possession, custody or control of the

parties other than the Designating Party shall be verified as destroyed or returned to counsel for the Designating Party. Notwithstanding the foregoing, outside counsel for each party shall be entitled to retain one complete and unredacted set of all filings, court papers, deposition and trial transcripts, deposition and trial exhibits, and attorney work product (regardless of whether such materials contain or reference Protected Information for archival records), provided that such outside counsel, and employees and agents of such outside counsel, shall not use or disclose any Protected Information contained or referenced in such materials to any person except pursuant to court order or agreement with the Designating Party. The Court retains exclusive jurisdiction subsequent to settlement or entry of judgment to enforce the terms of this Stipulated Protective Order.

23.    Other Proceedings.  By entering this Stipulated Protective Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this Order who becomes subject to a motion to disclose another party's information designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" pursuant to this Order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

24.    Amendments to this Order. This Order is without prejudice to the right of any party to seek amendment of this Order, or to otherwise seek relief from the Court, upon good cause shown, from any of the restrictions contained herein, or to seek additional protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure or the Court's Local Rules.

25.    <u>Waiver Or Termination Of Order</u>.

No restriction imposed by this Order may be waived or terminated except by the written stipulation executed by counsel of record for each party, or by an order of the Court for good cause shown.  The restrictions provided for herein shall not terminate upon the conclusion of this lawsuit, but shall continue indefinitely or until further Order of this Court.

26.    <u>Miscellaneous</u>.

(a)    Any producing party shall be entitled to all remedies existing under law and equity in the event of any unauthorized disclosure of Protected Information, or any other breach of this Order, by either a receiving party or any person to whom a receiving party has disclosed Protected Information; and

(b)    The remedies established by this Order are intended to be cumulative and in addition to any party's right to seek further or different protection from the Court regarding issues addressed herein.  This Order is without prejudice to the right of any party to apply to the Court at any time for modification or exception to this Order.

27.    <u>Interim Applicability</u>.  Until such time as this Stipulated Protective Order has been entered by the Court, the parties agree that upon execution by the parties, it will be treated as though it had been "So Ordered."


DONE AND ORDERED THIS _____ day of _____, 2007.



_____
UNITED STATES DISTRICT COURT JUDGE

SO STIPULATED:

MORRIS, NICHOLS, ARSHT & TUNNELL LLP          MORRIS JAMES LLP


By:_____          By:_____

Jack B. Blumenfeld (#1014)            Richard K. Herrmann, Esq.
Maryellen Noreika (#3208)             500 Delaware Avenue, Suite 1500
1201 N. Market Street                 Wilmington, DE 19801-1494
P.O. Box 1347                         (302) 888-6800
Wilmington, DE 19899-1347
(302) 658-9200


*Attorneys for Plaintiff*              *Attorney for Defendant*
*Venetec International, Inc.*           *Nexus Medical, LLC*


*Of Counsel*                           *Of Counsel*

Steven C. Cherny                      Scott R. Brown
Hassen A. Sayeed                      Jennifer C. Bailey
LATHAM & WATKINS LLP                  HOVEY WILLIAMS LLP
885 Third Avenue, Suite 1000          2405 Grand Boulevard, Suite 400
New York, NY 10022-4834               Kansas City, MO 64108
(212) 906-1200 (phone)                (816) 474-9050
(212) 751-4864 (fax)

Maximilian A. Grant
David M. Farnum
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.
Washington, DC 20004
(202) 637-2200 (phone)
(202) 637-2201 (fax)



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VENETEC INTERNATIONAL, INC.    )
    )
        Plaintiff,    )
    )      **C.A. No. 07-57-\*\*\***
        v.    )
    )
NEXUS MEDICAL, LLC    )
    )
        Defendant.    )

## DECLARATION AND AGREEMENT TO BE BOUND

I, _____, declare and state under penalty of

perjury that:

    1.    My present residential address is _____.

    2.    My present employer is and the address of my present employer is

_____.

    3.    My present occupation or job description is _____.

    4.    I have received and carefully read the Stipulated Protective Order dated

_____ and understand its provisions. Specifically, I understand that I am obligated,

under order of the Court, to hold in confidence and not to disclose the contents of

anything marked CONFIDENTIAL or HIGHLY CONFIDENTIAL to anyone other than

the persons permitted by paragraphs 4-6 of the Stipulated Protective Order. I further

understand that I am not to disclose to anyone other than the persons permitted by

paragraphs 4-6 of the Stipulated Protective Order any words, substances, summaries,

abstracts or indices of any CONFIDENTIAL or HIGHLY CONFIDENTIAL information

disclosed to me. I will use the CONFIDENTIAL or HIGHLY CONFIDENTIAL

information solely for purposes relating to the above-captioned litigation. I will never use any CONFIDENTIAL or HIGHLY CONFIDENTIAL information, directly or indirectly, in competition with the disclosing party, nor will I knowingly permit others to do so.  In addition to the foregoing, I understand that I must abide by all of the provisions of the Stipulated Protective Order, including paragraphs 4-6.

5.    At the termination of this action or at any time requested by counsel, I will return to counsel for the party by whom I am employed or by whom I have been retained, all documents and other materials, including notes, computer data, summaries, abstracts, or any other materials containing or reflecting CONFIDENTIAL or HIGHLY CONFIDENTIAL information which have come into my possession, and will return all documents or things I have prepared relating to or reflecting such information.

6.    I understand that if I violate the provisions of the Stipulated Protective Order, I will be in violation of a Court order and subject to sanctions or other remedies that may be imposed by the Court and potentially liable in a civil action for damages by the disclosing party.

7.    I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on: _____          _____
                                                            Signature

# Exhibit C

Maximilian Grant
Direct Dial: 202-637-2267
max.grant@lw.com

RECEIVED

JUL 1 3 2007

HOVEY WILLIAMS LLP

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +202.637.2200  Fax: +202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

File No. 038589-0008

# LATHAM&WATKINS LLP

July 9, 2007

**BY FACSIMILE AND OVERNIGHT MAIL**

Scott R. Brown
HOVEY WILLIAMS LLP
2405 Grand Boulevard
Suite 400
Kansas City, MO 64108

Re:    Venetec v. Nexus, No. 07-CV-0057***

Mr. Brown:

I write regarding the Stipulated Protective Order issued by the Court on May 21, 2007 in our case, and Nexus Medical LLC's ("Nexus") subsequent Request for *Inter Partes* Reexamination of the '485 patent.   After we carefully and explicitly discussed Venetec's concerns about the improper use of confidential information by attorneys involved in patent prosecution, negotiated those provisions and had the Court enter such provisions into a binding Order, you have violated them.

The Protective Order strictly bars "Litigation Staff" (identified as you, Ms. Bailey and Mr. Walters) from participating in patent prosecution activities.  Specifically,

> Such listed Litigation Staff identified in Paragraph 5(b) must sign a declaration stating that they will not participate, directly or indirectly, in any subsequent patent prosecution for any part for at least two (2) years from entry of final judgment in this action, with a copy of such declaration to be provided to opposing counsel within ten (10) days of entry of this protective order.

Stip. Protective Order at ¶ 5(b).

Notwithstanding this express prohibition, you and Ms. Bailey have violated the Order by apparently drafting and filing Nexus' Request for *Inter Partes* Reexamination of the '485 patent.[1]  A request for reexamination constitutes engaging in patent prosecution. *See, e.g., Grayzel v. St. Jude Med., Inc.*, 2005 U.S. App. LEXIS 28690 (Fed. Cir. 2005) (upholding an

---

[1]    All three listed attorneys have further violated the Protective Order by failing to provide the necessary declarations within the time period called for by the Order.

LATHAM&WATKINS LLP

injunction to enforce a protective order where a party requested patent reexamination). In fact, courts regularly find such conduct to violate protective orders with prosecution bars, like the Order in this case:

> Visto's primary argument is that a reexamination proceeding is not a new or currently pending patent application and is therefore not covered by the prosecution bar... . This court has squarely rejected arguments to the contrary, made in the context of a prosecution bar contained in a Protective Order.

*Visto Corp. v. Seven Networks, Inc.*, 2006 U.S. Dist. LEXIS 91453 at *21 (E.D. Tex. 2006) (citations omitted); *see also MercExchange, LLC v. eBay, Inc.*, 467 F. Supp. 2d 608, 622 (E.D. Va. 2006) ("[T]he court also concludes that the spirit of the protective order suggests that experts who accessed eBay's confidential information should not be participating in the PTO reexamination of the very patents that constituted the core of the litigation such experts were involved.").

Both yourself and Ms. Bailey have been provided confidential Venetec information. Specifically, Venetec's preliminary claim construction positions and infringement contentions are prominently marked as "Confidential" pursuant to the Protective Order. In addition, we have produced numerous sensitive documents designated as "Highly Confidential" under the Protective Order in response to Nexus' document requests. It is precisely such information that the prosecution bar is intended to pertain to, and Nexus is not permitted to use or consider such confidential information in, for example, forming the invalidity contentions set forth in its Request for *Inter Partes* Reexamination of the '485 patent.

