## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VENETEC INTERNATIONAL, INC.    )
    )
    Plaintiff,    )
    )    C.A. No. 07-57 (***)
    v.    )
    )
NEXUS MEDICAL, LLC    )
    )
    Defendant.    )

### VENETEC'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS PENDING REEXAMINATION OF U.S. PATENT 6,447,485 BY THE U.S. PATENT AND TRADEMARK OFFICE

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

*Attorneys for Plaintiff*
  *Venetec International, Inc.*

Of Counsel:

Steven C. Cherny
Clement J. Naples
Hassen A. Sayeed
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834
(212) 906-1200

Maximilian A. Grant
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.
Washington, DC 20004
(202) 637-2200

July 16, 2007

# TABLE OF CONTENTS

**PAGE**

NATURE AND STAGE OF THE PROCEEDING                1

SUMMARY OF ARGUMENT                               1

STATEMENT OF FACTS                                2

ARGUMENT                                          4

I.    A Stay of Litigation Pending Reexamination Is Not Appropriate
      In The Absence Of Extraordinary Circumstances        4

II.   Nexus Has Not Met Its Burden To Establish "Extraordinary
      Circumstances" Sufficient To Impose A Stay           6

      1.   Venetec Will Be Prejudiced By The Delay Caused
           By A Stay                                        6

      2.   The Litigation Will Be Complicated By A Stay,
           Not Simplified                                   8

      3.   The Status Of Discovery Weighs In Favor Of
           Denying A Stay                                   11

CONCLUSION                                         12

# TABLE OF AUTHORITIES

CASES

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.,*
    725 F.2d 1350 (Fed. Cir. 1984)      11

*Anascape, Ltd. v. Microsoft Corp.,*
    475 F. Supp. 2d 612 (E.D. Tex. 2007)      11

*ArthroCare Corp. v. Smith & Nephew, Inc.,*
    No. 01-504-SLR, at 2 (D. Del. Nov. 27, 2002)      4, 5

*Automated Precision Inc. et al v. SpatialMetrix Corp.,*
    No. 98-509-JJF (D. Del. Jan. 20, 1999)      5

*Broad. Innovation, LLC v. Charter Commc'ns, Inc.,*
    No. 03-CV-2223-ABF-BNB, 2006 WL 1897165      8

*Centillon Data Sys., LLC v. Avolent, Inc.,*
    No. 05-712-JJF (D. Del. Apr. 24, 2006)      5

*Davol, Inc. v. Allegiance Healthcare Corp.,*
    No. 98-608-JJF (D. Del. Sept. 30, 1999)      5

*E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.,*
    711 F. Supp. 1205 (D. Del. 1989)      7

*Enprotech Corp. v. Autotech Corp.,*
    No. 88-C-4853, 1990 U.S. Dist. LEXIS 2926 (N.D. Ill. Mar. 15, 1990)      5

*Ethicon, Inc. v. Quigg,*
    849 F.2d 1422 (Fed. Cir. 1988)      4

*Gioello Enter. Ltd. v. Mattel, Inc.,*
    No. C.A. 99-375 GMS, 2001 WL 125340 (D. Del. 2001)      7, 8

*Mars, Inc. v. JCM Am. Corp.,*
    No. 05-3165, 2006 U.S. Dist. LEXIS 84565 (D. N.J. Nov. 21, 2006)      6

*Middleton, Inc. v. Minn. Mining and Mfg. Co.,*
    No. 4:03-CV-40493, 2004 WL 1968669 (S.D. Iowa Aug. 24, 2004)      7

*NTP, Inc. v. Research In Motion, Ltd.,*
    397 F.Supp.2d 785 (E.D. Va. 2005)      5, 7

*Output Tech. Corp. v. Dataproducts Corp.,*
    No. C90-1782D, 1991 U.S. Dist. LEXIS 20168 (W.D. Wash. Nov. 25, 1991)    5

*St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.,*
    No. 01-557-JJF, 2003 WL 25283239    5

*St. Gobain Performance Plastics Co. v. Advanced Flexible Composites, Inc.,*
    436 F. Supp. 2d 252 (D. Mass. 2006)    7

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.,*
    707 F. Supp. 1429 (D. Del. 1989)    11

**STATUTES**

35 U.S.C. § 121 (2007)    2, 9

35 U.S.C. § 315 (2007)    7

**OTHER AUTHORITIES**

Manual of Patent Examining Procedure § 201.06 (8th ed. 2006)    9, 10

U.S. CONST., art. I, § 8    6

## NATURE AND STAGE OF THE PROCEEDING

On January 29, 2007, Plaintiff Venetec International, Inc. ("Venetec") sued Defendant Nexus Medical, LLC ("Nexus") for infringement of two U.S. Patents, Nos. 6,213,979 (the "'979 patent") and 6,447,485 (the "'485 patent"). On June 25, 2007 – five months into this case and after reviewing Venetec's detailed infringement contentions – Nexus moved to stay this case based on its just-filed papers in the U.S. Patent and Trademark Office ("PTO") requesting reexamination of one of the two patents-in-suit, the 485 patent.

## SUMMARY OF ARGUMENT

Stays pending reexaminations are not the norm in this district. They are the exception and permitted only in "extraordinary circumstances." Nexus' request for a stay of this lawsuit based on the mere submission of a *request* for reexamination of one of two patents-in-suit does not meet that standard. Ignoring the multi-year delay arising from a stay, Nexus asks that the entire case be stayed, claiming that "[i]t is highly likely that the PTO will find invalid or substantially alter the claims of Venetec's '485 patent … [and] that any claims in this case will have to be dismissed as moot." (D.I. 41 at 1.)

In addition to the fact that Nexus' reexamination request is directed at only one of the two patents-in-suit, Nexus' argument ignores another key fact: ***three of the four*** *prior art* ***references relied on by Nexus as the basis for reexamination have already been considered by*** ***the PTO***. Thus, the PTO has already seen and rejected most of Nexus' claimed invalidating prior art in deciding that the '485 invention was patentable.

In addition, Venetec has received a Notice of Allowance of a new patent. The new patent is a continuation of the "other" patent-in-suit, the '697 patent. The PTO has advised that the new patent will issue on July 24, 2007, as U.S. Patent No. 7,247,150 (the "'150 patent") (*See* Ex. A, Issue Notification.) Shortly thereafter, Venetec will amend its Complaint to assert

1

infringement of the '150 patent. **_All four of the prior art references Nexus cites in its reexamination request have been considered by the PTO in the related 150 patent._** The '150 patent action will go forward and the most efficient and cost effective way to proceed is for discovery on Venetec's new patent and patents presently at issue to go forward together.[1]

Staying Venetec's infringement suit for years – on average at least two-and-a-half years for the reexamination proceedings alone, not including appeals – would greatly prejudice Venetec. Given the lack of merit to Nexus' invalidity claims, as evidenced by the issuance of the '150 patent, that prejudice to Venetec would substantially outweigh any potential benefit from such a stay.

Nexus' motion fails to establish the "extraordinary circumstances" necessary for the grant of a stay. Its motion should be denied.

## STATEMENT OF FACTS

The '979 patent issued on April 10, 2001 to Plaintiff's founder, Dr. Steven Bierman, and was assigned to Venetec. The '485 patent issued on September 10, 2002, and was also assigned to Venetec. The '485 is a method patent and the '979 is an apparatus patent. Because the '485 patent issued out of a "divisional application" from the "parent" '979 application, the PTO has determined that the inventions claimed in the '485 method patent and the '979 apparatus patent are "independent and distinct." _See_ 35 U.S.C. § 121 (2007) ("_If two or more independent and distinct inventions_ are claimed in one application, the [PTO] Director may require the application to be restricted to one of the inventions.") (emphasis added).

