IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VENETEC INTERNATIONAL, INC.<br><br>        Plaintiff,<br><br>v.<br><br>NEXUS MEDICAL, LLC<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No.: 07-CV-0057 ***<br>)<br>)<br>)<br>)<br>) |

**NEXUS MEDICAL LLC'S REPLY TO VENETEC INTERNATIONAL, INC'S OPPOSITION TO THE MOTION TO STAY ALL PROCEEDINGS PENDING REEXAMINATION OF U.S. PATENT NO. 6,447,485 BY THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Richard K. Herrmann, #405
Mary B. Matterer, #2696
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
Telephone:  302-888-6800
Facsimile:   302-571-1750
mmatterer@morrisjames.com

Of Counsel:

Scott R. Brown  (Admitted *Pro Hac Vice*)
Jennifer C. Bailey  (Admitted *Pro Hac Vice*)
HOVEY WILLIAMS LLP
2405 Grand Boulevard, Suite 400
Kansas City, Missouri 64108
T:  816-474-9050
F:  816-474-9057

*ATTORNEYS FOR DEFENDANT
AND COUNTERCLAIM-PLAINTIFF
NEXUS MEDICAL, LLC*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ........................................................................................................................ 2

    A. Nexus Will Put the Other Two Patents-in-Suit into Reexamination upon Clarification of the Prosecution Bar of the Protective Order ............................................................................ 2

    B. The Invalidity of the Patents-in-Suit Is a Primary Issue in the Case, Especially Because of the Strength of the Invalidating Prior Art ................................................................................ 3

    C. This Court Recognizes a Liberal Policy of Granting Stays Pending Reexaminations and Often Grants a Stay Under Similar Facts as the Present Case ............................................ 6

    D. There Are Many Advantages and Efficiencies That Result from Stay ................................ 9

    E. A Stay Is Not Unduly Prejudicial to Venetec Because It Otherwise Has an Adequate Remedy of Monetary Damages ........................................................................................................ 9

    F. Denial of a Motion to Stay Conflicts with the Directives of Congress, which Provide for Reexamination Proceedings as a Means to Invalidate a Patent ........................................... 11

    G. The Status of Discovery Is Not So Far Along as to Warrant Continued Litigation ............ 12

    H. Venetec's Argument that the Inventions of a '485 and '979 Patents Are Distinct Under § 121 Is a Red Herring Without Any Relevance .......................................................................... 13

III. CONCLUSION .................................................................................................................... 15

## TABLE OF AUTHORITIES

**Statutes & Rules**

35 U.S.C. § 121 ............................................................. 13

35 U.S.C. § 303(a) ............................................................ 6

35 U.S.C. § 312(a) ......................................................... 3, 6

35 U.S.C. § 315(c) ............................................................ 9

**Cases**

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 05-590 GMS, 2006 WL 2375035 (D. Del. Aug. 16, 2006) ............................................................ 10, 11

*Alloc, Inc. v. Unilin Decor N.V.*, No. Civ.A. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003) ........................................................... 6, 7, 14

*Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343 (Fed. Cir. 2003) ........................ 10

*Arthocare Corp.v. Smith & Nephew, Inc.*, C.A. No. 01-504-SLR (D. Del. Nov. 27, 2002) ..... 7

*ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F.Supp. 1378 (N.D. Cal. 1991) ........... 6

*Automated Precision, Inc., et al. v. SpatialMetrix Corp*, No. C.A. 98-509-JJF (D. Del. Jan. 20, 1999) ................................................................... 8

*Brown v. Shimano American Corp.*, 18 U.S.P.Q.2d 1496, No. CV 88-6565 WJR (BX), 1991 WL 133586 (C.D. Cal. Jan. 29, 1991) .............................................. 6

*Centillion Data Systems, LLC, v. Avolent, Inc.*,
No. Civ.A. 05-712-JJF (D. Del. April 24, 2006) ..................................... 8

*Davol, Inc. v. Allegiance Healthcare Corp.*, C.A. 98-608-JJF (D. Del. Sept. 30, 1999) ........ 8

