# Morris James LLP

Mary B. Matterer
302.888.6816
mmatterer@morrisjames.com

September 27, 2007

**VIA EFILING AND HAND DELIVERY**
The Honorable Mary Pat Thynge
USDC for the District of Delaware
844 King Street
Wilmington, DE 19801

Re:     *Venetec International, Inc. v. Nexus Medical, LLC*, C.A. No. 07-057 ***

Your Honor:

   As you know, Defendant Nexus filed a Request for Reexamination of U.S. Patent No. 6,447,485, one of the Patents-in-Suit in the above-captioned litigation, with the U.S. Patent Office on June 25, 2007. Nexus recently received notice from the U.S. Patent Office that it granted the Request for *Inter Partes* Reexamination of the '485 patent. Nexus is submitting this letter because Your Honor indicated an interest in knowing the outcome of the Request for Reexamination in connection with Nexus's pending motion to stay all proceedings. A copy of the Order granting *inter partes* reexamination as issued by the Patent Office and dated September 21, 2007, is enclosed as Exhibit A. The Patent Office also issued an Office Action to the patentee, Plaintiff Venetec, a copy of which is enclosed as Exhibit B.

   Notably, the Patent Office agreed with each of Nexus's bases for requesting reexamination. The Patent Office found that there was a substantial new question of patentability of all the claims requested for reexamination, which includes all of the independent claims and the claim Venetec asserts is infringed in the present litigation. For each of the bases of unpatentability set forth in the reexamination request by Nexus and adopted by the Patent Office, the Office stated that "there is a substantial likelihood that a reasonable examiner would consider these teachings [of the respective cited reference] important in deciding whether or not the claims are patentable." (See Ex. A, Order, pp. 8, 10, 13, 15, 17, 19, and 21). Moreover, claim 22 asserted against Nexus in this litigation stands rejected by the Patent Office as anticipated by three different references and rendered obvious by various combinations of all four references cited by Nexus in its request for reexamination. The reasoning applied by the Patent Office will have equal force against the remaining asserted claims in this lawsuit. Nexus is still awaiting the Court's ruling on its Motion to Clarify the Protective Order to proceed and file the remaining requests for reexamination, one of which has been prepared already by "Litigation Counsel" for Nexus.

The Honorable Mary Pat Thynge
September 27, 2007
Page 2



Venetec will now have two months to respond to the Office Action, which may only be extended by Venetec upon showing of sufficient cause and usually for only one month. Upon filing of a response to the Office Action, Nexus will have 30 days, non-extendable, to rebut Venetec's response. Therefore, the reexamination of the '485 patent will now proceed with the "special dispatch" set forth in 35 U.S.C. § 314(c).

Therefore, based on the Patent Office statistics previously cited in Nexus's briefing, it is highly likely that the rejected claims in the '485 patent, including the asserted claim in this litigation, will not survive reexamination with its present limitations. Any attendant litigation of the asserted claim, should it even survive in an amended form, will be wasted, as new limitations with likely new claim constructions, theories of invalidity, and theories of infringement will have to be relitigated.

Should Your Honor have any questions or need further information prior to the mediation next week, please let me know.

Respectfully,

/s/ Mary B. Matterer

Mary B. Matterer, I.D. No. 2696
mmatterer@morrisjames.com

MBM/tmp

cc:    Maryellen Noreika, Esq. (via email and hand delivery)
       Steven C. Cherny, Esq. (via email)
       Maximilian A. Grant, Esq. (via email)

# Exhibit A

 UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.gov

| CONTROL NO. | FILING DATE | PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 95/000,271 | 06/25/07 | 6,447,485 | |

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| FLANAGAN, B. |

| ART UNIT | PAPER |
|---|---|
| 3993 | |

DATE MAILED:

09/21/07

# *INTER PARTES* REEXAMINATION COMMUNICATION

BELOW/ATTACHED YOU WILL FIND A COMMUNICATION FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE OFFICIAL(S) IN CHARGE OF THE PRESENT REEXAMINATION PROCEEDING.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this communication.

PTOL-2071 (Rev.07-04)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

HOVEY WILLIAMS, LLP
2405 GRAND BOULEVARD
SUITE 400
KANSAS CITY, MO 64108

# Transmittal of Communication to Third Party Requester
## *Inter Partes* Reexamination

REEXAMINATION CONTROL NUMBER *95/000,271*.

PATENT NUMBER *6,447,485*.

TECHNOLOGY CENTER *3999*.

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

PTOL-2070 (Rev.07-04)

| ORDER GRANTING/DENYING REQUEST FOR INTER PARTES REEXAMINATION | Control No. | Patent Under Reexamination |  |
|---|---|---|---|
|  | 95/000,271 | 6447485 |  |
|  | Examiner | Art Unit |  |
|  | Beverly M. Flanagan | 3993 |  |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

The request for *inter partes* reexamination has been considered. Identification of the claims, the references relied on, and the rationale supporting the determination are attached.

Attachment(s): ☐ PTO-892   ☒ PTO/SB/08   ☐ Other: _____

1. ☒ The request for *inter partes* reexamination is GRANTED.

　　☒ An Office action is attached with this order.

　　☐ An Office action will follow in due course.

2. ☐ The request for *inter partes* reexamination is DENIED.

This decision is not appealable. 35 U.S.C. 312(c). Requester may seek review of a denial by petition to the Director of the USPTO within ONE MONTH from the mailing date hereof. 37 CFR 1.927. EXTENSIONS OF TIME ONLY UNDER 37 CFR 1.183. In due course, a refund under 37 CFR 1.26(c) will be made to requester.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Order.

Application/Control Number: 95/000,271　　　　　　　　　　　　　Page 2
Art Unit: 3993

## DECISION GRANTING INTER PARTES REEXAMINATION

### *Substantial New Question of Patentability*

A substantial new question of patentability affecting claims 1-3, 5-8, 11-13, 15-18, 21 and 22 of U.S. Patent No. 6,447,485 to Bierman (hereinafter Bierman '485) is raised by the present request for *inter partes* reexamination.

Extensions of time under 37 CFR 1.136(a) will not be permitted in *inter partes* reexamination proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. § 314(c) requires that *inter partes* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.937). Patent owner extensions of time in *inter partes* reexamination proceedings are provided for in 37 CFR 1.956. Extensions of time are not available for third party requester comments, because a comment period of 30 days from service of patent owner's response is set by statute. 35 U.S.C. § 314(b)(3).

### *Notification of Concurrent Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.985(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving U.S. Patent No. 6,447,485 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2686 and 2686.04.

Application/Control Number: 95/000,271                                Page 3
Art Unit: 3993

### References Relied Upon

The following prior art documents are relied upon by requester in support of this request for *inter partes* reexamination:

1.    Sorbonne, U.S. Patent No. 4,517,971 (hereinafter "Sorbonne);

2.    Bierman, PCT Publication No. WO 96/10435 (hereinafter "Bierman '435")

3.    Gordon, U.S. Patent No. 4,397,647 (hereinafter "Gordon '647"); and

4.    Gordon, U.S. Patent No. 4,250,880 (hereinafter "Gordon '880").

### Requester's Position

The request indicates that the third party requester considers:

1.    Claims 1-3, 5-8, 11-13, 15-18, 21 and 22 to be unpatentable over Sorbonne alone;

2.    Claims 1 and 12 to be unpatentable over Bierman '435 taken with of Sorbonne;

3.    Claims 2, 6, 16 and 22 to be unpatentable over Sorbonne taken with Bierman '435[1];

4.    Claim 1 to be unpatentable over Gordon '647 taken with Gordon '880;

5.    Claims 12 and 22 to be unpatentable over Gordon '647 alone;

---

[1] The examiner has assumed that requester proposes claims 2, 6 and 16 to be unpatentable over Sorbonne taken with Bierman '435. Regarding claims 2 and 6, statements at pages 15-17 of the request appear to indicate that requester is proposing that the claims are unpatentable over Bierman '435 in view of Sorbonne. However, taken as a whole and considering the claim chart at pages 53-55, the examiner is considering Sorbonne taken with Bierman '435 to be the proposed grounds of rejection for claims 2, 6 and 16.

Application/Control Number: 95/000,271                                    Page 4
Art Unit: 3993

6.    Claim 22 to be unpatentable over Bierman '435 alone; and

7.    Claim 22 to be unpatentable over Gordon '647 taken with Bierman '435.


### Prosecution History of the Bierman '485 Patent

U.S. Patent No. 6,447,485 issued from an application with the Serial No.

09/797,341, which was filed on March 1, 2001. The '341 application was a divisional of

an application with the Serial No. 08/865,231, filed on May 29, 1997, now U.S. Patent

No. 6,213,979.


### Substantial New Question (SNQ)

The substantial new questions of patentability with respect to Sorbonne is

based on a new teaching, not previously considered or addressed in the prior

examination of the patent or a final holding of invalidity by the Courts. The substantial

new question of patentability with respect to Bierman '435 and Gordon '647 is based on

patents already cited by the applicant and considered, but not applied.  The substantial

new question of patentability with respect to Gordon '880 is based on a patent already

cited and applied[2].   However, while Gordon '880 was applied to the claims, it was not

considered and applied in combination with Gordon '647, as proposed by requester.

Accordingly, consideration of Gordon '880 in combination with the Gordon '647 presents

a new light under which Gordon '880 is viewed.  As is well settled, on November 2,

2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of

Application/Control Number: 95/000,271                                    Page 5
Art Unit: 3993

the Act revised the reexamination statute by adding the following new last sentence to
35 U.S.C. 303(a) and 312(a):

> "The existence of a substantial new question of patentability is not precluded by the
> fact that a patent or printed publication was previously cited by or to the Office or
> considered by the Office."

