IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VENETEC INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-57 (***) |
| | ) | |
| NEXUS MEDICAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF VENETEC'S
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Plaintiff*

*Of Counsel*:

Steven C. Cherny
Clement J. Naples
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY  10022-4834
(212) 906-1200

Maximilian A. Grant
Michael A. David
LATHAM & WATKINS LLP
555 Eleventh Street, Suite 1000
Washington, DC  20004
(202) 637-2200

Dated:  September 28, 2007

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

SUMMARY OF ARGUMENT ...........................................................................................2

STATEMENT OF FACTS ...................................................................................................3

      A.     Undisputed Factual Background Set Forth In The Pleadings ...................................3

ARGUMENT ...........................................................................................................................5

      I.     Pursuant to Rule 12(c), Venetec is Entitled to Partial Judgment on the Pleadings that There was No Inequitable Conduct During the Prosecution of the '150 Patent ...................................................................................................5

      II.    As a Matter of Law, Venetec Is Not Required to Tell the PTO *Twice* About the Same Prior Art ..........................................................................................6

            A.     Because Venetec Submitted the "Six Prior Art References" In Connection With Prosecution of the '150 Patent, Failure to Re-Submit Those References Cannot Be Deemed "Material" .........................7

            B.     Because Venetec Submitted the "Six Prior Art References" In Connection With Prosecution of the '150 Patent, Failure to Re-Submit Cannot Establish a *Prima Facie* Showing That Venetec "Made a Deliberate Decision to Withhold a Known Material Reference" ...............................................................................................10

CONCLUSION .....................................................................................................................13

## TABLE OF AUTHORITIES

## CASES

*Allen Organ Co. v. Kimball International, Inc.*,
    839 F.2d 1556 (Fed. Cir. 1988)..................................................................................10-11

*Burlington Industrial, Inc. v. Dayco Corp.*,
    849 F.2d 1418 (Fed. Cir. 1988)........................................................................................13

*Central Admixture Pharm. Services v. Advanced Cardiac Solutions, P.C.*,
    482 F.3d 1347 (Fed. Cir. April 3, 2007) ....................................................................10, 11, 12

*Connection Corp. v. AOL Time Warner, Inc.*,
    237 F.R.D. 361 (D. Del. 2006) ..........................................................................................2

*Digital Control Inc. v. Charles Machine Works*,
    437 F.3d 1309 (Fed. Cir. 2006)..................................................................................6, 7, 8

*Eli Lilly & Co. v. Zenith Goldline Pharmaceuticals, Inc.*,
    2006 WL 3792689 (Fed. Cir. Dec. 6, 2006) ....................................................................11

*Fiskars, Inc. v. Hunt Manufacturing Co.*,
    221 F.3d 1318 (Fed. Cir. 2000).....................................................................................9, 10

*Halliburton Co. v. Schlumberger Tech. Corp.*,
    925 F.2d 1435 (Fed. Cir. 1991)..........................................................................................8

*Honeywell International, Inc. v. Universal Avionics System Corp.*,
    343 F. Supp. 2d 272 (Fed. Cir. 2004) ..............................................................................11

*Impax Laboratories, Inc. v. Aventis Pharms., Inc.*,
    239 F.3d 1366 (Fed. Cir. 2006)..................................................................................6, 7, 8

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
    292 F.3d 728 (Fed. Cir. 2002)...........................................................................................12

*M. Eagles Tool Warehouse, Inc. v, Fisher Tooling Co.*,
    439 F.3d 1335 (Fed. Cir. 2006)...........................................................................................6

*Manville Sales Corp. v. Paramount System, Inc.*,
    917 F.2d 544 (Fed. Cir. 1990)..........................................................................................10

*Mele v. Federal Reserve Bank*,
    359 F.3d 251 (3d Cir. 2004)...............................................................................................5

## TABLE OF AUTHORITIES, cont'd

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH,*
    237 F.3d 1359 (Fed. Cir. 2001)...................................................................12

*Reid-Ashman Manufacturing v. Swanson Semiconductor Serv., L.L.C.,*
    2007 U.S. Dist. LEXIS 37665 (N.D. Cal. May 10, 2007) ...................7, 10

*Scripps Clinic & Research Foundation v. Genentech, Inc.,*
    927 F.2d 1565 (Fed. Cir. 1991)...........................................................8-9, 10

*Sikirica v. Nationwide Insurance Co.,*
    416 F.3d 214 (3d Cir. 2005)....................................................................5

## STATUTES

35 U.S.C. § 292..............................................................................................5

37 C.F.R. § 1.56........................................................................................6, 7, 8

37 C.F.R. 1.97(d) .........................................................................................1

Fed. R. Civ. P. 9(b) ..................................................................................2, 7

## OTHER AUTHORITIES

Wright & Miller, 5C Fed. Prac. & Proc. Civ. 3d § 1367 (1990) ....................6

## INTRODUCTION

Plaintiff, Venetec International, Inc. ("Venetec"), is a leading developer of medical stabilization devices that enhance the quality of patient care in hospitals, home care and nursing facilities. Venetec contends that a knock-off product sold by Defendant, Nexus Medical, LLC ("Nexus"), infringes at least three of its United States patents covering innovative features of Venetec's medical stabilization devices.

