## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VENETEC INTERNATIONAL, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 07-CV-0057*** |
| | ) | |
| NEXUS MEDICAL, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## NEXUS MEDICAL, LLC'S OPPOSITION TO VENETEC'S MOTION FOR
## PARTIAL JUDGMENT ON THE PLEADINGS

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
Telephone:  302-888-6800
Facsimile:  302-571-1750
mmatterer@morrisjames.com

Of Counsel:

Scott R. Brown  (Admitted *Pro Hac Vice*)
Jennifer C. Bailey  (Admitted *Pro Hac Vice*)
HOVEY WILLIAMS LLP
2405 Grand Boulevard, Suite 400
Kansas City, Missouri 64108
T:  816-474-9050
F:  816-474-9057

*ATTORNEYS FOR DEFENDANT*
*AND COUNTERCLAIM-PLAINTIFF*
*NEXUS MEDICAL, LLC*

# TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Facts Set Forth in the Pleadings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    Additional Facts to Be Developed That Support Nexus's Inequitable Conduct Claim  4

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    Venetec's Rule 12(c) Motion for Judgment on the Pleadings Must Fail Because Nexus
            Has Plead Facts That Would Establish Inequitable Conduct for the '150 Patent  . . . . 5

      B.    Nexus's Counterclaim of Inequitable Conduct Is More Than Sufficiently Plead to Meet
            the Requirements of Pleading with Particularity Under Rule 9(b)  . . . . . . . . . . . . . . 6

            1.    To Plead Inequitable Conduct with Particularity, this District Requires Only an
                  Identification of the Withheld Material Information and the Acts of Fraud . . . . 6

            2.    Nexus's Inequitable Conduct Defense and Counterclaim Plead the Withholding of
                  Material Information with an Intent to Deceive  . . . . . . . . . . . . . . . . . . . . . . . . 7

      C.    Venetec Committed Inequitable Conduct When It Failed to Cite to the Patent Office
            Notice of the Present Litigation, Nexus's Interrogatory Invalidity Contentions, and the
            Request for Reexamination of the '485 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.    Failure to Cite Material Information and an Intent to Deceive Must Be Shown for
                  Inequitable Conduct  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            2.    Material Information Is Any Information That Would Establish Unpatentability or
                  That a Reasonable Examiner Would Have Considered Important . . . . . . . . . . . 9

            3.    This Litigation, the Interrogatory Invalidity Contentions, and the Request for
                  Reexamination Are All Material Information That Should Have Been Cited to the
                  Patent Office. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                  a.    Related Litigation and Information Arising Therefrom Are *Per Se* Material
                        to Patentability, Must Be Cited, and Are Not Merely Cumulative to
                        Submission of the Underlying Prior Art References . . . . . . . . . . . . . . . . 10

i

b.    Under the Appropriate Standards, Venetec Withheld *Per Se* Material Information from the Patent Office . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

4.    Venetec Did Not Fulfill Its Duty of Candor by Citing the Material Information After Payment of the Issue Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

D.    This Court Can Infer an Intent to Deceive from Venetec's Knowing Failure to Cite for Consideration the Withheld Material Information . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1.    The More Material the Information, the Less Evidence of Intent Is Required . 16

2.    Venetec Knowingly Withheld Material Information from Proper Consideration by the Patent Office So That It Could Rush the '150 Patent to Issuance . . . . . . . . 17

E.    Request for Leave to Amend Nexus's Inequitable Conduct Defense and Counterclaim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## Statutes & Rules

FED. R. CIV. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 19

FED. R. CIV. P. 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 13, 20

37 C.F.R. § 1.56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

37 C.F.R. § 1.56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 14, 18

37 C.F.R. § 1.56(b)(2)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

37 C.F.R. § 1.97 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15

37 C.F.R. § 1.97(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

37 C.F.R. § 1.97(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

37 C.F.R. § 1.97(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

37 C.F.R. § 1.98 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## Cases

*Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F.Supp.2d 726 (D. Del 2002) . . . . . . . . . . . . . 6

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 68 F.Supp.2d 508 (D. N.J. 1999)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13, 16, 17

*Bushnell Corp. v. ITT Corp.*, 973 F.Supp. 1276 (D. Kan. 1997) . . . . . . . . . . . . . . . . . . . . . . . 19

*Central Admixture Pharmaceutical Services v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347
(Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1995) . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 13, 16

*DaimlerChrysler AG v. Feuling Advanced Technologies, Inc.*, 276 F.Supp.2d 1054 (S.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

*Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309 (Fed. Cir. 2006) . . . . . . . . . . 10

*Dri Mark Products, Inc. v. Wilpak Industries, Inc.*, No. 04-CV-696, 2006 WL 2882565 (E.D. N.Y. Oct. 6, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*France Telecom S.A. v. Novell, Inc.*, No. 102-437-GMS, 2002 WL 31355255 (D. Del. Oct. 17, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Haney v. Timesavers, Inc.*, 900 F.Supp. 1378 (D. Or. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*ICU Medical, Inc. v. B. Braun Medical Inc.*, No. C 01-3203 CRB, 2005 WL 588341 (N.D. Cal. March 14, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 17, 19