*First*, we require that you confirm whether Mr. Walters participated, "directly or indirectly" in Nexus' submission of its Request for *Inter Partes* Reexamination of the '485 patent. *Second*, we require that yourself and Ms. Bailey (as well as Mr. Walters, if appropriate) withdraw as counsel of record in *both* Nexus' Reexamination request and this litigation by filing appropriate papers with the PTO and the Court no later than July 13, 2007.

If we do not receive confirmation of such withdrawals being filed by 5:00 p.m. on that date, we will move for disqualification based on your violation of the express provisions of Paragraph 5(b) of the Protective Order.

Truly yours,

Maximilian A. Grant
LATHAM & WATKINS LLP
Attorneys for Plaintiffs

cc:    Service List

# Exhibit D

*Jennifer C Bailey*

# UNDERSTANDING INTELLECTUAL PROPERTY LAW

by

**DONALD S. CHISUM**

**and**

**MICHAEL A. JACOBS**

LEGAL TEXT SERIES

**Matthew Bender**

Times Mirror
Books

COPYRIGHT©1992
by Matthew Bender & Company
Incorporated

———————

No copyright is claimed in the text of federal or state regulations,
statutes, and excerpts from court cases quoted within.

All Rights Reserved
Printed in United States of America
Library of Congress Catalogue Number: 91-076654
ISBN: 0-8205-0549-8

1999 Reprint

Also published in a version for the professional market as World
Intellectual Property Guidebook: United States


MATTHEW BENDER & CO., INC.
EDITORIAL OFFICES
2 PARK AVENUE, NEW YORK, NY 10016-5675 (212) 448-2000
201 MISSION ST., SAN FRANCISCO, CA 94105-1831 (415) 908-3200

## § 2D  The Patenting Process

To obtain a patent, an inventor must file an application fully disclosing his invention in the Patent and Trademark Office (PTO). The PTO examines the application and, if the invention meets all patentability conditions, grants a patent.

### [1]  Patent Application Filing and Prosecution: An Overview

Patent application drafting is an important and complex undertaking. The drafter must understand the technology surrounding an invention and describe the invention accurately and completely. The specification and drawings filed with the application must fully disclose the invention.[1] They are printed and distributed as part of the issued patent. The patent system's primary purpose is that information so disclosed benefit the public by promoting the progress of the useful arts.[2]

A PTO examiner can reject any or all claims. The inventor may respond by amending the claims or offering evidence supporting their patentability. The examiner reexamines the claims in light of the applicant's response. Applicant-PTO examiner dialogue is referred to as "prosecution."

Prosecution involves the following:

(1)  The applicant (or someone on his or her behalf) files an application with the PTO.[3]

(2)  The PTO classifies the subject matter and forwards the application to the appropriate examining group.[4]

(3)  Applications are assigned to an individual examiner in order of filing,[5] unless the examination is expedited by a petition to make the application special.[6]

---

If each inventive entity is under an obligation to assign patent rights to a single person (e.g. a common employer), the separate developments are not prior art under Sections 102(f) or (g) for obviousness purposes. *See* § 2C[5][e]. Developments by separate inventive entities will still constitute prior art under Sections 102(f) and (g) for novelty purposes and are prior art under Sections 102(a) and 102(e) for both novelty and obviousness purposes. *See* § 2C[5][d].

[1] *See* §§ 2D[3][a] and [c]. Section 112, *first* paragraph's disclosure requirements differ from Section 112, *second* paragraph's claim definiteness requirements. *In re* Borkowski, 422 F.2d 904, 164 U.S.P.Q. 642 (CCPA 1970); *In re* Wakefield, 422 F.2d 897, 903, 164 U.S.P.Q. 636 (CCPA 1970). *See* § 2D[3][d].

[2] U.S. Const. art. I, § 8, cl. 8; Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 181 U.S.P.Q. 673 (1974).

[3] The filing date is when PTO actually receives the specification (including at least one claim) and drawings (if necessary). 37 C.F.R. § 1.53(b). The filing date is the mailing date if the applicant uses "Express Mail." 37 C.F.R. § 1.10.

[4] 37 C.F.R. § 1.101.

[5] 37 C.F.R. § 1.110. No action may be taken on Patent Cooperation Treaty international applications before 21 months from the priority date unless a request has been filed under 35 U.S.C. § 371(f).

[6] 37 C.F.R. § 1.102.

# Exhibit E

# Patent Law Fundamentals

Second Edition

by John Gladstone Mills III

Donald Cress Reiley, III and

Robert Clare Highley

Material previously authored by the late Peter D. Rosenberg

2007 Revision

Volume Three



THOMSON

WEST

*For Customer Assistance Call 1-800-328-4880*

© 2007 Thomson/West, Rel. 15 5/2007
Mat #40470965

Copyright © 1980, 1981, 1982, 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990 by Clark Boardman Company, Ltd.

Copyright © 1991, 1992, 1993, 1994, 1995 Clark Boardman Callaghan, a division of Thomson Legal Publishing, Inc.

Copyright © 1996, 1997 Clark Boardman Callaghan, a division of Thomson Information Services, Inc.

Copyright © 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007 Thomson/West.

For authorization to photocopy, please contact the Copyright Clearance Center at 222 Rosewood Drive, Danvers, MA 01923, USA (978) 750-8400; fax (978) 750-4470 or West's Copyright Services at 610 Opperman Drive, Eagan, MN 55123, fax (651) 687-7551. Please outline the specific material involved, the number of copies you wish to distribute and the purpose or format of the use,

Thomson/West has created this publication to provide you with accurate and authoritative information concerning the subject matter covered. However, this publication was not necessarily prepared by persons licensed to practice law in a particular jurisdiction. Thomson/West is not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

> **KeyCite®:** Cases and other legal materials listed in KeyCite Scope can be researched through the KeyCite service on Westlaw®. Use KeyCite to check citations for form, parallel references, prior and later history, and comprehensive citator information, including citations to other decisions and secondary materials.

## § 15:1  Introduction

**Research References**

West's Key Number Digest, Patents ⚎97

That reminds me to remark, in passing, that the very first of ficial thing I did, in my administration—and it was on the very first day of it, too—was to start a patent office; for I knew that a country without a patent office and good patent laws was just a crab, and couldn't travel any way but sideways or backwards.

Mark Twain,[1] A Connecticut Yankee in King Arthur's Court (1889).

[B]ut the antlike persistency of solicitors has overcome, and I suppose will continue to overcome, the patience of examiners, and there is apparently always but one outcome . . ..

[W]ith a degree of obduracy which is exceptional even in the Patent Office, the claim to such a buffer was put forward after rejection, disguised in one way or another, three or more times, either deliberately to hoodwink the Examiner, or because the solicitor had become enmeshed, like a silkworm, in his own emanations.

Lyon v. Boh, 1 F.2d 48, 50, (S.D. N.Y. 1924), rev'd on other grounds, 10 F.2d 30 (C.C.A. 2d Cir. 1926).

The granting of patents occurs after an administrative procedure commonly called "prosecution" before the Patent and Trademark Office and the authority to grant patents has been delegated by Congress to the Patent and Trademark Office, which, since 1925, has been a federal agency within the Commerce Department. The Act of 1790 made the processing of patent applications a function of the State Department. Under that Act, the decision whether to grant a patent was placed in the hands of a board composed of the Secretary of State, the Secretary of War, and the Attorney General.[2] The Act of 1793 abolished the board and made the grant of patent a purely ministerial function.[3] Such a system, wherein the merit of a contribution is not scrutinized prior to the grant of patent, is often referred to as a registration system. The Act of 1836 reinstituted the examina-

---

[Section 15:1]

[1]Mark Twain (pseudonym of Samuel L. Clemens) was himself a patentee. U.S. Patent No. 121,992 was granted to him in 1871. He was also an inveterate investor in the patented inventions of others.

[2]1 Stat. 109 (1790).

[3]1 Stat. 318 (1793).

# Exhibit F

# INTELLECTUAL PROPERTY
# THE LAW OF
# COPYRIGHTS, PATENTS
# AND TRADEMARKS

By

**Roger E. Schechter**
*Professor of Law,*
*George Washington University*

**John R. Thomas**
*Professor of Law,*
*Georgetown University*

**HORNBOOK SERIES**

**THOMSON**
———— ✳ ————™
**WEST**

Mat #11575277

West Group has created this publication to provide you with accurate and authoritative information concerning the subject matter covered. However, this publication was not necessarily prepared by persons licensed to practice law in a particular jurisdiction. West Group is not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

*Hornbook Series, WESTLAW* and West Group are registered trademarks used herein under license.