---

[1] Although Nexus' brief spends time rationalizing its decision to seek reexamination on only one of the two patents-in-suit, (_see, e.g.,_ D.I. 41 at 6), it has more recently said that it "intends" to file a request for reexamination of the second patent-in-suit, the '697 patent. (D.I. 54 at 1 ("Nexus intends within the next two weeks to further file a Request for Reexamination of U.S. Patent No. 6,213,979, which is the remaining Patent-in-Suit.").) But even Nexus' belated tactical decision to augment its motion for a stay will be mooted by the July 24 issuance of the '150 patent.

On January 29, 2007, Venetec sued Nexus for infringement of both the '485 and '979 patents. During the six months since then, the parties have actively litigated this case. Each side has exchanged its preliminary claim construction positions and infringement contentions in detailed claim charts. Venetec has produced approximately 30,000 pages of documents (marked Highly Confidential under the Protective Order) in response to Nexus' document requests.[2] In response to Nexus' interrogatories, Venetec has identified thirteen products that it sells which are covered by the patents-in-suit. Venetec has also identified the four competing Nexus products that, based on presently available information, it asserts infringe the patents-in-suit and seeks to have excluded from the marketplace.

On June 25, 2007, five months into this litigation, Nexus submitted to the PTO a request to reexamine the '485 patent. That request was based on four prior art references. Nexus also moved that same day to stay this entire lawsuit, not waiting to learn whether the PTO would grant its request before moving.

On July 4, the PTO advised that a pending Venetec patent application will issue on July 24, 2007 as U.S. Patent No. 7,247,150. The '150 patent is a continuation of the '979 and '485 patents. Specifically, the application was U.S. Patent Application 11/204,586, entitled "Medical Line Anchoring System" ("the '586 application"). The '586 application is a continuation of U.S. Patent 6,929,625, which is a continuation of the '485 patent-in-suit. The '586 application will issue as the '150 patent on July 24, 2007. The one prior art reference cited in Nexus' reexamination request that was not previously considered by the PTO in conjunction with prosecution of the '485 patent application (the Sorbonne patent) *was considered* by the PTO

---

[2]    Although Venetec served Nexus with its document requests on April 16, 2007 – ninety days ago – *Nexus has yet to produce a single document.* Apparently, Nexus has decided to unilaterally grant itself a stay from producing documents until its motion is decided, despite Venetec's objections. (*See* Ex. B, Sayeed 6/22/07 ltr. to Brown, at 2.)

during prosecution of the '150 patent application.  On or about July 25, 2007, Venetec will seek

to amend its Complaint to assert that Nexus' accused products also infringe the '150 patent.

## ARGUMENT

I.  STAY OF LITIGATION PENDING REEXAMINATION IS NOT
    APPROPRIATE IN THE ABSENCE OF EXTRAORDINARY
    CIRCUMSTANCES

Nexus contends that it is entitled to a stay because of supposed "liberal" policies

that favor granting such motions.  (D.I. 41 at 4.)  Nexus is wrong.  A stay pending reexamination

in this jurisdiction is warranted in only "extraordinary circumstances."

> [G]iven the court's view that its primary purpose is to manage litigation in
> an expeditious manner in order to create an appropriate record (through
> motion practice or trial) for review by the Federal Circuit, the court
> generally will not stay its cases pending reexamination proceedings *absent*
> *extraordinary circumstances*.

Ex. C, *ArthroCare Corp. v. Smith & Nephew, Inc.,* No. 01-504-SLR, at 2 (D. Del. Nov. 27, 2002)

(emphasis added) (denying motion to stay pending reexamination).  This district recognizes the

"distinct" difference between litigation and reexamination proceedings, and does not liberally

grant such stays.  *Id.*  That is unsurprising, because "litigation and reexamination are distinct

proceedings, with distinct parties, purposes, procedures, and outcomes." *Id.* (citing *Ethicon, Inc.*

*v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)).

As Nexus correctly notes, this district typically looks to the following three

factors in determining whether to grant a stay pending reexamination:

(1)  whether granting a stay would cause the non-moving party to suffer undue
     prejudice from any delay or allow the moving party to gain a clear tactical
     advantage over the non-moving party;

(2)  whether a stay will simplify the issues for trial; and

(3)  the status of discovery and whether a trial date is set.

*See St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No. 01-557-JJF, 2003 WL 25283239, at * 1 (D. Del. Jan. 30, 2003). "Inefficiencies" arising from "concurrent litigation and reexamination … do not constitute exceptional circumstances." Ex. C, *ArthroCare Corp*, No. 01-504-SLR, at 2.

> The court understands that, prior to trial, the PTO may issue rulings that will need to be considered, thus causing some inefficiencies in the pretrial and trial process. Nevertheless, the court concludes that such inefficiencies are an inherent byproduct of concurrent litigation and reexamination and, therefore, do not constitute exceptional circumstances justifying a stay of the litigation at bar.

*Id.* Applying these factors, there are numerous decisions in this district refusing to forestall a plaintiff's right to enforce its patent based on a reexamination request. *See, e.g., St. Clair Intellectual Prop. Consultants, Inc.*, 2003 WL 25283239 at * 2 (denying motion to stay pending reexamination); Ex. D, *Centillon Data Sys., LLC v. Avolent, Inc.*, No. 05-712-JJF (D. Del. Apr. 24, 2006) (same); Ex. E, *Automated Precision Inc. et al v. SpatialMetrix Corp.*, No. 98-509-JJF (D. Del. Jan. 20, 1999) (same); Ex. F, *Davol, Inc. v. Allegiance Healthcare Corp.*, No. 98-608-JJF (D. Del. Sept. 30, 1999) (same).[3]

Consistent with this Court's practice, many other courts have seen the benefit of permitting litigation and reexamination to operate in parallel. *See, e.g., NTP, Inc. v. Research In Motion, Ltd.*, 397 F. Supp.2d 785, 788 (E.D. Va. 2005) (denying fourth motion to stay and permitting remand proceedings concurrently with reexamination); *Output Tech. Corp. v. Dataproducts Corp.*, No. C90-1782D, 1991 U.S. Dist. LEXIS 20168, at *6-16 (W.D. Wash. Nov. 25, 1991) (denying motion to stay pending reexamination); *Enprotech Corp. v. Autotech Corp.*, No. 88-C-4853, 1990 U.S. Dist. LEXIS 2926, at *2-3 (N.D. Ill. Mar. 15, 1990) (denying motion to stay, in part, because reexamination would not resolve all claims). This is particularly

---

[3]     Nexus' brief cites the decisions of only one of the Judges of this district on this issue. (*See* D.I. 41 *at passim*.)

the case where, as here, not all the patents-in-suit are subject to request for reexamination. *See, e.g., Mars, Inc. v. JCM Am. Corp.*, No. 05-3165, 2006 U.S. Dist. LEXIS 84565, at *22 (D. N.J. Nov. 21, 2006) (where only one of two patents-in-suit was submitted for reexamination, a stay would not promote judicial economy because "the case can develop these issues simultaneous[ly] with the PTO's review").