*In re Etter*, 756 F.2d 852 (Fed. Cir. 1985) ......................................... 5

*KSR Int'l v. Teleflex Inc.*, 127 S.Ct. 1727 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pegasus Development Corp. v. DirecTV, Inc.*, No. Civ.A. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Robert E. Harris Co., Inc. v. Metal Mfrg. Co., Inc.*, 19 U.S.P.Q.2d 1786, Civ. No. J-C-90-179, 1991 WL 217666 (E.D. Ark. June 21, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 11

*St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No. Civ.A. 01-557JJF, 2003 WL 25283239 (D. Del. Jan. 30, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**I.     INTRODUCTION**

Venetec's Opposition Brief has two main themes: (1) Requests for Reexamination have not been filed on all of the Patents-in-Suit; and (2) three of the four prior art references were already cited to the Patent Office during prosecution of the Patents-in-Suit. Neither support denial of the Motion to Stay. First, once the prosecution bar in the Protective Order is clarified by the Court, Nexus will file Requests for Reexamination on the '979 patent, which is already in-suit, and the '150 patent, which issues tomorrow, July 24th. Second, the prior art is so strong that the Requests for Reexamination will likely be granted and the scope of the claims will change significantly during the reexamination. Although Venetec is correct that three of the four references were cited during the original prosecution, Venetec leaves out the fact that only one of the references was a basis for any rejection, and that reference, the Gordon '880 patent, is not even one of the primary invalidating references in the reexamination. Venetec also fails to note that it cited **one hundred thirty** references during the prosecution. The patent examiner was no doubt completely inundated and buried under prior art, and it is of little surprise that the examiner, without the benefit of advocacy afforded in an adversarial proceeding, missed clearly invalidating references.

Venetec, which is owned by the pharmaceutical giant C.R. Bard, decries that it will be unduly prejudiced by the stay because Nexus will still be able to compete in the marketplace against Venetec and Bard during the reexamination proceedings. This is the only argument for prejudice that Venetec has, and it still is not persuasive enough to justify continued litigation for claims that will be eventually cancelled. Venetec never explains how Nexus, which is all of eight employees, can compete with Venetec to the extent it is unduly prejudiced. Moreover, Venetec never addresses why its alleged prejudice is so overwhelming as to negate the harm done to Nexus because of continued

litigation and the waste of resources this Court will experience. Nexus appreciates that Venetec desperately wants to salvage what it can from the Patents-in-Suit, which will soon all be under reexamination, but the prejudice to Nexus and waste of judicial resources in proceeding is just the type of extraordinary circumstance that Congress and the District of Delaware has called out as deserving of a liberal policy of relief by staying the present litigation.

**II.     ARGUMENT**

    **A.     Nexus Will Put the Other Two Patents-in-Suit into Reexamination upon Clarification of the Prosecution Bar of the Protective Order**

Much of Venetec's Opposition Brief is devoted to the fact that Nexus has not filed a Request for Reexamination of the second Patent-in-Suit, the '979 patent. Nexus submits that its Request for Reexamination of the '979 patent is almost complete. However, it has refrained from completing and filing the Request because of Venetec's threatened disqualification of Nexus's lead counsel, Scott R. Brown and Jennifer C. Bailey (collectively "Litigation Counsel"), for their preparation of the Request for Reexamination of the '485 patent. Because Litigation Counsel also prepared the '979 patent's Request to date, Nexus does not want to complete the Request and file it until the Court has clarified whether it can do so. (See D.I. 61). Otherwise, any work by Litigation Counsel on the Request could possibly be a waste if it then has to be redone by other counsel. Therefore, once the Court clarifies that Litigation Counsel can complete the '979 patent's Request and begin and complete the Request for the soon-to-be-added '150 patent, Nexus will quickly and without delay file the other two Requests for Reexamination. This should address any concern by Venetec that not all of the Patents-in-Suit will be in reexamination.