For any reexamination ordered on or after November 2, 2002, the effective date
of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does
not necessarily preclude the existence of a substantial new question of patentability
(SNQ) that is based exclusively on that old art. Rather, determinations on whether a
SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a
case-by-case basis. A SNQ may be based solely upon "old art" where the old art is
being presented/viewed in a new light, or in a different way, as compared to is use in
the earlier concluded examination, in view of a material new argument or interpretation
presented in the request.

A discussion of the specifics now follows:

---

[2] Gordon '880 was applied to the claims in application Serial No. 08/865,231, which is the grandparent of
the instant patent. See the "Prosecution History" section above.

Application/Control Number: 95/000,271                                          Page 6
Art Unit: 3993

### *Claims 1-3, 5-8, 11-13, 15-18, 21 and 22 of Bierman '485 to be unpatentable over*

### *Sorbonne alone*

It is agreed that consideration of Sorbonne alone raises a substantial new

question of patentability as to claims 1-3, 5-8, 11-13, 15-18, 21 and 22 of Bierman '485.

As pointed out in the request, Sorbonne teaches a method of securing a medical device

(a catheter tube) to a patient using a retainer or device 10 including a base 16, an

operable cover or lid 20 and adhesive strips 23 and 24 (see Figs. 2-4 and col. 3, lines

56-58). It is agreed that Sorbonne teaches that base 16 comprises a substantially

planar shape-retaining part for receiving the catheter tube (see Figs. 4 and 5 and col. 3,

lines 64-65). It is also agreed that Sorbonne teaches that the cover 20 of the device 10

is permanently secured to the base 16 and hinged at site 18 (see Fig. 5, col. 3, lines 56-

57 and col. 4, lines 67-68). It is also agreed that Fig. 5 demonstrates that the cover 20

is movable between a closed position that at least partially extends over the shape-

retaining part, and an open position in which the shape-retaining part is at least partially

open (see also col. 6, lines 18-21). It is further agreed that Sorbonne's device 10 further

includes a latching mechanism that releasably latches the cover 20 to the base 16 and

the base includes two integral hollow spools or annular cylindrical anchors 42, 44,

where each spool extends generally upwards from the base 16 (see Figs. 4 and 5 and

and col. 4, lines 25-28). It is also agreed that the cover 20 includes opposing projecting

cylindrical studs or posts 90 that are sized and located so as to be in alignment with the

annularly hollow spools 42 and 44 (see col. 5, lines 34-39). It is also agreed that

Sorbonne teaches that the studs 90 fit within the hollow interior 46 in snug tight-fitting

Application/Control Number: 95/000,271                    Page 7
Art Unit: 3993

though releasable relation when the cover is in a closed position to form a snap or

friction latch (see col. 5, lines 39-42). It is also agreed that device 10 further includes

interacting structure adapted to engage the catheter tube in a non-occlusive manner,

comprised of cylindrical posts 42, 44 secured to the base 16, where the tubing is

threaded around the posts to prevent crimping or occlusion of the tubing 102 (see Fig. 4

and col. 6, lines 10-16). It is also agreed that this structural arrangement further inhibits

movement of the catheter tube in a direction generally parallel to the tube's longitudinal

axis (see col. 6, lines 13-17 and 22-25). It is further agreed that the device 10 is

operable to be positioned on the body of a patient using the adhesive strips 23, 24 (see

Fig. 1 and col. 6, lines 5-10) and the catheter tubing 102 can be secured in the device

10 by threading the tubing around the posts 42, 44 (see col. 6, lines 10-13). It is also

agreed that the cover 20 is moved over the base 16 and secured by pressing the

cylindrical hubs or posts 90 into the hollow interiors 46 of the spools 42, 44 (see col. 6,

lines 18-21).

　　　　It is also agreed that Sorbonne teaches a channel through which the catheter

tube is threaded and the channel is formed on the retainer 10 and lies between the base

16 and the cover 20 when the cover is in the closed position and that both posts 42, 44

extend into the channel (see Figs. 4 and 5). It is also agreed that Sorbonne shows that

the channel gradually narrows towards its left-hand side, thus forming a variable cross-

section or taper along its length (see Fig. 4). It is further agreed that the catheter tube is

threaded around the posts 42, 44 and through the channel so as to secure the medical

device to the body of the patient (see Fig. 4 and col. 6, lines 11-13). It is also agreed

Application/Control Number: 95/000,271                          Page 8
Art Unit: 3993

that the cover 20 is flexible hinged at line 18 and may be manually opened and closed

by a pivotal or hinged action (see Fig. 5, col. 4, lines 67-68 and col. 3, lines 56-58).  It is

also agreed that Sorbonne teaches a integrally-formed base, cover and hinge, as

shown in Fig. 5 (see also col. 3, lines 49-51).

        These teachings of Sorbonne were not present in the prosecution of the

application which became the Bierman '485 patent.  Further, there is a substantial

likelihood that a reasonable examiner would consider these teaching important in

deciding whether or not the claims are patentable.  Accordingly, Sorbonne is considered

to raise a substantial new question of patentability as to claims 1-3, 5-8, 11-13, 15-18,

21 and 22 of the Bierman '485 patent.


### Claims 1 and 12 of Bierman '485 to be unpatentable over Bierman '435 taken with Sorbonne

        It is agreed that consideration of Bierman '435 taken with Sorbonne raises a

substantial new question of patentability as to claim 1 of Bierman '485.  As pointed out

in the request, Bierman '435 teaches a method for securing a medical line using an

anchoring system 10 that includes an anchor base or retainer 20 (see page 4, lines 24-

25).  It is agreed that Bierman '435 teaches that retainer 20 defines a receiving area to

provide releasable retention for the catheter 12 9see page 6, lines 9-10).  It is also

agreed that Bierman '435 teaches a cover that comprises an overlying box clamp 14

that overlies and engages a soft wing clamp 18 that surrounds a portion of the catheter

12 (see page 4, lines 22-24).  It is also agreed that Sorbonne discloses a cover 20 that

Application/Control Number: 95/000,271                                    Page 9
Art Unit: 3993

is permanently secured to the base 16 and hinged at site 18 (see col. 3, lines 56-57 and

col. 4, lines 67-68). It is also agreed that the box clamp 14 is movable between a

closed position wherein it overlies the wing clamp 18 and it extends over at least a

portion of the receiving area of the retainer 20 and an open position in which the

receiving area is open (see Figs. 8-9 and page 4, lines 24-25). It is also agreed that

Bierman teaches a latching mechanism for releasably latching the box clamp 18 to the

retainer 20 comprised of posts 17 secured to the retainer 20 and openings 42 formed in

wings of both the box clamp 14 and the wing clamp 18 (see Fig. 9 and page 7, lines 6-

13). It is further agreed that the posts 17 of the box clamp 14 are aligned with the

slotted openings 42 on the top surface of the retainer 20 such that the tip 44 of each

post 17 passes through the corresponding large diameter hole 42a of the retainer 20

(see page 7, lines 9-11). It is agreed that engagement of the posts 17 and the openings

42 serves to retain the box clamp combination secured in place within the retainer 20

(see page 7, lines 19-20). It is also agreed that the wing clamp 18 is capable of

surrounding and engaging longitudinally a portion of the catheter 12 to provide a secure

means for engaging and retaining the catheter 12 in place (see page 5, lines 17-21). It

is also agreed that the elongate body 32 is then sized to be received within a

longitudinal groove 28 formed in the box clamp 14 and wing clamp 18 and can be

secured to the retainer via holes 42 in the lateral wings of both the box and wing clamps

and the holes 42 are aligned with the posts 17 so that the catheter 12 is retained in

place by the engagement of the posts 17 with the holes 42 (see Fig. 9 and page 5, lines

30-31). It is further agreed that the retainer 20 is operable to be positioned on the body

of a patient by attaching the retainer 20 to the patient via an adhesive layer and the

medical device is then secured in the receiving area of the base (see page 7, lines 4-

20). It is also agreed that the cover comprising the box clamp 14 is secured over the

retainer 20 such that the box clamp 14 covers at least a portion of the posts 17 and

wing clamp 18 and the box clamp 14 is secured to the retainer 20 by inserting the posts

17 through the openings 42 on the wings of the clamp 14 (see Fig. 9 and page 7, lines

6-20).

These teachings of Bierman '435 were present in the prosecution of the

application which became the Bierman '485 patent and were considered, but not

applied. These teachings on Sorbonne were not present in the prosecution of the

application which became the Bierman '485 patent. Further, there is a substantial

likelihood that a reasonable examiner would consider these teachings important in

deciding whether or not the claims are patentable. Accordingly, Bierman '435 taken

with Sorbonne is considered to raise a substantial new question of patentability as to

claims 1 and 12 of the Bierman '485 patent.

### Claims 2, 6, 16 and 22 of Bierman '485 to be unpatentable over Sorbonne taken with Bierman '435

It is agreed that consideration of Sorbonne taken with Bierman '435 raises a

substantial new question of patentability as to claims 2, 6, 16 and 22 of Bierman '485.

As pointed out in the request, Bierman '435 teaches a channel 28 in which the wing

clamp 18 lies and the channel 28 lies between the base 20 and the cover 14 when the

cover is secured to the base 20 in the closed position (see Fig. 9 and page 5, lines 30-31). It is also agreed that Bierman '435 teaches that the medical device comprising the catheter tube 12 is secured within the soft wing clamp 18, which is then secured within the channel 28, such that a portion of the medical device 12 is placed within the channel 28 (see Figs. 2 and 9 and page 4, lines 33-35).