Nexus asserts that the three Patents-in-Suit are invalid, based on six prior art references. Four of those six prior art references formed the basis for an *inter partes* reexamination request filed by Nexus of one of the Patents-in-Suit, U.S. Patent No. 6,447,485. During the prosecution of the most recently issued of the three infringed patents, U.S. Patent 7,247,150 ("the '150 Patent") – and months before Nexus made its invalidity contentions in this lawsuit – Venetec disclosed *each* of those six prior art references to the PTO, including the four prior art references that formed the basis for Nexus' *inter partes* reexamination request. Then, once Nexus asserted in this litigation that the six references allegedly invalidated the other two patents in this case (which are related to the '150 Patent), Venetec disclosed to the PTO those invalidity contentions as well. The PTO confirmed Venetec's disclosure of Nexus' invalidity contentions in connection with the '150 Patent application, but did not consider those arguments because they were submitted after the issue fee was paid.[1]

Now that the '150 Patent has been issued by the PTO and added to this lawsuit, Nexus has asserted a counterclaim alleging, *inter alia*, that Venetec engaged in inequitable

---

[1] *See* 37 CFR 1.97(d) ("An information disclosure statement shall be considered by the Office if filed by the applicant after the period specified in paragraph (c) of this section, provided that the information disclosure statement is filed on or before payment of the issue fee..."). Venetec paid the issue fee for the '150 Patent on March 15, 2007, six weeks *before* Nexus served its invalidity contentions regarding the '979 and '485 Patents on May 30, 2007.

1

conduct by not withdrawing its application for the '150 Patent from issuance. Nexus' counterclaim further alleges that despite the fact that Venetec had (i) disclosed Nexus' invalidity arguments and (ii) previously disclosed the references underlying Nexus' invalidity arguments during prosecution, Venetec somehow acted with an intent to deceive the PTO. Nexus makes this allegation without identifying anything that the PTO was allegedly "deceived" about.

Nexus' inequitable conduct counterclaim fails as a matter of law because Venetec need not re-disclose prior art references it already put before the Patent Examiner. Nexus' counterclaim also, independently, fails because the controlling Federal Circuit law is that Venetec's previous disclosure of the prior art references establishes the *absence* of any intent to deceive the PTO. Consequently, Nexus' counterclaim fails twice. As a matter of law, it must be dismissed.

## SUMMARY OF ARGUMENT

Pursuant to Federal Rule of Civil Procedure 12(c), judgment on the pleadings should be granted on Count III of Nexus' counterclaim, which alleges that one of the three patents-in-suit – the '150 Patent – is unenforceable for inequitable conduct. Defendant's unenforceability counterclaim requires it to plead with particularity that Venetec purposefully withheld or affirmatively misrepresented material information from the Patent and Trademark Office ("PTO") during the prosecution of the '150 Patent, with intent to deceive. *See, e.g., Connection Corp. v. AOL Time Warner, Inc.*, 237 F.R.D. 361, 366-67 (D. Del. 2006); FED. R. CIV. P. 9(b). Because the prior art references that form the basis for Nexus' claim of fraud *were submitted to the PTO by Venetec in accordance with PTO procedures*, and no allegations of affirmative misrepresentation about those references have been made, the controlling Federal Circuit authority requires dismissal of Nexus' counterclaim as a matter of law.

2

## STATEMENT OF FACTS

### A.    Undisputed Factual Background Set Forth In The Pleadings.

The '150 Patent issued on July 24, 2007, and was assigned to Venetec. (D.I. 91 at ¶ 16.) The '150 Patent is a continuation of U.S. Patents Nos. 6,213,979 (the "'979 Patent") and 6,447,485 (the "'485 Patent"), both of which are assigned to Venetec and asserted in this action. (*Id.* at ¶¶ 6, 11, 23.)

On October 20, 2005 and November 21, 2006, during the prosecution of the '150 application and consistent with its duty of candor, Venetec disclosed to the PTO the known material prior art related to the field of the invention. Included in the disclosed prior art were the following six references:

> ➢ WO 96/10435 to Bierman ("Bierman");

> ➢ U.S. Patent No. 4,193,174 to Stephens ("Stephens");

> ➢ U.S. Patent No. 4,224,937 to Gordon ("Gordon I");

> ➢ U.S. Patent No. 4,250,880 to Gordon ("Gordon II");

> ➢ U.S. Patent No. 4,397,647 to Gordon ("Gordon III"); and

> ➢ U.S. Patent No. 4,517,971 to Sorbonne ("Sorbonne") (collectively, the "Six Prior Art References.").

(*See* Ex. A, '150 Patent Application History, pp. 77, 80 and 92.)

On January 29, 2007, Venetec sued Nexus, alleging that Nexus sale of the "The Bone" product infringed both the '485 and '979 Patents. (D.I. 1 at ¶¶ 1-14.) On March 2, the PTO sent a Notice of Allowability informing Venetec that the claims of the '150 application would be allowed over the prior art of record and that the '150 Patent would issue. *See* Ex. A, '150 Pros. History at 110-116. In accordance with PTO procedure, Venetec paid the issue fee on March 15, 2007. *Id.* at 121-124. In April, Venetec served its first written discovery requests. Nexus responded to those requests in a May 30, 2007 interrogatory response, asserting that

Venetec's patents are invalid based on the Six Prior Art References.[2]  (D.I. 91 at ¶ 30.)  The invalidity contentions set forth in Nexus' interrogatory response are based entirely on prior art that the examiner for the '150 Patent application had *already-considered* during prosecution of the '150 application (*i.e.,* each of the Bierman, Stephens, Sorbonne, Gordon I, II and III references).[3]

On June 20, 2007, Venetec disclosed to the PTO Nexus' invalidity contentions and claim charts[4] for the '485 and '979 Patents that were served in this action in response to Venetec's interrogatories ("Nexus' Interrogatory Invalidity Contentions") in the then-pending '150 Patent application.  (D.I. 91, Ex. A thereto.)  Because Nexus' Interrogatory Invalidity Contentions were submitted to the PTO after the patent issue fee was paid, the PTO did not consider those contentions during the prosecution of the '150 Patent.  (*Id.* at ¶ 33, Ex. B thereto; *see* note 1, *supra*.)  There is no dispute, however, that each of the prior art references included in those contentions were cited to and considered by the PTO during the prosecution of the '150 Patent.