*Impax Labs., Inc. v. Aventis Pharmaceuticals Inc.*, 468 F.3d 1366 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 16, 17

*Inst. for Scientific Info., Inc v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Johnson v. Revenue Management Corp.*, 169 F.3d 1057 (7th Cir. 1999) . . . . . . . . . . . . . . . . 20

*Li Second Family Limited Partnership v. Toshiba Corp.*, 231 F.3d 1373 (Fed. Cir. 2000) . . . . . 9

*McKesson Info. Solutions, LLC v. The Trizetto Group, Inc.*, No. 04-cv-1258, 2005 WL 914776 (D. Del. Apr. 20, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 9, 17

*Nilssen v. Osram Sylvania, Inc.*, No. 2006-1550, ____ F.3d ____, 2007 WL 2937322 (Fed. Cir. Oct. 10, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Service, L.L.C.*, No. C-06-4693 JCS, 2007 WL 1394427 (N.D. Cal. May 10, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3rd Cir. 1984) . . . . . 6, 7, 8

*Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186 (3rd Cir. 1998) . . . . . . . . . . . . . . . 5

iv

*TruePosition, Inc. v. Allen Telecom, Inc.*, No. 01-cv-823, 2003 WL 151227 (D. Del. Jan. 21, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## Treatises & Articles

5A C. Wright & A. Miller, Federal Practice and Procedure, § 1368, at 222-23 (2001) . . 5

## Other

MPEP § 609.04(b)(IV) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

MPEP § 714.14  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

MPEP § 714.16  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

MPEP § 1442.04  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

MPEP § 2001.04  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

MPEP § 2001.06(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 18

## I.    INTRODUCTION

For Venetec to prevail on its motion for judgment of no inequitable conduct on the pleadings, Nexus must not be able to establish inequitable conduct under any set of facts that could be proved, even if all facts plead by Nexus are accepted as true.  This is an especially high burden for Venetec to overcome and is made even more difficult because it presents a motion that this Court grants in only limited circumstances, that is not supported by the law of inequitable conduct, and that is not supported by the facts in the pleadings.  Venetec's inability to establish a right to judgment on the pleadings is not even a close question, and Venetec has wasted the resources of Nexus and this Court in pursuing disfavored motion practice on the pleadings.

Venetec's primary argument for no inequitable conduct is that because it cited the prior art forming the bases for Nexus's invalidity contentions, it has complied with its duty of candor to the Patent Office.  Venetec, however, misrepresents its required duty of candor and the law of inequitable conduct.  The Patent Office, the Federal Circuit, and the district courts all require that litigation involving the same subject matter of an application being examined, and any matters arising from the litigation, must be properly disclosed to the Patent Office.  This is a distinct requirement, and it does not matter that the only references that form the bases of an invalidity challenge in the lawsuit are already cited to the Patent Office.  This required Venetec to cite, pursuant to the Patent Office's rules, the existence of this litigation involving two patents related to and having identical disclosures and nearly indistinguishable claims to the pending '150 patent application.  Venetec was also required to cite Nexus's invalidity contentions in its interrogatory responses and the Request for Reexamination of the '485 patent.

1

Venetec did not timely disclose the existence of the litigation and the interrogatory invalidity contentions to the Patent Office. It knowingly waited until **<u>after</u>** the Patent Office would no longer consider this material information as part of its examination of the '150 patent application. Venetec's late filing of notice of the lawsuit and Nexus's invalidity contentions failed to satisfy its duty of candor under the rules as a matter of law. Per the Patent Office's rules, citation of material after the close of examination on the merits does not discharge the duty of candor. Moreover, Venetec did not cite at all the Request for Reexamination. Nexus has plead that these acts and omissions were carried out with intent to deceive the Patent Office, which pleading this Court must accept as true for the purposes of this motion. Nevertheless, numerous courts have inferred an intent to deceive and have found inequitable conduct for withholding information as material as the existence of the litigation and a defendant's invalidity contentions. Venetec's attempts to hide behind its burying of 136 prior art references does not fulfill its duty of candor, infers an intent to deceive, and most certainly does not compel this Court to find judgment of no inequitable conduct on the pleadings, pursuant to Rule 12(c).

## II. FACTS

### A. Facts Set Forth in the Pleadings.

U.S. Patent No. 7,247,150 ("the '150 patent") was filed on August 16, 2005. (D.I. 71, Ex. C). The '150 patent is a continuation of U.S. Patent No. 6,929,625, which is a continuation of U.S. Patent No. 6,447,485 ("the '485 patent"), which is a divisional of U.S. Patent No. 6,213,979 ("the '979 patent"). (D.I. 71, Exs. A and B). The '150 patent is thus related to the '485 patent (D.I. 91, Counterclaim, ¶ 23), and all three patents are asserted in the present litigation. (D.I. 71).

2

Nexus's affirmative defense and counterclaim identifies two withheld pieces of material information, namely the invalidity contentions set forth in Nexus's interrogatory responses and the Request for Reexamination of the '485 patent. (D.I. 91, Counterclaim, ¶ ¶ 29-30). For each piece of information, Nexus provided a detailed explanation of why the information was material. For the Request for Reexamination, Nexus plead the identifying information for the Request (D.I. 91, ¶ 24), the fact that the Request set forth invalidity contentions in multiple claim charts (¶ ¶ 25-26), and the fact that the Request asserted that the related '485 patent was anticipated and/or obvious in view of certain prior art references (¶ 27). Moreover, Nexus plead the relationship of the '485 patent for which reexamination was requested to the '150 patent to establish that the patents were regarding the same subject matter and therefore material to patentability (¶ 28). Nexus further plead that the Request for Reexamination was not cited by Venetec to the Patent Office (¶ 29).