COPYRIGHT © 2003 By WEST GROUP
      610 Opperman Drive
      P.O. Box 64526
      St. Paul, MN 55164–0526
      1–800–328–9352

All rights reserved
Printed in the United States of America

ISBN 0–314–06599–7

 *TEXT IS PRINTED ON 10% POST CONSUMER RECYCLED PAPER*  

Sec.
19.7.3  Citation of Prior Art.
19.7.4  Public Use Proceedings.
19.8  International Prosecution.
19.8.1  Obtaining Paris Convention Priority.
19.8.2  Benefits of Paris Convention Priority.
19.8.3  Foreign Filing Licenses.
19.8.4  The Patent Cooperation Treaty.

---

Unlike other sorts of intellectual property, patents come into existence only through the intervention of the government. The entity assigned the task of approving patent applications is an agency entitled the United States Patent and Trademark Office, or PTO. The administrative process through which an inventor acquires a patent from the PTO is known as prosecution. The most frequent professional duty of patent practitioners, prosecution is also the task assigned to most entry-level patent lawyers. Even those engaged exclusively in patent litigation need to be thoroughly apprized of the events at the PTO that lead to the grant of any patent to be sued upon or defended against. Attorneys who do not routinely practice in the patent law may also find themselves more frequently approached by inventors wishing to obtain a patent than by patent proprietors who wish to enforce their intellectual property rights. For all these reasons, a basic grasp of prosecution mechanisms is elemental to an understanding of the patent law.

# § 19.1  Introduction to the Patent and Trademark Office

The Patent and Trademark Office, or PTO, is an administrative agency of the federal government.[1] The PTO is organized within the Department of Commerce and is under the policy direction of the Secretary of Commerce. A Director, who is appointed by the President by and with the consent of the Senate, heads the PTO. The Secretary of Commerce also appoints a Commissioner of Patents with the specific responsibility of managing the PTO's patent operations.[2] The PTO is currently housed in several office buildings in northern Virginia, near Washington, DC.

The examining corps itself is organized into various Examining Groups, which are further divided into Group and Individual Art Units. A Group Director heads each of the Examining Groups, while the various Group Units are directed by a senior official entitled the Supervisory Primary Examiner, or SPE. Front-line examiners are classified as either primary or assistant. Primary examiners possess considerable experience and are authorized to make decisions pertinent to patentability on an independent basis. Each primary examiner acts, in a sense, like a one-person patent office. Assistant examiners tend to be more recent

§ 19.1                          2.  35 U.S.C.A. § 3 (2000).
1.  35 U.S.C.A. § 1 (2000).

# Exhibit G

CASES AND MATERIALS

# PRINCIPLES OF PATENT LAW

THIRD EDITION

*by*

DONALD S. CHISUM
Inez Mabie Professor of Law
Santa Clara University School of Law

CRAIG ALLEN NARD
Professor of Law
Director, Center for Law, Technology & the Arts
Case Western Reserve University School of Law

HERBERT F. SCHWARTZ
Fish & Neave
New York, New York
Adjunct Professor of Law
University of Pennsylvania School of Law

PAULINE NEWMAN
Circuit Judge
United States Court of Appeals for the Federal Circuit
Distinguished Professor of Law
George Mason University School of Law

F. SCOTT KIEFF
Associate Professor of Law
Washington University School of Law
W. Glenn Campbell & Rita Ricardo-Campbell National Fellow
Hoover Institution, Stanford University

FOUNDATION PRESS

NEW YORK, NEW YORK

2004


THOMSON

WEST

Foundation Press, a Thomson business, has created this publication to provide you with accurate and authoritative information concerning the subject matter covered. However, this publication was not necessarily prepared by persons licensed to practice law in a particular jurisdiction. Foundation Press is not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

© 1998, 2001 FOUNDATION PRESS
© 2004 By FOUNDATION PRESS
    395 Hudson Street
    New York, NY 10014
    Phone Toll Free 1–877–888–1330
    Fax (212) 367–6799
    fdpress.com

Printed in the United States of America

ISBN 1–58778–734–2



TEXT IS PRINTED ON 10% POST
CONSUMER RECYCLED PAPER



CHAPTER TWO

# OBTAINING THE PATENT GRANT

[T]he antlike persistency of [patent] solicitors has overcome, and I suppose, will continue to overcome, the patience of examiners, and there is apparently always but one outcome.

—Judge Learned Hand[1]

The life of a patent solicitor has always been a hard one.

—Judge Giles S. Rich[2]

### INTRODUCTION

The previous chapter explained some of the purposes and policies of the patent system and some of the ways a patent can affect the economics of innovation. This chapter will introduce the broad concepts and basic vocabulary involved in the process by which an inventor obtains a patent.[3]

As its name suggests, the United States Patent and Trademark Office (PTO) plays a crucial role in the U.S. patent system. Patent rights do not exist unless granted by the federal government.[4] To obtain a patent, an inventor must file a patent application with the PTO. Then, the Director of Patents and Trademarks is required to "cause an examination to be made of the application and the alleged new invention; and if on such examination it appears that the applicant is entitled to a patent under the law, the Director shall issue a patent therefor." 35 U.S.C. § 131. Examination is conducted to ensure that the claimed invention is adequately disclosed (*see* Chapter Three), new (*see* Chapter Four), nonobvious (*see* Chapter Five),

---

**1.** *Lyon v. Boh*, 1 F.2d 48, 50 (S.D.N.Y. 1924), *rev'd*, 10 F.2d 30 (2d Cir.1926).

**2.** *In re Ruschig*, 379 F.2d 990, 993 (CCPA 1967).

**3.** In the United States, unlike most other countries, patents are applied for and issued in the name of the individual inventor or inventors. *See* 35 U.S.C. §§ 111, 115–118, 151–152. To be sure, many inventions are owned by the inventor's employer, often a company, but the actual inventors are required to be named, and incorrect reporting of inventorship in a patent, unless corrected in accordance with statute, can invalidate the patent. *See* 35 U.S.C. §§ 102(f), 256.

**4.** In contrast, for example, copyright subsists in a work once it is "fixed in any tangible medium of expression", 17 U.S.C.

§ 102 (a); and federal registration is needed only if the copyright owner wants to bring an infringement action and pursue statutory damages, 17 U.S.C. §§ 411, 412. Similarly, property rights in trademarks are initially created by using the mark in trade, not by governmental grant or registration; while federal registration gives the owner the benefit of additional federal rights and remedies. *See In re DC Comics, Inc.*, 689 F.2d, 1042, 1046–55 (CCPA 1982) (opinions by Judges Rich and Nies concurring in result and reviewing the life-cycle of a trademark—beginning with initial use and ending with abandonment or genericness); *see also* Daphne Leeds, *Trademarks—The Rationale of Registrability*, 26 GEO. WASH. L. REV. 653, 666 (1958).

useful (*see* Chapter Six), and within at least one of the statutory classes of patentable subject matter (*see* Chapter Seven). The process of obtaining a patent is called *patent prosecution.*

The writing necessary for a patent application is very technical and a degree in the relevant scientific discipline or other appropriate technical background is helpful. Indeed, the patent prosecutor has an obligation to know and comprehend not only the law, but also the pertinent technology. Thus, specialized training is generally required,[5] with a few notable exceptions, for registration to practice before the PTO.

The patent application, and the resulting issued patent, contains two major components: (1) the *written description*, and (2) the *claims*. These two components together make up the *specification*.[6] The process by which the patent specification and especially the patent claims are shaped is of primary importance because the claims of the issued patent establish the metes and bounds of the patent owner's right to exclude. As described by Judge Rich:

> The U.S. is strictly an examination country and the main purpose of the examination, to which every application is subjected, is to try and make sure that what each claim defines is patentable. To coin a phrase, *the name of the game is the claim* ... [and] the function of claims is to enable everyone to know, without going through a lawsuit, what infringes the patent and what does not.[7]

This chapter is divided into two parts. The first part focuses on the patent application and the steps in the patent prosecution process. In so doing, it also introduces the jargon of patent prosecution. It should be noted, however, entire courses and books are devoted solely to the topic of patent prosecution, and entire legal practices are devoted to this specialty. This chapter merely introduces this complex field of law to the extent necessary to understand the basic principles of patent law.

The second part of the chapter discusses the procedures by which an issued patent may be taken back to the PTO for correction or other modification. These processes are called *reissue* and *reexamination* and have an important role in our patent system.

But before we begin our discussion of the patent document, patent prosecution, and post-issuance procedures, consider the following excerpt by Professors John Allison and Mark Lemley. Professors Allison and

---

**5.** *See* 37 C.F.R. §§ 10.5, 10.6, 10.7 (2002), wherein the regulations governing individuals practicing before the PTO are set forth. The PTO annually issues a pamphlet entitled "General Requirements for Admission to the Examination for Registration to Practice in Patent Cases before the U.S. Patent and Trademark Office." *See* www.uspto.gov.