II.   **NEXUS HAS NOT MET ITS BURDEN TO ESTABLISH "EXTRAORDINARY CIRCUMSTANCES" SUFFICIENT TO IMPOSE A STAY**

Nexus cannot show that its request for a stay is justified by extraordinary circumstances. Indeed, not only will Venetec be prejudiced by a stay for a reexamination proceeding that is likely ultimately to be unsuccessful, but this litigation will be unduly complicated should Nexus' request be granted.

1.    Venetec Will Be Prejudiced By The Delay Caused By A Stay

Nexus contends that "[a]ny advantage Nexus attains by the grant of the stay will be shared by Venetec." (D.I. 41 at 6.) Nexus is wrong. The *only advantage* of a stay would inure to Nexus. Nexus is the new entrant in a market created and established by Venetec after years of heavy effort. Delaying enforcement of Venetec's patents for a period of *years* would trample Venetec's constitutional right to "secure[e] for limited Times … the *exclusive* Right" to its patented invention. U.S. CONST., art. I, § 8 (emphasis added). Nexus should not be permitted to enter the market and succeed at Venetec's expense on the back of Venetec's own inventions.

Yet commercial advantage is precisely what Nexus' motion for a stay seeks. As the most recent PTO data shows, the median pendency for consideration of a request for *inter partes* reexamination is just under 30 months, or two-and-a-half years. (Ex. G, *Inter Partes* Reexamination Filing Data, dated 3/31/07.) In addition, *inter partes* decisions may be appealed to the PTO Board of Patent Appeals and Interferences, and then to the United States Courts of

Appeals for the Federal Circuit. *See* 35 U.S.C. § 315 (2007). Consequently, "several [additional] years might very well pass from the time when a final office action is issued by the PTO to when the claims are finally and officially 'confirmed' after appeals." *NTP, Inc.*, 397 F.Supp.2d at 788; *see also St. Gobain Performance Plastics Co. v. Advanced Flexible Composites, Inc.*, 436 F. Supp. 2d 252, 253 (D. Mass. 2006) (reexamination "may well take several years"). Thus, the total time elapsed during Nexus' requested stay – during which Nexus could continue to infringe Venetec's patent rights – could extend for four or five years, enough time to frustrate the very purpose for which Venetec obtained its patents and for which Venetec has filed this suit seeking a permanent injunction. *See E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 711 F. Supp. 1205, 1208 n.9 (D. Del. 1989) ("Where such a stay could result in a tactical advantage to one party or the other, this Court will not employ its discretion to stay the ordinary course of its proceedings simply because the outcome of the Patent Office proceedings *may* moot the issues remanded.") (emphasis original).

Nexus contends that Venetec will not suffer harm from a stay, relying primarily on *Gioello Enter. Ltd. v. Mattel, Inc.* (*See* D.I. 41 at 4, 6.) In *Gioello,* however, the court clarified that the reason it concluded that a stay would not prejudice the patentee was because the patentee did not sell any allegedly infringing products:

> The court finds the prejudice to Gioello is slight, if any. … First, Gioello is not selling or actively licensing goods or services related to the '434 patent; money damages is an adequate remedy for any delay in redress.

*Gioello Enter. Ltd. v. Mattel, Inc.,* No. C.A. 99-375 GMS, 2001 WL 125340, at *2 (D. Del. Jan. 29, 2001). Other cases cited by Nexus make the same distinction. *Middleton, Inc. v. Minn. Mining and Mfg. Co.*, No. 4:03-CV-40493, 2004 WL 1968669, at *9 (S.D. Iowa Aug. 24, 2004) (holding that plaintiff was not marketing products under its own patent) (cited in D.I. 41 at 13).

7

Similarly, in *Broadcast Innovation* (on which Nexus relies to argue a stay should be granted *before* the PTO decides whether to entertain Nexus' motion for reexam), the court distinguished between cases seeking injunctive relief – as Venetec seeks here – and those merely seeking damages:

> The Plaintiffs seek *only* monetary damages and for that reason, have an adequate remedy at law should they prevail on the merits.... In sum, this factor weighs in favor staying the case because monetary relief – the only relief Plaintiffs seek – is fully capable of restoring Plaintiffs to the *status quo ante*.

*Broad. Innovation, LLC v. Charter Commc'ns, Inc.*, No. 03-CV-2223-ABF-BNB, 2006 WL 1897165 at * 10 (D. Colo. July 11, 2006) (emphasis original).

In contrast, Venetec has identified numerous commercially available and successful products that incorporate the inventions claimed in the patents-in-suit. Unlike *Gioello, Middleton* or *Broadcast Innovation*, Venetec is actively selling products covered by the patents-in-suit and money damages are not an "adequate remedy for any delay in redress[ing]" Nexus' infringement. *Compare Gioello Enter. Ltd.*, 2001 WL 125340, at *2.

### 2. The Litigation Will Be Complicated By A Stay, Not Simplified

Nexus contends that "[i]nvalidity of the '485 patent ... is a primary issue raised by Nexus in this case," and thus that waiting until the reexamination proceeding is resolved will simplify this case. (D.I. 41 at 6.) Again, Nexus is wrong. Infringement and a permanent injunction are the primary issues, and it is Nexus' burden to overcome the heavy presumption of validity awarded to issued patents. Nexus' argument -- that the reexamination of one of the patents-in-suit based (principally) on three sources of prior art references that the PTO has already considered will somehow reduce or eliminate the extent of litigation tasks in this case – is simply incorrect.

First, Nexus' request for reexamination of the '485 patent will not affect litigation of Venetec's '150 patent, which will be added to this case in about a week. As noted above, all four of the prior art references Nexus cites in its reexamination request have been considered by the PTO. Even if Nexus files a belated petition for reexamination of the '979 patent (consistent with the representations in its July 5 letter to the Court), that request will not affect litigation of Venetec's '150 patent. The '150 patent action will go forward. Discovery and trial on the '150 patent will require depositions of the same witnesses, review and production of the same documents, and consultation and reports from the same experts as with the '485 patent.

Second, Nexus' request for reexamination of the '485 patent does not affect the '979 patent. The '485 and '979 patents are not merely "analogs" of each other, as Nexus asserts without support. (D.I. 41 at 1.) Rather, the two patents have been found by the PTO to cover "independent and distinct" inventions. *See* 35 U.S.C. § 121. Indeed, during prosecution of the '979 patent, the Patent Examiner expressly determined that Venetec's original application claimed two "distinct" inventions, a catheter anchoring *system* and a *method* of securing that anchoring system to a patient. [4] (Ex. H, Office Action in '979 Patent Prosecution File, dated 9/4/98.) The Examiner further noted that the inventions "have acquired a separate status in the art as shown by their different classification ... ." (*Id.*) Venetec then cancelled that portion of the '979 application directed to the method invention and pursued it in a separate application, which ultimately issued as the '485 patent. Thus, although the two patents are related, they claim separate inventions.

---

[4] When an application claims "two or more independent and distinct inventions," the PTO may properly require that application to be limited to only one of the inventions, with the other inventions permitted in later "divisional" applications. 35 U.S.C. § 121; *see also* MANUAL OF PATENT EXAMINING PROCEDURE § 201.06 (8th ed. 2006) ("MPEP"). This is precisely what happened here.