> **B.      The Invalidity of the Patents-in-Suit Is a Primary Issue in the Case, Especially Because of the Strength of the Invalidating Prior Art**

The second argument raised by Venetec is that three of the four references used as a basis for the reexamination of the '485 patent were cited during prosecution of the '485 and '979 patents and all four of the references were cited during prosecution of the '150 patent. (D.I. 64, pp. 8-11). Venetec's argument seems to be that there is no possibility that the reexamination will result in cancelled or amended claims. Nexus first notes that prior art cited during the original prosecution of the patent application can be a basis for granting reexamination. 35 U.S.C. § 312(a). Thus, Congress understood that mistakes can happen during prosecution and explicitly provided for the present circumstance, where the reexamination request is based on previously cited art. Furthermore, as shown below, the prior art cited in the Request for Reexamination will invalidate the claims.

Below is a side-by-side comparison of a figure from one of the prior art references (left figure) and a figure from the Patents-in-Suit (right figure). (Declaration of Scott R. Brown in Support of Nexus's Reply to Venetec's Opposition to Nexus's Motion to Stay ("Brown Dec."), Ex. A, PCT International Application, WO 96/10435, Fig. 9; Brown Dec., Ex. B, U.S. Patent No. 6,447,485, Fig. 1A). As can be seen, the catheter securement device illustrated in the Patents-in-Suit is strikingly similar to the securement device illustrated in the prior art reference. Indeed, the inventor and assignee on the prior art reference, which was published more than a year before the earliest priority date of the patents in question, is also the same as the Patents-in-Suit.



*Prior Art*  
**PCT WO 96/10435**  
**Fig. 9**

*Patent-in-Suit*  
**U.S. Patent No. 6,447,485**  
**Fig. 1A**

The ***only difference*** between the two figures is the addition of a leash to permanently secure the cover in the Patents-in-Suit figure. It is extremely doubtful that the addition of a leash to a securement device is patentable, especially given that other prior art references cited in the Request show a leash to permanently secure a cover, such as Fig. 7 from the Gordon '647 reference, illustrated below:

*Prior Art*  
**U.S. Patent No. 4,397,647**  
**Fig. 7**



4

(Brown Dec., Ex. C, U.S. Patent No. 4,397,647, Fig. 7). The Supreme Court's recent decision in *KSR Int'l v. Teleflex Inc.*, 127 S.Ct. 1727 (2007) makes it clear such trivial additions are not patentable. Even if a leashed cover is patentable, Nexus's device does not include such and therefore, would not infringe any claims amended during reexamination.

Venetec can decry all it wants about the prior art, but the fact is that the Patent Office made a mistake because it was under the burden of reviewing one hundred thirty references cited by Venetec[1]. Reexamination proceedings were implemented to correct such mistakes[2].

At pages 10-11 of its Brief, Venetec mischaracterizes the statutory presumption of validity. The presumption of validity applies to only issued patents and only as a mechanism for assigning the burden of proof when asserting invalidity of the patent in litigation. The presumption of validity does not exist in front of the Patent Office, and therefore, Venetec's reexamined patents do not enjoy a presumption of validity when under reexamination. *In re Etter*, 756 F.2d 852, 858-59 (Fed. Cir. 1985) ("This court has repeatedly pointed out that the § 282 presumption is a rule of procedure placing the burden of persuasion on him who attacks a patent's validity. There is no such attacker

---

[1] The Court might find it interesting that the Patent Office is considering implementation of new rules to prevent exactly what Venetec has benefitted from. The Patent Office understands that it is impossible for a patent examiner to adequately review numerous references during prosecution. Therefore, the proposed rules require, *inter alia*, that if a patentee, such as Venetec, decides to inundate the patent examiner with anything more than twenty references, the patentee is required to explain why the invention is patentable over each cited prior art reference. *Executive Summary: Information Disclosure Statement Notice of Proposed Rulemaking (IDS NPR)*, 71 Fed. Reg. 38808 (July 10, 2006); XX *Off. Gaz. Pat. Office* YY (August 1, 2006), <http://www.uspto.gov/web/offices/pac/dapp/opla/presentation/idsexecsummary.pdf> (Brown Dec., Ex. D).