As also pointed out in the request, Sorbonne teaches a method of securing a medical device (a catheter tube) to a patient using a retainer or device 10 including a base 16, an operable cover or lid 20 and adhesive strips 23 and 24 (see Figs. 2-4 and col. 3, lines 56-58). It is agreed that Sorbonne teaches that base 16 comprises a substantially planar shape-retaining part for receiving the catheter tube (see Figs. 4 and 5 and col. 3, lines 64-65). It is also agreed that Sorbonne teaches that the cover 20 of the device 10 is permanently secured to the base 16 and hinged at site 18 (see Fig. 5, col. 3, lines 56-57 and col. 4, lines 67-68). It is also agreed that Fig. 5 demonstrates that the cover 20 is movable between a closed position that at least partially extends over the shape-retaining part, and an open position in which the shape-retaining part is at least partially open (see also col. 6, lines 18-21). It is further agreed that Sorbonne's device 10 further includes a latching mechanism that releasably latches the cover 20 to the base 16 and the base includes two integral hollow spools or annular cylindrical anchors 42, 44, where each spool extends generally upwards from the base 16 (see Figs. 4 and 5 and and col. 4, lines 25-28). It is also agreed that the cover 20 includes opposing projecting cylindrical studs or posts 90 that are sized and located so as to be in alignment with the annularly hollow spools 42 and 44 (see col. 5, lines 34-39). It is

Application/Control Number: 95/000,271                                      Page 12
Art Unit: 3993

also agreed that Sorbonne teaches that the studs 90 fit within the hollow interior 46 in

snug tight-fitting though releasable relation when the cover is in a closed position to

form a snap or friction latch (see col. 5, lines 39-42).  It is also agreed that device 10

further includes interacting structure adapted to engage the catheter tube in a non-

occlusive manner, comprised of cylindrical posts 42, 44 secured to the base 16, where

the tubing is threaded around the posts to prevent crimping or occlusion of the tubing

102 (see Fig. 4 and col. 6, lines 10-16).  It is also agreed that this structural

arrangement further inhibits movement of the catheter tube in a direction generally

parallel to the tube's longitudinal axis (see col. 6, lines 13-17 and 22-25).  It is further

agreed that the device 10 is operable to be positioned on the body of a patient using the

adhesive strips 23, 24 (see Fig. 1 and col. 6, lines 5-10) and the catheter tubing 102 can

be secured in the device 10 by threading the tubing around the posts 42, 44 (see col. 6,

lines 10-13).  It is also agreed that the cover 20 is moved over the base 16 and secured

by pressing the cylindrical hubs or posts 90 into the hollow interiors 46 of the spools 42,

44 (see col. 6, lines 18-21).

        It is also agreed that Sorbonne teaches a channel through which the catheter

tube is threaded and the channel is formed on the retainer 10 and lies between the base

16 and the cover 20 when the cover is in the closed position and that both posts 42, 44

extend into the channel (see Figs. 4 and 5).  It is also agreed that Sorbonne shows that

the channel gradually narrows towards its left-hand side, thus forming a variable cross-

section or taper along its length (see Fig. 4).  It is further agreed that the catheter tube is

threaded around the posts 42, 44 and through the channel so as to secure the medical

device to the body of the patient (see Fig. 4 and col. 6, lines 11-13). It is also agreed

that the cover 20 is flexible hinged at line 18 and may be manually opened and closed

by a pivotal or hinged action (see Fig. 5, col. 4, lines 67-68 and col. 3, lines 56-58). It is

also agreed that Sorbonne teaches an integrally-formed base, cover and hinge, as

shown in Fig. 5 (see also col. 3, lines 49-51). It is further agreed that Bierman '435

teaches means for limiting longitudinal movement comprising a soft wing clamp 18

configured to receive a catheter within a central elongate body 32 (see page 5, lines 17-

18). It is agreed that the combined box clamp 14 and wing clamp 18 can be secured to

the retainer via holes 42 in the lateral wings of both the box and wing clamps and the

holes 42 are aligned with the posts 17 to that the catheter 12 is retained in place by the

engagement of the posts 17 with the holes 42 (see page 6, line 36 through page 7, line

3).

　　　These teachings on Sorbonne were not present in the prosecution of the

application which became the Bierman '485 patent. These teachings of Bierman '435

were present in the prosecution of the application which became the Bierman '485

patent and were considered, but not applied. Further, there is a substantial likelihood

that a reasonable examiner would consider these teachings important in deciding

whether or not the claims are patentable. Accordingly, Sorbonne taken with Bierman

'435 is considered to raise a substantial new question of patentability as to claims 2, 6,

16 and 22 of the Bierman '485 patent.

Application/Control Number: 95/000,271                                    Page 14
Art Unit: 3993

### *Claim 1 of Bierman '485 to be unpatentable over Gordon '647 taken with Gordon '880*

It is agreed that consideration of Gordon '647 taken with Gordon '880 raises a substantial new question of patentability as to claim 1 of Bierman '485. As pointed out in the request, Gordon '647 teaches a catheter-stabilizer 10, 40 having a base member 11, 41 on which is supported a support member 14 and the support member 14 is a retainer integrally formed with a cradle 16 (see Figs. 6-9 and col. 3, lines 1-4, 42 and 56-59 and col. 6, lines 17-34). It is agreed that the cradle 16, 41 is a base for the catheter-stabilizer 10 and defines a receiving area (the inside of the cradle or inside recesses 47, 48) for the catheter tube (see col. 3, lines 63-65 and col. 5, line 63 through col. 6, line 6). It is also agreed that Gordon '647 teaches a cover member 25, 46 that is permanently coupled to the cradle 16 and is movable between open and closed positions, and in a closed position, the cover extends over a portion of the cradle 16 and in an open position, the cradle 16 is at least partially open (see Fig. 3 and col. 4, lines 16-26). It is also agreed that Gordon '647 teaches a latch mechanism comprised of vertically spaced longitudinally extending ribs 30, 31, 32 that are positioned to provide resilient engagement with projection 29 and projection 29 engages any one of the ribs to releasably latch the cover 25 closed (see Fig. 3, col. 4, lines 43-53 and col. 5, lines 2-6). It is also agreed that Gordon '647 teaches interacting structure comprising rubs 21, 28 positioned within the cradle where the ribs receive and hold the catheter within the cradle 16 upon closing of the cover (see Fig. 5). It is also agreed that the vertical spacing or height of the rubs provides a firm grip against longitudinal displacement of

Application/Control Number: 95/000,271                                    Page 15
Art Unit: 3993

the tubing within the stabilizer (see col. 5, lines 23-26).  It is also agreed that Gordon

'880 teaches a similar cradle 12 comprising a plurality of internal, longitudinal ridges 28

and the cradle is dimensioned to received a standard catheter hub boss 36a, which

limits longitudinal movement of the catheter by providing a surface that cannot be

forcibly moved past ribs 60  (see Figs. 7 and 15, col. 3, lines 18-24 and col. 4, lines 24-

26).  It is also agreed that Gordon '647 teaches a support member 14 that is positioned

on the body of a patient and attached to the body using an adhesive material 12 (see

col. 3, lines 49-56 and col. 5, lines 27-33).  It is also agreed that the catheter tube is

secured within the cradle 16 of the stabilizer 10 and the cover 25 is pivoted closed and

secured so that the projection engages the ribs 30, 31, 32 (see col. 4, line 65 through

col. 5, line 4).  It is also agreed that once the cover is in its closed position, it is located

over at least a portion of the interacting structure comprising the ribs 21, 28 (see Fig. 3).

   These teachings of Gordon '880 were present and applied during the prosecution

of the Bierman '485 patent.   However, Gordon '880 was not applied in combination with

Gordon '647.  The teachings of Gordon '647 were present, but were not applied.

Further, there is a substantial likelihood that a reasonable examiner would consider

these teachings important in deciding whether or not the claims are patentable.

Accordingly, Gordon '647 taken with Gordon '880 is considered to raise a substantial

new question of patentability as to claim 1 of the Bierman '485 patent.

### *Claims 12 and 22 of Bierman '485 to be unpatentable over Gordon '647 alone*

It is agreed that consideration of Gordon '647 alone raises a substantial new question of patentability as to claims 12 and 22 of Bierman '485. As pointed out in the request, Gordon '647 teaches a catheter-stabilizer 10, 40 having a base member 11, 41 on which is supported a support member 14 and the support member 14 is a retainer integrally formed with a cradle 16 (see Figs. 6-9 and col. 3, lines 1-4, 42 and 56-59 and col. 6, lines 17-34). It is agreed that the cradle 16, 41 is a base for the catheter-stabilizer 10 and defines a receiving area (the inside of the cradle or inside recesses 47, 48) for the catheter tube (see col. 3, lines 63-65 and col. 5, line 63 through col. 6, line 6). It is also agreed that Gordon '647 teaches a cover member 25, 46 that is permanently coupled to the cradle 16 and is movable between open and closed positions, and in a closed position, the cover extends over a portion of the cradle 16 and in an open position, the cradle 16 is at least partially open (see Fig. 3 and col. 4, lines 16-26). It is also agreed that Gordon '647 teaches a latch mechanism comprised of vertically spaced longitudinally extending ribs 30, 31, 32 that are positioned to provide resilient engagement with projection 29 and projection 29 engages any one of the ribs to releasably latch the cover 25 closed (see Fig. 3, col. 4, lines 43-53 and col. 5, lines 2-6). It is also agreed that Gordon '647 teaches interacting structure comprising rubs 21, 28 positioned within the cradle where the ribs receive and hold the catheter within the cradle 16 upon closing of the cover (see Fig. 5). It is also agreed that the vertical spacing or height of the rubs provides a firm grip against longitudinal displacement of the tubing within the stabilizer (see col. 5, lines 23-26). It is also agreed that Gordon

'647 teaches a support member 14 that is positioned on the body of a patient and

attached to the body using an adhesive material 12 (see col. 3, lines 49-56 and col. 5,

lines 27-33). It is also agreed that the catheter tube is secured within the cradle 16 of

the stabilizer 10 and the cover 25 is pivoted closed and secured so that the projection

engages the ribs 30, 31, 32 (see col. 4, line 65 through col. 5, line 4). It is also agreed

that once the cover is in its closed position, it is located over at least a portion of the

interacting structure comprising the ribs 21, 28 (see Fig. 3).