---

[2]  Although Nexus' interrogatory response alleges invalidity of the '485 and '979 Patents based on the Six Prior Art References, the Bierman, Stephens, Gordon I, Gordon II and Gordon III references had been disclosed by Venetec and were before the PTO during prosecution of the '979 and '485 Patents.  Thus, as to the '485 and '979 Patents, only the Sorbonne reference had not been previously considered by the PTO prior to the issuance of those two patents.

[3]  The Sorbonne reference was identified on a separate Information Disclosure Statement ("IDS," also called by its government form name, "PTO Form 1449" or simply "1449") to the PTO.  (*See* Ex. A, '150 Pros. History at 92.)  Consequently, in addition to the presumption that the Patent Examiner carefully examined this prior art reference prior to issuance of the '150 Patent, the Sorbonne patent was *individually* submitted and identified for consideration by the Examiner.

[4]  Nexus asserts in its May 30, 2007 interrogatory response that the asserted claims are invalid based on the Six Prior Art References.  However, in the claim charts detailing those contentions, Nexus relies on only Bierman and Sorbonne as allegedly invalidating.

On July 24, 2007, the '150 Patent issued.  (D.I. 91 at ¶ 16.)  The next day the Court ordered that Venetec could assert the '150 Patent in this suit.  Shortly thereafter Venetec filed its First Supplemental Complaint against Nexus, alleging, *inter alia,* infringement by Nexus of the '979 Patent, the '485 Patent and the '150 Patent.  (D.I. 71.)  On September 5, 2007, Venetec filed its Second Supplemental Complaint against Nexus, also alleging infringement by Nexus of the '979 Patent, the '485 Patent and the '150 Patent.  (D.I. 84.)[5]  On September 19, 2007, Nexus filed an answer and counterclaim against Venetec, providing conclusory allegations that because Venetec failed to withdraw its patent application for the '150 Patent to allow the PTO to re-consider the previously considered Six Prior Art References that Venetec somehow acted in "bad faith" with "an intent to deceive the Patent Office."  (D.I. 91 at ¶ 37.)

Nexus' allegations are insufficient to state a claim with particularity and the counterclaim for inequitable conduct should be dismissed.

## ARGUMENT

**I.    PURSUANT TO RULE 12(C), VENETEC IS ENTITLED TO PARTIAL JUDGMENT ON THE PLEADINGS THAT THE '150 PATENT IS ENFORCEABLE.**

Judgment on the pleadings is appropriate if the movant demonstrates "there are no material issues of fact, and [it] is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005).  "In deciding a Rule 12(c) motion, the court does not consider matters outside the pleadings." *Mele v. Fed. Reserve Bank*, 359 F.3d 251, 257 (3d Cir. 2004).  Allowing judgment on the pleadings provides a means for disposing of claims where the material facts are undisputed and judgment can be achieved based on the competing pleadings

---

[5]    Venetec amended its complaint to assert six counts of false marking under 35 U.S.C. § 292.

and exhibits thereto, and documents incorporated by reference. Wright and Miller, 5C Fed. Prac. & Proc. Civ. 3d § 1367 (1990).

As set forth above, the material facts necessary to decide the insufficiency of Nexus' unenforceability claim are presented in the counterclaim itself, the exhibits thereto and all the matters incorporated by reference. (*See* Section II, *supra*.) There are no matters "outside of the pleadings" that require consideration by the Court to decide this motion.

## II.    AS A MATTER OF LAW, VENETEC IS NOT REQUIRED TO TELL THE PTO *TWICE* ABOUT THE SAME PRIOR ART.

Nexus' counterclaim alleges that, because Venetec failed to withdraw the '150 patent application from issuance to allow the PTO to re-consider the previously considered six prior art references, Venetec committed inequitable conduct. Nexus is wrong.

"Patent applicants and those substantively involved in the preparation or prosecution of a patent application owe a 'duty of candor and good faith' to the PTO," and a breach of this duty may render the issued patent unenforceable for inequitable conduct. *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1339 (Fed. Cir. 2006) (citations omitted); 37 C.F.R. § 1.56. "To prove that a patent is unenforceable due to inequitable conduct, the alleged infringer must provide *clear and convincing* evidence of (1) affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information *and* (2) an intent to deceive."[6] *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 488 F.3d 1366, 1374 (Fed. Cir. 2006) (emphasis added).

---

[6]     Ordinarily, a court would then determine whether the questioned conduct amounts to inequitable conduct by balancing the determined levels of materiality and intent. *See Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006). Such a balancing analysis is not necessary here, however, as Nexus fails to allege facts to establish even a threshold levels of either materiality or intent to deceive.

Here, there has been no failure to disclose or any misrepresentation of material information. The prior art references underlying Nexus' inequitable conduct defense and claims were *each* disclosed to the PTO and Nexus does not allege that Venetec affirmatively misrepresented those references. Moreover, there can be no intent to withhold those references from the PTO given that the Six Prior Art References were, in fact, previously disclosed to the PTO.

**A.    Because Venetec Submitted the "Six Prior Art References" In Connection With Prosecution of the '150 Patent, Failure to Re-Submit Those References Cannot Be Deemed "Material"**

Nexus asserts that the Nexus Interrogatory Invalidity Contentions and the invalidity contentions submitted in conjunction with the '485 Reexamination were material to the prosecution of the '150 Patent. Nexus is incorrect.