For the interrogatory invalidity contentions, Nexus identified the contentions (¶ 30). Nexus further identified, with supporting exhibits, how the contentions were knowingly improperly disclosed to the Patent Office (¶ 31) and how the Patent Office notified Venetec that it was not considering the contentions because they were improperly disclosed after payment of the issue fee (¶ ¶ 32-35, 36). Moreover, Nexus plead that Venetec could have withdrawn the application from issuance, but chose not to do so (¶ 35).

Nexus plead upon information and belief that Venetec's failure to cite the Request for Reexamination and the interrogatory invalidity contentions was with bad faith and an intent to deceive the Patent Office, and that such failure breached its duty of candor to the Office, resulting in inequitable conduct (¶ 37).

**B.     Additional Facts to Be Developed That Support Nexus's Inequitable Conduct Claim.**

In addition to the facts plead in the papers to date, additional facts supporting Nexus's inequitable conduct defense and counterclaim will be developed. Documents supporting these facts are attached as exhibits to the Declaration of Jennifer C. Bailey submitted with this paper.

After filing the '150 patent application, Venetec filed an Information Disclosure Statement ("IDS") on October 24, 2005, that cited 136 prior art references to the Patent Office. (Declaration of Jennifer C. Bailey ("Bailey Dec."), Ex. A, IDS Dated October 24, 2005). The '150 patent application was first examined by the Patent Office in September 2006, and examination ended in March 2007 with a Notice of Allowability. (Bailey Dec., Ex. B).

Venetec filed the present litigation on January 29, 2007, six weeks before receipt of the Notice of Allowability, asserting the related '485 and '979 patents. (D.I. 1). Of course, Venetec did not originally assert the '150 patent because it had not yet issued. In fact, soon after filing the present litigation, Venetec was still actively prosecuting the '150 patent application. In particular, Venetec held an in-person interview with the Examiner of the '150 patent application on February 7, 2007, in Arlington, Virginia. (Bailey Dec., Ex. C). During the interview, Venetec discussed the amendments to the claims set forth in a previous Venetec Amendment. *Id*. Subsequent to the in-person interview, the Examiner issued a Notice of Allowability and Examiner's Amendment on March 16, 2007. (Bailey Dec., Ex. B). Strangely, Venetec had already paid the issue fee for the '150 patent a day prior, on March 15, 2007, even though the Patent Office did not mail the Notice of Allowability and Issue Fee Transmittal until March 16, 2007. (Bailey Dec., Ex. D). Needless to say, usually the issue fee is not paid until one receives notice that the application has been allowed.

4

Importantly, even though it had the opportunity to do so throughout February 2007, Venetec did not cite to the Patent Office notice of the present litigation prior to allowance of the application and payment of the issue fee.

## III.  ARGUMENT

### A.  Venetec's Rule 12(c) Motion for Judgment on the Pleadings Must Fail Because Nexus Has Plead Facts That Would Establish Inequitable Conduct for the '150 Patent.

A judgment on the pleadings under Rule 12(c) is appropriate only when no questions of fact are before the Court.  *Inst. for Scientific Info., Inc v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3rd Cir. 1991); *see also* 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1368, at 222-23 (2001) ("Hasty or imprudent use" of motions for judgment on the pleadings is generally disfavored).  The moving party must demonstrate that it is entitled to judgment as a matter of law.  *Id.*  However, the Court must accept the non-movant's allegations as true and draw all reasonable factual inferences in favor of the non-moving party.  *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 189 (3rd Cir. 1998).  A judgment on the pleadings can only be sustained if "no relief could be granted under any set of facts that could be proved."  *Id.*

Venetec cannot establish that Nexus's inequitable conduct claim fails as a matter of law under any set of facts that Nexus could prove, accepting all facts plead by Nexus as true, and drawing all reasonable inferences in Nexus's favor.  As discussed in detail below, Nexus has plead that Venetec knowingly withheld from consideration by the Patent Office two pieces of material information that a reasonable patent examiner would find important to patentability, and that such withholding was with an intent to deceive.  Per Rule 12(c), these facts must be accepted as true.  This alone is enough to defeat a motion for judgment on the pleadings.

**B.    Nexus's Counterclaim of Inequitable Conduct Is More Than Sufficiently Plead to Meet the Requirements of Pleading with Particularity Under Rule 9(b).**

*1.    To Plead Inequitable Conduct with Particularity, this District Requires Only an Identification of the Withheld Material Information and the Acts of Fraud.*

Allegations of fraud must be pled with particularity, and claims of inequitable conduct fall within the class of assertions that must satisfy this heightened pleading standard.  FED. R. CIV. P. 9(b); *Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F.Supp.2d 726, 734 (D. Del 2002)[1].  While "allegations of 'date, place or time'" satisfy the particularity requirements, a party is "free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3rd Cir. 1984).