**6.** *See* 35 U.S.C. § 112. Although often, and incorrectly, used interchangeably, the terms "written description" and "specification" are *not* co-extensive. The specification encompasses both the claims *and* the written description.

**7.** Giles S. Rich, *The Extent of the Protection and Interpretation of Claims—American Perspectives*, 21 INT'L REV. INDUS. PROP. & COPYRIGHT L. 497, 499, 501 (1990) as quoted in *Hilton Davis Chem. Co. v. Warner-Jenkinson Co*, 62 F.3d 1512, 1539 (Fed.Cir.1995) (Plager, Circuit Judge, with whom Chief Judge Archer and Circuit Judges Rich and Lourie join, dissenting) (emphasis in original).

# Exhibit H

Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1994 WL 16189689 (D.Del.)

(Cite as: Not Reported in F.Supp.)

▷
Motorola, Inc. v. Interdigital Technology Corp.
D.Del.,1994.
Only the Westlaw citation is currently available.
    United States District Court,D. Delaware.
        MOTOROLA, INC., Plaintiff,
                    v.
        INTERDIGITAL TECHNOLOGY
        CORPORATION, Defendant.
        INTERDIGITAL TECHNOLOGY
        CORPORATION, Plaintiff,
                    v.
        MOTOROLA, INC., Defendant.
            No. Civ.A. 93-488-LON.

            Dec. 19, 1994.

Jeffrey B. Bove, of Connolly, Bove, Lodge & Hutz,
Wilmington, Delaware; Gary M. Hoffman, Howard
N. Feldman, of Dickstein, Shapiro & Morin,
Washington, D.C.; for Plaintiff, of counsel.
Richard K. Herrmann, of Bayard, Handelman &
Murdoch, Wilmington, Delaware; Robert G. Krupka,
and Linda S. Resh, of Kirkland & Ellis, Chicago,
Illinois; for Defendant, of counsel.

        MEMORANDUM OPINION
LONGOBARDI, J.

    I. NATURE AND STAGE OF THE
            PROCEEDINGS

*1 This suit involves patent claims relating to the
mobile telephone industry. On October 8, 1993,
Motorola filed a civil action seeking declaratory
relief, Motorola, Inc., v. Interdigital Technology
Corporation, Civil Action (" C.A." ) No. 93-488-
LON. On October 12, 1993 Interdigital Technology
Corporation, (" ITC" ), filed a patent infringement
claim arising out of same patents, Interdigital
Technology Corporation v. Motorola, Inc., C.A. No.
93-5430, in the Eastern District of Pennsylvania. On
February 17, 1994, the Eastern District case was
transferred to this Court and designated C.A. No. 94-
73. On September 22, 1994, the two actions were
consolidated, with 93-488 designated as the lead
case.

Presently before the court is Motorola's letter of

September 21, 1994, (" Motorola letter" ) and ITC's
response letter of September 23, 1994, regarding the
dual roles performed by the firm Dickstein, Shapiro
& Morin (" DS & M" ). DS & M is lead trial counsel
for ITC in this action, and as such is entitled by the
protective order to receive Motorola's confidential
information. DS & M also prosecutes patents for ITC
in the PTO. Motorola seeks to amend the protective
order in this case to ensure that no DS & M attorneys
who prosecute patent applications for ITC in the
patents in suit have access to Motorola's confidential
information. On September 28, 1994, both parties
argued this issue before the Court.

            II. FACTS

On October 8, 1993, Motorola filed its claim in this
present action. Docket Item (" D.I." ) 1. One week
later, on October 15, 1993, DS & M became
attorneys of record for several ITC patent
applications, " including four United States
continuation or divisional applications which take
their parentage from the patents in suit." D'Amico
Affidavit at 2-3. Prior to October 15, 1993, Kenyon
& Kenyon had been attorney of record for these
patent applications.

On March 4, 1994, a protective order was entered in
this case. D.I. 35. The protective order provided that
DS & M was to have access to Motorola's
confidential information.[FN1] The protective order did
not specifically deny access to DS & M attorneys
who prosecuted patent applications for ITC. The
Court accepts as true Mr. D'Amico's representation
that to date, none of the DS & M attorneys who have
drafted claim revisions to any of the four
continuation/divisional applications had access to
Motorola's confidential information while preparing
those revisions. D'Amico Affidavit ¶ 6.

> FN1. " Confidential Information shall be
> given, shown, disclosed, made available or
> communicated only to: ... (a) ... (i) Partners
> and associates of Dickstein, Shapiro &
> Morin, and stenographic, clerical, and/or
> paralegal employees of those attorneys
> whose functions require access to
> Confidential Information."

Motorola claims that, at the time the protective order

was entered, Motorola " reasonably believed" that Kenyon & Kenyon was the law firm responsible for prosecuting any patent applications in this case. Motorola letter at 3. Moreover, Motorola alleges that on at least two occasions, DS & M concealed the fact that they were prosecuting patents for ITC. On February 9, 1994, both parties argued the issue of whether Mr. Bramson, in-house counsel for ITC, should have access to Motorola's confidential information under the protective order. Motorola implies that DS & M should have disclosed its patent prosecution representation at that time. Later, on August 10, 1994, ITC and Motorola entered into a stipulation which enabled two lawyers from Cushman, Darby & Cushman (" CD & C" ) (co-counsel for ITC) to obtain access to confidential information under the protective order. As a condition for this access, the two CD & C attorneys agreed " to refrain from prosecution of patent applications directed to mobile digital telephone communication equipment and processes during the pendency of this case and until one year after the conclusion of this litigation." D.I. 69. Again, Motorola implies that ITC should have disclosed its patent prosecution representation at this time.

**\*2** ITC denies these allegations of improper concealment. Mr. Hoffman of DS & M states, " during the course of the parties' negotiations over Robert Bramson's access to certain Motorola documents, I believe I told counsel for Motorola that DS & M was prosecuting patents for ITC." Hoffman Affidavit at 4, ¶ 7. With respect to the CDC stipulation, Mr. Hoffman states that ITC consented to the stipulation in order to save time and expense, not because it agreed with Motorola's position. Hoffman Affidavit at 4-5, ¶ 8.[FN2] Moreover, counsel for ITC seem to have been guided at all times by their belief that no restriction exists on an outside counsel's ability to prosecute patent applications involving the technology related to the patents at issue. D'Amico Affidavit ¶ 9; Hoffman Affidavit ¶ 3; D.I. 86, at 109 (Mr. Bove stating that in his mind, there was always a clear distinction between inside and outside counsel).

> FN2. Mr. Hoffman's statement is supported by Mr. Bove's letter of August 8, 1994 to Mr. Hermann of Bayard, Handelman & Murdoch (local counsel for Motorola): " So the record is clear, we are providing this [CD & C] Stipulation at Motorola's request in order to avoid burdening the Court with

what we perceive is a improper position taken by Motorola." ITC letter, Exhibit G.

For purposes of this opinion, the Court accepts as true the representations by ITC's various attorneys that there was no intentional concealment of DS & M's dual role. Nevertheless, an important issue is now before the Court which the Court is compelled to resolve.

### III. Discussion

In a patent case, maintaining the integrity of the protective order is an especially serious concern. " Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.,* 682 F.Supp. 20 (D.Del.1988). Motorola argues that its confidential information will be inadequately protected if DS & M attorneys who have access to the confidential information also prosecute ITC patents. Motorola fears that it is impossible for DS & M attorneys to compartmentalize the knowledge gained from reviewing Motorola's confidential documents and that the confidential knowledge gained will inevitably be used in prosecuting ITC's patent applications. Such use would violate the protective order's prohibition against use of the confidential information for any use other than the present litigation.

To supports its contention that there is no prohibition against outside counsel performing these dual roles, ITC relies upon *In re Certain Amorphous Metal Alloys,* No. 337-TA-143 (U.S.I.T.C.1983)., and its progeny, *In re Certain Magnetic Switches,* 1993 ITC LEXIS 143 (U.S.I.T.C.1993). *Amorphous Metal* is factually similar to the present case. Two firms were acting as trial counsel for respondents and each firm had access to complainant's confidential information. The first firm assisted their client's in-house patent agents in preparing patent applications. The second firm did not prosecute their client's patent applications, but prosecuted patents for other clients in the same subject matter. *Amorphous Metal* at 1 n. 2. Complainant argued that these firms could not possibly respect the protective order and still zealously prosecute the patent applications.

**\*3** The International Trade Commission allowed both firms to gain access to the confidential information.

Not Reported in F.Supp.                                                                      Page 3

Not Reported in F.Supp., 1994 WL 16189689 (D.Del.)

**(Cite as: Not Reported in F.Supp.)**

The Commission based its decision upon the following factors: an in-house/outside counsel distinction, faith in the attorneys ability to respect the protective order while pursuing future patent prosecutions, the lack of a present conflict, and the burden to the clients if the attorney's were disqualified from the litigation. While *Amorphous Metal* formulates and addresses the important issues present in this dispute, the Court declines to reach the Commission's result. To some extent this is due to factual differences between *Amorphous Metals* and the present case, but to some extent the Court simply disagrees with and declines to follow the Commission's reasoning.