9

Third, even limiting the issues solely to those raised by one of the two (soon to be three) patents-in-suit, the '485 patent, it remains highly unlikely that Nexus' reexamination request will simplify the litigation, as it is unlikely to be successful. Here, most of Nexus' supposedly "invalidating" prior art was *already considered* by the PTO during prosecution of the '485 patent. Nexus provides the Court with no explanation regarding the substance of its meritless argument as to *why* the PTO will change its mind as to the patentability of the '485 patent over these references the second time around.[5]

The fourth reference on which Nexus relies in its Request, U.S. Patent 4,517,971, was considered by the PTO during the prosecution of the soon-to-issue '150 patent. Continuation applications have the same specification as their parent application and permit an inventor to claim inventions disclosed in the earlier application that have been abandoned or otherwise not issued. *See* MPEP § 201.07. Thus, the PTO has already considered the Sorbonne patent in connection with a patent application that has the *same* disclosure as the '485 patent.

Consequently, in addition to the statutory presumption of validity enjoyed by all of Venetec's patents, because the Sorbonne patent was expressly considered by the PTO in connection with prosecution of the '150 patent, the presumption of validity is more difficult to overcome:

> When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.

---

[5]  Nexus' obfuscation of the PTO's prior consideration of all but one of its references is not an accident. This Court is unlikely to any glean value from the '485 reexamination when most of the prior art at issue was previously submitted.

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984). There is little reason for the Court to defer to the PTO reexamination of validity, when the Patent Examiner has already rejected the cited art.

3.    <u>The Status Of Discovery Weighs In Favor Of Denying A Stay</u>

Nexus contends that "little or no discovery has occurred" in this case. (D.I. 41 at 11.) If so, that stems only from Nexus' unilateral decision to refuse to participate in discovery while its motion is pending. Nexus has apparently granted itself a stay from producing documents (it has not produced a single page) or witnesses (it is refusing to produce witnesses pursuant to Venetec's deposition notices) until *after* its motion for stay is decided by the Court. That is not the law in this district. *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1441 (D. Del. 1989) ("Defendant's argument assumes that the moment it has filed a motion to stay discovery on the damages issue, it need no longer obey the basic discovery rules. Defendant is in effect granting itself a stay of discovery. Simple logic teaches that the defendant has put the presumption on the wrong side: unless and until it is granted a stay, defendant should be required to conduct discovery as if no motion has been filed at all.").

Regardless of Nexus' unilateral decision not to produce documents or witnesses, both sides have served preliminary claim construction positions and provided detailed charts detailing their infringement and non-infringement positions. *Compare Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 616 (E.D. Tex. 2007) (considering the fact that the parties had not exchanged claim construction positions in granting a stay). Nexus has provided its detailed invalidity positions, which are mirrored by those contentions included in its request for reexamination. Consequently, both sides have exchanged the meat of their substantive positions. What remains is to test those positions.

11

Finally the lack of a firm trial date does not favor grant of a stay here. This Court declined to set a trial date *at the parties' request*, in large part because the judicial vacancy has not yet been filled. Regardless, the Court has set a status conference for September 11, 2007 to discuss setting "the dates for the remainder of the scheduling order ... ." (D.I. 23 at 5.)

## CONCLUSION

Nexus' motion to stay all proceedings pending any reexamination of the '485 patent should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200

*Attorneys for Plaintiff*
*Venetec International, Inc.*

*Of Counsel:*
Steven C. Cherny
Hassen A. Sayeed
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY  10022-4834
(212) 906-1200

Maximilian A. Grant
David M. Farnum
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.
Washington, DC  20004
(202) 637-2200

July 16, 2007

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on July 16, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Richard Herrmann, Esquire
> Mary Matterer, Esquire
> MORRIS JAMES

I also certify that copies were caused to be served on July 16, 2007 upon the following in the manner indicated:

> **BY ELECTRONIC MAIL**
> **and HAND DELIVERY**
>
> Richard Herrmann, Esquire
> Mary Matterer, Esquire
> Morris, James, Hitchens & Williams
> 500 Delaware Avenue
> Suite 1500
> Wilmington, DE 19801
>
> **BY ELECTRONIC MAIL**
> **and FEDERAL EXPRESS**
>
> Scott R. Brown, Esquire
> Jennifer C. Bailey, Esquire
> Hovey Williams LLP
> 2405 Grand Boulevard
> Suite 400
> Kansas City, MO 64108

Maryellen Noreika (#3208)
mnoreika@mnat.com

# EXHIBIT A



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/204,586 | 07/24/2007 | 7247150 | VINTL.26FCPD1CC | 3904 |

20995          7590          07/04/2007
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

## ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Steven F. Bierman, Del Mar, CA;

IR103 (Rev. 11/05)

EXHIBIT B

Hassen A. Sayeed
Direct Dial: (212) 906-2966
hassen.sayeed@lw.com

## LATHAM & WATKINS LLP

53rd at Third
885 Third Avenue
New York, New York  10022-4834
Tel: +212.906.1200  Fax: +212.751.4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

File No. 038589-0008

June 22, 2007

**VIA FEDERAL EXPRESS AND EMAIL**

Scott R. Brown, Esq.
Hovey Williams, LLP
2405 Grand Blvd., Suite 400
Kansas City, MO 64108

Re:   Venetec International, Inc. v. Nexus Medical LLC, Case No. 07-57-***

Dear Scott:

We are in receipt of Nexus's Objections and Responses to Venetec's First Set of Interrogatories, served May 30, 2007.  As explained below, these responses contain several deficiencies.

### Interrogatory No. 1

Nexus identifies four Accused Products that are marketed commercially.  However, the Interrogatory is not limited to identifying only those Accused Products that are publicly sold or disclosed.  Please supplement your response as appropriate or confirm that no additional Accused Products are "made" by or on behalf of Nexus.

### Interrogatory No. 12

Nexus objects that this Interrogatory "is a premature contention Interrogatory" and that Nexus "is not alleging inequitable conduct at this time."  These objections contradict the pleadings.  In its Answer, Nexus alleges that the Patents-in-Suit are unenforceable.  Answer at Affirmative Defenses ¶ 2; Counterclaim ¶ 10.  Furthermore, Nexus did *not* plead inequitable conduct with the specificity required by Federal Rule of Civil Procedure 9(b).  In light of Nexus's response to this Interrogatory, which Venetec propounded in reliance on the pleadings, we expect Nexus to immediately file an amended Answer dropping its unenforceability defense and counterclaim.

### Interrogatory No. 14

Nexus responds that it does not intend to "rely on advice of counsel as a defense to allegations of willful infringement."  This is non-responsive to the Interrogatory, which as a preliminary matter requested identification of all opinions relating to the infringement, validity or enforceability of the Patents-in-Suit.  Furthermore, Nexus is not entitled to withhold the

Scott R Brown, Esq.
June 22, 2007
Page 2

**LATHAM&WATKINSLLP**

identification of opinions "which Nexus has received after filing of the present litigation." Please supplement your response accordingly.

We reserve all rights with respect to our original Interrogatories and this letter does not waive any such rights, including the right to identify additional responses not identified above. Perhaps it makes sense for us to discuss the discovery issues when you otherwise speak with Max on Monday concerning Nexus' proposed motion for a stay. Otherwise, please be prepared to propose a time to speak about discovery on that call.

As a separate matter, we are also in receipt of Nexus's Objections and Responses to Venetec's First Set of Document Requests. Nexus has yet to produce any responsive documents. Venetec intends to offer its first round of production very shortly. Please provide us with a date by which we may expect Nexus to do the same.