[2] The Patent Office's statistics for *inter partes* reexamination up to March 31, 2007, show that 86% of *inter partes* reexaminations result in all claims cancelled. If the claims are cancelled, there is no patent to litigate. *Inter Partes* Reexamination Filing Data – March 31, 2007 (Brown Dec., Ex. E).

5

in a reexamination, and hence no one on whom that burden may be placed."). To the extent Venetec characterizes the presumption as applying in front of the Patent Office, such characterization is incorrect.

Venetec also intimates that it would be improper to grant the stay before the Patent Office has granted the Request for Reexamination. Nexus first notes that the Patent Office is required to rule on the Request within three months of filing, i.e., by September 25, 2007. 35 U.S.C. § § 303(a), 312(a). Nexus's counsel's experience with reexaminations is that the Patent Office will often rule within two months, which in this case would be by August 25, 2007. In any event, courts have found it appropriate in other similar cases to grant a stay before receiving a ruling by the Patent Office on the Request, with the understanding that should the Request be denied, the stay would be lifted. *Robert E. Harris Co., Inc. v. Metal Mfrg. Co., Inc.*, 19 U.S.P.Q.2d 1786, Civ. No. J-C-90-179, 1991 WL 217666, at *4 (E.D. Ark. June 21, 1991) (holding that should the request for reexamination be denied, the case could immediately be replaced on the trial calendar) (Brown Dec., Ex. F); *Brown v. Shimano American Corp.*, 18 U.S.P.Q.2d 1496, No. CV 88-6565 WJR (BX), 1991 WL 133586, at *1 (C.D. Cal. Jan. 29, 1991) (granting a temporary stay of litigation proceedings until the Patent Office ruled on the request for reexamination) (Brown Dec., G); *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F.Supp. 1378, 1381 (N.D. Cal. 1991) (granting stay even before request for reexamination was filed with the Patent Office).

    **C.**    **This Court Recognizes a Liberal Policy of Granting Stays Pending Reexaminations and Often Grants a Stay Under Similar Facts as the Present Case**

Contrary to Venetec's assertions, this Court has, in numerous cases, recognized that Congress approves of district courts liberally granting stays in view of pending reexaminations. *Alloc, Inc. v.*

*Unilin Decor N.V.*, No. Civ.A. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003) (Brown Dec., Ex. H); *Pegasus Development Corp. v. DirecTV, Inc.*, No. Civ.A. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2004) (and cases cited therein) (Brown Dec., Ex. I). The reference to granting stays only in "extraordinary circumstances" is generally referring to motions to stay, regardless of the basis. However, because Congress has sanctioned reexamination as a means of invalidating claims, this Court and others have uniformly stated that there is a liberal policy of granting stays pending reexaminations.

The facts of this case are the quintessential reason why a stay should be granted. The prior art cited during the reexamination is very strong, fact discovery is at its early stage and is not due for completion for another almost seven months, there are several Patents-in-Suit with over one hundred thirty-one combined claims, which presents a complex determination of infringement and invalidity, there is no trial date and no assigned judge, and the likelihood that any further work by this Court and the parties will be moot is very high.

Venetec cites several cases, all but one of them unreported, as allegedly supporting denial of a stay. (D.I. 64, p. 5). However, even a cursory review of them will show that each can be easily distinguished[3]:

(1) *Arthocare Corp. v. Smith & Nephew, Inc.*, C.A. No. 01-504-SLR (D. Del. Nov. 27, 2002) (Denying stay because "only one of the three patents[-in-suit] is undergoing reexamination, [] the patents at issue relate to an evolving and highly competitive market, and [] the reexamination

---

[3] Venetec highlights that the Delaware cases cited in Nexus's brief are only by Chief Judge Sleet. (D.I. 64, p. 5, n.3). Ironically, all but one of Venetec's cases that deny a stay are all by Judge Farnan.

proceedings to date have not been conducted with what the court would consider 'special dispatch.'");

(2) *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No. Civ.A. 01-557JJF, 2003 WL 25283239 (D. Del. Jan. 30, 2003) (Denying stay because trial was only weeks away, the reexamination was filed because of the court's claim constructions and not because of prior art, and the defendant delayed in filing the motion to stay);