These teachings of Gordon '647 were present, but were not applied during the

prosecution of the application that became the Bierman '485 patent. Further, there is a

substantial likelihood that a reasonable examiner would consider these teachings

important in deciding whether or not the claims are patentable. Accordingly, Gordon

'647 alone is considered to raise a substantial new question of patentability as to claims

12 and 22 of the Bierman '485 patent.


### Claim 22 of Bierman '485 to be unpatentable over Bierman '435 alone

It is agreed that consideration of Bierman '435 alone raises a substantial new

question of patentability as to claim 22 of Bierman '485. As pointed out in the request,

Bierman '435 teaches a method for securing a medical line using an anchoring system

10 that includes an anchor base or retainer 20 (see page 4, lines 24-25). It is agreed

that Bierman '435 teaches that retainer 20 defines a receiving area to provide

releasable retention for the catheter 12 9see page 6, lines 9-10). It is also agreed that

Bierman '435 teaches a cover that comprises an overlying box clamp 14 that overlies

and engages a soft wing clamp 18 that surrounds a portion of the catheter 12 (see page

4, lines 22-24). It is also agreed that the box clamp 14 is movable between a closed

position wherein it overlies the wing clamp 18 and it extends over at least a portion of

the receiving area of the retainer 20 and an open position in which the receiving area is

open (see Figs. 8-9 and page 4, lines 24-25). It is also agreed that Bierman teaches a

latching mechanism for releasably latching the box clamp 18 to the retainer 20

comprised of posts 17 secured to the retainer 20 and openings 42 formed in wings of

both the box clamp 14 and the wing clamp 18 (see Fig. 9 and page 7, lines 6-13). It is

further agreed that the posts 17 of the box clamp 14 are aligned with the slotted

openings 42 on the top surface of the retainer 20 such that the tip 44 of each post 17

passes through the corresponding large diameter hole 42a of the retainer 20 (see page

7, lines 9-11). It is agreed that engagement of the posts 17 and the openings 42 serves

to retain the box clamp combination secured in place within the retainer 20 (see page 7,

lines 19-20). It is also agreed that the wing clamp 18 is capable of surrounding and

engaging longitudinally a portion of the catheter 12 to provide a secure means for

engaging and retaining the catheter 12 in place (see page 5, lines 17-21). It is also

agreed that the elongate body 32 is then sized to be received within a longitudinal

groove 28 formed in the box clamp 14 and wing clamp 18 and can be secured to the

retainer via holes 42 in the lateral wings of both the box and wing clamps and the holes

42 are aligned with the posts 17 so that the catheter 12 is retained in place by the

engagement of the posts 17 with the holes 42 (see Fig. 9 and page 5, lines 30-31). It is

further agreed that the retainer 20 is operable to be positioned on the body of a patient

by attaching the retainer 20 to the patient via an adhesive layer and the medical device

is then secured in the receiving area of the base (see page 7, lines 4-20). It is also

agreed that the cover comprising the box clamp 14 is secured over the retainer 20 such

that the box clamp 14 covers at least a portion of the posts 17 and wing clamp 18 and

the box clamp 14 is secured to the retainer 20 by inserting the posts 17 through the

openings 42 on the wings of the clamp 14 (see Fig. 9 and page 7, lines 6-20).

These teachings of Bierman '435 were present in the prosecution of the

application which became the Bierman '485 patent and were considered, but not

applied. Further, there is a substantial likelihood that a reasonable examiner would

consider these teachings important in deciding whether or not the claims are patentable.

Accordingly, Bierman '435 alone is considered to raise a substantial new question of

patentability as to claim 22 of the Bierman '485 patent.


### Claim 22 of Bierman '485 to be unpatentable over Gordon '647 taken with Bierman '435

It is agreed that consideration of Gordon '647 taken with Bierman '435 raises a

substantial new question of patentability as to claim 22 of Bierman '485. As pointed out

in the request, Gordon '647 teaches a catheter-stabilizer 10, 40 having a base member

11, 41 on which is supported a support member 14 and the support member 14 is a

retainer integrally formed with a cradle 16 (see Figs. 6-9 and col. 3, lines 1-4, 42 and

56-59 and col. 6, lines 17-34). It is agreed that the cradle 16, 41 is a base for the

catheter-stabilizer 10 and defines a receiving area (the inside of the cradle or inside

Application/Control Number: 95/000,271                    Page 20
Art Unit: 3993

recesses 47, 48) for the catheter tube (see col. 3, lines 63-65 and col. 5, line 63 through

col. 6, line 6).  It is also agreed that Gordon '647 teaches a cover member 25, 46 that is

permanently coupled to the cradle 16 and is movable between open and closed

positions, and in a closed position, the cover extends over a portion of the cradle 16 and

in an open position, the cradle 16 is at least partially open  (see Fig. 3 and col. 4, lines

16-26).  It is also agreed that Gordon '647 teaches a latch mechanism comprised of

vertically spaced longitudinally extending ribs 30, 31, 32 that are positioned to provide

resilient engagement with projection 29 and projection 29 engages any one of the ribs

to releasably latch the cover 25 closed (see Fig. 3, col. 4, lines 43-53 and col. 5, lines 2-

6).  It is also agreed that Gordon '647 teaches interacting structure comprising rubs 21,

28 positioned within the cradle where the ribs receive and hold the catheter within the

cradle 16 upon closing of the cover (see Fig. 5).  It is also agreed that the vertical

spacing or height of the rubs provides a firm grip against longitudinal displacement of

the tubing within the stabilizer (see col. 5, lines 23-26).  It is also agreed that Gordon

'647 teaches a support member 14 that is positioned on the body of a patient and

attached to the body using an adhesive material 12 (see col. 3, lines 49-56 and col. 5,

lines 27-33).  It is also agreed that the catheter tube is secured within the cradle 16 of

the stabilizer 10 and the cover 25 is pivoted closed and secured so that the projection

engages the ribs 30, 31, 32 (see col. 4, line 65 through col. 5, line 4).  It is also agreed

that once the cover is in its closed position, it is located over at least a portion of the

interacting structure comprising the ribs 21, 28 (see Fig. 3).  It is also agreed that

Bierman teaches a wing clamp that surrounds a portion of a catheter tube where the

Application/Control Number: 95/000,271                                   Page 21
Art Unit: 3993

wing clamp is constructed from a soft, pliable or flexible material such as, for example,

latex or the like (see page 5, lines 16-17).

     These teachings of Gordon '647 and Bierman '435 were present, but were not

applied during the prosecution of the application that became the Bierman '485 patent.

Further, there is a substantial likelihood that a reasonable examiner would consider

these teachings important in deciding whether or not the claims are patentable.

Accordingly, Gordon '647 taken with Bierman '435 is considered to raise a substantial

new question of patentability as to claim 22 of the Bierman '485 patent.

### Summary of Substantial New Questions Adopted and Not Adopted

     All of requester's substantial new questions have been adopted by the examiner.

### Office Action on the Merits

     An Office action on the merits accompanies this order for *inter partes*

reexamination.

### Scope of Reexamination

     Since requester did not request reexamination of claims 4, 9, 10, 14, 19 and 20

and did not assert the existence of a substantial new question of patentability (SNQP)

for such claims  (see 35 U.S.C. § 311(b)(2); see also 37 CFR 1.915b and 1.923), such

claims will not be reexamined. This matter was squarely addressed in *Sony Computer*

*Entertainment America Inc., et al. v. Jon W. Dudas*, Civil Action No. 1:05CV1447

Application/Control Number: 95/000,271                                    Page 22
Art Unit: 3993

(E.D.Va. May 22, 2006), Slip Copy, 2006 WL 1472462.  (Not Reported in F.Supp.2d.)

The District Court upheld the Office's discretion to not reexamine claims in an *inter*

*partes* reexamination proceeding other than those claims for which reexamination had

specifically been requested.  The Court stated:

> To be sure, a party may seek, and the PTO may grant, *inter
> partes* review of each and every claim of a patent.  Moreover,
> while the PTO in its discretion may review claims for which *inter
> partes* review was not requested, nothing in the statute compels
> it to do so.  To ensure that the PTO considers a claim for *inter
> partes* review, § 311(b)(2) requires that the party seeking
> reexamination demonstrate why the PTO should reexamine
> each and every claim for which it seeks review.  Here, it is
> undisputed that Sony did not seek review of every claim under
> the '213 and '333 patents.  Accordingly, Sony cannot now claim
> that the PTO wrongly failed to reexamine claims for which Sony
> never requested review, and its argument that AIPA compels a
> contrary result is unpersuasive.

(Slip copy at page 9.)