A party pleading inequitable conduct is required to plead with particularity how the allegedly withheld information is material to the prosecution. *See* FED. R. CIV. P. 9(b); *Reid-Ashman Mfg. v. Swanson Semiconductor Serv., L.L.C.*, 2007 U.S. Dist. LEXIS 37665 at *18-*20 (N.D. Cal. May 10, 2007) (dismissing inequitable conduct claim and holding that the allegations were "insufficient because [Defendant] has failed to identify with particularity facts showing the alleged omissions were material...").  There are different methods for courts to determine whether allegedly withheld information is "material" under 37 C.F.R. § 1.56. *See Impax Laboratories, Inc. v. Aventis Pharms, Inc.*, 239 F.3d 1366 at 1374 (quoting *Digital Control*, 437 F.3d at 1316).  First, a court may look to the statute itself, which sets forth the PTO's definition:

Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and

(1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or

(2) It refutes, or is inconsistent with, a position the applicant takes in:

7

(i) Opposing an argument of unpatentability relied on by the Office, or

(ii) Asserting an argument of patentability.

37 C.F.R. § 1.56(b). A court may also consider the "reasonable examiner" standard, which teaches that information is material if "a reasonable examiner would have considered such prior art important in deciding whether to allow the parent application." *Impax*, 239 F.3d at 1374 (quoting *Digital Control*, 437 F.3d at 1316).

Regardless of the materiality standard to be applied, however, it is well-settled that "[a] reference that is simply cumulative to other references [already before the patent examiner] does not meet the threshold of materiality that is predicate to a holding of inequitable conduct." *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991) (citing *Halliburton Co. v. Schlumberger Tech. Corp.*, 925 F.2d 1435, 1440 (Fed. Cir. 1991)). The first sentence of 37 C.F.R. § 1.56(b) expressly states that "[i]nformation is material to patentability when it is ***not cumulative to information already of record*** or being made of record in the application…". 37 C.F.R. § 1.56(b) (emphasis added). Thus, the Federal Circuit has made clear that "a withheld otherwise material prior art reference is *not* material for the purposes of inequitable conduct if it is merely cumulative to that information considered by the examiner." *Digital Control*, 437 F.3d at 1319 (emphasis in original).

For example, in *Scripps Clinic & Research Found. v. Genentech, Inc.*, the alleged infringer asserted inequitable conduct based on a reference, "the Meyer abstract," that was not cited to the patent examiner. 927 F.2d at 1582. However, the Meyer abstract was cited in several other references that the patent applicant had disclosed to the PTO. *Id.* Despite the fact that the relevant information was before the PTO, the alleged infringer nevertheless argued inequitable conduct because the patent applicant failed to bring the Meyer abstract to the

examiner's specific attention. *Id.* The Federal Circuit rejected this argument and affirmed a grant of summary judgment of no inequitable conduct, holding:

> *When a reference was before the examiner*, whether through the examiner's search or the applicant's disclosure, *it can not be deemed to have been withheld from the examiner, and thus there cannot be a finding of inequitable conduct.*

*Id.* (emphasis added).

Similarly, in *Fiskars Inc. v. Hunt Manufacturing Co.*, the alleged infringer asserted inequitable conduct, alleging the patent applicant withheld four material references with the intent to deceive or mislead the examiner. 221 F.3d 1318, 1326-1328 (Fed. Cir. 2000). The prosecution history of the asserted patent, however, showed that the primary allegedly withheld reference was listed on the PTO Form 1449 by the applicant during prosecution. *Id.* at 1327. Despite this information being listed as cited to the PTO, the alleged infringer argued that the patent examiner nevertheless did not consider it, thereby placing the obligation on the patent applicant to stress the relevance of the reference. *Id.* The district court held that there was no inequitable conduct, concluding that when a reference was previously cited to the patent examiner it can not later be deemed to have been withheld. *Id.* The Federal Circuit agreed:

> *An applicant is not required to tell the PTO twice about the same prior art, on pain of loss of the patent for inequitable conduct.*
> * * *
> *An applicant <u>can not</u> be guilty of inequitable conduct if the reference was cited to the examiner, whether or not it was a ground of rejection by the examiner.*

*Id.* (emphasis added).

Here, Nexus pleads inequitable conduct based on the argument that Venetec was required to withdraw the '150 application to allow the PTO to consider its so-called invalidity contentions related to the '485 patent, which were based on the Bierman, Sorbonne, Stephens,

Gordon I, Gordon II and Gordon III references – all of which were "cited to the examiner" during prosecution of the '150 patent. (*See* Ex. A, '150 Patent Application History, pp. 77, 80 and 92.) As a preliminary matter, Nexus fails to plead with particularity any facts to demonstrate *how* their so-called invalidity contentions were material to the prosecution of the '150 application. *See Cent. Admixture Pharm. Servs. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356-57 (Fed. Cir. April 3, 2007); *Reid-Ashman Mfg*, 2007 U.S. Dist. LEXIS 37665 at *18-*20. In any event, Venetec was under no obligation to re-cite to the same cumulative references in light of Nexus' so-called invalidity contentions, having ***already cited*** the references that Nexus proffered as invalidating in the '485 Reexamination,. *Fiskars,* 221 F.3d at 1326; *Scripps*, 927 F.2d at 1582. Nexus' invalidity contentions merely attempt to (mis)characterize prior art previously considered by the Patent Examiner. Regardless, they were submitted.

        In sum, the alleged withheld information (whether the references themselves or associated Interrogatory Invalidity Contentions) that forms the basis for Nexus' inequitable conduct allegations *was* disclosed and thus cannot be "material" as a matter of law. For this reason alone, Venetec is entitled to judgment on Nexus' unenforceability counterclaim.