This District has held that inequitable conduct allegations "remain subject to the liberal pleading standard of Rule 8, which requires only a 'short and plain' statement of a claim or defense." *TruePosition, Inc. v. Allen Telecom, Inc.*, No. 01-cv-823, 2003 WL 151227, at *5 (D. Del. Jan. 21, 2003).  At its core, Rule 9(b) only requires a party to place opposing counsel on notice of the misconduct with which it is charged.  *Id.*  Thus, for an inequitable conduct claim in a patent infringement case, this District has repeatedly held that the particularity requirements for Rule 9(b) are satisfied if a movant identifies the information that was allegedly withheld from the PTO and states the alleged acts of fraud.  *See McKesson Info. Solutions, LLC v. The Trizetto Group, Inc.*, No. 04-cv-1258, 2005 WL 914776, at *2-3 (D. Del. Apr. 20, 2005); *TruePosition*, 2003 WL 151227, at *5-6; *France Telecom S.A. v. Novell, Inc.*, No. 102-437-GMS, 2002 WL 31355255, at *2-3 (D. Del. Oct. 17, 2002).

---

[1]  Nexus is briefing the law under Rule 9(b) because Venetec twice argues about this standard, but Nexus does not believe Venetec has actually moved for relief pursuant to Rule 9(b).

###### 2. *Nexus's Inequitable Conduct Defense and Counterclaim Plead the Withholding of Material Information with an Intent to Deceive.*

Nexus has sufficiently plead each element required under this District's standard for pleading inequitable conduct with particularity. Nexus alleged Venetec intentionally, and with intent to deceive, failed to cite for consideration by the Patent Office the Request for Reexamination of the '485 Patent. (D.I. 91, ¶ ¶ 29, 37). Additionally, Nexus alleged Venetec intentionally, and with an intent to deceive, failed to properly cite Nexus's interrogatory invalidity contentions and further failed to withdraw the '150 patent from issuance, per the Patent Office's suggestion, once it was informed the Office would not review the contentions. (D.I. 91, ¶ ¶ 33-36, 37, 39). Nexus even described the contents of these documents to demonstrate their materiality to the Patent Office. (D.I. 91, ¶ ¶ 25-27, 30). These allegations more than sufficiently provide notice to Venetec of Nexus's assertions that Venetec intentionally withheld material information, as required by this District. *See, e.g., McKesson*, 2005 WL 914776, at *2-*3.

Additionally, it was sufficient for Nexus to plead upon information and belief that Venetec withheld material information with an intent to deceive. First, the Federal Circuit recognizes that direct evidence of intent is rarely available, and this is even more true at the beginning stages of litigation prior to discovery. (*See* Section III(D)). Second, given the materiality of the withheld information, it is reasonable for a Court to infer intent to deceive. *Id*. Third, Nexus is not required to plead every fact necessary to establish its case, but rather to provide notice to Nexus of the allegation of intent to deceive. *Seville*, 742 F.2d at 791. Fourth, Nexus alleged facts establishing that Venetec knew it did not properly cite the invalidity contentions and that they were not considered by the Patent Office in determining patentability. (D.I. 91, ¶ ¶ 33-36).

The cases Venetec cites in support of its assertion that Nexus failed to plead inequitable conduct with particularity under Rule 9(b) are inapposite. *Reid-Ashman* is distinguishable because the plaintiff did not explain how the withheld information was material, and that court applies a more restrictive standard than this District. *Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Service, L.L.C.*, No. C-06-4693 JCS, 2007 WL 1394427, at *6 (N.D. Cal. May 10, 2007). Nonetheless, the *Reid-Ashman* court gave the plaintiff leave to amend its claim. *Id.* *Central Admixture* is also distinguishable because the plaintiff made only a generalized pleading that the defendant withheld all the known prior art, without an express identification of the prior art. *Central Admixture Pharmaceutical Services v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356-57 (Fed. Cir. 2007). In contrast, Nexus's pleading identifies with particularity at least two material items of information withheld from the Office. Indeed, Nexus has "inject[ed] precision and some measure of substantiation" into the pleading, such that Venetec cannot deny it is fully apprised of the conduct with which it has been charged. *Seville*, 742 F.2d at 791.

## C. Venetec Committed Inequitable Conduct When It Failed to Cite to the Patent Office Notice of the Present Litigation, Nexus's Interrogatory Invalidity Contentions, and the Request for Reexamination of the '485 Patent.

### 1. Failure to Cite Material Information and an Intent to Deceive Must Be Shown for Inequitable Conduct.

Each applicant and attorney associated with a patent application has a duty of candor and good faith before the Patent Office. 37 C.F.R. § 1.56(a); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1995). This duty of candor requires the applicant and attorney to notify the Patent Office, pursuant to the procedures set forth in 37 C.F.R. § 1.97, of any information "material to patentability" of the claimed invention. *Id.* The duty of candor is

independent to both applicant and attorney and extends up to issuance of the application into a patent. 37 C.F.R. § 1.56(a); *Dri Mark Products, Inc. v. Wilpak Industries, Inc.*, No. 04-CV-696, 2006 WL 2882565, at *7 (E.D. N.Y. Oct. 6, 2006) ("an attorney involved in the prosecution of a patent has duties independent of those of the inventor"); *Manual of Patent Examining Procedure* ("MPEP")[2] § 2001.04 ("The duty to disclose information, however, does not end when an application becomes allowed but extends until a patent is granted on that application.").