" [T]he goals of full disclosure of relevant information and reasonable protection against economic injury ' are in tension and each must be fairly balanced against the other." ' *Safe Flight,* 682 F.Supp. at 23 (quoting *E.I. Du Pont de Nemours & Company v. Phillips Petroleum Company,* 219 U.S.P.Q. 37 (D.Del.1982) (Latchum, J.)). After carefully weighing the relevant factors, which are discussed below, the Court holds that the DS & M attorneys who have received confidential information from Motorola under the protective order shall not prosecute any ITC patent applications relating to the broad subject matter of the patents in suit during the pendency of this case and until one year after the conclusion of the present litigation, including appeals.

A. The In-house/Outside Counsel Distinction

In their letter and at argument, Counsel for ITC present the Court with a general rule: courts split on whether inside counsel may receive confidential information while at the same time continue to prosecute patents, but outside counsel are always able to do both. In *Amorphous Metal,* the Commission gave its reasons for viewing in-house counsel differently from outside counsel:

Traditionally and in the instant investigation, in-house counsel have been excluded from protective orders not because of an inherent untrustworthiness, but because of their close ties with the corporate client. Although in-house counsel serve as legal advisors, their employment often intimately involves them in the management and operation of which they are a part. The two roles of legal advisor and corporate official will often merge; when they do, the efficacy of the protective order is greatly diminished. Furthermore, because they are in regular contact with

technical personnel, in-house counsel are in a significantly different position with regard to opportunities for inadvertent transmission of confidential information than are outside counsel.

*Amorphous Metal* at 5.

The Court declines to rest its decision upon a bright-line distinction between " in-house" and " outside" counsel. Access to confidential information " should be denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained." *U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1469 (Fed.Cir.1984). *U.S. Steel* was decided eight months after the Commission's opinion in *Amorphous Metal,* and involved a CIT decision which had relied upon a bright-line distinction to deny in-house counsel access to confidential information. The Federal Circuit held that " status as in-house counsel cannot alone create that probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access." *U.S. Steel,* 730 F.2d at 1469.

*4 The critical inquiry is whether the attorney in question is in a position that creates a high risk of inadvertent disclosure. In discussing access for in-house counsel, courts look for involvement in competitive decision making or scientific research in determining whether an individual would have a difficult time compartmentalizing his knowledge. *Carpenter Technology Corp. v. Armco, Inc.,* 132 F.R.D. 24, 27-28 (E.D.Pa.1990) (granting access to one individual and denying access to another individual based upon involvement in competitive decision making and scientific research); *U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed.Cir.1984) (discussing the need to retain outside counsel to gain access to confidential information if in-house counsel is involved in competitive decision making). These are activities which define the scope and emphasis of a client's research and development efforts. The process of prosecuting patent applications also involves decisions of scope and emphasis, as was argued by Mr. Krupka at the September 28 hearing: " They can make the claims read on new products and new directions where we project sales to be most critical. And they can forget about the ones that relate to products that are going to die." D.I. 86, at 126. [FN3]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1994 WL 16189689 (D.Del.)

(Cite as: Not Reported in F.Supp.)

FN3. *Amorphous Metal* did not address this aspect of the patent prosecution process. The Commission was satisfied that no danger existed because the outside counsel had no direct contact with the client's technical personnel. *Amorphous Metal* at 6.

Moreover, this court has implied in the past that prosecution of patents could be grounds for denying access. In *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.,* 682 F.Supp. 20 (D.Del.1988) (Roth, J.), the Court denied plaintiff's request that defendant's in-house counsel be denied access: " The defendant has represented to this Court that its in-house counsel neither conduct scientific research *nor prosecute patents.* These attorneys simply do not face [plaintiff's president's] prospect of having to distil one's own thoughts from a competitor's thoughts during the course of future ... work." [FN4] *Id.* The court also relied upon the fact that defendant's in-house counsel would be segregated to avoid " the possibility of conscious or unconscious abuse of confidential information." *Id.* at 23.

FN4. The Court had previously denied Plaintiff's request that Plaintiff's President be granted access because of the President's heavy involvement in research and decision making. *Safe Flight,* 682 F.Supp. at 22.

There can be no question that DS & M attorneys who receive confidential information and then later prosecute patents will have to distil and compartmentalize the confidential knowledge they have gained. The inquiry must shift, therefore, to the dangers of inadvertent disclosure and the possible protections that may exist against such disclosure.

### B. Inadvertent Disclosure

DS & M attorneys are prosecuting patents that are directly at issue in the present litigation. DS & M does not deny that it is theoretically possible for them to abuse the confidential information received, but argue that they understand their ethical duty and will act in conformance with it. The Commission adopted this position in *In re Certain Amorphous Metal Alloys,* No. 337-TA-143, at 3 (U.S.I.T.C.1983): " [I]n the event that a conflict is posed as a result of knowledge gained under a protective order, we would expect that counsel would refer the matter to other counsel. We therefore believe that it is appropriate to presume that respondents' counsel will respect the

integrity of the confidential information released under a protective order."

*5 The Court does not question the ethics of the DS & M attorneys, nor does it doubt that DS & M attorneys would respond appropriately if a conflict were " posed" to them. The issue is not deliberate disclosure, however, but *inadvertent* disclosure. In *Safe Flight,* the Court denied Plaintiff's President access to defendant's confidential information because of the dangers posed by inadvertent disclosure. " Accepting that [plaintiff's president] is a man of great moral fiber, we nonetheless question his human ability during future years of research to separate the applications he has extrapolated from [defendant's] documents from those he develops from his own ideas." *Safe Flight,* 682 F.Supp. at 22.

" Inadvertence, like the thief-in-the-night, is no respecter of its victims. Inadvertent or accidental disclosure may or may not be predictable. To the extent that it may be predicted, and cannot be adequately forestalled in the design of a protective order, it may be a factor in the access decision." *U.S. Steel Corp.,* 730 F.2d at 1468. DS & M is currently prosecuting applications relating to the very patents at issue in this litigation. Attorneys who were to view Motorola's voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped " untainted" , another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the DS & M attorneys may be.

### C. Hardship to Client

Courts have also considered the hardship to the client if counsel is disqualified or restricted in some manner. *See U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1469 (Fed.Cir.1984) (" forcing USS to rely on newly retained counsel would create an extreme and unnecessary hardship" ); *Safe Flight Instrument Corp. v. Sundstrand Data Control,* 682 F.Supp. 20, 22 (D.Del.1988) (denying access to Plaintiff's president would not unduly hamper plaintiff ability to assess litigation); *In re Certain Amorphous Metal Alloys,* No. 337-TA-143, at 3 (U.S.I.T.C.1983) (" disqualification imposes too great a burden on respondents in this case" ). ITC has urged the Court to consider the cost it will incur if DS

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                              Page 5
Not Reported in F.Supp., 1994 WL 16189689 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

& M's representation is limited in any way. *See* D.I. 86, at 110 (representations by Mr. Bove regarding ITC's concern regarding costs). ITC's hardship is certainly a factor to be balanced against Motorola's need to protect its confidential information, but it is just one factor.

It is important to note that DS & M has not been prosecuting these particular ITC patent applications for a long period of time. This is not a situation where a client decided that it would be efficient to retain trial counsel who had prosecuted the particular patent in the past. In fact, DS & M did not become attorney of record for these particular patent applications until one week after the filing of Motorola's suit. This creates the appearance of a situation where a client felt it would be efficient to have trial counsel prosecute the patent application in the future. This creates far too great a risk that any efficiency will be to some extent the result of inadvertent use of confidential information.

*6 This conflict was created by ITC after the initiation of litigation, and could have been avoided altogether by ITC. Under these circumstances, the Court will take hardship into account in fashioning its remedy, but does not consider the hardship severe enough to deny relief altogether.

### D. Timing of the Remedy

In *Amorphous Metal,* the Commission recognized that a danger existed, but decided that there was not a present conflict, only a mere possibility of future conflict. *Amorphous Metals* at 8. As a result of this conclusion, the Commission chose not to deny access, but rather indicated that it would investigate in the future if the complainant could " show that subject matter directly related to the confidential information appeared in a patent application after release under a protective order." *Amorphous Metal* at 6 n. 13. In effect, the Commission promised to remedy the injury after it occurred, while complainant was asking the Commission to prevent the injury from occurring. Given the voluminous information supplied to date by Motorola under the protective order, the ongoing dual role of the DS & M attorneys, and the need to closely guard confidential information in the patent area, this Court believes a conflict exists at the present time and will act to prevent the possibility of injury to Motorola.