Very truly yours,

Hassen A. Sayeed
of LATHAM & WATKINS LLP

cc:    Richard K. Herrmann, Esq. (via email)
       Mary B. Matterer, Esq. (via email)
       Jennifer C. Bailey, Esq. (via email)

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ARTHROCARE CORPORATION,      )
                             )
            Plaintiff,       )
                             )
      v.                     )      C.A. No. 01-504-SLR
                             )
SMITH & NEPHEW, INC.,        )
                             )
            Defendant.       )

MEMORANDUM ORDER

At Wilmington this 27th day of November, 2002, having reviewed the papers submitted by the parties in connection with various motions filed by defendant;

IT IS ORDERED that defendant's motion to stay pending reexamination (D.I. 187) is denied, for the reasons that follow:

1. The United States Court of Appeals for the Federal Circuit recognizes that "[c]ourts have inherent power to manage their dockets and stay proceedings . . ., including the authority to order a stay pending conclusion of a PTO reexamination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted). Courts clearly have the authority to order their cases to trial.

2. The Federal Circuit also has recognized that patent litigation in a district court and reexamination proceedings

before the PTO do not implicate a "precise duplication of effort" because "litigation and reexamination are distinct proceedings, with distinct parties, purposes, procedures, and outcomes." Id. at 1427.

3. Given the court's view that its primary purpose is to manage litigation in an expeditious manner in order to create an appropriate record (through motion practice or trial) for review by the Federal Circuit, the court generally will not stay its cases pending reexamination proceedings absent extraordinary circumstances. In this case, where only one of the three patents is undergoing reexamination, where the patents at issue relate to an evolving and highly competitive market, and where the reexamination proceedings to date have not been conducted with what the court would consider "special dispatch", the court declines to find this an exceptional case warranting a stay. The court understands that, prior to trial, the PTO may issue rulings that will need to be considered, thus causing some inefficiencies in the pretrial and trial process. Nevertheless, the court concludes that such inefficiencies are an inherent byproduct of concurrent litigation and reexamination and, therefore, do not constitute exceptional circumstances justifying a stay of the litigation at bar.

2

IT IS FURTHER ORDERED that defendant's motion to bifurcate willfulness and damages and to stay discovery (D.I. 107) is granted.  Discovery on the issues of willfulness and damages will be stayed until after the verdict on infringement and invalidity has been returned; these issues will be tried to a new jury.

IT IS FURTHER ORDERED that defendant's claim of privilege pertaining to redactions in certain documents (D.I. 190) is denied.  The court finds that the information redacted is equivalent to the information required to be included in a privilege log, and thus not privileged information.

IT IS FURTHER ORDERED that defendant's second motion for leave to amend answer and counterclaim (D.I. 111) is granted. However, discovery and trial of defendant's newly added counterclaim for antitrust violations are stayed consistent with the above ruling on the issues of damages and willfulness.

IT IS FURTHER ORDERED that defendant's motion for reargument is denied, as is its motion to strike.  (D.I. 160, 172)

_____
United States District Judge

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CENTILLION DATA SYSTEMS, LLC,     :
a Delaware Corporation,            :
                                   :
          Plaintiff,               :
                                   :
                                   :
     v.                            : Civil Action No. 05-712-JJF
                                   :
AVOLENT, INC.,                     :
a Delaware Corporation,            :
                                   :
          Defendant.               :

## MEMORANDUM ORDER

Pending before the Court is Avolent Inc.'s Motion To Stay Action Pending Reexamination Of The '270 Patent (D.I. 6). For the reasons discussed, the Motion will be denied.

## I.    BACKGROUND

On May 5, 2005, a third-party filed a reexamination request with the United States Patent and Trademark Office ("USPTO"), which alleged that two pieces of prior art made three independent claims of U.S. Patent No. 5,287,270 ("the '270 patent") unpatentable. On June 26, 2005, the USPTO granted the reexamination request, concluding that the "prior art raised a substantial new question of patentability." (D.I. 6 at 1).

At the time the reexamination request was filed, Plaintiff Centillion Data Systems ("Centillion") was involved in litigation with Convergys Corporation, Qwest Communications International, and Qwest Corporation (collectively, "Qwest") in the District Court for the Southern District of Indiana. Following the

USPTO's granting reexamination, Qwest renewed a motion to stay. The court denied the motion to stay, suggesting Qwest filed the request for reexamination and concluding that this was yet another dilatory tactic by Qwest.  *Centillion Data Systems, LLC v. Convergys Corp.*, 2005 WL 2045786, at *1 (S.D. Ind. Aug. 24, 2005).

On September 30, 2005, Centillion filed its Complaint against Defendant Avolent, Inc. ("Avolent") alleging infringement of the '270 patent.  Avolent requested that Centillion voluntarily agree to a stay in the instant lawsuit pending the outcome of the reexamination.  Centillion refused this request and Avolent filed the instant motion to stay.

II. DISCUSSION

The decision to grant or deny a stay is within the court's broad range of discretionary powers.  *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990)(citations omitted).  While the Court is aware that the case is in its initial stages and that a reexamination could narrow the issues, the Court concludes that a stay will not substantially assist resolution of the issues.  The Court concludes that there is a substantial risk of prejudice to Centillion, given the findings of the Indiana Court.  After considering these findings, the Court is persuaded that the lead of the Indiana Court should be followed.  Accordingly, the Court will deny Avolent Inc.'s Motion

2

To Stay Action Pending Reexamination Of The '270 Patent (D.I. 6).

**<u>ORDER</u>**

NOW THEREFORE, IT IS HEREBY ORDERED that:

1.    Avolent Inc.'s Motion To Stay Action Pending Reexamination Of The '270 Patent (D.I. 6) is **<u>DENIED</u>**.

2.    Avolent shall file its Answer no later than twenty (20) days from the date of this Order.

April  24 , 2006                    _Joseph J. Farnan_
                                UNITED STATES DISTRICT JUDGE

3

# EXHIBIT E

1/20/99

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AUTOMATED PRECISION, INC., and
LEICA GEOSYSTEMS AG,

        Plaintiffs - Counterdefendants,

        v.

SPATIALMETRIX CORPORATION,

        Defendant - Counterplaintiff.

    :
    :
    :
    :
    :     C.A. No. 98-509-JJF
    :
    :
    :
    :

## MEMORANDUM ORDER

Presently before the Court is Defendant's Motion to Stay Proceedings (D.I. 10).

Defendant requests an order to stay all proceedings pending final disposition of a reexamination

request concerning the patent-in-suit filed by Defendant in the United States Patent and

Trademark Office ("PTO"). (D.I. 10 at 3). This lawsuit involves U.S. Patent No. 4,714,339

("the '339 patent") which is owned by the U.S. Department of Commerce and licensed to

Plaintiff Automated Precision, Inc. ("API") and sublicensed to Plaintiff Leica Geosystems AG

("Leica"). (D.I. 13 at 5). The '339 patent is directed to a laser tracking system used for precise

measurement of large objects. (D.I. 13 at 6). The parties first discussed Plaintiffs' assertions of

infringement in 1993. (D.I. 10 at 2; D.I. 13 at 7). Unable to resolve their disputes, Plaintiffs

filed suit against Defendant in August, 1998 alleging that Defendant infringes claim 7 of the '339

patent. (D.I. 13 at 8). Defendant counterclaimed asserting antitrust and unfair competition

claims. (D.I. 7).