(3) *Centillion Data Systems, LLC, v. Avolent, Inc.*, No. Civ.A 05-712-JJF (D. Del. April 24, 2006) (Denying stay because a third-party defendant in another case against plaintiff had filed the reexamination request and the court in that case found the request was filed as "yet another dilatory tactic by [the third-party defendant]";

(4) *Automated Precision, Inc., et al. v. SpatialMetrix Corp.*, No. C.A. 98-509-JJF (D. Del. Jan. 20, 1999) (Denying stay because the patent-in-suit had already undergone one reexamination, and the art cited in the second request for reexamination was most of the same art cited in the first reexamination); and

(5) *Davol, Inc. v. Allegiance Healthcare Corp.*, C.A. 98-608-JJF (D. Del. Sept. 30, 1999) (providing no fact analysis as to why denial of the stay was ordered, except for a reference to an already-scheduled trial date).

The non-Delaware District Court cases cited by Venetec are equally distinguishable. (D.I. 64, p. 5). The unifying theme of all the cases is that **denial** of a stay will occur only in the most egregious of cases, such as on the eve of trial or if the reexamination is filed with a dilatory motive. No such accusations have even been intimated in this case.

### D. There Are Many Advantages and Efficiencies That Result from a Stay

Venetec also argues that the litigation will be complicated by a stay. (D.I. 64., pp. 8-9). The basis for the argument is that not all of the Patents-in-Suit will be in reexamination. As noted above, Nexus intends to put all the patents into reexamination once the Court clarifies the Protective Order. Notwithstanding, Nexus also submits that there are numerous advantages and efficiencies to granting a stay pending the reexamination, such as (1) alleviation of many discovery problems relating to the prior art; (2) entry of the record of the reexamination proceeding at trial, which would consequently reduce the complexity and length of the litigation; (3) narrowing of the issues, defenses, and evidence; (4) encouragement of settlement due to the outcome of the reexamination; and (5) dismissal of the case if the patent is declared invalid. *Pegasus*, 2003 WL 21105073, at *2. These efficiencies will result in a reduced cost of litigation for the parties and more effective utilization of the limited resources of the court." *Id*.

Nexus has requested *inter partes* reexamination of the '485 patent, and it will do so for the '150 patent. The Court will benefit from the Patent Office's review because it will necessarily limit the arguments for invalidity that Nexus can make during the litigation, pursuant to the estoppel provisions of 35 U.S.C. § 315(c).

### E. A Stay Is Not Unduly Prejudicial to Venetec Because It Otherwise Has an Adequate Remedy of Monetary Damages

Prejudice is, of course, a factor in determining whether to grant a stay. What Venetec fails to note, however, is that the prejudice must be undue. The only reason Venetec submits for its prejudice is that Nexus will continue to compete in the marketplace with Venetec during the reexamination proceedings. Venetec is a multi-million dollar company, and it is owned by a multi-

billion dollar company, C.R. Bard. (D.I. 3). Nexus is a relatively small, new entrant to the catheter market, and Venetec is exaggerating the prejudice that it would experience from Nexus's entry in the marketplace. The fact that Venetec did not seek preliminary injunctive relief clearly negates its claim of any prejudice arising from the stay. In any event, such a motion would have failed because Venetec cannot show a substantial likelihood of success on the merits, both for infringement and because of its own invalidating prior art publication depicted above. *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed. Cir. 2003).

Venetec has an adequate legal remedy due to its claim for damages. This and other courts that have addressed a similar set of facts have decided that any prejudice to the patentee was not so undue as to warrant continuing needless litigation. In *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 05-590 GMS, 2006 WL 2375035, at *5-6 (D. Del. Aug. 16, 2006) (Brown Dec., Ex. J), this Court granted a stay due to a pending reexamination, even though the patentee was selling product and argued that a stay would "present[] it with a clear tactical disadvantage in the marketplace." *Id*. at *5. In dismissing the claims of prejudice by the patentee, the Court stated that "while [the patentee] may suffer some prejudice from a stay, the court is not persuaded that a stay would *unduly* prejudice [the patentee], or present any clear tactical disadvantage." *Id*. (emphasis in original).