    The *Sony* decision's reasoning and statutory interpretation apply analogously to

*ex parte* reexamination, as the same relevant statutory language applies to both *inter*

*partes* and *ex parte* reexamination.  35 U.S.C. § 302 provides that the *ex parte*

reexamination "request must set forth the pertinency and manner of applying cited prior

art to every claim for which reexamination is requested" (emphasis added), and 35

U.S.C. § 303 provides that "the Director will determine whether a substantial new

question of patentability affecting any claim of the patent concerned is raised by the

request..." (Emphasis added).  These provisions are analogous to the language of 35

U.S.C. § 311(b)(2) and 35 U.S.C. § 312 applied and construed in *Sony*, and would be

construed in the same manner.  As the Director can decline to reexamine non-

Application/Control Number: 95/000,271                                    Page 23
Art Unit: 3993

requested claims in an *inter partes* reexamination proceeding, the Director can likewise

do so in *ex parte* reexamination proceeding. <u>See</u> *Notice of Clarification of Office Policy*

*To Exercise Discretion in Reexamining Fewer Than All the Patent Claims* (signed Oct.

5, 2006) 1311 OG 197 (Oct. 31, 2006). <u>See also</u> MPEP § 2240, Rev. 5, Aug. 2006.

      Therefore, claims 4, 9, 10, 14, 19 and 20 will not be reexamined in this *inter*

*partes* reexamination proceeding.


### NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte*
reexamination or an *inter partes* reexamination is designated as the correspondence
address of the patent.

        *Revisions and Technical Corrections Affecting Requirements for Ex Parte*
        *and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not
having the same correspondence address as that of the patent is, by way of this
revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of
the effective date.**

This change is effective for any reexamination proceeding which is pending before the
Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any
reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct
communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for
the present proceeding is different from the correspondence address of the patent, it is
strongly encouraged that the patent owner affirmatively file a Notification of Change of
Correspondence Address in the reexamination proceeding and/or the patent (depending
on which address patent owner desires), to conform the address of the proceeding with
that of the patent and to clarify the record as to which address should be used for
correspondence.

Application/Control Number: 95/000,271                                   Page 24
Art Unit: 3993


Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice        (571) 272-7703
Central Reexam Unit (CRU)                   (571) 272-7705
Reexamination Facsimile Transmission No.  (571) 273-9900

Application/Control Number: 95/000,271                                    Page 25

Art Unit: 3993

### *Conclusion*

Please mail any communications to:

>       Attn: Mail Stop "Ex Parte Reexam"
>       Central Reexamination Unit
>       Commissioner for Patents
>       P.O. Box 1450
>       Alexandria, VA  22313-1450

Please FAX any communications to:

>       (571) 273-9900
>       Central Reexamination Unit

Please hand-deliver any communications to:

>       Customer Service Window
>       Attn: Central Reexamination Unit
>       Randolph Building, Lobby Level
>       401 Dulaney Street
>       Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the
Examiner, or as to the status of this proceeding, should be directed to the Central
Reexamination Unit at telephone number (571) 272-7705.

Signed:

/Beverly M. Flanagan/

Beverly M. Flanagan
CRU Examiner
GAU 3993
(571) 272-4766

Conferee ____/JMC/_____

Conferee _____

Sheet  1  of  1

| FORM PTO-1449    U.S. DEPARTMENT OF COMMERCE<br>(Rev. 2-32)       PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. | SERIAL NO.    /1338  U.S. PTC<br>Patent No. 6,447,489  95000271 |
|---|---|---|
| 1338   U.S. PTO INFORMATION DISCLOSURE<br>STATEMENT BY APPLICANT<br>(Use several sheets if necessary)<br>06/25/07 | APPLICANT:  Venetec International, Inc.    06/25/07 | |
| | FILING DATE:<br>Issued:  09/10/2002 | GROUP: | CONF. NO: |

### U.S. PATENT DOCUMENTS

| EXAM.<br>INITIAL | | DOCUMENT NUMBER | | | | | | | INVENTOR NAME | CLASS | SUB-<br>CLASS | ISSUE DATE (PATENT);<br>PUBLICATION DATE<br>(PUBLISHED APPLICATION); OR<br>FILING DATE (NON-PUBLISHED<br>APPLICATION) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ✓ | US | 4 | 5 | 1 | 7 | 9 | 7 | 1 | SORBONNE, Robert L. | | | May 21, 1985 |
| ✓ | US | 4 | 3 | 9 | 7 | 6 | 4 | 7 | GORDON, Marvin | | | August 9, 1983 |
| ✓ | US | 4 | 2 | 5 | 0 | 8 | 8 | 0 | GORDON, Marvin | | | February 17, 1981 |

### FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | | | | | | | PUBLICATION<br>DATE | COUNTRY | CLASS | SUB-<br>CLASS | TRANSLATION | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | YES | NO |
| ✓ | WO | 9 | 6 | 1 | 0 | 4 | 3 | 5 | April 11, 1996 | PCT International<br>Publication | | | | |

### OTHER DOCUMENTS (Including Publisher, Author, Title, Relevant Pages, and Date and Place of Publication)

| | | | | |
|---|---|---|---|---|
| | | | | |

EXAMINER:  Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

B. FLANAGAN          9/20/07

# Exhibit B

 UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

| CONTROL NO. | FILING DATE | PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 95/000,271 | 06/25/07 | 6,447,485 | |

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| FLANAGAN, B. |

| ART UNIT | PAPER |
|---|---|
| 3993 | |

DATE MAILED:

09/21/07

# *INTER PARTES* REEXAMINATION
# COMMUNICATION

BELOW/ATTACHED YOU WILL FIND A COMMUNICATION FROM THE UNITED
STATES PATENT AND TRADEMARK OFFICE OFFICIAL(S) IN CHARGE OF THE
PRESENT REEXAMINATION PROCEEDING.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to
the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of
this communication.

PTOL-2071 (Rev.07-04)

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

### DO NOT USE IN PALM PRINTER

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

HOVEY WILLIAMS, LLP
2405 GRAND BOULEVARD
SUITE 400
KANSAS CITY, MO 64108

## Transmittal of Communication to Third Party Requester
## *Inter Partes* Reexamination

REEXAMINATION CONTROL NUMBER <u>95/000,271</u>.

PATENT NUMBER <u>6,447,485</u>.

TECHNOLOGY CENTER <u>3999</u>.

ART UNIT <u>3993</u>.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

PTOL-2070 (Rev.07-04)

| *OFFICE ACTION IN* **INTER PARTES** *REEXAMINATION* | Control No. 95/000,271 | Patent Under Reexamination 6447485 |
|---|---|---|
| | Examiner Beverly M. Flanagan | Art Unit 3993 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Responsive to the communication(s) filed by:
Patent Owner on _____
Third Party(ies) on _____

**RESPONSE TIMES ARE SET TO EXPIRE AS FOLLOWS:**

*For Patent Owner's Response:*
    2 MONTH(S) from the mailing date of this action. 37 CFR 1.945. EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.956.
*For Third Party Requester's Comments on the Patent Owner Response:*
    30 DAYS from the date of service of any patent owner's response. 37 CFR 1.947. NO EXTENSIONS OF TIME ARE PERMITTED. 35 U.S.C. 314(b)(2).

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

This action is not an Action Closing Prosecution under 37 CFR 1.949, nor is it a Right of Appeal Notice under 37 CFR 1.953.

**PART I. THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1.☐ Notice of References Cited by Examiner, PTO-892
2.☐ Information Disclosure Citation, PTO/SB/08
3.☐ _____

**PART II.  SUMMARY OF ACTION:**

1a. ☒ Claims 1-3,5-8,11-13,15-18,21 and 22 are subject to reexamination.
1b. ☒ Claims 4,9,10,14,19 and 20 are not subject to reexamination.
2.  ☐ Claims _____ have been canceled.
3.  ☐ Claims _____ are confirmed. [Unamended patent claims]
4.  ☐ Claims _____ are patentable. [Amended or new claims]
5.  ☒ Claims 1-3, 5-8, 11-13, 15-18, 21 and 22 are rejected.
6.  ☐ Claims _____ are objected to.
7.  ☐ The drawings filed on _____        ☐ are acceptable.        ☐ are not acceptable.
8.  ☐ The drawing correction request filed on _____ is:    ☐ approved.  ☐ disapproved.
9.  ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d). The certified copy has:
        ☐ been received.    ☐ not been received.    ☐ been filed in Application/Control No 95000271.
10. ☐ Other _____

Application/Control Number: 95/000,271                                    Page 2
Art Unit: 3993

## DETAILED ACTION

This first action on the merits is being mailed with the order granting

reexamination.

### *Reexamination Procedures*

In order to ensure full consideration of any amendments, affidavits or

declarations, or other documents as evidence of patentability, such documents must be

submitted in response to this Office action. Submissions after the next Office action,

which is intended to be an Action Closing Prosecution (ACP), will be governed by 37

CFR 1.116(b) and (d), which will be strictly enforced.

### *Statutory Basis for Grounds of Rejections – 35 USC §§ 102 and 103*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negated by the manner in which the invention was made.

Application/Control Number: 95/000,271                                          Page 3
Art Unit: 3993

### *Third Party Requester's Grounds of Rejection*

**Ground #1.**   The requester submits that claims 1-3, 5-8, 11-13, 15-18, 21 and 22 of Bierman '485 are unpatentable under 35 U.S.C. § 102(b) as being anticipated by Sorbonne.

**Ground #2.**   The requester submits that claims 1 and 12 of Bierman '485 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Bierman '435 in view of Sorbonne.

**Ground #3.**   The requester submits that claims 2, 6, 16 and 22 of Bierman '485 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Sorbonne in view of Bierman '435[1].

**Ground #4.**   The requester submits that claim 1 of Bierman '485 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Gordon '647 in view of Gordon '880.