> **B.     Because Venetec Submitted the "Six Prior Art References" In Connection With Prosecution of the '150 Patent, Failure to Re-Submit Them Cannot Establish a *Prima Facie* Showing That Venetec "Made a Deliberate Decision to Withhold a Known Material Reference"**

        Even if Nexus' so-called invalidity contentions were somehow material to the prosecution of the '150 Patent (which they are not), Nexus must also allege facts establishing that Venetec withheld those contentions with the deliberate intent to mislead the PTO. *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990) ("'Materiality does not presume intent, which is a separate and essential component of inequitable conduct.' Appellants must show by clear and convincing evidence that Manville acted inequitably by *intending to*

*mislead or deceive* the PTO.") (quoting *Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1567 (Fed. Cir. 1988)) (emphasis original). As with allegations of materiality, inequitable conduct pleadings alleging an intent to deceive must be done so with particularity. *Cent. Admixture Pharm. Servs.*, 482 F.3d at 1356-57 (affirming dismissal of inequitable conduct complaint where the pleading did not plead with particularity facts amounting to an intent to deceive).

Nexus contends that Venetec acted in bad faith and intended to deceive the PTO by not submitting Nexus' '485 Reexamination invalidity contentions and by not *re-submitting* Nexus' Interrogatory Invalidity Contentions, both of which were formed on references that Venetec had already previously disclosed. To establish inequitable conduct "the record must contain clear and convincing evidence that the applicant made a deliberate decision to withhold a known material reference. Beyond that, the applicant must have withheld the material subject matter with the intent to deceive." *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 2006 WL 3792689 at *9 (Fed. Cir. Dec. 6, 2006). Nexus fails to proffer any theory of how Venetec *providing* all the information it had concerning Nexus' Invalidity Contentions can establish deceptive intent. Indeed, the controlling law and common sense demonstrate just the opposite.

First, Nexus is unable to point to any allegedly material reference whatsoever (*i.e.,* the Six Prior Art References on which its invalidity contentions are based) that was *actually withheld from the PTO*. Without a withheld reference (or some other misrepresentation of material fact), there can be no intent to deceive the PTO.[7] *See Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 343 F. Supp. 2d 272, 312 (Fed. Cir. 2004) (finding there was no intent to

---

[7]    Indeed, each of the references that form the basis for Nexus' counterclaim of inequitable conduct were disclosed by Venetec to the PTO *twice* – both in connection with the initial prosecution of the application and *again* when Venetec disclosed Nexus' Invalidity Contentions in a separate IDS on June 20, 2007.

deceive "in light of the information disclosed to the examiner."); *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1367 (Fed. Cir. 2001) (affirming trial court finding of no intent to deceive where the allegedly invalidating reference was previously disclosed by the patent applicant to the Patent Office).

Second, Nexus fails to allege any action by Venetec that allegedly evidences an intent to deceive. In fact, Nexus fails to proffer any theory to support its assertion that the PTO allegedly was "deceived." Nexus merely provides a conclusory allegation Venetec's *submission* to the PTO of the Invalidity Contentions "was [done] with bad faith and an invent to deceive the Patent Office." (D.I. 91 at ¶ 37.) But Nexus must plead with particularity any "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information" that was done *with* intent to deceive. *See Cent. Admixture Pharm. Servs.*, 482 F.3d at 1356-57. Here, Nexus fails to identify any (i) alleged misrepresentation, (ii) information that Venetec allegedly did not disclose, or (iii) submission of alleged false information. Nexus attempts to premise its allegation of deceptive intent on Venetec's *submission* of Nexus' Invalidity Contentions and its decision to not withdraw the '150 application from issuance. The patent rules, however, do not require Venetec to withdraw the '150 Patent from issuance and there is no authority to the contrary.

Accordingly, Venetec's submission of Nexus' contentions (in addition to its earlier submission of the underlying prior art references) establish a lack of intent to deceive *as a matter of law. See Juicy Whip, Inc. v. Orange Bang, Inc.,* 292 F.3d 728, 744-46 (Fed. Cir. 2002) (reversing district court's denial of judgment as a matter of law and holding that defendant failed to establish the "threshold" levels of deceitful intent). Nexus cannot simply assert that Venetec's

submission of the Invalidity Contentions was done with "intent to deceive" to satisfy its obligation to plead intent with particularity under Rule 9(b).

## CONCLUSION

"The habit of charging inequitable conduct in almost every major patent case has become an absolute plague." *Burlington Indus., Inc. v. Dayco Corp.,* 849 F.2d 1418, 1422 (Fed. Cir. 1988). Nexus continues this blight by baselessly pleading inequitable conduct here. Long before Nexus made its (infirm) invalidity contentions in this case, Venetec had disclosed the Bierman, Gordon I and II, and Sorbonne references to the PTO. Venetec's re-disclosure of those references in June 2007 re-submitted cumulative material and establishes the lack of intent to deceive. Venetec complied with its duty of candor and respectfully asks this Court to award partial judgment on the pleadings to Venetec and dismiss Count III of Nexus' Counterclaim alleging inequitable conduct, and any other relief it deems appropriate.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com
*Attorneys for Plaintiff*

*Of Counsel:*

Steven C. Cherny
Clement J. Naples
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834
(212) 906-1200

13

Maximilian A. Grant
Michael A. David
LATHAM & WATKINS LLP
555 Eleventh Street, Suite 1000
Washington, DC  20004
(202) 637-2200

September 28, 2007

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on September 28, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Richard Herrmann, Esquire
> Mary Matterer, Esquire
> MORRIS JAMES