Failure to cite known material information is not itself a breach of the duty of candor, unless the failure to cite was with an intent to deceive or mislead the Patent Office. *Critikon*, 120 F.3d at 1256. Thus, to establish inequitable conduct that renders a patent unenforceable, a defendant must show by clear and convincing evidence that the patent applicant or attorney failed to disclose material information, and such failure was with an intent to deceive the Patent Office. *Li Second Family Limited Partnership v. Toshiba Corp.*, 231 F.3d 1373, 1378 (Fed. Cir. 2000).

### 2. Material Information Is Any Information That Would Establish Unpatentability or That a Reasonable Examiner Would Have Considered Important.

Under Federal Circuit authority, either of two standards is acceptable to establish materiality of withheld information. Information is material if, by itself or in combination with other information, it establishes a *prima facie* case of unpatentability. 37 C.F.R. § 1.56(b)(2)(i). Under the second 'reasonable examiner' standard, an omission or misstatement is material if "a reasonable examiner would have considered [the information] important in deciding whether to allow the parent

---

[2] "The MPEP [is] commonly relied upon as a guide to patent attorneys and patent examiners on procedural matters. While the MPEP does not have the force of law, it is entitled to judicial notice as an official interpretation of statutes or regulations as long as it is not in conflict therewith." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 n.10 (Fed. Cir. 1995) (internal citations omitted).

application." *Impax Labs.*, 468 F.3d at 1374, *quoting Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1316 (Fed. Cir. 2006).

       **3.**       ***This Litigation, the Interrogatory Invalidity Contentions, and the Request for Reexamination Are All Material Information That Should Have Been Cited to the Patent Office.***

              **a.**     **Related Litigation and Information Arising Therefrom Are *Per Se* Material to Patentability, Must Be Cited, and Are Not Merely Cumulative to Submission of the Underlying Prior Art References.**

The fundamental premise of the bulk of Venetec's motion is that because Nexus's invalidity contentions relied on prior art references that had been submitted, Venetec had no duty to apprise the Patent Office of the litigation or how Nexus applied those references to the subject matter of the application.  This contention has been roundly and repeatedly rejected in the cases.

For litigation involving patents having the same subject matter as an examined application, the Patent Office defines such litigation to be "material information."  MPEP § 2001.06(c).  Moreover, "any other material information arising therefrom must be brought to the attention of the [Patent Office]."  *Id*.  Section 2001.06(c) specifically lists discovery including interrogatories as an example of "other material information."  *See also* MPEP § 1442.04, *Litigation Involving Patent* (stating with respect to a reissue proceeding on a patent involved in litigation, "the existence of supporting materials which may substantiate allegations of invalidity should, at least, be fully described and preferably submitted").

The Federal Circuit and district courts have similarly held that the existence of litigation involving the patent or related subject matter and any matters arising therefrom, specifically including any invalidity contentions, are ***per se* material information** that should be properly cited to the Patent Office.  *Critikon*, 120 F.3d at 1258-59.  For example, in the very recent case of *Nilssen*

10

*v. Osram Sylvania, Inc.*, the Federal Circuit affirmed the district court's finding of inequitable

conduct for failing to cite to the Patent Office the existence of litigation involving patents related to

the patents-in-suit.  No. 2006-1550, _____ F.3d _____, 2007 WL 2937322, at *9 (Fed. Cir. Oct. 10,

2007).  The *pro se* patentee argued that the defendants in the litigation "asserted only generalized

allegations of invalidity," such that the "degree of materiality . . . was very low."  The Federal Circuit

disagreed, stating:

> It is clear from the language of [MPEP] § 2001.06(c) that the existence of the
> litigation itself is material information that an examiner needs to have.  It is important
> because it signals the examiner that other material information relevant to
> patentability may become available through the litigation proceedings.  The PTO
> obviously considers such information material and there is no basis for us to
> conclude otherwise.

*Id*.

In a case with many facts similar to the present case, the patentee failed to cite to the Patent

Office matters arising from litigation on a patent related to the application being examined.

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 68 F.Supp.2d 508, 548 (D. N.J.

1999).  Similar to Venetec's argument in the present case, the patentee argued that "its submission

to the USPO of the underlying prior art discharged its duty under USPO Rule 56."  *Id*.  The court

dismissed the patentee's argument, stating:

> While submission of prior art may satisfy Rule 56 with respect to that prior art, the
> mere fact that an applicant produced prior art to the USPO does not end the inquiry.
> Rather, a court must analyze the other types of information generated in the prior
> litigation and determine whether that information was material to the pending patent
> application.  Thus the issue is whether the arguments made by [defendant],
> [defendant's] expert reports, this Court's opinions and other information from the
> '778 Patent litigation was material to the '563 Patent prosecution.

11

*Id*. The court further characterized as "obvious" the materiality of the litigation "which challenged both the validity and enforceability of the subject matter of the pending [] application," and indicated the defendant's invalidity contentions "might also be material non-cumulative information under USPO Rule 56(b)." *Id*. at 550-51.