### E. Scope of the Remedy

All DS & M attorneys or employees who have received confidential information from Motorola under the protective order in this case shall not prosecute any patent application for ITC relating to the broad subject matter of the patents in suit during the pendency of this case and for one year after the conclusion of this litigation, including appeals.

This remedy is broad enough to protect Motorola's confidential information, yet seeks to minimize the hardship to both ITC and DS & M. The prohibition applies only to ITC patent applications that are the subject matter of this litigation, not all ITC patent applications. The prohibition applies only to patent prosecutions for ITC, not for all other clients.[FN5] Finally, there is a time limit on the prohibition similar to the limit requested by Motorola for the CDC attorneys. *See* D.I. 69.

> FN5. The Court presumes that DS & M's ethical duty to its client, ITC, would prevent DS & M from prosecuting patent applications for other clients that are of similar subject matter as ITC's patents in this case. Therefore, Motorola's confidential information should not be threatened by any representation of a third party which DS & M may undertake.

DS & M has represented that to date, only Mr. D'Amico has worked on patent application matters and then subsequently reviewed confidential information. *See* D'Amico Affidavit. Because he has had access to Motorola's confidential information, he is subject to the Court's prohibition. Going forward, DS & M shall set up a Chinese Wall to separate the ITC patent application attorneys from the Motorola litigation attorneys who have received confidential information. This shall ensure that, with the exception of Mr. D'Amico, ITC shall continue to receive the same services from the same DS & M attorneys that ITC has received in the past.

### ORDER

NOW, THEREFORE, for all the reasons stated by the Court in its Memorandum Opinion of December 19, 1994, IT IS ORDERED that:

*7 1. The protective order, Docket Item 35, shall be amended to provide that any Dickstein, Shapiro & Morin (" DS & M " ) attorneys who have received

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 6
Not Reported in F.Supp., 1994 WL 16189689 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

confidential information from Motorola under the
protective order shall not prosecute any InterDigital
Technology Corporation patent applications relating
to the broad subject matter of the patents in suit
during the pendency of this case and until one year
after the conclusion of the present litigation,
including appeals.

2. DS & M shall set up a Chinese wall to ensure that
the Court's order is effectively enforced.

D.Del.,1994.
Motorola, Inc. v. Interdigital Technology Corp.
Not Reported in F.Supp., 1994 WL 16189689
(D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit I

Westlaw.

Slip Copy                                                              Page 1

Slip Copy, 2006 WL 3741891 (E.D.Tex.)

**(Cite as: Slip Copy)**

C
Visto Corp. v. Seven Networks, Inc.
E.D.Tex.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D. Texas,Marshall
Division.
VISTO CORPORATION
v.
SEVEN NETWORKS, INC.
No. 2:03-CV-333-TJW.

Dec. 19, 2006.

Samuel Franklin Baxter, Attorney at Law, Marshall,
TX, Gary Scott Kitchen, Theodore Stevenson, III,
Kristi Jean Thomas, McKool Smith, Dallas, TX,
Greg Travis Warder, Imran A. Khaliq, James Bruce
McCubbrey, Michelle Gillette, Robert D. Becker,
Ronald S. Katz, Shawn G. Hansen, Manatt Phelps &
Phillips LLP, Palo Alto, CA, for Visto Corporation.
Henry Charles Bunsow, David L. Bilsker, Howrey
Simon Arnold & White, Chris Kao, Kirkland & Ellis,
Dean A. Morehous, Jr., Thelen Reid & Priest, Korula
T. Cherian, Howrey LLP, Thomas C. Mavrakakis,
Winston & Strawn, San Francisco, CA, Sidney
Calvin Capshaw, III, Elizabeth L. Derieux, Brown
McCarroll, Longview, TX, Ahmed Kasem, Robert E.
Camors, Jr., Robert E. Krebs, Thelen Reid & Priest
LLP, San Jose, CA, Andrew Y. Piatnicia, James
Charles Pistorino, Jason T. Anderson, Howrey LLP,
East Palo Alto, CA, Christopher L. Kelley, Daniel T.
Shvodian, James F. Valentine, Louis L. Campbell,
Matthew E. Hocker, Howrey Simon Arnold & White,
Menlo Park, CA, for Seven Networks, Inc.

*MEMORANDUM OPINION AND ORDER*
T. JOHN WARD, United States District Judge.

**1. Introduction.**

*1 Several post-trial motions are pending in this
patent infringement case. For the reasons expressed
in this opinion, the court grants in part and denies in
part Seven's renewed motion for judgment as a matter
of law. In light of the finding of willful infringement,
the court declares the case exceptional and awards
enhanced damages. The court denies the motion for a
new trial, rejects the allegations of inequitable
conduct, and issues a permanent injunction in favor

of the plaintiff in this case. The court further finds
that Visto's attorneys violated the Protective Order in
this case and then attempted to conceal those
violations. Under these circumstances, the court stays
the injunction pending appeal.

**2. Background.**

The parties to this case are competitors in the mobile
email market. After a hotly contested trial, a jury
found Seven liable for willful patent infringement of
three United States patents related to data
synchronization methods and systems. The jury
awarded damages and rejected all of the defendant's
claims of patent invalidity. Thereafter, the court
conducted a bench trial on the allegations of
inequitable conduct, and the case is now before the
court on post-trial motions. Each of these motions is
discussed below.

**3. Seven's renewed motion for judgment as a
matter of law/motion for new trial.**

After the verdict, Seven filed a renewed motion for
judgment as a matter of law and a motion for new
trial. That motion (# 385) is granted in part and
denied in part. The court grants the motion insofar as
it is related to claim 11 of the 192 patent. There is
insufficient evidence to support a verdict that the
accused products satisfy the limitation of "
comprising one of an HTTP port and an SSL port."
In a supplemental claim construction order, the court
construed the term " HTTP port and SSL port" to
mean " any port that is used to transfer information or
communicate using Hyper Text Transfer Protocol
(HTTP) and any port that is used to transfer
information or communicate using Secure Sockets
Layer (SSL) protocol ." *See* Order Dkt. # 340.
Despite Visto's arguments to the contrary, the
evidence in this case is undisputed that the accused
products do not use the HTTP or SSL protocols. In
the words of Visto's expert, the term protocol means
" the exact formatting, the syntax, and the semantics
of the connection that's being made." (Tr. Transcript
April 25, 2006, at 29:14-30:3.). Visto's expert
conceded that the accused products use Seven's own
protocol, rather than HTTP or SSL. Claim 11
requires a port that is used to transfer information or
communicate using specific protocols. Viewing the
evidence in the light most favorable to the jury's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                            Page 2

Slip Copy, 2006 WL 3741891 (E.D.Tex.)

**(Cite as: Slip Copy)**

verdict, Visto has not met its burden to demonstrate infringement of claim 11 of the 192 patent. Seven's motion for judgment as a matter of law on this point is granted.

The court denies the balance of the motion for judgment as a matter of law. Under the court's claim construction, sufficient evidence exists to support the jury's finding of infringement of the " independently modifiable copy" limitation. The jury could have rationally found, given Visto's expert's testimony, that a copy existed and only the format had changed. Testimony elicited on cross-examination from Seven's expert also supports the jury's verdict. In addition, ample evidence supports the jury's determination that the accused products contain workspace elements and use a global server under the court's claim constructions of those terms. The court accordingly rejects the defendant's remaining arguments concerning non-infringement of the asserted claims.

*2 Seven also moves for judgment as a matter of law that the patents are invalid. These arguments are centered on Lotus Notes. Seven has not shown that judgment as a matter of law is appropriate. The patents-in-suit are presumed valid, and Seven bore the burden of proof at trial to demonstrate anticipation by clear and convincing evidence. To overcome the jury's verdict, Seven must establish that no reasonable jury could have failed to find invalidity. Fed. R. Civ. P. 50. The court agrees with Visto that the jury could have failed to credit the fact and expert testimony concerning the capabilities of Lotus Notes and the installations of that software. Moreover, the record includes conflicting expert testimony concerning whether Lotus Notes met the translation limitation of the 708 patent, the global server limitation of the 221 patent, and, at a minimum, the smart phone limitation of the 192 patent. The court resolves these conflicts in favor of the verdict and denies Seven's motion for judgment as a matter of law on these points.

Seven's motion asserts several additional grounds for judgment as a matter of law and/or new trial. The court rejects all of these arguments. As to damages, the jury was properly instructed as to the *Georgia-Pacific* factors, and it had expert testimony from which it could have concluded that a very high royalty rate was appropriate in this case. On the question of willfulness, contrary to Seven's pre-trial stipulation, Mr. Nguyen testified that Seven did seek

an opinion of counsel and was relying on it in this case. The court remains persuaded that the rulings it made at trial on this point were proper. A new trial and/or judgment as a matter of law is not required because of counsel's argument or any unfair prejudice flowing from this testimony. The jury had sufficient evidence from which it could have found willful infringement.