    On December 8, 1998, Defendant filed a request for reexamination of the '339 patent in

the PTO, seeking to invalidate claim 7 based on prior art grounds. (D.I. 10 at 3). Following its

request for reexamination, Defendant filed this motion to stay all proceedings pending the PTO's

disposition of the reexamination request. (D.I. 10).

## DISCUSSION

In support of its motion to stay these proceedings, the Defendant contends that a stay will not unduly prejudice or cause a tactical disadvantage to the Plaintiffs. (D.I. 10 at 4). Defendant contends that: 1) a stay may resolve certain invalidity issues (D.I. 10 at 5); 2) a reexamination could simplify the complexity of this litigation, define the issues and reduce discovery problems (D.I. 10 at 5); and 3) a stay should be granted because the parties have not yet engaged in discovery nor expended resources in pursuit of discovery (D.I. 10 at 5).

In response, Plaintiffs contend that they will be prejudiced by a stay in several respects. The Plaintiffs contend that the reexamination will delay this case for at least a year and a half. Because Plaintiff API's license to the patent expires on September 30, 2001, a stay will deprive API of substantial rights API sought by the license. (D.I. 13 at 9-12). The Plaintiffs contend that they will be tactically disadvantaged because the Defendant will have knowledge of Plaintiffs' arguments on the validity issues concerning the '339 patent during the reexamination proceeding but Plaintiffs will not have any discovery of Defendant's counterclaims until the reexamination proceeding concludes. (D.I. 13 at 20-22). The Plaintiffs also contend that even if the '339 patent is invalidated or amended during reexamination, there are still significant issues in this case which will not be resolved by the PTO's disposition of the reexamination request. (D.I. 13 at 17-20). Finally, the Plaintiffs contend that a reexamination by the PTO will be of little value relative to this case, because the '339 patent has already been reexamined by the PTO at the request of the United States government. (D.I. 13 at 8, 22-24). As a result of this first reexamination, the PTO confirmed the patentability of claim 7 of the '339 patent without any

2

changes. (D.I. 13 at 8). The Plaintiffs contend that much of the prior art cited by Defendant in support of its request for reexamination has already been considered by the PTO in the first reexamination, and therefore, the technical expertise of the PTO will not add significantly to this case. (D.I. 13 at 22-24).

Courts have the "inherent power to control and manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). In determining whether to grant a stay, courts have considered whether doing so would "cause undue prejudice or present a clear tactical disadvantage to the non-moving party." GPAC, Inc. v. D.W.W. Enterprises, Inc. et al., 144 F.R.D. 60, 63 (D. N.J. 1992). Other factors that courts have considered are the stage of litigation, whether discovery has been completed, whether a trial date has been set and the probable effect a stay would have on the litigation. Id. at 64. These factors, however, are not exclusive and the Court recognizes that a stay is not mandated because a reexamination has been requested.

Applying these considerations to the instant case, the Court is not persuaded that a stay will be helpful in resolving the issues presented in this lawsuit and finds that the delay may unduly prejudice the Plaintiffs both in concluding this litigation and in obtaining anticipated benefits from its license of the '339 patent. Further, because the nature of the reexamination request by Defendant is based on prior art questions, the Court is not convinced that the PTO will assist the resolution of all the issues in this lawsuit. Thus, the Court will deny Defendant's motion to stay proceedings in this case.

NOW THEREFORE, FOR THE REASONS DISCUSSED, IT IS HEREBY ORDERED

3

this 20 day of January, 1999 that:

1. Defendant's Motion to Stay Proceedings (D.I. 10) is DENIED.

2. Trial in this matter will be scheduled for January-February, 2000. The parties shall meet and discuss a Proposed Rule 16 Scheduling Order to be presented at the Rule 16 Conference on February 25, 1999 at 1:15 p.m. in Courtroom No. 6A on the 6th Floor, Boggs Federal Building, Wilmington. In preparing the proposed order, the parties shall refer to the attached form of order.

Joseph J. Farnan Jr.
UNITED STATES DISTRICT JUDGE

4

## RULE 16 SCHEDULING ORDER

This _____ day of _____ 1999, the parties having satisfied their obligations under Fed. R. Civ. P. 26(f), and the Court having conducted a pretrial scheduling conference pursuant to Fed. R. Civ. P. 16 and D. Del. LR 16.2(a) and (b),

IT IS ORDERED that:

1. **Pre-Discovery Disclosures.**  The parties [have exchanged] [will exchange by (date)] the information required by Fed. R. Civ. P. 26(a)(1) and D. Del. LR 16.2.

2. **Discovery.**

(a) All discovery shall be commenced in time to be completed by (date) .

(b) Maximum of _____ interrogatories by each party to any other party.

(c) Maximum of _____ requests for admission by each party to any other party.

(d) Maximum of _____ depositions by plaintiff(s) and _____ by defendant(s).

(e) Reports from retained experts under Rule 26(a)(2) due: from plaintiff(s) by (date) ; from defendant(s) by (date) .

(f) **Discovery Disputes.**  Should counsel find they are unable to resolve a discovery dispute, they shall jointly arrange with the Court a time for a hearing or telephone

conference call to review the matter. Motions filed without

benefit of this procedure will be denied.

Prior to calling the Court to schedule a hearing or

telephone conference to review the matter, counsel should

thoroughly discuss the dispute and determine that the dispute

requires the Court's attention. Once a hearing or telephone

conference has been scheduled, each party shall file a letter

memorandum not to exceed five (5) pages setting forth the dispute

and its position with respect thereto.

3. **Joinder of other Parties and Amendment of
Pleadings.** All motions to join other parties and amend the

pleadings shall be filed on or before _____.

4. **Papers filed under Seal.** When filing papers under

seal, counsel should deliver to the Clerk of the Court an

original and two copies of the papers.

5. **Settlement Conference.** If the parties agree this

case is amenable to settlement they should promptly advise the

Court.

6. **Status Conference.** If both parties find that a

status conference is necessary, they may so notify the Court.

7. **Case Dispositive Motions.** All case dispositive

motions, if any, shall be served and filed with an opening brief

on or before _____, 1999. Briefing shall be undertaken

pursuant to D. Del. LR 7.1.2. No case dispositive motion may be

filed more than ten (10) days from the above date without leave

of the court.

8. **Applications by Motion.** Except as provided in this Order, any applications to the Court shall be by written motion filed with the Clerk of the Court. Any non-dispositive motion shall contain the statement required by D. Del. LR 7.1.1.

9. **Pretrial Conference.** On _____ (DAY), _____ (MONTH), 1999, at (TIME) .m., in Courtroom No. 6A on the 6th Floor, Boggs Federal Building, Wilmington, Delaware, the Court will hold a Final Pretrial Conference pursuant to Fed. R. Civ. P. 16(d) and D. Del. LR 16 with counsel. At least fifteen (15) days prior to the Final Pretrial Conference, Plaintiff's counsel shall forward to Defendant's counsel a draft of the Proposed Pretrial Order with the information Plaintiff proposes to include in the Proposed Order. At least five (5) days prior to the Conference, Defendant's counsel shall, in turn, provide Plaintiff's counsel with comments on the Plaintiff's draft and any information Defendant proposes to include in the Proposed Order. Each party shall include in the Proposed Pretrial Order an identification of each expert witness that the party expects to call to testify at the trial and a statement of the substance of each opinion the expert will offer at trial. The parties shall file the Proposed Pretrial Order at least three (3) days prior to the conference and, unless otherwise advised by the Court, the parties should assume that filing the Pretrial Order satisfies the pretrial disclosure requirement in Fed. R. Civ. P. 26(a)(3). If the case

is to be tried to a jury, pursuant to D. Del. LR 47 and 51, the parties shall file proposed voir dire, instructions to the jury, and special interrogatories three (3) business days before the Final Pretrial Conference.