Similarly, in *Metal Mfrg. Co.*, 1991 WL 217666, at *4, plaintiff-patentee and defendant competed in the marketplace. The plaintiff argued that it would be prejudiced by a stay because of the continued existence of the defendant in the marketplace and that such prejudice "would outweigh any benefit which might result from the reexamination procedure." *Id*. Even though the case was set for trial the following month, the Court still granted the stay because the parties had not engaged in expensive discovery or extensive pretrial preparation, and the patentee had an adequate legal

10

remedy in seeking monetary damages. The same set of facts occurs in the present case. To date, the parties have not engaged in extensive discovery, there is, of course, no pre-trial preparation as of yet, and Venetec has sought damages from Nexus.

In both *Abbott* and *Metal Mfrg.*, the court held that a stay was warranted and that the prejudice to the patentee was not undue, even though the patentee and the accused infringer would be competing in the marketplace during the reexamination proceedings. The patentee had an adequate legal remedy because it sought damages. The facts of this case offer no different conclusion.

      **F.    Denial of a Motion to Stay Conflicts with the Directives of Congress, which Provide for Reexamination Proceedings as a Means to Invalidate a Patent**

Congress sanctioned both *ex parte* and *inter partes* reexaminations as a means for an adverse party, such as Nexus, to invalidate a patent, as opposed to litigation in the courts:

> The bill does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pre-trial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures [reexamination proceedings] provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner.

H.R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4, *reprinted in* [1980] U.S. Code Cong. & Ad. News 6460, 6463 (discussing the *ex parte* reexamination statute).

> Title V reduces expensive patent litigation in U.S. district courts by allowing third-party requesters to participate minimally in reexamination proceedings in the PTO. Congress enacted legislation to authorize reexamination of patents in the PTO in 1980, but reexamination has been used infrequently since a third party who requests reexamination cannot participate at all in the proceedings. Numerous witnesses have suggested that the volume of lawsuits in district courts will be reduced if third parties are given an opportunity to make their case for patent invalidity in the PTO. Title V encourages third parties to rely on reexamination proceedings.

11

H.R. No. 106-287(I), 106th Cong., 1st Sess. (1999) (discussing the *inter partes* reexamination statute).

It therefore follows that Congress expects and desires defendants accused of infringement to take advantage of reexaminations as a means for invalidating claims instead of seeking such in the courtroom. The benefit from a reexamination would be negated by continued litigation proceedings. This case present the type of circumstances for which Congress fashioned the reexamination statutes, and denying a stay so that needless litigation can move forward would conflict with those directives.

### G.  The Status of Discovery Is Not So Far Along as to Warrant Continued Litigation

Venetec completely overstates the amount of discovery that has taken place thus far. When Nexus initially notified Venetec of its intent to file the present Motion on June 18th, the parties had only participated in a first round of written discovery. Only then did Venetec actively begin discovery. It then immediately requested a multi-week delay in the briefing schedule of the stay request, which was clearly designed to press discovery during the pendency of this Motion. This is just the sort of pre-trial maneuvering that Congress intended to cure via the reexamination statutes. Regardless, the parties are not so involved in discovery at this juncture as to warrant continued litigation. Moreover, contrary to Venetec's assertions, Nexus is not refusing to participate in discovery but instead is requesting relief from the Court via the pending Motion for a Protective Order.

Venetec also overstates the discovery it has provided so far. The "infringement contentions" provided by Venetec are nothing but a chart quoting the asserted claims on a left-hand side column, and a regurgitation of the claim language and a picture of the accused product on the right-hand side

column. It goes without saying that illustrating a picture of the accused product is not an infringement contention and certainly does not satisfy an assertion of a detailed exchange. Additionally, Nexus has not yet asked for, and Venetec has not yet provided, its claim constructions, notwithstanding Venetec's insistence to the contrary.