**Ground #5.**   The requester submits that claims 12 and 22 of Bierman '485 are unpatentable under 35 U.S.C. § 102(b) as being anticipated by Gordon '647.

**Ground #6.**   The requester submits that claim 22 of Bierman '485 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Bierman '435.

**Ground #7.**   The requester submits that claim 22 of Bierman '485 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Gordon '647 in view of Bierman '435.

---

[1] The examiner has assumed that requester proposes claims 2, 6 and 16 to be unpatentable over Sorbonne taken with Bierman '435. Regarding claims 2 and 6, statements at pages 15-17 of the request appear to indicate that requester is proposing that the claims are unpatentable over Bierman '435 in view of Sorbonne. However, taken as a whole

Application/Control Number: 95/000,271                           Page 4
Art Unit: 3993

## *PROPOSED THIRD PARTY REQUESTER'S REJECTIONS*

### Proposed Third Party Requester Rejection: Ground #1

The requester submits that claims 1-3, 5-8, 11-13, 15-18, 21 and 22 of Bierman

'485 are unpatentable under 35 U.S.C. § 102(b) as being anticipated by Sorbonne.

Claims 1-3, 5-8, 11-13, 15-18, 21 and 22 of Bierman '485 are rejected under 35

U.S.C. § 102(b) as being anticipated by Sorbonne. *In regard to claims 1-3, 5-8, 11-13,*

*15-18, 21 and 22,* Sorbonne teaches a method of securing a medical device (a catheter

tube) to a patient using a retainer or device 10 including a base 16, an operable cover

or lid 20 and adhesive strips 23 and 24 (see Figs. 2-4 and col. 3, lines 56-58).

Sorbonne teaches that base 16 comprises a substantially planar shape-retaining part

for receiving the catheter tube (see Figs. 4 and 5 and col. 3, lines 64-65). It is also

agreed that Sorbonne teaches that the cover 20 of the device 10 is permanently

secured to the base 16 and hinged at site 18 (see Fig. 5, col. 3, lines 56-57 and col. 4,

lines 67-68). Fig. 5 demonstrates that the cover 20 is movable between a closed

position that at least partially extends over the shape-retaining part, and an open

position in which the shape-retaining part is at least partially open (see also col. 6, lines

18-21). Sorbonne's device 10 further includes a latching mechanism that releasably

latches the cover 20 to the base 16 and the base includes two integral hollow spools or

annular cylindrical anchors 42, 44, where each spool extends generally upwards from

the base 16 (see Figs. 4 and 5 and and col. 4, lines 25-28). The cover 20 includes

opposing projecting cylindrical studs or posts 90 that are sized and located so as to be

and considering the claim chart at pages 53-55, the examiner is considering Sorbonne taken with Bierman '435 to be

Application/Control Number: 95/000,271                                    Page 5
Art Unit: 3993

in alignment with the annularly hollow spools 42 and 44 (see col. 5, lines 34-39).

Sorbonne teaches that the studs 90 fit within the hollow interior 46 in snug tight-fitting

though releasable relation when the cover is in a closed position to form a snap or

friction latch (see col. 5, lines 39-42). Device 10 further includes interacting structure

adapted to engage the catheter tube in a non-occlusive manner, comprised of

cylindrical posts 42, 44 secured to the base 16, where the tubing is threaded around the

posts to prevent crimping or occlusion of the tubing 102 (see Fig. 4 and col. 6, lines 10-

16). This structural arrangement further inhibits movement of the catheter tube in a

direction generally parallel to the tube's longitudinal axis (see col. 6, lines 13-17 and 22-

25). The device 10 is operable to be positioned on the body of a patient using the

adhesive strips 23, 24 (see Fig. 1 and col. 6, lines 5-10) and the catheter tubing 102 can

be secured in the device 10 by threading the tubing around the posts 42, 44 (see col. 6,

lines 10-13). The cover 20 is moved over the base 16 and secured by pressing the

cylindrical hubs or posts 90 into the hollow interiors 46 of the spools 42, 44 (see col. 6,

lines 18-21).

Sorbonne teaches a channel through which the catheter tube is threaded and the

channel is formed on the retainer 10 and lies between the base 16 and the cover 20

when the cover is in the closed position and that both posts 42, 44 extend into the

channel (see Figs. 4 and 5). Sorbonne shows that the channel gradually narrows

towards its left-hand side, thus forming a variable cross-section or taper along its length

(see Fig. 4). The catheter tube is threaded around the posts 42, 44 and through the

---

the proposed grounds of rejection for claims 2, 6 and 16.

Application/Control Number: 95/000,271                                    Page 6
Art Unit: 3993

channel so as to secure the medical device to the body of the patient (see Fig. 4 and col. 6, lines 11-13). The cover 20 is flexible hinged at line 18 and may be manually opened and closed by a pivotal or hinged action (see Fig. 5, col. 4, lines 67-68 and col. 3, lines 56-58). Sorbonne teaches a integrally-formed base, cover and hinge, as shown in Fig. 5 (see also col. 3, lines 49-51).

This rejection of claims 1-3, 5-8, 11-13, 15-18, 21 and 22 of Bierman '485 based on Sorbonne was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #2**

The requester submits that claims 1 and 12 of Bierman '485 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Bierman '435 in view of Sorbonne.

Claims 1 and 12 of Bierman '485 are rejected under 35 U.S.C. § 103(a) as being obvious over Bierman '435 in view of Sorbonne. *In regard to claims 1 and 12,* Bierman '435 teaches a method for securing a medical line using an anchoring system 10 that includes an anchor base or retainer 20 (see page 4, lines 24-25). Bierman '435 teaches that retainer 20 defines a receiving area to provide releasable retention for the catheter 12 9see page 6, lines 9-10). Bierman '435 teaches a cover that comprises an overlying box clamp 14 that overlies and engages a soft wing clamp 18 that surrounds a portion of the catheter 12 (see page 4, lines 22-24). Sorbonne discloses a device for securing a medical line that additionally includes a cover 20 that is permanently secured to the base 16 and hinged at site 18 (see col. 3, lines 56-57 and col. 4, lines 67-68).

Application/Control Number: 95/000,271                                    Page 7
Art Unit: 3993

Sorbonne thus demonstrates that it is well known in the art to provide a cover that

overlies a device for securing a medical line. Accordingly, it would have been obvious

for one of ordinary skill in the art at the time the invention was made to provide the

device of Bierman '435 with a cover, in the manner disclosed by Sorbonne, to overlie

the retainer 20. Bierman '435 teaches that the box clamp 14 is movable between a

closed position wherein it overlies the wing clamp 18 and it extends over at least a

portion of the receiving area of the retainer 20 and an open position in which the

receiving area is open (see Figs. 8-9 and page 4, lines 24-25). Bierman teaches a

latching mechanism for releasably latching the box clamp 18 to the retainer 20

comprised of posts 17 secured to the retainer 20 and openings 42 formed in wings of

both the box clamp 14 and the wing clamp 18 (see Fig. 9 and page 7, lines 6-13). The

posts 17 of the box clamp 14 are aligned with the slotted openings 42 on the top surface

of the retainer 20 such that the tip 44 of each post 17 passes through the corresponding

large diameter hole 42a of the retainer 20 (see page 7, lines 9-11). Engagement of the

posts 17 and the openings 42 serves to retain the box clamp combination secured in

place within the retainer 20 (see page 7, lines 19-20). The wing clamp 18 is capable of

surrounding and engaging longitudinally a portion of the catheter 12 to provide a secure

means for engaging and retaining the catheter 12 in place (see page 5, lines 17-21).

The elongate body 32 is then sized to be received within a longitudinal groove 28

formed in the box clamp 14 and wing clamp 18 and can be secured to the retainer via

holes 42 in the lateral wings of both the box and wing clamps and the holes 42 are

aligned with the posts 17 so that the catheter 12 is retained in place by the engagement

of the posts 17 with the holes 42 (see Fig. 9 and page 5, lines 30-31). The retainer 20 is operable to be positioned on the body of a patient by attaching the retainer 20 to the patient via an adhesive layer and the medical device is then secured in the receiving area of the base (see page 7, lines 4-20). The cover comprising the box clamp 14 is secured over the retainer 20 such that the box clamp 14 covers at least a portion of the posts 17 and wing clamp 18 and the box clamp 14 is secured to the retainer 20 by inserting the posts 17 through the openings 42 on the wings of the clamp 14 (see Fig. 9 and page 7, lines 6-20).

This rejection of claims 1 and 12 of Bierman '485 based on Bierman '435 in view of Sorbonne was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #3**

The requester submits that claims 2, 6, 16 and 22 of Bierman '485 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Sorbonne in view of Bierman '435.