I also certify that copies were caused to be served on September 28, 2007 upon the following in the manner indicated:

**BY ELECTRONIC MAIL
and HAND DELIVERY**

Richard Herrmann, Esquire
Mary Matterer, Esquire
MORRIS JAMES
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801

**BY ELECTRONIC
and FIRST CLASS MAIL**

Scott R. Brown, Esquire
Jennifer C. Bailey, Esquire
HOVEY WILLIAMS LLP
2405 Grand Boulevard
Suite 400
Kansas City, MO 64108

*/s/ Maryellen Noreika*
Maryellen Noreika (#3208)
mnoreika@mnat.com

# Exhibit A

PTO/SB/08 Equivalent

| | |
|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Multiple sheets used when necessary)* SHEET 2 OF 8 | |

| | |
|---|---|
| Application No. | 11/204,585 |
| Filing Date | August 16, 2005 |
| First Named Inventor | Steven F. Bierman |
| Art Unit | Unknown |
| Examiner | Unknown |
| Attorney Docket No. | VBNTL.26FCPD1CC |

## U.S. PATENT DOCUMENTS

| Examiner Initial | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 30 | 4,142,527 | 03/06/79 | Garcia | |
| | 31 | 4,161,177 | 07/17/79 | Fuchs | |
| | 32 | 4,193,174 | 03/18/80 | Stephens | |
| | 33 | 4,224,937 | 09/30/80 | Gordon | |
| | 34 | 4,248,229 | 02/03/81 | Miller | |
| | 35 | 4,250,880 | 02/17/81 | Gordon | |
| | 36 | 4,316,461 | 02/23/82 | Marais, et al. | |
| | 37 | 4,324,236 | 04/13/81 | Gordon, et al. | |
| | 38 | 4,326,519 | 04/27/82 | D'Alo, et al. | |
| | 39 | 4,362,156 | 12/07/82 | Feller, Jr, et al. | |
| | 40 | 4,392,853 | 07/12/83 | Muto | |
| | 41 | 4,397,647 | 08/09/83 | Gordon | |
| | 42 | 4,397,647 | 08/09/83 | Gordon | |
| | 43 | 4,449,975 | 05/22/84 | Perry | |
| | 44 | 4,453,933 | 06/12/84 | Speaker | |
| | 45 | 4,474,559 | 10/02/84 | Steiger | |
| | 46 | 4,460,639 | 11/06/84 | Peterson, et al. | |
| | 47 | 4,516,968 | 05/14/85 | Marshall, et al. | |
| | 48 | 4,563,177 | 01/07/86 | Kamen | |
| | 49 | 4,633,863 | 01/06/87 | Filips, et al. | |
| | 50 | 4,650,473 | 03/17/87 | Bartholomew, et al. | |
| | 51 | 4,660,555 | 04/28/87 | Payton | |
| | 52 | 4,711,636 | 12/08/87 | Bierman | |
| | 53 | 4,742,824 | 05/10/88 | Payton, et al. | |
| | 54 | 4,808,162 | 02/28/89 | Oliver | |
| | 55 | 4,823,789 | 04/25/89 | Beisang, III | |
| | 56 | 4,828,496 96 | 05/02/89 | Palerok, et al. | |
| | 57 | 4,852,844 | 08/01/89 | Villaveces | |
| | 58 | 4,857,058 | 08/15/89 | Payton | |

KRH
4-9-07

| Examiner Signature | [signature] | Date Considered | March 2, 2007 |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T¹ - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | | | |
|---|---|---|---|---|
| Application No. | 11/204,586 |
| Filing Date | August 16, 2005 |
| First Named Inventor | Steven F. Bierman |
| Art Unit | Unknown |
| Examiner | Unknown |
| Attorney Docket No. | VINTL.26PCPD1CC |

*(Multiple sheets used when necessary)*
SHEET 5 OF 6

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 117 | 5,520,656 | 05/28/96 | Byrd | |
| | 118 | 5,522,803 | 06/04/96 | Teissen-Simony | |
| | 119 | 5,527,293 | 06/18/96 | Zamierowski | |
| | 120 | 5,549,567 | 08/27/96 | Wolman | |
| | 121 | 6,001,081 | 12/14/99 | Collen | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Foreign Patent Document Country Code-Number-Kind Code Example: JP 1234567 A1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T⁶ |
|---|---|---|---|---|---|---|
| | 122 | 0064284 A2 | 4/82 | EPO | | |
| | 123 | 0247590 A2 | 12/02/87 | EPO | | |
| | 124 | EP 356,883 A | 7/18/69 | EPO | | |
| | 125 | 1,184,139 | 07/17/59 | France | | |
| | 126 | 2,361,529 | 7/1978 | France | | |
| | 127 | 2,063,679 | 08/10/81 | GB | | |
| | 128 | 2,089,466 A | 05/12/82 | GB | | |
| | 129 | WO 92/19309 | 11/12/82 | PCT | | |
| | 130 | WO 91/16939 | 11/14/91 | PCT | | |
| | 131 | WO 96/10435 | 04/11/96 | PCT | | |
| | 132 | WO 85/02774 | 07/04/85 | PCT | | |
| | 133 | WO 80/01458 | 7/24/80 | PCT | | |
| | 134 | 2,341,297 | 8/73 or 4/3/75 | West Germany | | |

KRH
4-6-07

Examiner Signature _____ Date Considered _Nov. 2, 200?_

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T⁶ - Place a check mark in this area when an English language Translation is attached.