In discussing the intent element of inequitable conduct, the *Boehringer* court stated that the patentee's failure to disclose only the "mere existence" of the litigation and some prior art from the litigation, gave the court "great pause" and made it appear that the patentee "did not want the USPO to delve into the '778 litigation and learn of [the defendant's] arguments and this Court's opinions." *Id*. at 551. In holding that the level of intent needed was "substantially lowered" because of the "strong showing of materiality," the court further stated that the patentee's "bare bones disclosure of the existence of the litigation and its utter failure to share the substance and status of that litigation with the USPO leads to a fair level of intent inferred against [the patentee]." *Id*.

In *ICU Medical, Inc. v. B. Braun Medical Inc.*, the Northern District of California denied summary judgment of no inequitable conduct because the patentee failed to cite to the Patent Office the existence of ongoing litigation involving a related patent and relevant litigation materials, which the court found "*per se*" material. No. C 01-3203 CRB, 2005 WL 588341, at *12 (N.D. Cal. March 14, 2005). The court characterized as "obvious" the materiality of litigation involving a patent that "shared the same specification and disclosed the same subject matter" as an application in front of the Patent Office. *Id*. at *15. The court also noted that had the invalidity contentions raised during the litigation been cited to the Patent Office, this may have raised "relevant invalidity defenses" and delayed prosecution of the application by the Patent Office. *Id*. at *15 n.9. *Accord Dri Mark Products*, 2006 WL 2882565, at *10-11, *discussing with approval ICU Medical*, 2005 WL 588341,

*and Critkon*, 120 F.3d at 1255, 1258; *see also DaimlerChrysler AG v. Feuling Advanced Technologies, Inc.*, 276 F.Supp.2d 1054, 1062-63 (S.D. Cal. 2003) (stating related litigation is "*per se* material" and any contention otherwise "flies in the face of the text of MPEP § 2001").

> **b.    Under the Appropriate Standards, Venetec Withheld *Per Se* Material Information from the Patent Office.**

At this stage in a motion on the pleadings, the inquiry into whether Venetec withheld material information should end here.  If the Court accepts as true, as it must, the averments in Nexus's counterclaim, the motion must be denied.  Nexus has plead that Venetec withheld material information from the Patent office with an intent to deceive.  Other courts have held that contentions regarding references already before the Patent Office may be material and are not, as a matter of law, merely cumulative of the references themselves.  Short of now embarking on a detailed analysis of the references and contentions, an inquiry that is wholly improper on this motion styled as one under Rule 12(c), the Court should deny the motion.

The '150 patent is related to the other Patents-in-Suit, the '485 and '979 patents, and therefore, this litigation involves the same subject matter of the '150 patent.  (D.I. 91 ¶ 28).  Applying MPEP § 2001.06(c), this litigation is "obviously" material.  *Boehringer*, 68 F.Supp.2d at 550-51.  Additionally, as in *ICU Medical* and *Boehringer*, where withheld invalidity contentions arising from litigation were considered material, Nexus's interrogatory invalidity contentions and the Request for Reexamination both arise from the present litigation and are *per se* material.

Furthermore, the duty of candor requires citation of information that a reasonable examiner would find material.  *Impax Labs.*, 468 F.3d at 1374.  This is certainly the case for the Request for Reexamination of the related '485 patent, as the Patent Office itself stated that the teachings of the

13

prior art cited and argued in the Request present "a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the claims are patentable." (D.I. 93, Ex. A, pp. 8, 10, 13, 15, 17, 19, and 21).  Prior to issuing the '150 patent, the Patent Office did not receive the benefit of the invalidity contentions set forth in the Request for Reexamination, however, because Venetec chose not to cite the Request at all.

### 4.    *Venetec Did Not Fulfill Its Duty of Candor by Citing the Material Information After Payment of the Issue Fee.*

Venetec alternatively argues that if citation of the prior art patents was not sufficient to discharge its duty of candor, it did disclose the existence of this litigation and the interrogatory invalidity contentions to the Patent Office.  (D.I. 95, p. 10).  However, Venetec itself recognizes that its disclosure was not in accordance with the Patent Office sufficient to discharge its duty of candor, because it admits that "the PTO did not consider those contentions during the prosecution of the '150 Patent."  (D.I. 95, p. 4).  Moreover, as set forth in Nexus's pleadings, Venetec deposited notice of the litigation and contentions to the Patent Office, knowing they would not be considered by the Office but merely placed in the file, and the Patent Office confirmed the lack of consideration to Venetec.  (D.I. 91, Counterclaim, ¶¶ 31, 33, Exs. A, B).

The Patent Office's rules are very specific on how information to be considered by a patent examiner during prosecution of an application should be cited by an applicant to the Office. Disclosure of information outside the parameters set forth in the patent rules will be considered improperly cited, will not be considered by the Examiner during prosecution, and will not fulfill an applicant and her attorney's duty of candor under 37 C.F.R. § 1.56.  *See* 37 C.F.R. § 1.56(a) ("the duty to disclose all information known to be material to patentability is deemed to be satisfied if all

information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office **in the manner prescribed by § § 1.97(b)-(d)** and 1.98) (emphasis added). It is therefore incumbent upon any patent applicant to properly abide by 37 C.F.R. § § 1.97 and 1.98 to insure all information disclosed by the applicant is given consideration by the Office.