Finally, Seven filed two supplemental motions for judgment as a matter of law or new trial. These motions focus on the reexamination proceedings involving the patents-in-suit. The court has carefully reviewed these motions and denies Seven's renewed motion for judgment as a matter of law or, in the alternative, supplemental motion for new trial (# 411). The court also denies Seven's second renewed motion for judgment as a matter of law, and for other relief (# 418). The court is not persuaded that the USPTO's grant of a second reexamination for the 192 patent to consider the collective set of Lotus Notes references entitles Seven to judgment as a matter of law or a new trial. Likewise, the court is not persuaded that the USPTO's grant of a reexamination of the 221 patent entitles Seven to judgment as a matter of law or a new trial.

### 4. Inequitable conduct.

The court now turns to the question of inequitable conduct. Seven contends that the inventors and/or prosecuting attorneys failed to disclose material information concerning Lotus Notes to the USPTO. Inequitable conduct requires a breach of the duty of candor that is both material and committed with an intent to deceive the USPTO. *Li Second Family Ltd. P'ship v. Toshiba Corp.,* 231 F.3d 1373, 1378 (Fed.Cir.2000). Breach of the duty of candor may include submission of false material information or failure to disclose material information. *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 872 (Fed.Cir.1988). As a general rule, however, there is no duty to conduct a prior art search, and thus there is no duty to disclose art of which an applicant could have been aware. *Frazier v. Roessel Cine Photo Tech., Inc.,* 417 F.3d 1230, 1238 (Fed.Cir.2005); *FMC Corp. v. Hennessy Indus., Inc.,* 836 F.2d 521, 526 n. 6 (Fed.Cir.1987).

*3 The court rejects Seven's defense of inequitable conduct. The court has considered the arguments made by Seven concerning whether the inventors

Slip Copy, 2006 WL 3741891 (E.D.Tex.)

**(Cite as: Slip Copy)**

committed inequitable conduct in the prosecution of the original applications. Seven's argument is essentially that the inventors should have been aware of potentially invalidating applications of Lotus Notes and should have disclosed those applications to the USPTO at the time of the original prosecution. Seven has not persuaded the court that Visto's inventors knew about the materiality of the prior art or withheld any art with the intent to deceive the USPTO. A finding of inequitable conduct is not warranted.

The court has also considered the arguments made with respect to the prosecution of the reexamination proceedings. Seven has not shown by clear and convincing evidence that the prosecuting attorneys intended to deceive the USPTO during the reexamination proceedings. The primary references at issue are the Grous and Brown references. Grous is a magazine article that illustrates InterNotes. Brown is a reference manual that touts itself as the Official Guide to Lotus Notes. It is not disputed, however, that the USPTO was apprised of Lotus Notes during the reexamination and that Visto actually disclosed a large number of materials published by Lotus Corporation to the USPTO. After considering all of the evidence, and given the timing of the conclusion of the reexamination proceedings, the court cannot find, by clear and convincing evidence, that Visto's attorneys intended to deceive the USPTO by failing to disclose Grous or Brown, or any of the other cited pieces of art. The court accordingly rejects Seven's defense of inequitable conduct. Visto's motion to strike the supplemental report of Dr. Goldberg and portions of the pre-hearing brief (# 423) is denied.

### 5. Visto's motion for entry of judgment on the jury verdict and for enhanced damages.

The court grants Visto's motion for entry of judgment on the jury verdict and for enhanced damages (# 394). In light of the finding of willful infringement, the court declares the case exceptional and will enhance damages and award attorneys' fees. *SRI Int'l., Inc. v. Advanced Technology Labs, Inc.,* 127 F.3d 1452, 1468 (Fed.Cir.1997). The court awards double damages and, in doing so, has considered the factors set forth in *Read Corp. v. Portec, Inc.,* 970 F.2d 816 (Fed.Cir.1992). These factors include (1) whether there is evidence of copying; (2) whether there was a good-faith belief of non-infringement; (3) litigation behavior; (4) the defendant's size and financial condition; (5) the closeness of the case; (6)

the duration of the misconduct; (7) the existence of remedial action; (8) the defendant's motivation; and (9) whether the defendant concealed its conduct. *Id.* at 827-28. Although the parties are competitors and the defendant had a motivation to succeed in the market at the expense of the plaintiff, the issues in this case were close and there is some evidence to support the defendant's belief of non-infringement. The asserted claims of the 192 patent did not even exist until shortly before trial, and the defendant's invalidity defense asserted against the other two patents was strong. The strength of this defense was confirmed by Visto's own expert, Mr. Beckhardt, who gave very damaging testimony concerning anticipation by Lotus Notes. In all, under the totality of the circumstances, the court concludes that an enhancement of double damages is appropriate.

### 6. Visto's motion for permanent injunction.

*4 The court grants Visto's motion for permanent injunction (# 379). In *eBay v. MercExchange,* the Supreme Court held that the traditional four-factor test for permanent injunctive relief applies to patent cases. *eBay Inc. v. MercExchange, LLC,* --- U.S. ----, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006). The Court recited the test as follows:
According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* Bearing these factors in mind, the court now turns to the facts of this case to assess the propriety of permanent injunctive relief.

### A. Irreparable injury.

Visto has demonstrated irreparable injury. The parties to this case are direct competitors, and this fact weighs heavily in the court's analysis. Intellectual property enjoys its highest value when it is asserted against a direct competitor in the plaintiff's market. In *Tivo v. EchoStar Communications Corp.,* 446 F.Supp.2d 664, 669 (E.D.Tex.2006), Judge Folsom found irreparable harm because " [t]he availability of

Slip Copy                                                                    Page 4
Slip Copy, 2006 WL 3741891 (E.D.Tex.)
(Cite as: Slip Copy)

the infringing products leads to loss of market share for Plaintiff's products." Seven's arguments to the contrary, focusing on the large market share of Research in Motion, are not persuasive. The court finds that Visto will suffer irreparable injury absent an injunction.

### B. Inadequacy of legal remedies.

Visto has also demonstrated the inadequacy of legal remedies. It is true that the jury awarded a large damages verdict. Those damages, however, are designed to compensate Visto fairly and reasonably for its past injury. Under the jury's verdict, Seven is willfully using its competitor's intellectual property and a threat of continued infringement exists under this record. Although future damages may compensate Visto for an *approximate* loss, that does not make them adequate in the sense that they are a suitable proxy for injunctive relief. What makes legal remedies inadequate under the circumstances of this case is the inability to calculate the plaintiff's future losses with precision. An injunction against the continued use of the plaintiff's intellectual property is the proper remedy to prevent future infringement.

### C. Balancing of hardships.

The court has considered the balance of hardships. The court agrees with Visto that if no permanent injunction is entered, Visto will lose goodwill, potential revenue, and the very right to exclude that is the essence of the intellectual property at issue. Although Seven will be harmed by an injunction, the balance of hardships favors Visto in this case.

### D. Public interest.

*5 The question presented by this factor is whether the public interest would be disserved by an injunction. There has been no persuasive showing that the public interest would be disserved by an injunction. In fact, the public interest would be served by issuing an injunction to protect the patent rights at issue.

After considering the traditional equitable factors, the court concludes that a permanent injunction is proper in this case. The plaintiff's motion for entry of a permanent injunction (# 379) is therefore granted. Visto's motion to strike the Thexton declaration (# 440) is denied.

### 7. Protective Order issues.

Seven argues that Visto's attorneys violated the Protective Order in this case. Throughout this case and even after the bench trial on inequitable conduct, Seven has urged the court to impose various remedies, from the dismissal of the lawsuit to the denial of any injunctive relief. The court has carefully evaluated the evidence presented to it and finds that Visto's attorneys violated the court's Protective Order and that a stay of the injunction pending appeal is the appropriate remedy.

On April 2, 2004, the court issued a Protective Order in this case to guard against the improper use and dissemination of confidential information produced in discovery. The Protective Order explicitly states:
17. Limitations On Use and Disclosure. Except to the extent expressly authorized in this Order, *Protected Information shall not be used or disclosed for any purpose other than the preparation and trial of this action* and any appeal therefrom....

(emphasis added). The purpose for this provision is plain-it is to allow discovery in the case to move forward and to prevent a party from using its opponent's confidential technical and financial information for purposes other than the prosecution or defense of the lawsuit.

Notwithstanding the general prohibition on use and disclosure of confidential information, the parties to this case recognized that certain activities present an unacceptable risk of the inadvertent use or disclosure of sensitive information. To this end, the Protective Order contains a prosecution bar. The relevant language provides:
15. Individual attorneys who are outside counsel to whom information that is designated CONFIDENTIAL-ATTORNEYS' EYES ONLY or CONFIDENTIAL-ATTORNEYS' EYES ONLY-COMPUTER SOURCE CODE from any adverse party in this litigation has been disclosed, *shall not draft, file, prosecute, or assist in the drafting, filing, or prosecution of any new or currently pending patent applications that bear a reasonable relationship to patents which are the subject matter of this litigation* on behalf of any party to this litigation or any party affiliated with any party to this litigation until eighteen (18) months after the date of the last disclosure to such individual attorney of CONFIDENTIAL-ATTORNEYS' EYES ONLY or CONFIDENTIAL-ATTORNEYS' EYES ONLY-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

COMPUTER SOURCE CODE from any adverse party in this litigation.