10.  **Trial**.  Trial will commence at 9:00 a.m. on (DAY), _____ (MONTH), 1999, in Courtroom No. 6A on the 6th Floor, United States Courthouse, Boggs Federal Building, Wilmington, Delaware.

11.  The parties shall direct any requests or questions regarding the scheduling and management of this matter to Deputy Clerk Sue Mastrosimone at (302) 573-6137.


UNITED STATES DISTRICT JUDGE

Date: _____

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAVOL, INC.                        :
                                   :
          Plaintiff,               :
                                   :
     v.                            : Civil Action No. 98-608-JJF
                                   :
ALLEGIANCE HEALTHCARE              :
CORPORATION,                       :
                                   :
          Defendant.               :

## MEMORANDUM ORDER

Presently before the Court is Defendant's Motion for Stay of All Proceedings Pending Reexamination of the '510 Patent (D.I. 19). Defendant argues that reexamination presents the possibility that the above captioned action and the parties' efforts therein will be rendered moot. The Plaintiff opposes the motion, on the grounds that any delay will jeopardize the trial date previously ordered (D.I. 22).

A court is vested with the "inherent power to control and manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). In determining whether to grant a stay, courts have considered whether doing so would "cause undue prejudice or present a clear tactical disadvantage to the non-moving party." GPAC, Inc. v. D.W.W. Enterprises, Inc. et al., 144 F.R.D. 60, 63 (D. N.J. 1992). Other factors that courts have considered are the stage of litigation, whether discovery has been completed,



whether a trial date has been set and the probable effect a stay would have on the litigation. Id. at 64. These factors, however, are not exclusive and the Court recognizes that a stay is not mandated because a reexamination has been requested.

Applying these considerations to the instant case, the Court is not persuaded that a stay will be helpful in resolving the issues presented in this lawsuit and finds that it is in the best interest of both parties to keep this action on schedule. Thus, the Court will deny Defendant's motion to stay proceedings.

NOW THEREFORE, IT IS HEREBY ORDERED this 30th day of September, 1999, that the Defendant's Motion for Stay of All Proceedings Pending Reexamination of the '510 Patent (D.I. 19) is DENIED.

UNITED STATES DISTRICT JUDGE

# EXHIBIT G

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

_Inter Partes_ Reexamination Filing Data - March 31, 2007

1.  Total requests filed since start of _inter partes_ reexam on 11/29/99 ................................. 249[1]

2.  Number of filings by discipline

    a.  Chemical Operation          63    25%
    b.  Electrical Operation        90    36%
    c.  Mechanical Operation        96    39%

3.  Annual Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 2000 | 0 | 2002 | 4 | 2004 | 27 | 2006 | 70 |
| 2001 | 1 | 2003 | 21 | 2005 | 59 | 2007 | 67 |

4.  Number known to be in litigation...................................................................124.................50%

5.  Decisions on requests ........................................................................................... 203

    a.  No. granted ........................................................................... 194 ................. 96%

        (1)  By examiner                        194
        (2)  By Director (on petition)            0

    b.  No. not granted ........................................................................... 9 ................. 4%

        (1)  By examiner                         7
        (2)  Reexam vacated                      2

6.  Overall reexamination pendency  (Filing date to certificate issue date)

    a.  Average pendency                         27.9 (mos.)
    b.  Median pendency                          29.7 (mos.)

7.  Total inter partes reexamination certificates issued (1999 - present) .................................. 7

    a.  Certificates with all claims confirmed    1     14%
    b.  Certificates with all claims canceled     6     86%
    c.  Certificates with claims changes          0      0%

---

[1]Of the requests received through March 31, 2007, 1 request was vacated per 37 CFR 1.913; and 14 requests have not yet been accorded a filing date and preprocessing of 1 request was terminated, for failure to comply with the requirements of 37 CFR 1.915.  See Clarification of Filing Date Requirements for _Ex Parte_ and _Inter Partes_ Reexamination Proceedings, Final Rule, 71 Fed. Reg. 44219 (August 4, 2006).

# EXHIBIT H



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, DC 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/988,251 | 05/29/97 | BIERMAN | S | VINTL26FGP1 |

QM31/0914

KNOBBE MARTENS OLSON & BEAR
620 NEWPORT CENTER DRIVE
NEWPORT BEACH VA 92660-8016

| EXAMINER |
|---|
| BLYVEIS, D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3734 | |

DATE MAILED:    09/14/98

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trademarks

| *Office Action Summary* | Application No.<br>08/865,231 | Applicant(s)<br>Bierman |
| --- | --- | --- |
| | Examiner<br>Deborah Blyveis | Group Art Unit<br>3734 |

☐ Responsive to communication(s) filed on _____ .

☐ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire _____ *1* _____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

  ☒ Claim(s) *1-58* _____ is/are pending in the application.

    Of the above, claim(s) _____ is/are withdrawn from consideration.

  ☐ Claim(s) _____ is/are allowed.

  ☐ Claim(s) _____ is/are rejected.

  ☐ Claim(s) _____ is/are objected to.

  ☒ Claims *1-58* _____ are subject to restriction or election requirement.

**Application Papers**

  ☒ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

  ☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

  ☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

  ☐ The specification is objected to by the Examiner.

  ☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

  ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    ☐ All ☐ Some* ☐ None   of the CERTIFIED copies of the priority documents have been

      ☐ received.

      ☐ received in Application No. (Series Code/Serial Number) _____ .

      ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    *Certified copies not received: _____

  ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

  ☐ Notice of References Cited, PTO-892

  ☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

  ☐ Interview Summary, PTO-413

  ☒ Notice of Draftsperson's Patent Drawing Review, PTO-948

  ☐ Notice of Informal Patent Application, PTO-152

--- *SEE OFFICE ACTION ON THE FOLLOWING PAGES* ---

U.S. Patent and Trademark Office<br>PTO-326 (Rev. 9-95)           Office Action Summary           Part of Paper No. **3**

Application/Control Number: 08/865231                                    Page 2

Art Unit:

## DETAILED ACTION

### *Election/Restriction*

1.      Restriction to one of the following inventions is required under 35 U.S.C. 121:

   I.      Claims 1-54, drawn to an anchor system, classified in class 604, subclass 174.

   II.     Claim 55-58, drawn to a method of securing a medical device to a patient,

          classified in class 604, subclass 49.

2.      The inventions are distinct, each from the other because of the following reasons:

Inventions I and II are related as product and process of use. The inventions can be shown to be

distinct if either or both of the following can be shown: (1) the process for using the product as

claimed can be practiced with another materially different product or (2) the product as claimed

can be used in a materially different process of using that product (MPEP § 806.05(h)). In the

instant case the product as claimed can be used in a materially different process of using that

product such as a for use as a lid for a jar.

3.      Because these inventions are distinct for the reasons given above and have acquired a

separate status in the art as shown by their different classification, restriction for examination

purposes as indicated is proper.

4.      This application contains claims directed to the following patentably distinct species of the

claimed invention: species A: figs. 1A, 1B, 2, 3; species B: figs. 4A, 4B, 5: species C: figs. 6-9:

species D: figs. 10A, 10B, 11, and 12.