Contrary to Venetec's insinuations that there is a great urgency, it is willing to significantly expand the scope of the lawsuit by adding the '150 patent. Nexus will need additional discovery regarding the prosecution of the '150 patent, depositions regarding prosecution of the patent, discovery on a possible inequitable conduct claim for Venetec's failure to cite to the patent examiner in the '150 patent application the Request for Reexamination of the '485 Patent, additional claim constructions and infringement and invalidity contentions, and other related issues.

### H. Venetec's Argument that the Inventions of the '485 and '979 Patents Are Distinct Under § 121 Is a Red Herring Without Any Relevance

Venetec speciously argues that the reexamination of the '485 patent will not affect the '979 or '150 patents because the Patent Office declared them distinct inventions under 35 U.S.C. § 121. It is quite common for the Patent Office to issue a restriction requirement when there are both method and apparatus or system claims directed to the same basic underlying subject matter. However, rather than arguing about the similarity of the claims, Nexus believes the Court can determine for itself how close some of the claims in one patent are to claims in another patent, including the '150 patent. For example, below are excerpts from a sampling of independent claims from each of the patents that shows the similarity in recited structure:

> a retainer, the retainer including a base that defines a receiving area for receiving a portion of the medical line and a cover coupled to the base, means for releasably latching the cover to the base, and means for limiting longitudinal movement of the

13

> medical line relative to the retainer . . the cover lies at least partially over the movement limiting means.

(Brown Dec., Ex. B, '485 Patent, Cols. 23-24, Claim 22).

> a retainer, the retainer including a base that defines a receiving area for receiving a portion of the medical line and a cover coupled to the base, means for releaseably latching the cover to the base, and means for limiting longitudinal movement of the medical line relative to the retainer, said movement limiting means located at least partially beneath the cover when the cover is latched to the base.

(Brown Dec., Ex. K, U.S. Patent No. 6,213,979, Col. 24, Claim 49).

> a retainer including a base that defines a receiving area for receiving a portion of the fitting of the medical line, a cover coupled to the base, the cover being movable between a closed position, in which at least a portion of the cover extends over at least a portion of the receiving area, and an open position, in which the receiving area is at least partially open, a coupling operating between the base and the cover to releasably connect a portion of the cover to the base with the cover in the closed position, and interacting structure which is adapted to engage at least a portion of the fitting and to inhibit longitudinal movement of the fitting through the retainer when the fitting is placed within the receiving area, the interacting structure being located at least partially beneath the cover with the cover in the closed position.

(Brown Dec., Ex. L, Amendment in the '150 Patent Application Listing the Allowed Claims, Claim 1).

The Patents-in-Suit are all related, and the '485 and '150 patents are continuing applications of the '979 patent. As such, all of the applications disclose the same subject matter, as admitted by Venetec. Any amendments to or cancellation of the claims in one of the patents will most certainly affect the validity of other, similar claims in the related patents. *See Alloc*, 2003 WL 21640372, at *2 (granting a stay in view of a pending reexamination of a patent related to the patent-in-suit due to the "sufficient correlations among all of the [related] patents" and stating that the patentee "cannot credibly argue that the patents are not alike in subject matter.").

### III.   CONCLUSION

For the reasons set forth above and in its opening Motion, Nexus requests that the present proceedings be stayed pending a final outcome in the reexaminations of the Patents-in-Suit.

Respectfully submitted,

Date:   July 23, 2007

/s/ Mary B. Matterer
Richard K. Herrmann, #405
Mary B. Matterer, #2696
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
Telephone:  302-888-6800
Facsimile:  302-571-1750
mmatterer@morrisjames.com

Of Counsel:

Scott R. Brown  (Admitted *Pro Hac Vice*)
Jennifer C. Bailey  (Admitted *Pro Hac Vice*)
HOVEY WILLIAMS LLP
2405 Grand Boulevard, Suite 400
Kansas City, Missouri 64108
T:  816-474-9050
F:  816-474-9057

*ATTORNEYS FOR DEFENDANT
AND COUNTERCLAIM-PLAINTIFF
NEXUS MEDICAL, LLC*