Claims 2, 6, 16 and 22 of Bierman '485 are rejected under 35 U.S.C. § 103(a) as being obvious over Sorbonne in view of Bierman '485. *In regard to claims 2, 6, 16 and 22,* Sorbonne teaches a method of securing a medical device (a catheter tube) to a patient using a retainer or device 10 including a base 16, an operable cover or lid 20 and adhesive strips 23 and 24 (see Figs. 2-4 and col. 3, lines 56-58). Sorbonne teaches that base 16 comprises a substantially planar shape-retaining part for receiving

the catheter tube (see Figs. 4 and 5 and col. 3, lines 64-65). Sorbonne teaches that the

cover 20 of the device 10 is permanently secured to the base 16 and hinged at site 18

(see Fig. 5, col. 3, lines 56-57 and col. 4, lines 67-68). Fig. 5 demonstrates that the

cover 20 is movable between a closed position that at least partially extends over the

shape-retaining part, and an open position in which the shape-retaining part is at least

partially open (see also col. 6, lines 18-21). Sorbonne's device 10 further includes a

latching mechanism that releasably latches the cover 20 to the base 16 and the base

includes two integral hollow spools or annular cylindrical anchors 42, 44, where each

spool extends generally upwards from the base 16 (see Figs. 4 and 5 and and col. 4,

lines 25-28). The cover 20 includes opposing projecting cylindrical studs or posts 90

that are sized and located so as to be in alignment with the annularly hollow spools 42

and 44 (see col. 5, lines 34-39). Sorbonne teaches that the studs 90 fit within the

hollow interior 46 in snug tight-fitting though releasable relation when the cover is in a

closed position to form a snap or friction latch (see col. 5, lines 39-42). Device 10

further includes interacting structure adapted to engage the catheter tube in a non-

occlusive manner, comprised of cylindrical posts 42, 44 secured to the base 16, where

the tubing is threaded around the posts to prevent crimping or occlusion of the tubing

102 (see Fig. 4 and col. 6, lines 10-16). This structural arrangement further inhibits

movement of the catheter tube in a direction generally parallel to the tube's longitudinal

axis (see col. 6, lines 13-17 and 22-25). The device 10 is operable to be positioned on

the body of a patient using the adhesive strips 23, 24 (see Fig. 1 and col. 6, lines 5-10)

and the catheter tubing 102 can be secured in the device 10 by threading the tubing

around the posts 42, 44 (see col. 6, lines 10-13). The cover 20 is moved over the base 16 and secured by pressing the cylindrical hubs or posts 90 into the hollow interiors 46 of the spools 42, 44 (see col. 6, lines 18-21).

Sorbonne teaches a channel through which the catheter tube is threaded and the channel is formed on the retainer 10 and lies between the base 16 and the cover 20 when the cover is in the closed position and that both posts 42, 44 extend into the channel (see Figs. 4 and 5). Sorbonne shows that the channel gradually narrows towards its left-hand side, thus forming a variable cross-section or taper along its length (see Fig. 4). The catheter tube is threaded around the posts 42, 44 and through the channel so as to secure the medical device to the body of the patient (see Fig. 4 and col. 6, lines 11-13). The cover 20 is flexible hinged at line 18 and may be manually opened and closed by a pivotal or hinged action (see Fig. 5, col. 4, lines 67-68 and col. 3, lines 56-58). Sorbonne teaches a integrally-formed base, cover and hinge, as shown in Fig. 5 (see also col. 3, lines 49-51).

Bierman '435 teaches a channel 28 in which the wing clamp 18 lies and the channel 28 lies between the base 20 and the cover 14 when the cover is secured to the base 20 in the closed position (see Fig. 9 and page 5, lines 30-31). Bierman '435 teaches that the medical device comprising the catheter tube 12 is secured within the soft wing clamp 18, which is then secured within the channel 28, such that a portion of the medical device 12 is placed within the channel 28 (see Figs. 2 and 9 and page 4, lines 33-35). It would have been obvious for one of ordinary skill in the art at the time

the invention was made to provide the device of Sorbonne with the channel disclosed

by Bierman '435, as a means to secure the medical device in position.

This rejection of claims 2, 6, 16 and 22 of Bierman '485 based on Sorbonne in

view of Bierman '435 was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.


## Proposed Third Party Requester Rejection: Ground #4

The requester submits that claim 1 of Bierman '485 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Gordon '647 in view of Gordon '880[2].

Claim 1 of Bierman '485 is rejected under 35 U.S.C. § 103(a) as being obvious

over Gordon '647 in view of Gordon '880.  *In regard to claim 1*, Gordon '647 teaches a

catheter-stabilizer 10, 40 having a base member 11, 41 on which is supported a support

member 14 and the support member 14 is a retainer integrally formed with a cradle 16

(see Figs. 6-9 and col. 3, lines 1-4, 42 and 56-59 and col. 6, lines 17-34).   The cradle

16, 41 is a base for the catheter-stabilizer 10 and defines a receiving area (the inside of

the cradle or inside recesses 47, 48) for the catheter tube (see col. 3, lines 63-65 and

col. 5, line 63 through col. 6, line 6).  Gordon '647 teaches a cover member 25, 46 that

is permanently coupled to the cradle 16 and is movable between open and closed

positions, and in a closed position, the cover extends over a portion of the cradle 16 and

in an open position, the cradle 16 is at least partially open  (see Fig. 3 and col. 4, lines

16-26).  Gordon '647 teaches a latch mechanism comprised of vertically spaced

Application/Control Number: 95/000,271                                    Page 12
Art Unit: 3993

longitudinally extending ribs 30, 31, 32 that are positioned to provide resilient

engagement with projection 29 and projection 29 engages any one of the ribs to

releasably latch the cover 25 closed (see Fig. 3, col. 4, lines 43-53 and col. 5, lines 2-6).

Gordon '647 teaches interacting structure comprising rubs 21, 28 positioned within the

cradle where the ribs receive and hold the catheter within the cradle 16 upon closing of

the cover (see Fig. 5). The vertical spacing or height of the rubs provides a firm grip

against longitudinal displacement of the tubing within the stabilizer (see col. 5, lines 23-

26). Gordon '880 teaches a similar cradle 12 comprising a plurality of internal,

longitudinal ridges 28 and the cradle is dimensioned to received a standard catheter

hub boss 36a, which limits longitudinal movement of the catheter by providing a surface

that cannot be forcibly moved past ribs 60 (see Figs. 7 and 15, col. 3, lines 18-24 and

col. 4, lines 24-26). It would have been obvious for one of ordinary skill in the art at the

time the invention was made to provide the device of Gordon '647 with the longitudinal

ridges 28 to limit the longitudinal movement of the catheter (see also Gordon '647 at col.

3, lines 49-56 and col. 5, lines 27-33). Gordon '647 teaches a support member 14 that

is positioned on the body of a patient and attached to the body using an adhesive

material 12 (see col. 3, lines 49-56 and col. 5, lines 27-33). The catheter tube is

secured within the cradle 16 of the stabilizer 10 and the cover 25 is pivoted closed and

secured so that the projection engages the ribs 30, 31, 32 (see col. 4, line 65 through

col. 5, line 4). Once the cover is in its closed position, it is located over at least a portion

of the interacting structure comprising the ribs 21, 28 (see Fig. 3).

---

[2] The following rejection includes proposed rejections based upon both the first embodiment disclosed in Gordon

Application/Control Number: 95/000,271                                    Page 13
Art Unit: 3993

This rejection of claim 1 of Bierman '485 based on Gordon '647 in view of
Gordon '880 was proposed by the third party requester in the request for reexamination
and is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #5**

The requester submits that claims 12 and 22 of Bierman '485 are unpatentable
under 35 U.S.C. § 102(b) as being anticipated by Gordon '647[3].

Claims 12 and 22 are rejected under 35 U.S.C. § 102(b) as being anticipated by
Gordon '647. *In regard to claims 12 and 22*, Gordon '647 teaches a catheter-stabilizer
10, 40 having a base member 11, 41 on which is supported a support member 14 and
the support member 14 is a retainer integrally formed with a cradle 16 (see Figs. 6-9
and col. 3, lines 1-4, 42 and 56-59 and col. 6, lines 17-34).   The cradle 16, 41 is a base
for the catheter-stabilizer 10 and defines a receiving area (the inside of the cradle or
inside recesses 47, 48) for the catheter tube (see col. 3, lines 63-65 and col. 5, line 63
through col. 6, line 6).  Gordon '647 teaches a cover member 25, 46 that is permanently
coupled to the cradle 16 and is movable between open and closed positions, and in a
closed position, the cover extends over a portion of the cradle 16 and in an open
position, the cradle 16 is at least partially open  (see Fig. 3 and col. 4, lines 16-26).
Gordon '647 teaches a latch mechanism comprised of vertically spaced longitudinally
extending ribs 30, 31, 32 that are positioned to provide resilient engagement with

---

'647 and the second embodiment disclosed in Gordon '647, with reference to the pertinent elements of each
embodiment.

Application/Control Number: 95/000,271                              Page 14
Art Unit: 3993

projection 29 and projection 29 engages any one of the ribs to releasably latch the

cover 25 closed (see Fig. 3, col. 4, lines 43-53 and col. 5, lines 2-6).  Gordon '647

teaches interacting structure comprising rubs 21, 28 positioned within the cradle where

the ribs receive and hold the catheter within the cradle 16 upon closing of the cover (see

Fig. 5).  The vertical spacing or height of the rubs provides a firm grip against

longitudinal displacement of the tubing within the stabilizer (see col. 5, lines 23-26).

Gordon '647 teaches a support member 14 that is positioned on the body of a patient

and attached to the body using an adhesive material 12 (see col. 3, lines 49-56 and col.

5, lines 27-33).  The catheter tube is secured within the cradle 16 of the stabilizer 10

and the cover 25 is pivoted closed and secured so that the projection engages the ribs

30, 31, 32 (see col. 4, line 65 through col. 5, line 4).  Once the cover is in its closed

position, it is located over at least a portion of the interacting structure comprising the

ribs 21, 28 (see Fig. 3).

This rejection of claims 12 and 22 of Bierman '485 based on Gordon '647 was

proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #6**

The requester submits that claim 22 of Bierman '485 is unpatentable under 35

U.S.C. § 102(b) as being anticipated by Bierman '435.

---

[3] The following rejection includes proposed rejections based upon both the first embodiment disclosed in Gordon '647 and the second embodiment disclosed in Gordon '647, with reference to the pertinent elements of each embodiment.