11/06

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 11/204,588 |
|---|---|---|
| | Filing Date | August 18, 2005 |
| | First Named Inventor | Steven F. Bierman |
| | Art Unit | 3763 |
| *(Multiple sheets used when necessary)* | Examiner | Manuel A. Mendez |
| SHEET 1 OF 1 | Attorney Docket No. | VINTL.28FCPD1CC |

## U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| ✓ | 1 | 4,517,971 | 05/21/1985 | Sorbonne | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Foreign Patent Document Country Code-Number-Kind Code Example: JP 1234567 A1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T¹ |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T¹ |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

3135868_1

| Examiner Signature | | Date Considered Nov 3 2005 |
|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
T¹ - Place a check mark in this area when an English language Translation is attached.

092

NT

| *Notice of Allowability* | Application No. | Applicant(s) |
|---|---|---|
| | 11/204,586 | BIERMAN, STEVEN F. |
| | Examiner | Art Unit |
| | Manuel Mendez | 3763 |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MEPE 1308.

1. ☒ This communication is responsive to *Interview dated February 7, 2007*.

2. ☒ The allowed claim(s) is/are *1-35*.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All    b) ☐ Some*    c) ☐ None    of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the
           International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

    Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
        Paper No./Mail Date _____ .

    Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☒ Information Disclosure Statements (PTO/SB/08),
    Paper No./Mail Date 10/2005 and 11/2006

4. ☐ Examiner's Comment Regarding Requirement for Deposit
    of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☒ Interview Summary (PTO-413),
    Paper No./Mail Date _____ .

7. ☒ Examiner's Amendment/Comment

8. ☒ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____ .

U.S. Patent and Trademark Office
PTOL-37 (Rev. 08-06)                    Notice of Allowability                  Part of Paper No./Mail Date 20070302

110

Application/Control Number: 11/204,586                                    Page 2
Art Unit: 3763

REASONS FOR ALLOWANCE

The following is an examiner's statement of reasons for allowance:

The prior art of record does not disclose or suggest an anchoring system for securing a medical line to the body of the patient with the limitations disclosed by the independent claims of this application. Accordingly, claims 1-35 are allowable over the prior art of record.

EXAMINER'S AMENDMENT

An examiner's amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in a telephone interview with James F. Herkenhoff on February 7, 2007. The application has been amended as follows:

In claim 31, line 7, after the word "to", the word "receive" has been deleted and substituted by the word - - secure - -.  Additionally, in line 8, after the word "article", the phrase - -, at least a portion of the secured irregularly shaped medical article having a lateral width greater than a distance between said irregularly shaped walls - -.

The following claim has been added as claim number 35:

- - 35. The anchoring system of claim 1, wherein the coupling comprises a post extending from the base and a corresponding opening in the cover - -.

Application/Control Number: 11/204,586                                         Page 3
Art Unit: 3763

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Manuel Mendez whose telephone number is 571-272-4962. The examiner can normally be reached on 0730-1800 hrs.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Mr. Nicholas D. Lucchesi can be reached on 571-272-4977. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Manuel Mendez
Primary Examiner
Art Unit 3763

| | Application No. | Applicant(s) |
|---|---|---|
| ***Interview Summary*** | 11/204,588 | BIERMAN, STEVEN F. |
| | Examiner | Art Unit | |
| | Manuel Mendez | 3763 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Examiner  Manuel Mendez.*                    (3)_____ .

(2) *Mr. James F. Herkenhoff.*                    (4)_____ .

Date of Interview: *07 February 2007.*

Type:  a)☐  Telephonic   b)☐  Video Conference
      c)☒  Personal [copy given to: 1)☐ applicant   2)☒ applicant's representative]

Exhibit shown or demonstration conducted:   d)☒ Yes   e)☐ No.
   If Yes, brief description: *Movable Post Retainer.*

Claim(s) discussed: *1-34.*

Identification of prior art discussed: *n/a.*

Agreement with respect to the claims f)☒ was reached.   g)☐ was not reached.   h)☐ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was
reached, or any other comments: *It was agreed that the pending claims as disclosed in the supplemental amendment
dated January 3, 2007 are allowable; however, the examiner will conduct another search to ensure patentability.
Additionally, the examiner agreed to amend claim 31 and add new claim 35 as disclosed in a proposed amendment
attached to this form.*

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims
allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims
allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE
INTERVIEW.  (See MPEP Section 713.04).  If a reply to the last Office action has already been filed, APPLICANT IS
GIVEN A NON-EXTENDABLE PERIOD OF THE LONGER OF ONE MONTH OR THIRTY DAYS FROM THIS
INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO
FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview
requirements on reverse side or on attached sheet.

Examiner Note:  You must sign this form unless it is an
Attachment to a signed Office action.

Examiner's signature, if required

U.S. Patent and Trademark Office
PTOL-413 (Rev. 04-03)                    Interview Summary                    Paper No. 20070206

113

## Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview

**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews**
**Paragraph (b)**
In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

**37 CFR §1.2 Business to be transacted in writing.**
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
 – Application Number (Series Code and Serial Number)
 – Name of applicant
 – Name of examiner
 – Date of interview
 – Type of interview (telephonic, video-conference, or personal)
 – Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
 – An indication whether or not an exhibit was shown or a demonstration conducted
 – An identification of the specific prior art discussed
 – An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable. Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
 – The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
    (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the applicant.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

2

114

VINTL.26FCPD1CC

*Proposed Amendment*

25.    (Currently Amended) The anchor system of claim 23, wherein the coupling mechanism comprises a plurality of posts extending from the base and a corresponding plurality of openings in the cover.

26.    (Currently Amended) The anchor system of claim 23, wherein the receiving space channel is defined by opposed inner faces of a pair of extensions positioned between the base and the cover with the cover in the closed position.

27.    (Original) The anchoring system of claim 23, wherein the first medical line is a catheter and the second medical line is a medical tube.