Sections 1.97(b)-(d) set forth the requirements for filing an IDS within specific periods of prosecution of an application. Notably excluded from the instances in which a filed IDS will be considered is an IDS filed **__after__** payment of the issue fee. In that circumstance, the MPEP states that an IDS "filed after payment of the issue fee in an application will not be considered but will merely be placed in the application file." MPEP § 609.04(b)(IV). MPEP § 2001.04 further states that if an applicant wishes information to be considered after payment of the issue fee, the applicant must either (1) withdraw the application from issue, file a Request for Continued Examination, and properly cite the information in an IDS; or (2) expressly abandon the application, file a continuing application citing the information, and properly cite the information in an IDS filed in the continuing application.

There can be no question that the Patent Office did not consider this litigation and Nexus's interrogatory invalidity contentions in determining patentability, as they were disclosed to the Office after payment of the issue fee. Venetec deals with this dispositive fault in its inequitable conduct defense by shifting the focus to the prior art it did properly cite and away from the litigation, invalidity contentions, and request for reexamination it did not properly cite or cite at all. The withheld information is *per se* material, however, and Venetec cannot ignore this by doggedly arguing that it cited the prior art forming the bases for the invalidity contentions.

15

Venetec's cases supporting its contention that it did not have to cite the same prior art twice are distinguishable on that fact alone – they each hold that a patent applicant does not have to cite the **same** prior art reference more than once.  (*See* D.I. 95, pp. 8-9).  But that is not the allegation set forth above, as citation of prior art that forms the bases for invalidity contentions is **not** equivalent to citation of the contentions themselves because the contentions provide analysis of invalidity defenses that a reasonable patent examiner would find important in determining patentability.  *See Boehringer*, 68 F.Supp.2d at 550-51.

### D.    This Court Can Infer an Intent to Deceive from Venetec's Knowing Failure to Cite for Consideration the Withheld Material Information.

#### 1.    *The More Material the Information, the Less Evidence of Intent Is Required.*

The second element to establish inequitable conduct is that the applicant or attorney failed to disclose the material information with an intent to deceive the Patent Office.  For Venetec's Rule 12(c) motion, Nexus has met its burden by pleading such upon information and belief (D.I. 91, Counterclaim, ¶ 37), and all facts plead by Nexus are accepted as true.  Nonetheless, even without procedurally assuming all facts plead by Nexus are true, this Court could still infer an intent to deceive from Venetec's wilful and knowing withholding of material information.  Consequently, at a minimum this Court should allow Nexus to amend its pleading, as argued below, because this is not a situation where no set of facts can be proven that would allow Nexus's requested relief.

Numerous Federal Circuit decisions state that "[t]he more material the omission or misrepresentation, the less intent that must be shown to elicit a finding of inequitable conduct." *Impax Labs.*, 468 F.3d at 1375; *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001); *Critikon*, 120 F.3d at 1256.  Additionally, numerous Federal Circuit decisions state that "[i]ntent

16

need not, and rarely can, be proven by direct evidence. . . . Rather, intent to deceive is generally inferred from the facts and circumstances surrounding the applicant's overall conduct." *Impax Labs.*, 468 F.3d at 1375; *GFI*, 265 F.3d at 1274 ("the facts in inequitable conduct cases rarely include direct evidence of admitted deceitful conduct"); *Molins*, 48 F.3d at 1180 ("Intent need not be provided by direct evidence; it is most often proven by a showing of acts, the natural consequences of which are presumably intended by the actor.").

In cases where the applicant or attorney failed to cite the existence of related litigation or matters arising from the litigation, courts have willingly found intent based on the high degree of materiality of the related litigation. For example, in the above-discussed *ICU Medical* case, the court found that a "relatively high degree of intent may be demonstrated" due to the patentee being "clearly aware that the subject matter of the pending litigation was material to the '673 patent prosecution" and the fact that the patentee believed the '673 patent's claims "read on" the accused product in the litigation. *ICU Medical*, 2005 WL 588341, at *15 (additionally hypothesizing that the patentee was trying to hide the pending litigation from the '673 patent examiner); *see also DaimlerChrysler*, 276 F.Supp.2d at 1063 (finding intent "based, in part, on the fact that disclosing the existence of the litigation to the PTO would have entailed disclosing highly material information"); *Boehringer*, 68 F.Supp.2d at 551 (inferring intent for failure to disclose the invalidity arguments raised by the defendant in the litigation and the outcome of a preliminary injunction hearing).

### 2. *Venetec Knowingly Withheld Material Information from Proper Consideration by the Patent Office So That It Could Rush the '150 Patent to Issuance.*

Venetec's actions in withholding material information are fundamentally out of line with the standard practice of applicants and attorneys in front of the Patent Office. Venetec stubbornly argues

17

no inequitable conduct because it cited 136 prior art references, all the while knowing and being charged with a duty of candor that it did not even come close to fulfilling. Of all the cases that Nexus's counsel found regarding failure to cite litigation and matters arising therefrom, only one case did not find inequitable conduct, and it is distinguishable on the present facts, provides a limited analysis, and has been otherwise distinguished by several of the courts finding inequitable conduct. *Cf. Haney v. Timesavers, Inc.*, 900 F.Supp. 1378, 1382 (D. Or. 1995).