*6 (emphasis added).

During the prosecution of this case, Mr. Greg Warder (" Warder" ), one of Visto's outside counsel, received information designated Attorneys' Eyes Only under the Protective Order. At the relevant times, Warder was employed by Manatt, Phelps & Phillips, LLP (" Manatt" ). After he received Attorneys' Eyes Only information, Warder participated in certain patent prosecution activities. Manatt assigned him to prosecute a portion of the continuation application that matured into the 679 patent.<u>FN1</u> When Seven learned of Warder's prosecution activities, it immediately notified Seven of its belief that a possible violation of the Protective Order had occurred. Visto did not dispute that Warder's prosecution of the continuation application violated the Protective Order. Visto maintained, however, that Warder's participation in the prosecution of the continuation application was inadvertent.

> <u>FN1.</u> Visto did not assert the 679 patent in this case.

Shortly thereafter, on May 11, 2005, Seven filed an Emergency Motion for Protective Order and Application for an Order to Show Cause arising out of Warder's prosecution of the continuation application. In that motion, Seven reiterated its position that Visto's outside counsel had violated the Protective Order because Warder had viewed Seven's Attorneys' Eyes Only information and had participated in the prosecution of the continuation application. The parties resolved Seven's motion by stipulating that " Mr. Greg Warder of the Manatt firm will not prosecute patents of the kind specified in the protective order for the period of time specified in the protective order, and the provisions of the protective order remain in place." *See* Dkt. # 163, Agreed Motion to Withdraw Certain Discovery Motions, filed May 12, 2005.

After the stipulation, Seven learned that Warder's activities before the USPTO extended beyond the prosecution of the continuation application. He had been participating in the ongoing reexamination proceedings involving the 192 patent. Visto had not previously disclosed this to Seven. Seven learned this when Visto produced reexamination documents signed by Warder and tendered to the USPTO. All of

these documents pre-dated the parties' stipulation. After the parties' stipulation, however, Warder stopped signing documents submitted to the USPTO in the reexamination. The Manatt firm transferred responsibility for this task to Ms. Pamela Merkadeau (" Merkadeau" ).

Seven attempted to raise Warder's involvement in the reexamination proceedings with the court. This occurred in the context of another motion related to the Protective Order.<u>FN2</u> By way of background, Seven learned through deposition testimony that a lawyer on Visto's trial team, Michelle Gillette, disclosed certain expert reports covered by the Protective Order to officers of Visto. These persons had not previously signed the required Protective Order undertakings. As the briefing unfolded, the Manatt firm claimed the unilateral right to designate and redact certain portions of the documents before showing them to its witnesses. Although the issue before the court primarily concerned the disclosure of Seven's financial information, certain aspects of the briefing specifically addressed Warder's prosecution of the 192 reexamination. In particular, Seven objected to Warder's participation in the 192 patent reexamination proceedings.<u>FN3</u> In a surreply brief, Visto responded that " Seven brings an allegation of an additional violation of the Protective Order into this matter without justification. In fact, *the parties resolved the referenced issue with a stipulation and order.*" (emphasis added).<u>FN4</u>

> <u>FN2.</u> *See* Dkt. # 206, Seven's Motion for a Finding of Contempt, Application for an Order to Show Cause, and Request for Other Relief for Violation of the Protective Order.

> <u>FN3.</u> *See* Seven's Reply Memorandum in Support of its Motion for a Finding of Contempt, Application for an Order to Show Cause, and Request for Other Relief for Violation of the Protective Order, at 5.

> <u>FN4.</u> *See* Visto's Surreply to Seven Network's Motion for a Finding of Contempt, Application for an Order to Show Cause, and Request for Other Relief for Violation of the Protective Order, at 7.

*7 During the bench trial on Seven's defense of inequitable conduct, it became clear that Warder had substantively participated in the prosecution of the reexamination even after the parties' May 12th

stipulation. Warder's involvement was obscured, however, by Manatt's instructions to Merkadeau to sign documents submitted to the USPTO. Seven challenges Warder's conduct as a violation of the Protective Order issued in this case. The court agrees with Seven that the prosecution bar covers reexamination proceedings and that Visto's outside counsel violated the provisions of the Protective Order.

Visto's primary argument is that a reexamination proceeding is not a new or currently pending patent application and is therefore not covered by the prosecution bar. According to Visto, the prosecution bar would preclude an attorney's participation in new or continuation applications, but not reexamination proceedings. This court has squarely rejected arguments to the contrary, made in the context of a prosecution bar contained in a Protective Order. *See Microunity Systems Engineering, Inc. v. Dell, Inc.,* 2:04-CV-120 (Order, Dkt.# 156) (" The Court finds that the Protective Order entered in this case is clear. The Protective Order includes a Prosecution Bar that applies equally to reexaminations as it does to new applications filed with the USPTO." ).[FN5]

> FN5. Unlike this case, the attorneys for Microunity approached the court for guidance *before* becoming involved in the reexamination.

In the context of the prosecution bar, Visto's argument that a reexamination proceeding is different from the prosecution of a new application is not persuasive. Throughout the reexamination proceedings, Visto and the examiner consistently referred to Visto as the applicant, within the plain language of the Protective Order. The Protective Order provides that outside counsel " shall not draft, file, prosecute, or assist in the drafting, filing, or *prosecution of any new or currently pending patent applications* that bear a reasonable relationship to patents which are the subject matter of this litigation ..." Protective Order, ¶ 15 (emphasis added). In the court's view, under the language of the Protective Order, participation in the reexamination is the prosecution of a patent application that is not only " reasonably related" to the patents-in-suit, it is a part of the prosecution history of the very patent asserted in the case. The purpose of the prosecution bar is to prevent outside counsel from using, even inadvertently, confidential information obtained in

the lawsuit for purposes outside the lawsuit (*e.g.* drafting claims during patent prosecution). This is true even if the result of the reexamination is narrower claim language. Accordingly, Warder violated the Protective Order by participating in the reexamination of the 192 patent and by continuing to do so after the parties' stipulation. To make matters worse, Manatt concealed that violation from Seven to evade detection of that conduct.

The next question is one of remedy. The challenged conduct does not rise to inequitable conduct before the USPTO, and the court will not declare the patent unenforceable. It must be remembered that the effect of the reexamination was to *narrow* certain claim language. The jury found that the claims as narrowed still covered the accused systems and methods. A holding that the patent is unenforceable would unnecessarily penalize the client for its attorneys' conduct.

*8 Nevertheless, the violation of the Protective Order causes the court to exercise its equitable discretion in a manner adverse to Visto. As a result, although the court has granted an injunction in Visto's favor, the court will stay that injunction pending the disposition of any appeal. Resolution of this issue renders it unnecessary to determine the merits of Seven's other requests for a stay of the injunction.

In addition to a stay of the injunction, the court will also bar Ms. Gillette and Mr. Warder from further receipt of confidential information in this case or any other case on the court's docket involving Visto Corporation. With respect to Ms. Gillette, the court finds that she unilaterally redacted documents that had been marked both Attorney's Eyes Only and Confidential pursuant to the Protective Order and showed those documents to Visto personnel, including Mr. Jean Tripier, Visto's Chief Operating Officer, and Mr. Tim Robbins, Visto's General Counsel. These disclosures were not in accordance with the terms of the Protective Order. The individuals had not signed the required undertakings before receiving the confidential information. In addition, disclosure to Mr. Robbins was made without advance notice. To compound matters, after Seven objected to the disclosures, Visto produced undertakings signed by the witnesses, but the witnesses did not *date* their signatures. Although Visto urges that it operated in good faith to redact Seven's confidential information, a lawyer operating under the terms of a Protective Order issued by this

Slip Copy                                                                                                    Page 7

Slip Copy, 2006 WL 3741891 (E.D.Tex.)

**(Cite as: Slip Copy)**

court has no right to resort to self-help when he or she views the provisions of that order to be burdensome or onerous. The proper remedy is to approach the court. The court will therefore bar Ms. Gillette from receipt of any further information under the Protective Order. With respect to Mr. Warder, the briefing suggests he is no longer with the Manatt firm; however, this prohibition will extend to him should he become involved in future litigation in this court on behalf of Visto. Further relief on Seven's motion for a finding of contempt, application for an order to show cause, and request for other relief (# 206) is denied. Likewise, further relief on Seven's emergency motion for protective order and to compel (# 442) is denied.

E.D.Tex.,2006.

Visto Corp. v. Seven Networks, Inc.

Slip Copy, 2006 WL 3741891 (E.D.Tex.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.