Application/Control Number: 08/865231                                    Page 3

Art Unit:                                                                     |

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species for prosecution on the merits to which the claims shall be restricted if no generic claim is finally held to be allowable.  Currently, no claims are generic.

Applicant is advised that a reply to this requirement must include an identification of the species that is elected consonant with this requirement, and a listing of all claims readable thereon, including any claims subsequently added.  An argument that a claim is allowable or that all claims are generic is considered nonresponsive unless accompanied by an election.

Upon the allowance of a generic claim, applicant will be entitled to consideration of claims to additional species which are written in dependent form or otherwise include all the limitations of an allowed generic claim as provided by 37 CFR 1.141.  If claims are added after the election, applicant must indicate which are readable upon the elected species.  MPEP § 809.02(a).

Should applicant traverse on the ground that the species are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing the species to be obvious variants or clearly admit on the record that this is the case.  In either instance, if the examiner finds one of the inventions unpatentable over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C. 103(a) of the other invention.

5.      A telephone call was made to Adeel Akhtar on 9/4/98 to request an oral election to the above restriction requirement, but did not result in an election being made.

Application/Control Number: 08/865231                                    Page 4

Art Unit:

      Applicant is advised that the reply to this requirement to be complete must include an election of the invention to be examined even though the requirement be traversed (37 CFR 1.143).

6.     Questions regarding faxes or the status of this application should be directed to the receptionist whose telephone number is (703) 308-0858.

7.     Any inquiry concerning this communication or earlier communications from the examiner should be directed to Deborah Blyveis whose telephone number is (703) 308-2110. On April 1, 1998, art unit 3306 became art unit 3734, and all correspondence should be addressed accordingly.

WYNN WOOD COGGINS
SUPERVISORY PATENT EXAMINER

d.b. *pb 7/4/98*

September 4, 1998

FORM PTO 948 (REV. 01-97)    U.S. DEPARTMENT OF COMMERCE - Patent and Trademark Office    Application No. 865231

## NOTICE OF DRAFTPERSON'S
## PATENT DRAWING REVIEW

The drawing filed (insert date) 5/29/97 are:

A. _____ not objected to by the Draftperson under 37 CFR 1.84 or 1.152.

B. _____ objected to by the Draftperson under 37 CFR 1.84 or 1.152 as indicated below. The Examiner will require submission of new, corrected drawings when necessary. Corrected drawings must be submitted according to the instructions on the back of this notice.

**1. DRAWINGS. 37 CFR 1.84(a):** Acceptable categories of drawings:
Black ink. Color.
_____ Color drawings are not acceptable until petition is granted.
Fig(s)_____
_____ Pencil and non black ink is not permitted. Fig(s)_____

**2. PHOTOGRAPHS. 37 CFR 1.84(b)**
_____ Photographs are not acceptable until petition is granted.
_____ 3 full-tone sets are required. Fig(s)_____
_____ Photographs not properly mounted (must bristol board or photographic double-weight paper). Fig(s)_____
_____ Poor quality (half-tone). Fig(s)_____

**3. TYPE OF PAPER. 37 CFR 1.84(e)**
_____ Paper not flexible, strong, white and durable. Fig(s)_____
_____ Erasures, alterations, overwritings, interlineations, folds, copy machine marks not acceptable. (too thin) Fig(s)_____
_____ Mylar, vellum paper is not acceptable (too thin). Fig(s)_____

**4. SIZE OF PAPER. 37 CFR 1.84(f):** Acceptable sizes:
_____ 21.0 cm by 29.7 cm (DIN size A4)
_____ 21.6 cm by 27.9 cm (8 1/2 x 11 inches)
_____ All drawings sheets not the same size.
_____ Sheet(s)_____

**5. MARGINS. 37 CFR 1.84(g):** Acceptable margins:
Top 2.5 cm Left 2.5 cm Right 1.5 cm Bottom 1.0 cm
SIZE: A4 Size
Top 2.5 cm Left 2.5 cm Right 1.5 cm Bottom 1.0 cm
SIZE: 8 1/2 x 11
_____ Margins not acceptable. Fig(s)_____
_____ Top (T)_____ Left (L)_____
_____ Right (R)_____ Bottom (B)_____

**6. VIEWS. CFR 1.84(h)**
REMINDER: Specification may require revision to correspond to drawing changes.
_____ Views connected by projection lines or lead lines.
Fig(s)_____
_____ Partial views. 37 CFR 1.84(h)(2)
_____ Brackets needed to show figure as one entity.
Fig(s)_____
_____ Views not labeled separately or properly.
Fig(s)_____
_____ Enlarged view not labeled separately or properly.
Fig(s)_____

**7. SECTIONAL VIEWS. 37 CFR 1.84(h)(3)**
_____ Hatching not indicated for sectional portions of an object.
Fig(s)_____
_____ Sectional designation should be noted with Arabic or Roman numbers. Fig(s)_____

**8. ARRANGEMENT OF VIEWS. 37 CFR 1.84(i)**
_____ Words do not appear on a horizontal, left-to-right fashion when page is either upright or turned, so that the top becomes the right side, except for graphs. Fig(s)_____
_____ Views not on the same plane on drawing sheet. Fig(s)_____

**9. SCALE. 37 CFR 1.84(k)**
_____ Scale not large enough to show mechanism with crowding when drawing is reduced in size to two-thirds in reproduction. Fig(s)_____

**10. CHARACTER OF LINES, NUMBERS, & LETTERS. 37 CFR 1.84(l)**
_____ Lines, numbers & letters not uniformly thick and well defined, clean, durable and black (poor line quality). Fig(s)_____

**11. SHADING. 37 CFR 1.84(m)**
_____ Solid black areas pale. Fig(s)_____
_____ Solid black shading not permitted. Fig(s)_____
_____ Shade lines, pale, rough and blurred. Fig(s)_____

**12. NUMBERS, LETTERS, & REFERENCE CHARACTERS. 37 CFR 1.84(p)**
_____ Numbers and reference characters not plain and legible. Fig(s)_____
_____ Figure legends are poor. Fig(s)_____
_____ Numbers and reference characters not oriented in the same direction as the view. 37 CFR 1.84(p)(1) Fig(s)_____
_____ English alphabet not used. 37 CFR 1.84(p)(2) Fig(s)_____
_____ Numbers, letters and reference characters must be at least .32 cm (1/8 inch) in height. 37 CFR 1.84(p)(3) Fig(s)_____

**13. LEAD LINES. 37 CFR 1.84(q)**
_____ Lead lines cross each other. Fig(s)_____
_____ Lead lines missing. Fig(s)_____

**14. NUMBERING OF SHEETS OF DRAWINGS. 37 CFR 1.84(t)**
_____ Sheets not numbered consecutively, and in Arabic numerals beginning with number 1. Fig(s)_____

**15. NUMBERING OF VIEWS. 37 CFR 1.84(u)**
_____ Views not numbered consecutively, and in Arabic numerals, beginning with number 1. Fig(s)_____

**16. CORRECTIONS. 37 CFR 1.84(w)**
_____ Corrections not made from PTO-948 dated_____

**17. DESIGN DRAWINGS. 37 CFR 1.152**
_____ Surface shading shown not appropriate. Fig(s)_____
_____ Solid black shading not used for color contrast. Fig(s)_____

**COMMENTS**




REVIEWER _____    DATE 10/14/97    TELEPHONE NO. 703 305 8404

ATTACHMENT TO PAPER NO._____
COPY