Application/Control Number: 95/000,271                    Page 15
Art Unit: 3993

Claim 22 is rejected under 35 U.S.C. § 102(b) as being anticipated by Bierman

'435. *In regard to claim 22*, Bierman '435 teaches a method for securing a medical line

using an anchoring system 10 that includes an anchor base or retainer 20 (see page 4,

lines 24-25). Bierman '435 teaches that retainer 20 defines a receiving area to provide

releasable retention for the catheter 12 9see page 6, lines 9-10). Bierman '435 teaches

a cover that comprises an overlying box clamp 14 that overlies and engages a soft wing

clamp 18 that surrounds a portion of the catheter 12 (see page 4, lines 22-24). The box

clamp 14 is movable between a closed position wherein it overlies the wing clamp 18

and it extends over at least a portion of the receiving area of the retainer 20 and an

open position in which the receiving area is open (see Figs. 8-9 and page 4, lines 24-

25). Bierman teaches a latching mechanism for releasably latching the box clamp 18 to

the retainer 20 comprised of posts 17 secured to the retainer 20 and openings 42

formed in wings of both the box clamp 14 and the wing clamp 18 (see Fig. 9 and page

7, lines 6-13). The posts 17 of the box clamp 14 are aligned with the slotted openings

42 on the top surface of the retainer 20 such that the tip 44 of each post 17 passes

through the corresponding large diameter hole 42a of the retainer 20 (see page 7, lines

9-11). Engagement of the posts 17 and the openings 42 serves to retain the box clamp

combination secured in place within the retainer 20 (see page 7, lines 19-20). The wing

clamp 18 is capable of surrounding and engaging longitudinally a portion of the catheter

12 to provide a secure means for engaging and retaining the catheter 12 in place (see

page 5, lines 17-21). The elongate body 32 is then sized to be received within a

longitudinal groove 28 formed in the box clamp 14 and wing clamp 18 and can be

Application/Control Number: 95/000,271                                      Page 16
Art Unit: 3993

secured to the retainer via holes 42 in the lateral wings of both the box and wing clamps

and the holes 42 are aligned with the posts 17 so that the catheter 12 is retained in

place by the engagement of the posts 17 with the holes 42 (see Fig. 9 and page 5, lines

30-31). The retainer 20 is operable to be positioned on the body of a patient by

attaching the retainer 20 to the patient via an adhesive layer and the medical device is

then secured in the receiving area of the base (see page 7, lines 4-20). The cover

comprising the box clamp 14 is secured over the retainer 20 such that the box clamp 14

covers at least a portion of the posts 17 and wing clamp 18 and the box clamp 14 is

secured to the retainer 20 by inserting the posts 17 through the openings 42 on the

wings of the clamp 14 (see Fig. 9 and page 7, lines 6-20).

       This rejection of claim 22 of Bierman '485 based on Bierman '435 was proposed

by the third party requester in the request for reexamination and is being adopted

essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #7**

       The requester submits that claim 22 of Bierman '485 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Gordon '647 in view of Bierman '435.

       Claim 22 of Bierman '485 is rejected under 35 U.S.C. § 103(a) as being obvious

over Gordon '647 in view of Bierman '435. *In regard to claim 22*, Gordon '647 teaches a

catheter-stabilizer 10, 40 having a base member 11, 41 on which is supported a support

member 14 and the support member 14 is a retainer integrally formed with a cradle 16

(see Figs. 6-9 and col. 3, lines 1-4, 42 and 56-59 and col. 6, lines 17-34). The cradle

16, 41 is a base for the catheter-stabilizer 10 and defines a receiving area (the inside of

the cradle or inside recesses 47, 48) for the catheter tube (see col. 3, lines 63-65 and

col. 5, line 63 through col. 6, line 6). Gordon '647 teaches a cover member 25, 46 that

is permanently coupled to the cradle 16 and is movable between open and closed

positions, and in a closed position, the cover extends over a portion of the cradle 16 and

in an open position, the cradle 16 is at least partially open  (see Fig. 3 and col. 4, lines

16-26). Gordon '647 teaches a latch mechanism comprised of vertically spaced

longitudinally extending ribs 30, 31, 32 that are positioned to provide resilient

engagement with projection 29 and projection 29 engages any one of the ribs to

releasably latch the cover 25 closed (see Fig. 3, col. 4, lines 43-53 and col. 5, lines 2-6).

Gordon '647 teaches interacting structure comprising rubs 21, 28 positioned within the

cradle where the ribs receive and hold the catheter within the cradle 16 upon closing of

the cover (see Fig. 5). The vertical spacing or height of the rubs provides a firm grip

against longitudinal displacement of the tubing within the stabilizer (see col. 5, lines 23-

26). Gordon '647 teaches a support member 14 that is positioned on the body of a

patient and attached to the body using an adhesive material 12 (see col. 3, lines 49-56

and col. 5, lines 27-33). The catheter tube is secured within the cradle 16 of the

stabilizer 10 and the cover 25 is pivoted closed and secured so that the projection

engages the ribs 30, 31, 32 (see col. 4, line 65 through col. 5, line 4). Once the cover is

in its closed position, it is located over at least a portion of the interacting structure

comprising the ribs 21, 28 (see Fig. 3). Bierman '435 teaches a wing clamp that

surrounds a portion of a catheter tube where the wing clamp is constructed from a soft,

Application/Control Number: 95/000,271                                      Page 18
Art Unit: 3993

pliable or flexible material such as, for example, latex or the like (see page 5, lines 16-
17). It would have been obvious for one of ordinary skill in the art at the time the
invention was made to provide the device of Gordon '647 with the material of Bierman
'435.

     This rejection of claim 22 of Bierman '485 based on Gordon '647 in view of
Bierman '435 was proposed by the third party requester in the request for reexamination
and is being adopted essentially as proposed in the request.

### Scope of Reexamination

     Since requester did not request reexamination of claims 4, 9, 10, 14, 19 and 20
and did not assert the existence of a substantial new question of patentability (SNQP)
for such claims (see 35 U.S.C. § 311(b)(2); see also 37 CFR 1.915b and 1.923), such
claims were not be reexamined. This matter was squarely addressed in *Sony Computer
Entertainment America Inc., et al. v. Jon W. Dudas*, Civil Action No. 1:05CV1447
(E.D.Va. May 22, 2006), Slip Copy, 2006 WL 1472462. (Not Reported in F.Supp.2d.)
The District Court upheld the Office's discretion to not reexamine claims in an *inter
partes* reexamination proceeding other than those claims for which reexamination had
specifically been requested. The Court stated:

> To be sure, a party may seek, and the PTO may grant, *inter
> partes* review of each and every claim of a patent. Moreover,
> while the PTO in its discretion may review claims for which *inter
> partes* review was not requested, nothing in the statute compels
> it to do so. To ensure that the PTO considers a claim for *inter
> partes* review, § 311(b)(2) requires that the party seeking
> reexamination demonstrate why the PTO should reexamine
> each and every claim for which it seeks review. Here, it is

Application/Control Number: 95/000,271                                    Page 19
Art Unit: 3993

> undisputed that Sony did not seek review of every claim under
> the '213 and '333 patents. Accordingly, Sony cannot now claim
> that the PTO wrongly failed to reexamine claims for which Sony
> never requested review, and its argument that AIPA compels a
> contrary result is unpersuasive.

(Slip copy at page 9.)

The *Sony* decision's reasoning and statutory interpretation apply analogously to

*ex parte* reexamination, as the same relevant statutory language applies to both *inter*

*partes* and *ex parte* reexamination. 35 U.S.C. § 302 provides that the *ex parte*

reexamination "request must set forth the pertinency and manner of applying cited prior

art to every claim for which reexamination is requested" (emphasis added), and 35

U.S.C. § 303 provides that "the Director will determine whether a substantial new

question of patentability affecting any claim of the patent concerned is raised by the

request..." (Emphasis added). These provisions are analogous to the language of 35

U.S.C. § 311(b)(2) and 35 U.S.C. § 312 applied and construed in *Sony*, and would be

construed in the same manner. As the Director can decline to reexamine non-

requested claims in an *inter partes* reexamination proceeding, the Director can likewise

do so in *ex parte* reexamination proceeding. See *Notice of Clarification of Office Policy*

*To Exercise Discretion in Reexamining Fewer Than All the Patent Claims* (signed Oct.

5, 2006) 1311 OG 197 (Oct. 31, 2006). See also MPEP § 2240, Rev. 5, Aug. 2006.

Therefore, claims 4, 9, 10, 14, 19 and 20 were not reexamined in this *inter partes*

reexamination proceeding.


**NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS**

Application/Control Number: 95/000,271                                    Page 20
Art Unit: 3993

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice          (571) 272-7703
Central Reexam Unit (CRU)                            (571) 272-7705
Reexamination Facsimile Transmission No. (571) 273-9900

Application/Control Number: 95/000,271                     Page 21
Art Unit: 3993

### *Conclusion*

Please mail any communications to:

> Attn: Mail Stop "Ex Parte Reexam"
> Central Reexamination Unit
> Commissioner for Patents
> P.O. Box 1450
> Alexandria, VA  22313-1450

Please FAX any communications to:

> (571) 273-9900
> Central Reexamination Unit

Please hand-deliver any communications to:

> Customer Service Window
> Attn: Central Reexamination Unit
> Randolph Building, Lobby Level
> 401 Dulaney Street
> Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

/Beverly M. Flanagan/

Beverly M. Flanagan
CRU Examiner
GAU 3993
(571) 272-4766

Conferee _____/JMC/_____

Conferee _____