28.    (New) An anchoring system for securing a medical line to the body of a patient, the system comprising:

a fitting on a medical line, the fitting having a pair of wings; and

a retainer including a base that defines a receiving area for receiving a portion of the fitting, a cover, and first and second pairs of posts, the cover being movable between a closed position in which at least a portion of the cover extends over at least a portion of the receiving area and an open position in which the receiving area is at least partially open, the first and second pairs of posts extending between the base and the cover at least when the cover is in the closed position, at least two of the posts of the first and second pairs of posts being disposed on the receiving area and spaced apart so as to receive at least a portion of one of the wings there between, and at least two other posts of the first and second pairs of posts being disposed on the receiving area and spaced apart so as to receive at least a portion of the other one of the wings there between, at least a portion of each of the first and second pairs of posts being located at least partially beneath the cover when the cover is in the closed position.

29.    (New) An anchoring system according to Claim 28, wherein the first and second pairs of posts are arranged at the corners of a rectangle.

30.    (New) An anchoring system according to Claim 28, wherein the first and second pairs of posts extend in an upward direction from the base.

31.    (New) An anchoring system for securing a medical article to the body of a patient, the medical article having an irregularly shaped fitting, the anchoring system comprising:

an anchor pad having an upper surface and a lower surface; and

a retainer comprising:

-4-

115

VJNTL.26FCPD1CC

a base being coupled to the anchor pad;

a plurality of walls extending generally perpendicular to the base and being arranged relative to each other so as to ~~secure~~ receive (col. 19, lines 62-65) between at least portion of the walls the irregularly shaped fitting of the medical article, at least a portion of the secured irregularly shaped medical article having a lateral width greater than a distance between said irregularly shaped walls; and

a cover movable coupled to the base so as to move between a first position and a second position, the cover lying above at least part of the base when in the first position.

~~32.     (New) An anchoring system according to Claim 31, wherein the cover is coupled to the base by a flexible coupling.~~

~~33.     (New) An anchoring system according to Claim 31 further comprising at least one post arranged between the base and the cover when the cover is in the first position, wherein the~~ post extends generally upward from the base.

~~34.     (New) An anchoring system according to Claim 33, wherein the cover includes a receptacle for receiving at least a portion of the post when the cover is in the first position.~~

35.     (New) The anchoring system of Claim 1, wherein the coupling comprises a post extending from the base and a corresponding opening in the cover.

3383897
020507

-5-

116

Complete and send this form, together with applicable fee(s), to: **Mail**   Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or **Fax** (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

| CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address) | Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission. |
|---|---|
| 20995      7590      05/16/2007<br><br>KNOBBE MARTENS OLSON & BEAR LLP<br>2040 MAIN STREET<br>FOURTEENTH FLOOR<br>IRVINE, CA 92614 | **Certificate of Mailing or Transmission**<br>I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.<br><br>_____ (Depositor's name)<br>_____ (Signature)<br>_____ (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/204,586 | 08/16/2005 | Steven F. Bierman | VINTL.36FCPD1CC | 3904 |

TITLE OF INVENTION: MEDICAL LINE ANCHORING SYSTEM

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO ~~YES~~ | $1400 ~~$700~~ | $300 | $0 | $1700 ~~$1000~~ | 08/16/2007 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| MENDEZ, MANUEL A | 3763 | 604-174000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

Knobbe Martens Olson & Bear, LLP
1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                     (B) RESIDENCE (CITY and STATE OR COUNTRY)

VENETEC  INTERNATIONAL, INC.         San Diego, CA

Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:
☒ Issue Fee
☒ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _11~1410_ (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.   ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _James F. Herkenhoff (signature)_      Date _MARCH 15, 2007_

Typed or printed name _James F. Herkenhoff_                Registration No. _51,245_

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

| Electronic Patent Application Fee Transmittal | |
|---|---|
| **Application Number:** | 11204586 |
| **Filing Date:** | 16-Aug-2005 |
| **Title of Invention:** | MEDICAL LINE ANCHORING SYSTEM |
| **First Named Inventor/Applicant Name:** | Steven F. Bierman |
| **Filer:** | James F. Herkenhoff/Luis Jaramillo |
| **Attorney Docket Number:** | VINTL.26FCPD1CC |
| Filed as Large Entity | |

**Utility    Filing Fees**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| Post-Allowance-and-Post-Issuance: | | | | |
| Utility Appl Issue fee | 1501 | 1 | 1400 | 1400 |
| Publ. Fee- early, voluntary, or normal | 1504 | 1 | 300 | 300 |

122

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension-of-Time: | | | | |
| Miscellaneous: | | | | |
| Total in USD ($) | | | | 1700 |

## Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 1597323 |
| **Application Number:** | 11204586 |
| **International Application Number:** | |
| **Confirmation Number:** | 3904 |
| **Title of Invention:** | MEDICAL LINE ANCHORING SYSTEM |
| **First Named Inventor/Applicant Name:** | Steven F. Bierman |
| **Customer Number:** | 20995 |
| **Filer:** | James F. Herkenhoff/Nicole Lauer |
| **Filer Authorized By:** | James F. Herkenhoff |
| **Attorney Docket Number:** | VINTL.26FCPD1CC |
| **Receipt Date:** | 15-MAR-2007 |
| **Filing Date:** | 16-AUG-2005 |
| **Time Stamp:** | 20:47:49 |
| **Application Type:** | Utility |

### Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment was successfully received in RAM | $ 1700 |
| RAM confirmation Number | 1123 |
| Deposit Account | |

### File Listing:

| Document Number | Document Description | File Name | File Size(Bytes) | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

124