It is important to note that Venetec had approximately six weeks after it filed the present litigation and before it received the notice of allowance to tell the Patent Office of the litigation. It did not do so. Once the application receives a notice of allowance, it is out of the Examiner's jurisdiction, prosecution of the application is over, and the application receives administrative attention only in preparing it for issuance. MPEP § § 714.14 and 714.16. This is why the Patent Office rules do not allow citation after notice of allowance and **before** payment of the issue fee, except for rare instances. (*See* 37 C.F.R. § 1.97(d)). **After** payment of the issue fee, no citation of information is allowed at all.

Moreover, merely placing information in the file is not citation that discharges a duty of candor. (*See* 37 C.F.R. § 1.56(a)). Venetec's intent to affirmatively omit material information is all the more apparent because it did eventually disclose to the Patent Office the litigation and invalidity contentions in the interrogatory responses, but only after the issue fee had been paid and it knew that it would not be considered by the Office and only placed in the file. (D.I. 91, ¶ ¶ 34-36). Additionally, Venetec knew of its obligation to cite the litigation and interrogatory invalidity contentions, because when it did finally disclose such to the Patent Office, it stated it was doing so in accordance with MPEP § 2001.06(c). (D.I. 91, Ex. A).

18

Venetec obviously wanted the '150 patent to issue as quickly as possible, as it payed the issue fee a day prior to the application actually being allowed and requested leave to add the '150 patent to this litigation the day it issued.  (Bailey Dec., Ex. D; D.I. 68).  Additionally, during prosecution, Venetec believed that the '150 patent's claims "read on" the Accused Products of the present litigation, as it immediately added the '150 patent to this litigation.  *ICU Medical*, 2005 WL 588341, at *15.  It does not take much hypothesizing to realize that Venetec was more than anxious to rush the '150 patent to issuance.  It is also easily inferred, as other courts have done, that Venetec was not interested in letting the Patent Office know litigation was pending, even though it could have done so prior to payment of the issue fee for the '150 patent application, was not interested in putting in front of the Examiner the invalidity contentions that bear on patentability, and was not interested in letting the Examiner know that a request for reexamination had been filed on a related patent.  These numerous omissions, failures, and out-right deceitful conduct allow for an inference of intent to deceive and certainly do not present an instance where no set of facts could be proven to establish Venetec's inequitable conduct.  This is just the type of case the Federal Circuit has stated is deserving of an inference of intent to deceive based on the high materiality of the omitted information and the surrounding facts.

**E.    Request for Leave to Amend Nexus's Inequitable Conduct Defense and Counterclaim.**

Should the Court find that Nexus did not plead its inequitable conduct affirmative defense and counterclaim with particularity, pursuant to Rule 9(b), or otherwise find that Venetec does not have notice of the conduct with which it is charged, Nexus requests leave to amend its defense and counterclaim, pursuant to Rules 15 and 16.  *See also Bushnell Corp. v. ITT Corp.*, 973 F.Supp. 1276,

1280-83 (D. Kan. 1997) (providing a detailed analysis of Rule 12(c) motions and holding that in response to a Rule 12(c) motion, a plaintiff may have leave to amend any procedural defect in its complaint); *Johnson v. Revenue Management Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999) (stating in response to a Rule 12(c) motion, "[a] judge should not rebuff a litigant's effort to supplement the complaint or provide legal argument in support of the suit. Because complaints need not articulate legal theories, and because the skeletal presentation in a notice pleading may be fleshed out later, a decision without giving plaintiff the opportunity to argue or augment his position is premature.") (internal citations omitted). Venetec will not be prejudiced by this amendment, unduly or otherwise, as discovery is at its early stages.

Nexus specifically notes that it intends to charge Venetec with inequitable conduct for failing to cite for consideration by the Patent Office in the '150 patent the existence of this litigation, Nexus's interrogatory invalidity contentions, and the Request for Reexamination of the '485 patent. Nexus further notes that the failure to cite the existence of this litigation was not specifically called out in the inequitable conduct claim as originally plead. However, Nexus believes that this paper provides sufficient notice to Venetec of the conduct with which it is charged, pursuant to Rules 8 and 9.

## IV.  CONCLUSION

For the foregoing reasons, Nexus respectfully requests Venetec's Motion for Judgment on the Pleadings be denied.

20

Respectfully submitted,

Date:  October 15, 2007

/s/ Mary B. Matterer
Richard K. Herrmann
Mary B. Matterer
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
Telephone:  302-888-6800
Facsimile:  302-571-1750

Of Counsel:

Scott R. Brown  (Admitted *Pro Hac Vice*)
Jennifer C. Bailey  (Admitted *Pro Hac Vice*)
HOVEY WILLIAMS LLP
2405 Grand Boulevard, Suite 400
Kansas City, Missouri 64108
T:  816-474-9050
F:  816-474-9057

*ATTORNEYS FOR DEFENDANT*
*AND COUNTERCLAIM-PLAINTIFF*
*NEXUS MEDICAL, LLC*

21