**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| VENETEC INTERNATIONAL, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-cv-0057 *** |
| | ) | |
| NEXUS MEDICAL, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**NEXUS MEDICAL, LLC'S MOTION FOR LEAVE TO AMEND ITS ANSWER AND COUNTERCLAIM TO VENETEC INTERNATIONAL, INC.'S SECOND SUPPLEMENTAL COMPLAINT AND COUNTERCLAIM**

Pursuant to Rules 15(a) and 16(b) of the Federal Rules of Civil Procedure, Nexus Medical, LLC hereby moves for leave to amend its answer and counterclaim to Venetec International, Inc.'s Second Supplemental Complaint and Counterclaim.

A memorandum in support of this motion is being filed concurrently herewith.

Certification Pursuant to Local Rule 7.1.1

I, Scott R. Brown, hereby certify that a reasonable effort has been made to reach agreement with the opposing party on the matters set forth in this motion.

Scott R. Brown

Respectfully submitted,

Date: November 7, 2007

/s/ Mary B. Matterer

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
Telephone: 302-888-6800
Facsimile: 302-571-1750
mmatterer@morrisjames.com

Of Counsel:

Scott R. Brown (Admitted *Pro Hac Vice*)
Jennifer C. Bailey (Admitted *Pro Hac Vice*)
HOVEY WILLIAMS LLP
2405 Grand Boulevard, Suite 400
Kansas City, Missouri 64108
Telephone: 816-474-9050
Facsimile: 816-474-9057
srb@hoveywilliams.com
jcb@hoveywilliams.com

*ATTORNEYS FOR DEFENDANT AND COUNTERCLAIM-PLAINTIFF NEXUS MEDICAL, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

VENETEC INTERNATIONAL, INC.,

Plaintiff,

v.

NEXUS MEDICAL, LLC,

Defendant.

Civil Action No. 07-CV-0057 ***

**NEXUS MEDICAL, LLC 'S FIRST AMENDED ANSWER AND COUNTERCLAIM TO VENETEC INTERNATIONAL, INC.'S SECOND SUPPLEMENTAL COMPLAINT AND COUNTERCLAIM**

Defendant Nexus Medical, LLC ("Nexus"), for its First Amended Answer and Counterclaim to Venetec International, Inc.'s ("Venetec") Second Supplemental Complaint, hereby states as follows, with each numbered answer corresponding to the numbered paragraph of the Complaint:

**Parties**

1. Nexus lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph and, on that basis, denies them.

2. Admitted.

**Jurisdiction and Venue**

3. Nexus admits this paragraph identifies the title and section of the United States Code under which Plaintiff's claims are based and that this Court has subject matter jurisdiction. To the extent that any further response is required, Nexus denies that it has infringed any valid claim of the asserted patents.

4.    Nexus denies that it sells products within this judicial district, but admits that this paragraph accurately states the statutes on which Plaintiff's venue allegations are based and that venue is proper.

**Count I**
**Patent Infringement – U.S. Patent No. 6,213,979**

5.    Nexus incorporates by reference its responses to paragraphs 1 through 4 above as if fully set forth herein.

6.    Nexus admits that the face of U.S. Patent No. 6,213,979 (the "'979 Patent") indicates the '979 Patent is entitled "Medical Line Anchoring System," indicates it was issued on April 10, 2001, and that a copy of the '979 Patent is attached to the Second Supplemental Complaint as Exhibit A. Nexus denies the '979 Patent was duly and legally issued and Nexus lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of this paragraph and, on that basis, denies them.

7.    Denied.

8.    Denied.

9.    Denied.

**Count II**
**Patent Infringement – U.S. Patent No. 6,447,485**

10.    Nexus incorporates by reference its responses to paragraphs 1 through 9 above as if fully set forth herein.

11.    Nexus admits that the face of U.S. Patent No. 6,447,485 (the "'485 Patent") indicates the '485 Patent is entitled "Medical Line Anchoring System," indicates it was issued on September 10, 2002, and that a copy of the '485 Patent is attached to the Second Supplemental Complaint as Exhibit B. Nexus denies the '485 Patent was duly and legally issued and Nexus

lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of this paragraph and, on that basis, denies them.

12. Denied.

13. Denied.

14. Denied.

**Count III**
**Patent Infringement – U.S. Patent No. 7,247,150**

15. Nexus incorporates by reference its responses to paragraphs 1 through 14 above as if fully set forth herein.

16. Nexus admits that the face of U.S. Patent No. 7,247,150 (the "'150 Patent") indicates the '150 Patent is entitled "Medical Line Anchoring System," indicates it was issued on July 24, 2007, and that a copy of the '150 Patent is attached to the Second Supplemental Complaint as Exhibit C. Nexus denies the '150 Patent was duly and legally issued and Nexus lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of this paragraph and, on that basis, denies them.

17. Denied.

18. Denied.

19. Denied.

**Count IV**
**False Marking As To The '396 Patent**

20. Nexus incorporates by reference its responses to paragraphs 1 through 19 above as if fully set forth herein.

21. Nexus admits that paragraph 21 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

22. Nexus admits that a purported image of the packaging of “The Bone” is attached to the Second Supplemental Complaint as Exhibit D. Nexus denies the remaining allegations of the paragraph.

23. Nexus admits that the face of U.S. Patent No. 5,356,396 (”the ’396 Patent”) indicates the ’396 Patent is entitled “Infusion Apparatus,” indicates it was issued on October 18, 1994, and indicates it was assigned to Medical Associates Network, Inc. from an application filed by the named inventors Philip Wyatt, Gary Schaeffer, and Freddy Zinger. Nexus further admits that a copy of the ’396 Patent is attached to the Second Supplemental Complaint as Exhibit E.

24. Denied.

25. Denied.

**Count V**
**<u>False Marking As To The ’413 Patent</u>**

26. Nexus incorporates by reference its responses to paragraphs 1 through 25 above as if fully set forth herein.

27. Nexus admits that paragraph 27 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

28. Nexus admits that a purported image of the packaging of “The Bone” is attached to the Second Supplemental Complaint as Exhibit F. Nexus denies the remaining allegations of the paragraph.

29. Nexus admits that the face of U.S. Patent No. 5,360,413 (”the ’413 Patent”) indicates the ’413 Patent is entitled “Needleless Access Device,” indicates it was issued on November 1, 1994, and indicates it was assigned to Filtertek, Inc. from an application filed by the named inventors Michael H. Leason, Rick R. Ruschke, and Ralph L. Davis. Nexus further admits that a copy of the ’413 Patent is attached to the Second Supplemental Complaint as Exhibit F.

30. Denied.

31. Denied.

**Count VI**
**False Marking As To The ’426 Patent**

32. Nexus incorporates by reference its responses to paragraphs 1 through 31 above as if fully set forth herein.

33. Nexus admits that paragraph 33 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

34. Nexus admits that a purported image of the packaging of “The Bone” is attached to the Second Supplemental Complaint as Exhibit G. Nexus denies the remaining allegations of the paragraph.

35. Nexus admits that the face of U.S. Patent No. 5,501,426 (”the ’426 Patent”) indicates the ’426 Patent is entitled “Medical Coupling Site Valve Body,” indicates it was issued

on March 26, 1996, and indicates it was assigned to Vernay Laboratories, Inc. from an application filed by the named inventors Gordon E. Atkinson and Dennis A. Boehmer. Nexus further admits that a copy of the ’426 Patent is attached to the Second Supplemental Complaint as Exhibit G.

36. Denied.

37. Denied.

**Count VII**
**False Marking As To The ’708 Patent**

38. Nexus incorporates by reference its responses to paragraphs 1 through 37 above as if fully set forth herein.

39. Nexus admits that paragraph 39 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

40. Nexus admits that a purported image of the packaging of “The Bone” is attached to the Second Supplemental Complaint as Exhibit H. Nexus denies the remaining allegations of the paragraph.

41. Nexus admits that the face of U.S. Patent No. 5,533,708 (”the ’708 Patent”) indicates the ’708 Patent is entitled “Medical Coupling Site Valve Body,” indicates it was issued on July 9, 1996, and indicates it was assigned to Vernay Laboratories, Inc. from an application filed by the named inventors Gordon E. Atkinson and Thomas J. Solomon. Nexus further admits that a copy of the ’708 Patent is attached to the Second Supplemental Complaint as Exhibit H.

42. Denied.

43. Denied.

**Count VIII**
**False Marking As To The ’735 Patent**

44. Nexus incorporates by reference its responses to paragraphs 1 through 43 above as if fully set forth herein.

45. Nexus admits that paragraph 45 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

46. Nexus admits that a purported image of the packaging of “The Bone” is attached to the Second Supplemental Complaint as Exhibit I. Nexus denies the remaining allegations of the paragraph.

47. Nexus admits that the face of U.S. Patent No. 5,632,735 (”the ’735 Patent”) indicates the ’735 Patent is entitled “Infusion Apparatus” and indicates it was issued on May 27, 1997, to named inventors Philip Wyatt and Gary Schaeffer. Nexus further admits that a copy of the ’735 Patent is attached to the Second Supplemental Complaint as Exhibit I.

48. Denied.

49. Denied.

**Count IX**
**False Marking As To The ’215 Patent**

50. Nexus incorporates by reference its responses to paragraphs 1 through 49 above as if fully set forth herein.

51. Nexus admits that paragraph 51 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

52. Nexus admits that a purported image of the packaging of "The Bone" is attached to the Second Supplemental Complaint as Exhibit J. Nexus denies the remaining allegations of the paragraph.

53. Nexus admits that the face of U.S. Patent No. 6,991,215 ("the '215 Patent") indicates the '215 Patent is entitled "Valve For Use With A Syringe And Which Prevents Backflow," indicates it was issued on January 31, 2006, and indicates it was assigned to Occupational & Medical Innovations, Ltd., from an application filed by the named inventor Bruce Leigh Kiehne. Nexus further admits that a copy of the '215 Patent is attached to the Second Supplemental Complaint as Exhibit J.

54. Denied.

55. Denied.

## Affirmative Defenses

1. Plaintiff's Second Supplemental Complaint fails to state a claim for which relief may be granted.

2. Nexus has not infringed any valid claim of the Patents-in-Suit.

3. One or more of the asserted claims of each of the Patents-in-Suit is invalid and void under 35 U.S.C. §§ 102, 103, and/or 112.

4. The '150 Patent is unenforceable for inequitable conduct, as more fully set forth in Nexus's Count III of its counterclaim.

WHEREFORE, Nexus prays that Plaintiff take nothing by way of its Second Supplemental Complaint, that Plaintiff's claims be dismissed with prejudice, that Nexus be awarded its costs, expenses, and attorneys' fees in defending the matter, and such other and further relief as the Court deems just and proper.

## Counter Claim

COMES NOW Nexus Medical, LLC ("Nexus"), and for its Counterclaim against Plaintiff, alleges as follows:

## Parties

1. Nexus is a Delaware limited liability company with its principal place of business at 11315 Strang Line Road, Lenexa, Kansas 66215.

2. Upon information and belief, Venetec International, Inc. ("Venetec") is a Delaware corporation with its principal place of business in San Diego, California, 66215.

## Jurisdiction and Venue

3. This is an action for Declaratory Judgment under 28 U.S.C. §§ 2201 and 2202 seeking adjudication that U.S. Patent No. 6,213,979 (the "'979 patent"), U.S. Patent No. 6,447,485 (the "'485 Patent"), and U.S. Patent No. 7,247,150 (the "'150 Patent") (collectively the "Patents-in-Suit") are not infringed and are invalid and void, and that the '150 Patent is unenforceable.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 in that this action arises under the patent laws of the United States and an actual controversy exists between the parties.

5. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b).

## Count I
## Noninfringement of the Patents-in-Suit

6. Nexus incorporates by reference and re-alleges paragraphs 1 through 5 of its counterclaim as if fully set forth herein.

7. Venetec has alleged that it is the owner of the Patents-in-Suit.

8.    Venetec has charged Nexus with infringement of the Patents-in-Suit, and Nexus has denied that allegation.

9.    Nexus has not infringed any valid claim of the Patents-in-Suit.

10.    There is a substantial, justiciable, and continuing controversy between Nexus and Venetec as to Venetec's suit for infringement of the Patents-in-Suit and whether Nexus has infringed or is infringing any valid claim of the Patents-in-Suit.

11.    Nexus will be damaged in its business by the charges of infringement by Venetec in its Second Supplemental Complaint and will be irreparably harmed if the existing controversy between the parties is not promptly adjudicated.

12.    As a result, Nexus seeks a declaration that the Patents-in-Suit are not infringed by Nexus.

**Count II**
**Invalidity of the Patents-in-Suit**

13.    Nexus incorporates by reference and re-alleges paragraphs 1 through 12 of its counterclaim as if fully set forth herein.

14.    Venetec has alleged that it is the owner of the Patents-in-Suit.

15.    Venetec has charged Nexus with infringement of the Patents-in-Suit, and Nexus has denied that allegation.

16.    Upon information and belief, one or more of the claims of the Patents-in-Suit are invalid and void under 35 U.S.C. §§ 102, 103, and/or 112.

17.    There is a substantial, justiciable, and continuing controversy between Nexus and Venetec as to Venetec's suit for infringement of the Patents-in-Suit and the validity and scope of the Patents-in-Suit.

18. Nexus will be damaged in its business by the charges of infringement by Venetec in its Second Supplemental Complaint and will be irreparably harmed if the existing controversy between the parties is not promptly adjudicated.

19. As a result, Nexus seeks a declaration that the Patents-in-Suit are invalid and void.

**Count III**
**Unenforceability of the ’150 Patent**

20. Nexus incorporates by reference and re-alleges paragraphs 1 through 19 of its counterclaim as if fully set forth herein.

21. Venetec has alleged that it is the owner of the ’150 Patent.

22. Venetec has charged Nexus with infringement of the ’150 Patent and Nexus has denied that allegation.

23. As used in Count III of Nexus’s Counterclaim, “Venetec” is defined to specifically include the one or more members of the group of individuals owing a duty of candor to the Patent Office, pursuant to 37 C.F.R. § 1.56(a).

24. The ’150 Patent is a continuation of the ’485 Patent, and therefore, the ’150 Patent is related to and claims priority to the ’485 Patent.

25. The ’485 Patent is a divisional of the ’979 Patent, and therefore, the ’485 Patent is related to and claims priority benefit to the ’979 Patent.

26. The ’150, ’485, and ’979 patents are related and disclose the same subject matter.

27. The present litigation was filed on January 29, 2007, and asserted only the ’485 and ’979 Patents. (D.I. 1).

28. Per MPEP § 2001.06(c), the Patent Office requires proper citation of the existence of this litigation and material information arising therefrom.

29. The existence of this litigation is *per se* material to patentability of the ’150 Patent Application.

30. On January 3, 2007, Venetec filed with the U.S. Patent Office an Amendment in the ’150 Patent Application, attached as Exhibit A.

31. On February 7, 2007, Venetec held an in-person interview with the patent examiner for the ’150 Patent Application. A copy of the Interview Summary filed by the Patent Office is attached as Exhibit B.

32. During the interview, Venetec’s representative and the patent examiner discussed Venetec’s amendments to the claims submitted in the Amendment filed on January 3, 2007, in the ’150 Patent Application. (See Exhibit B).

33. Subsequent to the in-person interview, the patent examiner issued a Notice of Allowability and Examiner’s Amendment, attached as Exhibit C, on March 16, 2007, for the ’150 Patent Application.

34. From January 3, 2007, through March 15, 2007, Venetec was actively prosecuting the ’150 Patent Application to obtain allowance of claims, some of which have been asserted in the present litigation as infringing.

35. Venetec paid the issue fee for the ’150 Patent Application on March 15, 2007, a day prior to the Patent Office’s mailing of the Notice of Allowance. A copy of the Issue Fee Transmittal filed by Venetec is attached as Exhibit D.

36. Venetec had from January 29, 2007, the date of filing of the present litigation, up to March 15, 2007, the date of payment of the issue fee in the ’150 Patent Application, to inform the Patent Office of the existence of the present litigation, but failed to do so.

37.     Per MPEP § 2001.04 and 37 C.F.R. § § 1.56(a) and 1.97, after payment of the issue fee, information will only be considered if (1) the application is withdrawn from issue, a Request for Continued Examination is filed, and the information is properly cited in an Information Disclosure Statement ("IDS"); or (2) the application is withdrawn from issue, the application is expressly abandoned, a continuing application is filed, and the information is properly cited in an IDS filed in the continuing application.

38.     Venetec listed this litigation on an IDS filed with the Patent Office on June 20, 2007.

39.     In the June 20, 2007, IDS (Exhibit E), Venetec stated that it was filing the IDS "in accordance with M.P.E.P. § 2001.06(c)," and therefore, Venetec knew of its obligations under § 2001.06(c) to cite the existence of litigation involving the same subject matter as an examined patent application.

40.     On June 25, 2007, the Patent Office responded to Venetec's filing of the IDS ("Patent Office Response"), attached hereto as Exhibit F.

41.     The Patent Office Response explains that the litigation listed on the IDS was not considered by the patent examiner in the prosecution of the '150 Patent Application because the issue fee had already been paid.

42.     The Patent Office Response advises Venetec to file a petition to withdraw the '150 Patent Application from issue to have the IDS considered by the Patent Office.

43.     Although Venetec had the opportunity to petition the Patent Office to withdraw the '150 Patent Application from issue and either (1) file a Request for Continued Examination and an IDS properly citing the existence of the litigation; or (2) expressly abandon the '150

Patent Application, file a continuing application, and file an IDS in the continuing application properly citing the existence of the litigation, Venetec failed to do so.

44. The Patent Office did not consider the existence of this litigation in determining patentability of the ’150 Patent Application.

45. In response to Venetec’s First Set of Interrogatories in this litigation, Nexus served Venetec with invalidity contentions of the ’485 Patent (the “Interrogatory Invalidity Contentions”) on May 30, 2007, including invalidity claim charts.

46. The Interrogatory Invalidity Contentions arise from the present litigation and therefore should have been properly cited to the Patent Office, pursuant to MPEP § 2001.06(c).

47. The Interrgoatory Invalidity Contentions are *per se* material to patentability of the ’150 Patent Application.

48. Venetec listed the Interrogatory Invalidity Contentions on the IDS filed with the Patent Office on June 20, 2007. (See Exhibit E).

49. In the June 20, 2007, IDS (Exhibit E), Venetec stated that it was filing the IDS “in accordance with M.P.E.P. § 2001.06(c),” and therefore, Venetec knew of its obligations under § 2001.06(c) to cite material information arising from litigation involving the same subject as an examined application.

50. On June 25, 2007, the Patent Office responded to Venetec’s filing of the IDS (the afore-mentioned Patent Office Response), attached hereto as Exhibit F.

51. The Patent Office Response explains that the Interrogatory Invalidity Contentions listed on the IDS were not considered by the patent examiner in the prosecution of the ’150 Patent Application because the issue fee had already been paid.

52. The Patent Office Response advises Venetec to file a petition to withdraw the ’150 Patent Application from issue to have the IDS considered by the Patent Office.

53. Although Venetec had the opportunity to petition the Patent Office to withdraw the ’150 Patent Application from issue and either (1) file a Request for Continued Examination and an IDS properly citing the Interrogatory Invalidity Contentions; or (2) expressly abandon the ’150 Patent Application, file a continuing application, and file an IDS in the continuing application properly citing the Interrogatory Invalidity Contentions, Venetec failed to do so.

54. The Patent Office did not consider the Interrogatory Invalidity Contentions in determining patentability of the ’150 Patent Application.

55. Nexus filed a Request for Reexamination of the ’485 Patent (“the ’485 Reexamination”) with the Patent Office on June 25, 2007, and a copy of the ’485 Reexamination was provided to Venetec at or about that time.

56. The ’485 Reexamination sets forth four prior art references that invalidate claims 1-3, 5-8, 11-13, 15-18, and 21-22 (“the Reexamined Claims”) of the ’485 Patent.

57. The ’485 Reexamination contains no less than twenty-four arguments for invalidity (the “Reexamination Invalidity Contentions”) of the Reexamined Claims that are detailed in no less than twenty-four claim charts.

58. The Reexamination Invalidity Contentions include, but are not limited to, assertions that the Reexamined Claims of the ’485 Patent are invalid as anticipated and/or obvious in view of, and in combination with, certain prior art references.

59. Because the ’485 Patent is related to the ’150 Patent, the Request for Reexamination of the ’485 Patent and the Reexamination Invalidity Contentions in the ’485 Reexamination are material to patentability of the ’150 Patent Application.

60. The Request for Reexamination of the ’485 Patent and the Reexamination Invalidity Contentions in the ’485 Reexamination arise from the present litigation and therefore should be properly cited to the Patent Office, pursuant to MPEP § 2001.06(c).

61. The Request for Reexamination of the ’485 Patent and the Reexamination Invalidity Contentions in the ’485 Reexamination are *per se* material to patentability of the ’150 Patent Application.

62. The claim charts and Reexamination Invalidity Contentions set forth in the ’485 Reexamination were neither cited by Venetec in the ’150 Patent Application nor considered by the Patent Office during prosecution of the ’150 Patent.

63. Upon information and belief, Venetec’s failure to cite for consideration by the Patent Office the existence of this litigation, the Interrogatory Invalidity Contentions, the Request for Reexamination of the ’485 Patent, and/or the Reexamination Invalidity Contentions, was with bad faith and an intent to deceive the Patent Office.

64. Venetec breached its duty of candor before the Patent Office, as prescribed in 37 C.F.R. § 1.56, for failing to cite for consideration by the Patent Office with an intent to deceive the Patent Office, the existence of this litigation, the Interrogatory Invalidity Contentions, the Request for Reexamination of the ’485 Patent, and/or the Reexamination Invalidity Contentions, and such breach resulted in inequitable conduct of the ’150 Patent Application.

65. There is a substantial, justiciable, and continuing controversy between Nexus and Venetec as to Venetec’s suit for infringement of the ’150 Patent and whether the ’150 Patent is unenforceable.

66. Nexus will be damaged in its business by the charges of infringement by Venetec in its Second Supplemental Complaint and will be irreparably harmed if the existing controversy between the parties is not promptly adjudicated.

67. As a result, Nexus seeks a declaration that the ’150 Patent is unenforceable.

**Count IV**
**False Markings as to Venetec’s StatLock® CV Stabilization Line of Products**

68. Nexus incorporates by reference and realleges paragraphs 1 through 67 of its counterclaim as if fully set forth herein.

69. 35 U.S.C. § 292 prohibits marking upon, or affixing to, or using in advertising in connection with any unpatented article, the word “patent” or any word or number importing that the unpatented article is patented, for the purpose of deceiving the public.

70. Venetec sells a StatLock® CV Stabilization line of products. Upon information and belief, Venetec uses and continues to use the same backing on its site securement products sold with this line of products resulting in each Venetec product bearing the same patent markings such that Venetec’s entire line of StatLock® CV Stabilization products is falsely marked.

71. For example, Venetec’s “StatLock® CV Plus Stabilization Device” is part of Venetec’s line of StatLock® CV Stabilization products, and is marked with the words “This securement device is protected by one or more of the following patents: U.S. Patent Numbers 5,192,274; 5,827,230; 5,833,663; 5,855,591; 6,213,979; 6,224,571; 6,283,945; 6,290,676; 6,413,240; 6,447,485; 6,572,588; D-347,060; D-364,922; D-377,831; D-393,903; D-399,954. Other US and foreign patents pending.” (the “Patent Markings”).

72. Attached as Exhibit G are true and accurate images of a “StatLock® CV Plus Stabilization Device” displaying the Patent Markings on said product.

73. No claim of the following patents encompasses Venetec's "StatLock® CV Plus Stabilization Device": U.S. Patent Nos. 5,827,230; 5,833,663; 5,855,591; 6,224,571; 6,290,676; 6,413,240; 6,572,588; D-347,060; D-377,831; and D-399,954 (the "Falsely Marked StatLock® CV Plus Stabilization Patents").

74. Upon information and belief, Venetec knowingly, willfully, and with intent to deceive the public, marked and continues to mark its StatLock® CV Stabilization line of products, including, but not limited to, its "StatLock® CV Plus Stabilization Device," with words that import that the "StatLock® CV Plus Stabilization Device" is covered by the claims of the Falsely Marked StatLock® CV Plus Stabilization Patents.

**Count V**
**False Markings as to Venetec's StatLock® Foley Stabilization Line of Products**

75. Nexus incorporates by reference and realleges paragraphs 1 through 74 of its counterclaim as if fully set forth herein.

76. 35 U.S.C. § 292 prohibits marking upon, or affixing to, or using in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the unpatented article is patented, for the purpose of deceiving the public.

77. Venetec sells a StatLock® Foley Stabilization line of products. Upon information and belief, Venetec uses and continues to use the same backing on its site securement products sold with this line of products resulting in each Venetec product bearing the same patent markings such that Venetec's entire line of StatLock® Foley Stabilization products is falsely marked.

78. For example, Venetec's "StatLock® Foley Stabilization Device" is part of Venetec's line of StatLock® Foley Stabilization products and is marked with the Patent Markings.

79. Attached as Exhibit H are true and accurate images of a "StatLock® Foley Stabilization Device" displaying the Patent Markings on said product.

80. No claim of the following patents encompasses Venetec's "StatLock® Foley Stabilization Device": U.S. Patent Nos. 5,192,274; 5,827,230; 5,833,663; 5,855,591; 6,224,571; 6,290,676; 6,572,588; D-347,060; D-377,831; and D-399,954 (the "Falsely Marked StatLock® Foley Stabilization Patents").

81. Upon information and belief, Venetec knowingly, willfully, and with intent to deceive the public, marked and continues to mark its StatLock® Foley Stabilization line of products, including, but not limited to, its "StatLock® Foley Stabilization Device," with words that import that the "StatLock® Foley Stabilization Device" is covered by the claims of the Falsely Marked StatLock® Foley Stabilization Patents.

**Count VI**
**False Markings as to Venetec's StatLock® IV Stabilization Line of Products**

82. Nexus incorporates by reference and realleges paragraphs 1 through 81 of its counterclaim as if fully set forth herein.

83. 35 U.S.C. § 292 prohibits marking upon, or affixing to, or using in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the unpatented article is patented, for the purpose of deceiving the public.

84. Venetec Sells a StatLock® IV Stabilization line of products. Upon information and belief, Venetec uses and continues to use the same backing on its site securement products sold with this line of products resulting in each Venetec product bearing the same patent markings such that Venetec's entire line of StatLock® IV Stabilization products is falsely marked.

85. For example, Venetec's "StatLock® Stabilization Device for Intima Plus Catheters" is part of Venetec's line of StatLock® IV Stabilization products and is marked with the Patent Markings.

86. Attached as Exhibit I are true and accurate images of a "StatLock® Statlock Stabilization Device for Intima Plus Catheters" displaying the Patent Markings on said product.

87. No claim of the following patents encompasses Venetec's "StatLock® Stabilization Device for Intima Plus Catheters": U.S. Patent Nos. 5,192,274; 5,827,230; 5,833,663; 5,855,591; 6,213,979; 6,283,945; 6,290,676; 6,413,240; 6,447,485; 6,572,588; D-347,060; D-377,831; D-393,903; and D-399,954 (the "Falsely Marked StatLock® IV Stabilization Patents").

88. Upon information and belief, Venetec knowingly, willfully, and with intent to deceive the public, marked and continues to mark its StatLock® IV Stabilization line of products, including, but not limited to, its "StatLock® Stabilization Device for Intima Plus Catheters," with words that import that the "StatLock® Stabilization Device for Intima Plus Catheters" is covered by the claims of the Falsely Marked StatLock® IV Foley Stabilization Patents.

**Count VII**
**<u>False Markings as to Venetec's StatLock® PICC Stabilization Line of Products</u>**

89. Nexus incorporates by reference and realleges paragraphs 1 through 88 of its counterclaim as if fully set forth herein.

90. 35 U.S.C. § 292 prohibits marking upon, or affixing to, or using in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the unpatented article is patented, for the purpose of deceiving the public.

91.    Venetec sells a StatLock® PICC Stabilization line of products.    Upon information and belief, Venetec uses and continues to use the same backing on its site securement products sold with this line of products resulting in each Venetec product bearing the same patent markings such that Venetec's entire line of StatLock® PICC Stabilization products is falsely marked.

92.    For example, Venetec's "StatLock® PICC Plus Stabilization Device" is part of Venetec's line of StatLock® PICC Stabilization products and is marked with the Patent Markings.

93.    Attached as Exhibit J are true and accurate images of a "StatLock® PICC Plus Stabilization Device" displaying the Patent Markings on said product.

94.    No claim of the following patents encompasses Venetec's "StatLock® PICC Plus Stabilization Device": U.S. Patent Nos. 5,827,230; 5,833,663; 5,855,591; 6,224,571; 6,290,676; 6,572,588; D-347,060; D-364,922; D-377,831; and D-393,903 (the "Falsely Marked StatLock® PICC Plus Stabilization Patents").

95.    Upon information and belief, Venetec knowingly, willfully, and with intent to deceive the public, marked and continues to mark its StatLock® PICC Stabilization line of products, including, but not limited to, its "StatLock® PICC Plus Stabilization Device," with words that import that the "StatLock® PICC Plus Stabilization Device" is covered by the claims of the Falsely Marked StatLock® PICC Plus Stabilization Patents.

**Count VIII**
**False Markings as to Venetec's StatLock® Epidural Stabilization Line of Products**

96.    Nexus incorporates by reference and realleges paragraphs 1 through 95 of its counterclaim as if fully set forth herein.

97.     35 U.S.C. § 292 prohibits marking upon, or affixing to, or using in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the unpatented article is patented, for the purpose of deceiving the public.

98.     Venetec sells a StatLock® Epidural Stabilization line of products.   Upon information and belief, Venetec uses and continues to use the same backing on its site securement products sold with this line of products resulting in each Venetec product bearing the same patent markings such that Venetec's entire line of StatLock® Epidural Stabilization products is falsely marked.

99.     For example, Venetec's "StatLock® Standard Anterior Pad" and "StatLock® Crescent Posterior Pad," are part of Venetec's line of StatLock® Epidural Stabilization products and are marked with the Patent Markings.

100.     Attached as Exhibit K are true and accurate images of a "StatLock® Standard Anterior Pad" and a "StatLock® Crescent Posterior Pad" displaying the Patent Markings on said products.

101.     No claim of the following patents encompasses Venetec's "StatLock® Standard Anterior Pad": U.S. Patent Nos. 5,192,274; 5,833,663; 5,855,591; 6,213,979; 6,224,571; 6,283,945; 6,413,240; 6,447,485; 6,572,588; D-377,831; D-393,903; and D-399,954 (the "Falsely Marked StatLock® Standard Anterior Pad Patents").

102.     No claim of the following patents encompasses Venetec's "StatLock® Crescent Posterior Pad": U.S. Patent Nos. 5,192,274, 5,827,230; 5,833,663; 5,855,591; 6,213,979; 6,224,571; 6,283,945; 6,290,676; 6,413,240; 6,447,485; 6,572,588; D-347,060; D-364,922; D-377,831; and D-393,903 (the "Falsely Marked StatLock® Crescent Posterior Pad Patents").

103.    Upon information and belief, Venetec knowingly, willfully, and with intent to deceive the public, marked and continues to mark its StatLock® Foley Stabilization line of products, including, but not limited to, its "StatLock® Standard Anterior Pad" and "StatLock® Crescent Posterior Pad," with words that import that the "StatLock® Standard Anterior Pad" and "StatLock® Crescent Posterior Pad" are covered by the claims of the Falsely Marked StatLock® Standard Anterior Pad Patents and Falsely Marked StatLock® Crescent Posterior Pad Patents, respectively.

**Count IX**
**False Markings as to Venetec's StatLock® Multipurpose Stabilization Line of Products**

104.    Nexus incorporates by reference and realleges paragraphs 1 through 103 of its counterclaim as if fully set forth herein.

105.    35 U.S.C. § 292 prohibits marking upon, or affixing to, or using in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the unpatented article is patented, for the purpose of deceiving the public.

106.    Venetec sells a StatLock® Multipurpose Stabilization line of products.  Upon information and belief, Venetec uses and continues to use the same backing on its site securement products sold with this line of products resulting in each Venetec product bearing the same patent markings such that Venetec's entire line of StatLock® Multipurpose Stabilization products is falsely marked.

107.    For example, Venetec's "StatLock® Multipurpose Stabilization Device" is part of Venetec's line of StatLock® Multipurpose Stabilization products and is marked with the Patent Markings.

108.    Attached as Exhibit L are true and accurate images of a "StatLock® Multipurpose Stabilization Device" displaying the Patent Markings on said product.

109. No claim of the following patents encompasses Venetec's "StatLock® Multipurpose Stabilization Device": U.S. Patent Nos. 5,192,274; 5,827,230; 5,833,663; 6,213,979; 6,224,571; 6,283,945; 6,290,676; 6,413,240; 6,447,485; 6,572,588; D-347,060; D-377,831; and D-399,954 (the "Falsely Marked StatLock® Multipurpose Stabilization Patents").

110. Upon information and belief, Venetec knowingly, willfully, and with intent to deceive the public, marked and continues to mark its StatLock® Multipurpose Stabilization line of products, including, but not limited to, its "StatLock® Multipurpose Stabilization Device," with words that import that the "StatLock® Multipurpose Stabilization Device" is covered by the claims of the Falsely Marked StatLock® Multipurpose Stabilization Patents.

**Count X**
**<u>False Markings as to Venetec's StatLock® Universal Plus Stabilization Line of Products</u>**

111. Nexus incorporates by reference and realleges paragraphs 1 through 110 of its counterclaim as if fully set forth herein.

112. 35 U.S.C. § 292 prohibits marking upon, or affixing to, or using in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the unpatented article is patented, for the purpose of deceiving the public.

113. Venetec sells a StatLock® Universal Plus Stabilization line of products. Upon information and belief, Venetec uses and continues to use the same backing on its site securement products sold with this line of products resulting in each Venetec product bearing the same patent markings such that Venetec's entire line of StatLock® Universal Plus Stabilization products is falsely marked.

114. For example, Venetec's "StatLock® Universal Plus Stabilization Device" is part of Venetec's line of StatLock® Universal Plus Stabilization products and is marked with the Patent Markings.

115. Attached as Exhibit M are true and accurate images of a “StatLock® Universal Plus Stabilization Device” displaying the Patent Markings on said product.

116. No claim of the following patents encompasses Venetec’s “StatLock® Universal Plus Stabilization Device”: U.S. Patent Nos. 5,192,274; 5,827,230; 5,833,663; 5,855,591; 6,224,571; 6,290,676; D-347,060; D-364,922; D-377,831; D-393,903; and D-399,954 (the “Falsely Marked StatLock® Universal Plus Stabilization Patents”).

117. Upon information and belief, Venetec knowingly, willfully, and with intent to deceive the public, marked and continues to mark its StatLock® Universal Plus Stabilization line of products, including, but not limited to, its “StatLock® Universal Plus Stabilization Device,” with words that import that the “StatLock® Universal Plus Stabilization Device” is covered by the claims of the Falsely Marked StatLock® Universal Plus Stabilization Patents.

**Count XI**
**False Markings as to Venetec’s StatLock® Huber Stabilization Line of Products**

118. Nexus incorporates by reference and realleges paragraphs 1 through 117 of its counterclaim as if fully set forth herein.

119. 35 U.S.C. § 292 prohibits marking upon, or affixing to, or using in advertising in connection with any unpatented article, the word “patent” or any word or number importing that the unpatented article is patented, for the purpose of deceiving the public.

120. Venetec sells a StatLock® Huber Stabilization product. Venetec’s “StatLock® Huber Adhesive Well Pad” is a Venetec StatLock® Huber Stabilization product and is marked with the words “This securement device is protected by one or more of the following patents: U.S. Pat. Nos. 5,637,098; 5,578,013; 5,456,671; 5,354,282; 5,314,411; 5,290,248; 5,192,274; 5,192,273; 4,711,636; D-377,831; D-375,356; D-375,355; D-364,922; D-347,060. Other domestic and foreign patents pending.” (the “Huber Patent Markings”).

121. Attached as Exhibit N are true and accurate images of a "StatLock® Huber Adhesive Well Pad" displaying the Huber Patent Markings on said product.

122. No claim of the following patents encompasses Venetec's "StatLock® Huber Adhesive Well Pad": U.S. Patent Nos. 4,711,636; 5,192,273; 5,192,274; 5,290,248; 5,314,411; 5,354,282; 5,456,671; 5,578,013; 5,637,098; D-347,060; D-364,922; D-375,355; D-375,356; D-377,831 (the "Falsely Marked StatLock® Huber Adhesive Well Pad Stabilization Patents").

123. Upon information and belief, Venetec knowingly, willfully, and with intent to deceive the public, marked its StatLock® Huber Stabilization product, including, but not limited to, its "StatLock® Huber Adhesive Well Pad," with words that import that the "StatLock® Huber Adhesive Well Pad" is covered by the claims of the Falsely Marked StatLock® Huber Adhesive Well Pad Stabilization Patents.

**Prayer for Relief**

WHEREFORE, Nexus prays for the following relief:

1. That the Patents-in-Suit be declared not infringed by Nexus;

2. That the Patents-in-Suit be declared invalid and void;

3. That the '150 Patent be declared unenforceable;

4. That judgment on Plaintiff's Second Supplemental Complaint be rendered for Nexus, with costs of litigation awarded to Nexus;

5. That the Court find this case to be exceptional and award Nexus its reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285;

6. Judgment of false marking against Venetec for each of the Counts in this First Amended Answer and Counterclaim alleging violation of 35 U.S.C.§ 292;

7. A fine of $500 against Venetec for each offense of false marking, with one half of the levied fine awarded to Nexus and the other half going to the use of the United States pursuant to 35 U.S.C. § 292; and

8. That the Court grant to Nexus such other, further, and different relief as the Court may deem just and proper.

Dated: November 7, 2007

*/s/ Mary B. Matterer*
Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
Telephone: 302-888-6800
Facsimile: 302-571-1750
mmatterer@morrisjames.com

Of Counsel:
Scott R. Brown (Admitted *Pro Hac Vice*)
Jennifer C. Bailey (Admitted *Pro Hac Vice*)
HOVEY WILLIAMS LLP
2405 Grand Boulevard, Suite 400
Kansas City, Missouri 64108
T: 816-474-9050
F: 816-474-9057

*ATTORNEYS FOR DEFENDANT AND COUNTERCLAIM-PLAINTIFF NEXUS MEDICAL, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| VENETEC INTERNATIONAL, INC., Plaintiff, v. NEXUS MEDICAL, LLC, Defendant. | Civil Action No. 07-CV-0057 *** |

**NEXUS MEDICAL, LLC 'S FIRST AMENDED ANSWER AND COUNTERCLAIM TO VENETEC INTERNATIONAL, INC.'S SECOND SUPPLEMENTAL COMPLAINT AND COUNTERCLAIM**

Defendant Nexus Medical, LLC ("Nexus"), for its First Amended Answer and Counterclaim to Venetec International, Inc.'s ("Venetec") Second Supplemental Complaint, hereby states as follows, with each numbered answer corresponding to the numbered paragraph of the Complaint:

**Parties**

1. Nexus lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph and, on that basis, denies them.

2. Admitted.

**Jurisdiction and Venue**

3. Nexus admits this paragraph identifies the title and section of the United States Code under which Plaintiff's claims are based and that this Court has subject matter jurisdiction. To the extent that any further response is required, Nexus denies that it has infringed any valid claim of the asserted patents.

4. Nexus denies that it sells products within this judicial district, but admits that this

paragraph accurately states the statutes on which Plaintiff's venue allegations are based and that venue is proper.

**Count I**
**Patent Infringement – U.S. Patent No. 6,213,979**

5.      Nexus incorporates by reference its responses to paragraphs 1 through 4 above as if fully set forth herein.

6.      Nexus admits that the face of U.S. Patent No. 6,213,979 (the "'979 Patent") indicates the '979 Patent is entitled "Medical Line Anchoring System," indicates it was issued on April 10, 2001, and that a copy of the '979 Patent is attached to the Second Supplemental Complaint as Exhibit A.  Nexus denies the '979 Patent was duly and legally issued and Nexus lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of this paragraph and, on that basis, denies them.

7.      Denied.

8.      Denied.

9.      Denied.

**Count II**
**Patent Infringement – U.S. Patent No. 6,447,485**

10.      Nexus incorporates by reference its responses to paragraphs 1 through 9 above as if fully set forth herein.

11.      Nexus admits that the face of U.S. Patent No. 6,447,485 (the "'485 Patent") indicates the '485 Patent is entitled "Medical Line Anchoring System," indicates it was issued on September 10, 2002, and that a copy of the '485 Patent is attached to the Second Supplemental Complaint as Exhibit B. Nexus denies the '485 Patent was duly and legally issued and Nexus lacks sufficient knowledge or information to form a belief as to the truth of the remaining

allegations of this paragraph and, on that basis, denies them.

12. Denied.

13. Denied.

14. Denied.

**Count III**
**Patent Infringement – U.S. Patent No. 7,247,150**

15. Nexus incorporates by reference its responses to paragraphs 1 through 14 above as if fully set forth herein.

16. Nexus admits that the face of U.S. Patent No. 7,247,150 (the "'150 Patent") indicates the '150 Patent is entitled "Medical Line Anchoring System," indicates it was issued on July 24, 2007, and that a copy of the '150 Patent is attached to the Second Supplemental Complaint as Exhibit C. Nexus denies the '150 Patent was duly and legally issued and Nexus lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of this paragraph and, on that basis, denies them.

17. Denied.

18. Denied.

19. Denied.

**Count IV**
**False Marking As To The '396 Patent**

20. Nexus incorporates by reference its responses to paragraphs 1 through 19 above as if fully set forth herein.

21. Nexus admits that paragraph 21 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

22. Nexus admits that a purported image of the packaging of "The Bone" is attached to the Second Supplemental Complaint as Exhibit D. Nexus denies the remaining allegations of the paragraph.

23. Nexus admits that the face of U.S. Patent No. 5,356,396 ("the '396 Patent") indicates the '396 Patent is entitled "Infusion Apparatus," indicates it was issued on October 18, 1994, and indicates it was assigned to Medical Associates Network, Inc. from an application filed by the named inventors Philip Wyatt, Gary Schaeffer, and Freddy Zinger. Nexus further admits that a copy of the '396 Patent is attached to the Second Supplemental Complaint as Exhibit E.

24. Denied.

25. Denied.

**Count V**
**False Marking As To The '413 Patent**

26. Nexus incorporates by reference its responses to paragraphs 1 through 25 above as if fully set forth herein.

27. Nexus admits that paragraph 27 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

28. Nexus admits that a purported image of the packaging of "The Bone" is attached to the Second Supplemental Complaint as Exhibit F. Nexus denies the remaining allegations of the paragraph.

29. Nexus admits that the face of U.S. Patent No. 5,360,413 ("the '413 Patent") indicates the '413 Patent is entitled "Needleless Access Device," indicates it was issued on

November 1, 1994, and indicates it was assigned to Filtertek, Inc. from an application filed by the named inventors Michael H. Leason, Rick R. Ruschke, and Ralph L. Davis. Nexus further admits that a copy of the ’413 Patent is attached to the Second Supplemental Complaint as Exhibit F.

30. Denied.

31. Denied.

**Count VI**
**False Marking As To The ’426 Patent**

32. Nexus incorporates by reference its responses to paragraphs 1 through 31 above as if fully set forth herein.

33. Nexus admits that paragraph 33 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

34. Nexus admits that a purported image of the packaging of “The Bone” is attached to the Second Supplemental Complaint as Exhibit G. Nexus denies the remaining allegations of the paragraph.

35. Nexus admits that the face of U.S. Patent No. 5,501,426 (”the ’426 Patent”) indicates the ’426 Patent is entitled “Medical Coupling Site Valve Body,” indicates it was issued on March 26, 1996, and indicates it was assigned to Vernay Laboratories, Inc. from an application filed by the named inventors Gordon E. Atkinson and Dennis A. Boehmer. Nexus further admits that a copy of the ’426 Patent is attached to the Second Supplemental Complaint as Exhibit G.

36. Denied.

37. Denied.

**Count VII**
**False Marking As To The '708 Patent**

38. Nexus incorporates by reference its responses to paragraphs 1 through 37 above as if fully set forth herein.

39. Nexus admits that paragraph 39 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

40. Nexus admits that a purported image of the packaging of "The Bone" is attached to the Second Supplemental Complaint as Exhibit H. Nexus denies the remaining allegations of the paragraph.

41. Nexus admits that the face of U.S. Patent No. 5,533,708 ("the '708 Patent") indicates the '708 Patent is entitled "Medical Coupling Site Valve Body," indicates it was issued on July 9, 1996, and indicates it was assigned to Vernay Laboratories, Inc. from an application filed by the named inventors Gordon E. Atkinson and Thomas J. Solomon. Nexus further admits that a copy of the '708 Patent is attached to the Second Supplemental Complaint as Exhibit H.

42. Denied.

43. Denied.

**Count VIII**
**False Marking As To The '735 Patent**

44. Nexus incorporates by reference its responses to paragraphs 1 through 43 above as if fully set forth herein.

45.     Nexus admits that paragraph 45 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

46.     Nexus admits that a purported image of the packaging of "The Bone" is attached to the Second Supplemental Complaint as Exhibit I.  Nexus denies the remaining allegations of the paragraph.

47.     Nexus admits that the face of U.S. Patent No. 5,632,735 ("the '735 Patent") indicates the '735 Patent is entitled "Infusion Apparatus" and indicates it was issued on May 27, 1997, to named inventors Philip Wyatt and Gary Schaeffer.  Nexus further admits that a copy of the '735 Patent is attached to the Second Supplemental Complaint as Exhibit I.

48.     Denied.

49.     Denied.

**Count IX**
**False Marking As To The '215 Patent**

50.     Nexus incorporates by reference its responses to paragraphs 1 through 49 above as if fully set forth herein.

51.     Nexus admits that paragraph 51 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

52.     Nexus admits that a purported image of the packaging of "The Bone" is attached to the Second Supplemental Complaint as Exhibit J.  Nexus denies the remaining allegations of the paragraph.

53. Nexus admits that the face of U.S. Patent No. 6,991,215 ("the '215 Patent") indicates the '215 Patent is entitled "Valve For Use With A Syringe And Which Prevents Backflow," indicates it was issued on January 31, 2006, and indicates it was assigned to Occupational & Medical Innovations, Ltd., from an application filed by the named inventor Bruce Leigh Kiehne. Nexus further admits that a copy of the '215 Patent is attached to the Second Supplemental Complaint as Exhibit J.

54. Denied.

55. Denied.

## Affirmative Defenses

1. Plaintiff's Second Supplemental Complaint fails to state a claim for which relief may be granted.

2. Nexus has not infringed any valid claim of the Patents-in-Suit.

3. One or more of the asserted claims of each of the Patents-in-Suit is invalid and void under 35 U.S.C. §§ 102, 103, and/or 112.

4. The '150 Patent is unenforceable for inequitable conduct, as more fully set forth in Nexus's Count III of its counterclaim.

WHEREFORE, Nexus prays that Plaintiff take nothing by way of its Second Supplemental Complaint, that Plaintiff's claims be dismissed with prejudice, that Nexus be awarded its costs, expenses, and attorneys' fees in defending the matter, and such other and further relief as the Court deems just and proper.

## Counter Claim

COMES NOW Nexus Medical, LLC ("Nexus"), and for its Counterclaim against Plaintiff, alleges as follows:

**Parties**

1.     Nexus is a Delaware limited liability company with its principal place of business at 11315 Strang Line Road, Lenexa, Kansas 66215.

2.     Upon information and belief, Venetec International, Inc. ("Venetec") is a Delaware corporation with its principal place of business in San Diego, California, 66215.

**Jurisdiction and Venue**

3.     This is an action for Declaratory Judgment under 28 U.S.C. §§ 2201 and 2202 seeking adjudication that U.S. Patent No. 6,213,979 (the "'979 patent"), U.S. Patent No. 6,447,485 (the "'485 Patent"), and U.S. Patent No. 7,247,150 (the "'150 Patent") (collectively the "Patents-in-Suit") are not infringed and are invalid and void, and that the '150 Patent is unenforceable.

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 in that this action arises under the patent laws of the United States and an actual controversy exists between the parties.

5.     Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b).

**Count I**
**Noninfringement of the Patents-in-Suit**

6.     Nexus incorporates by reference and re-alleges paragraphs 1 through 5 of its counterclaim as if fully set forth herein.

7.     Venetec has alleged that it is the owner of the Patents-in-Suit.

8.     Venetec has charged Nexus with infringement of the Patents-in-Suit, and Nexus has denied that allegation.

9.     Nexus has not infringed any valid claim of the Patents-in-Suit.

10.     There is a substantial, justiciable, and continuing controversy between Nexus and Venetec as to Venetec's suit for infringement of the Patents-in-Suit and whether Nexus has infringed or is infringing any valid claim of the Patents-in-Suit.

11.     Nexus will be damaged in its business by the charges of infringement by Venetec in its Second Supplemental Complaint and will be irreparably harmed if the existing controversy between the parties is not promptly adjudicated.

12.     As a result, Nexus seeks a declaration that the Patents-in-Suit are not infringed by Nexus.

**Count II**
**Invalidity of the Patents-in-Suit**

13.     Nexus incorporates by reference and re-alleges paragraphs 1 through 12 of its counterclaim as if fully set forth herein.

14.     Venetec has alleged that it is the owner of the Patents-in-Suit.

15.     Venetec has charged Nexus with infringement of the Patents-in-Suit, and Nexus has denied that allegation.

16.     Upon information and belief, one or more of the claims of the Patents-in-Suit are invalid and void under 35 U.S.C. §§ 102, 103, and/or 112.

17.     There is a substantial, justiciable, and continuing controversy between Nexus and Venetec as to Venetec's suit for infringement of the Patents-in-Suit and the validity and scope of the Patents-in-Suit.

18.     Nexus will be damaged in its business by the charges of infringement by Venetec in its Second Supplemental Complaint and will be irreparably harmed if the existing controversy between the parties is not promptly adjudicated.

19. As a result, Nexus seeks a declaration that the Patents-in-Suit are invalid and void.

**Count III**
**Unenforceability of the '150 Patent**

20. Nexus incorporates by reference and re-alleges paragraphs 1 through 19 of its counterclaim as if fully set forth herein.

21. Venetec has alleged that it is the owner of the '150 Patent.

22. Venetec has charged Nexus with infringement of the '150 Patent and Nexus has denied that allegation.

23. As used in Count III of Nexus's Counterclaim, "Venetec" is defined to specifically include the one or more members of the group of individuals owing a duty of candor to the Patent Office, pursuant to 37 C.F.R. § 1.56(a).

24. The '150 Patent is a continuation of the '485 Patent, and therefore, the '150 Patent is related to and claims priority to the '485 Patent.

25. The '485 Patent is a divisional of the '979 Patent, and therefore, the '485 Patent is related to and claims priority benefit to the '979 Patent.

26. The '150, '485, and '979 patents are related and disclose the same subject matter.

27. The present litigation was filed on January 29, 2007, and asserted only the '485 and '979 Patents. (D.I. 1).

28. Per MPEP § 2001.06(c), the Patent Office requires proper citation of the existence of this litigation and material information arising therefrom.

29. The existence of this litigation is *per se* material to patentability of the '150 Patent Application.

**Deleted:** ___

**Inserted:** ___).¶
Per MPEP § 2001.06(c), the Patent Office requires proper citation of the existence of this litigation and material information arising therefrom. ¶
The existence of this litigation is *per se* material to patentability of the '150 Patent Application.¶
On January 3, 2007, Venetec filed with the U.S. Patent Office an Amendment in the '150 Patent Application, attached as Exhibit ___

30. On January 3, 2007, Venetec filed with the U.S. Patent Office an Amendment in the '150 Patent Application, attached as Exhibit A.

Deleted: ___

31. On February 7, 2007, Venetec held an in-person interview with the patent examiner for the '150 Patent Application. A copy of the Interview Summary filed by the Patent Office is attached as Exhibit B.

Deleted: ___

32. During the interview, Venetec's representative and the patent examiner discussed Venetec's amendments to the claims submitted in the Amendment filed on January 3, 2007, in the '150 Patent Application. (See Exhibit B).

Deleted: ___

33. Subsequent to the in-person interview, the patent examiner issued a Notice of Allowability and Examiner's Amendment, attached as Exhibit C, on March 16, 2007, for the '150 Patent Application.

Deleted: ____

34. From January 3, 2007, through March 15, 2007, Venetec was actively prosecuting the '150 Patent Application to obtain allowance of claims, some of which have been asserted in the present litigation as infringing.

35. Venetec paid the issue fee for the '150 Patent Application on March 15, 2007, a day prior to the Patent Office's mailing of the Notice of Allowance. A copy of the Issue Fee Transmittal filed by Venetec is attached as Exhibit D.

Deleted: ____

36. Venetec had from January 29, 2007, the date of filing of the present litigation, up to March 15, 2007, the date of payment of the issue fee in the '150 Patent Application, to inform the Patent Office of the existence of the present litigation, but failed to do so.

37. Per MPEP § 2001.04 and 37 C.F.R. § § 1.56(a) and 1.97, after payment of the issue fee, information will only be considered if (1) the application is withdrawn from issue, a Request for Continued Examination is filed, and the information is properly cited in an

Information Disclosure Statement ("IDS"); or (2) the application is withdrawn from issue, the application is expressly abandoned, a continuing application is filed, and the information is properly cited in an IDS filed in the continuing application.

38. Venetec listed this litigation on an IDS filed with the Patent Office on June 20, 2007.

39. In the June 20, 2007, IDS (Exhibit E), Venetec stated that it was filing the IDS "in accordance with M.P.E.P. § 2001.06(c)," and therefore, Venetec knew of its obligations under § 2001.06(c) to cite the existence of litigation involving the same subject matter as an examined patent application.

40. On June 25, 2007, the Patent Office responded to Venetec's filing of the IDS ("Patent Office Response"), attached hereto as Exhibit F.

41. The Patent Office Response explains that the litigation listed on the IDS was not considered by the patent examiner in the prosecution of the '150 Patent Application because the issue fee had already been paid.

42. The Patent Office Response advises Venetec to file a petition to withdraw the '150 Patent Application from issue to have the IDS considered by the Patent Office.

43. Although Venetec had the opportunity to petition the Patent Office to withdraw the '150 Patent Application from issue and either (1) file a Request for Continued Examination and an IDS properly citing the existence of the litigation; or (2) expressly abandon the '150 Patent Application, file a continuing application, and file an IDS in the continuing application properly citing the existence of the litigation, Venetec failed to do so.

44. The Patent Office did not consider the existence of this litigation in determining patentability of the '150 Patent Application.

**Deleted:** ___

**Deleted:** __

**Deleted:** <#>Nexus filed a Request for Reexamination of the '485 Patent (the "'485 Reexamination") with the U.S. Patent and Trademark Office ("Patent Office") on June 25, 2007, and a copy of the '485 Reexamination was provided to Venetec at or about that time.¶
<#>The '485 Reexamination sets forth four prior art references that invalidate claims 1-3, 5-8, 11-13, 15-18, and 21-22 ("the Reexamined Claims") of the '485 Patent.¶
<#>The '485 Reexamination contains no less than twenty-four arguments for invalidity (the "Reexamination Invalidity Contentions") of the Reexamined Claims that are detailed in no less than twenty-four claim charts.¶
<#>The Reexamination Invalidity Contentions include, but are not limited to, assertions that the Reexamined Claims of the '485 Patent are invalid as anticipated and/or obvious in view of, and in combination with, certain prior art references.¶

45. In response to Venetec's First Set of Interrogatories in this litigation, Nexus served Venetec with invalidity contentions of the '485 Patent (the "Interrogatory Invalidity Contentions") on May 30, 2007, including invalidity claim charts.

46. The Interrogatory Invalidity Contentions arise from the present litigation and therefore should have been properly cited to the Patent Office, pursuant to MPEP § 2001.06(c).

47. The Interrgoatory Invalidity Contentions are *per se* material to patentability of the '150 Patent Application.

48. Venetec listed the Interrogatory Invalidity Contentions on the IDS filed with the Patent Office on June 20, 2007. (See Exhibit E).

49. In the June 20, 2007, IDS (Exhibit E), Venetec stated that it was filing the IDS "in accordance with M.P.E.P. § 2001.06(c)," and therefore, Venetec knew of its obligations under § 2001.06(c) to cite material information arising from litigation involving the same subject as an examined application.

50. On June 25, 2007, the Patent Office responded to Venetec's filing of the IDS (the afore-mentioned Patent Office Response), attached hereto as Exhibit F.

51. The Patent Office Response explains that the Interrogatory Invalidity Contentions listed on the IDS were not considered by the patent examiner in the prosecution of the '150 Patent Application because the issue fee had already been paid.

52. The Patent Office Response advises Venetec to file a petition to withdraw the '150 Patent Application from issue to have the IDS considered by the Patent Office.

53. Although Venetec had the opportunity to petition the Patent Office to withdraw the '150 Patent Application from issue and either (1) file a Request for Continued Examination and an IDS properly citing the Interrogatory Invalidity Contentions; or (2) expressly abandon the

**Deleted:** Because the '485 Patent is related to the '150 Patent, the Reexamination Invalidity Contentions in the '485 Reexamination are material to patentability of the '150 Patent application.¶
<#>The claim charts and Reexamination Invalidity Contentions set forth in the '485 Reexamination were neither cited by Venetec in the '150 Patent application nor considered by the Patent Office during prosecution of the '150 Patent.¶

**Deleted:** ___

**Deleted:** ___

**Deleted:** <#>Venetec cited the Interrogatory Invalidity Contentions to the Patent Office in an Information Disclosure Statement ("IDS"), attached hereto as Exhibit A, on June 20, 2007.¶

**Deleted:** ("PTO Response"),

**Deleted:** B

**Deleted:** ___

**Inserted:** ___

**Deleted:** .

**Deleted:** PTO

**Deleted:** cited in

**Deleted:** P

**Deleted:** E

**Deleted:** Patent Examiner

**Deleted:** p

**Deleted:** patent

**Deleted:** in the prosecution of the '150 Patent

**Deleted:** TO

**Deleted:** a

**Deleted:** application

**Deleted:** TO

**Deleted:** a

'150 Patent Application, file a continuing application, and file an IDS in the continuing application properly citing the Interrogatory Invalidity Contentions, Venetec failed to do so.

Deleted: from issuance and therefore allow consideration of Nexus's Interrogatory Invalidity Contentions, V

54. The Patent Office did not consider the Interrogatory Invalidity Contentions in determining patentability of the '150 Patent Application.

Deleted: TO

Deleted: PTO

Deleted: .

55. Nexus filed a Request for Reexamination of the '485 Patent ("the '485 Reexamination") with the Patent Office on June 25, 2007, and a copy of the '485 Reexamination was provided to Venetec at or about that time.

56. The '485 Reexamination sets forth four prior art references that invalidate claims 1-3, 5-8, 11-13, 15-18, and 21-22 ("the Reexamined Claims") of the '485 Patent.

57. The '485 Reexamination contains no less than twenty-four arguments for invalidity (the "Reexamination Invalidity Contentions") of the Reexamined Claims that are detailed in no less than twenty-four claim charts.

58. The Reexamination Invalidity Contentions include, but are not limited to, assertions that the Reexamined Claims of the '485 Patent are invalid as anticipated and/or obvious in view of, and in combination with, certain prior art references.

59. Because the '485 Patent is related to the '150 Patent, the Request for Reexamination of the '485 Patent and the Reexamination Invalidity Contentions in the '485 Reexamination are material to patentability of the '150 Patent Application.

60. The Request for Reexamination of the '485 Patent and the Reexamination Invalidity Contentions in the '485 Reexamination arise from the present litigation and therefore should be properly cited to the Patent Office, pursuant to MPEP § 2001.06(c).

61. The Request for Reexamination of the '485 Patent and the Reexamination Invalidity Contentions in the '485 Reexamination are *per se* material to patentability of the '150 Patent Application.

62. The claim charts and Reexamination Invalidity Contentions set forth in the '485 Reexamination were neither cited by Venetec in the '150 Patent Application nor considered by the Patent Office during prosecution of the '150 Patent.

63. Upon information and belief, Venetec's failure to cite for consideration by the Patent Office the existence of this litigation, the Interrogatory Invalidity Contentions, the Request for Reexamination of the '485 Patent, and/or the Reexamination Invalidity Contentions, was with bad faith and an intent to deceive the Patent Office.

64. Venetec breached its duty of candor before the Patent Office, as prescribed in 37 C.F.R. § 1.56, for failing to cite for consideration by the Patent Office with an intent to deceive the Patent Office, the existence of this litigation, the Interrogatory Invalidity Contentions, the Request for Reexamination of the '485 Patent, and/or the Reexamination Invalidity Contentions, and such breach resulted in inequitable conduct of the '150 Patent Application.

65. There is a substantial, justiciable, and continuing controversy between Nexus and Venetec as to Venetec's suit for infringement of the '150 Patent and whether the '150 Patent is unenforceable.

66. Nexus will be damaged in its business by the charges of infringement by Venetec in its Second Supplemental Complaint and will be irreparably harmed if the existing controversy between the parties is not promptly adjudicated.

67. As a result, Nexus seeks a declaration that the '150 Patent is unenforceable.

**Count IV**
**False Markings as to Venetec's StatLock® CV Stabilization Line of Products**

Formatted: Indent: Left: 0", First line: 0.5", Numbered + Level: 1 + Numbering Style: 1, 2, 3, ... + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Tab after: 0.75" + Indent at: 0.75", Tabs: 1", List tab + Not at 0.75"

Deleted: <#>Upon information and belief, Venetec's failure to cite for consideration by the Patent Office the Reexamination Invalidity Contentions and/or the Interrogatory Invalidity Contentions was with bad faith and an intent to deceive the Patent Office ¶

Deleted: <#>Upon information and belief, Venetec's failure to cite for consideration by the Patent Office the Reexamination Invalidity Contentions and/or the Interrogatory Invalidity Contentions was with bad faith and an intent to deceive the Patent Office and thus, breached Venetec's duty of candor before the Patent Office, as prescribed in 37 C.F.R. § 1.56, and resulted in inequitable conduct.¶

68.     Nexus incorporates by reference and realleges paragraphs 1 through 67 of its counterclaim as if fully set forth herein.

69.     35 U.S.C. § 292 prohibits marking upon, or affixing to, or using in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the unpatented article is patented, for the purpose of deceiving the public.

70.     Venetec sells a StatLock® CV Stabilization line of products.  Upon information and belief, Venetec uses and continues to use the same backing on its site securement products sold with this line of products resulting in each Venetec product bearing the same patent markings such that Venetec's entire line of StatLock® CV Stabilization products is falsely marked.

71.     For example, Venetec's "StatLock® CV Plus Stabilization Device" is part of Venetec's line of StatLock® CV Stabilization products, and is marked with the words "This securement device is protected by one or more of the following patents: U.S. Patent Numbers 5,192,274; 5,827,230; 5,833,663; 5,855,591; 6,213,979; 6,224,571; 6,283,945; 6,290,676; 6,413,240; 6,447,485; 6,572,588; D-347,060; D-364,922; D-377,831; D-393,903; D-399,954. Other US and foreign patents pending." (the "Patent Markings").

72.     Attached as Exhibit G are true and accurate images of a "StatLock® CV Plus Stabilization Device" displaying the Patent Markings on said product.

73.     No claim of the following patents encompasses Venetec's "StatLock® CV Plus Stabilization Device": U.S. Patent Nos. 5,827,230; 5,833,663; 5,855,591; 6,224,571; 6,290,676; 6,413,240; 6,572,588; D-347,060; D-377,831; and D-399,954 (the "Falsely Marked StatLock® CV Plus Stabilization Patents").

74. Upon information and belief, Venetec knowingly, willfully, and with intent to deceive the public, marked and continues to mark its StatLock® CV Stabilization line of products, including, but not limited to, its "StatLock® CV Plus Stabilization Device," with words that import that the "StatLock® CV Plus Stabilization Device" is covered by the claims of the Falsely Marked StatLock® CV Plus Stabilization Patents.

**Count V**
**False Markings as to Venetec's StatLock® Foley Stabilization Line of Products**

75. Nexus incorporates by reference and realleges paragraphs 1 through 74 of its counterclaim as if fully set forth herein.

76. 35 U.S.C. § 292 prohibits marking upon, or affixing to, or using in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the unpatented article is patented, for the purpose of deceiving the public.

77. Venetec sells a StatLock® Foley Stabilization line of products. Upon information and belief, Venetec uses and continues to use the same backing on its site securement products sold with this line of products resulting in each Venetec product bearing the same patent markings such that Venetec's entire line of StatLock® Foley Stabilization products is falsely marked.

78. For example, Venetec's "StatLock® Foley Stabilization Device" is part of Venetec's line of StatLock® Foley Stabilization products and is marked with the Patent Markings.

79. Attached as Exhibit H are true and accurate images of a "StatLock® Foley Stabilization Device" displaying the Patent Markings on said product.

80. No claim of the following patents encompasses Venetec's "StatLock® Foley Stabilization Device": U.S. Patent Nos. 5,192,274; 5,827,230; 5,833,663; 5,855,591; 6,224,571;

6,290,676; 6,572,588; D-347,060; D-377,831; and D-399,954 (the "Falsely Marked StatLock® Foley Stabilization Patents").

81. Upon information and belief, Venetec knowingly, willfully, and with intent to deceive the public, marked and continues to mark its StatLock® Foley Stabilization line of products, including, but not limited to, its "StatLock® Foley Stabilization Device," with words that import that the "StatLock® Foley Stabilization Device" is covered by the claims of the Falsely Marked StatLock® Foley Stabilization Patents.

**Count VI**
**False Markings as to Venetec's StatLock® IV Stabilization Line of Products**

82. Nexus incorporates by reference and realleges paragraphs 1 through 81 of its counterclaim as if fully set forth herein.

83. 35 U.S.C. § 292 prohibits marking upon, or affixing to, or using in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the unpatented article is patented, for the purpose of deceiving the public.

84. Venetec Sells a StatLock® IV Stabilization line of products. Upon information and belief, Venetec uses and continues to use the same backing on its site securement products sold with this line of products resulting in each Venetec product bearing the same patent markings such that Venetec's entire line of StatLock® IV Stabilization products is falsely marked.

85. For example, Venetec's "StatLock® Stabilization Device for Intima Plus Catheters" is part of Venetec's line of StatLock® IV Stabilization products and is marked with the Patent Markings.

86. Attached as Exhibit I are true and accurate images of a "StatLock® Statlock Stabilization Device for Intima Plus Catheters" displaying the Patent Markings on said product.

87. No claim of the following patents encompasses Venetec's "StatLock® Stabilization Device for Intima Plus Catheters": U.S. Patent Nos. 5,192,274; 5,827,230; 5,833,663; 5,855,591; 6,213,979; 6,283,945; 6,290,676; 6,413,240; 6,447,485; 6,572,588; D-347,060; D-377,831; D-393,903; and D-399,954 (the "Falsely Marked StatLock® IV Stabilization Patents").

88. Upon information and belief, Venetec knowingly, willfully, and with intent to deceive the public, marked and continues to mark its StatLock® IV Stabilization line of products, including, but not limited to, its "StatLock® Stabilization Device for Intima Plus Catheters," with words that import that the "StatLock® Stabilization Device for Intima Plus Catheters" is covered by the claims of the Falsely Marked StatLock® IV Foley Stabilization Patents.

**Count VII**
**False Markings as to Venetec's StatLock® PICC Stabilization Line of Products**

89. Nexus incorporates by reference and realleges paragraphs 1 through 88 of its counterclaim as if fully set forth herein.

90. 35 U.S.C. § 292 prohibits marking upon, or affixing to, or using in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the unpatented article is patented, for the purpose of deceiving the public.

91. Venetec sells a StatLock® PICC Stabilization line of products. Upon information and belief, Venetec uses and continues to use the same backing on its site securement products sold with this line of products resulting in each Venetec product bearing the same patent markings such that Venetec's entire line of StatLock® PICC Stabilization products is falsely marked.

92.    For example, Venetec's "StatLock® PICC Plus Stabilization Device" is part of Venetec's line of StatLock® PICC Stabilization products and is marked with the Patent Markings.

93.    Attached as Exhibit J are true and accurate images of a "StatLock® PICC Plus Stabilization Device" displaying the Patent Markings on said product.

94.    No claim of the following patents encompasses Venetec's "StatLock® PICC Plus Stabilization Device": U.S. Patent Nos. 5,827,230; 5,833,663; 5,855,591; 6,224,571; 6,290,676; 6,572,588; D-347,060; D-364,922; D-377,831; and D-393,903 (the "Falsely Marked StatLock® PICC Plus Stabilization Patents").

95.    Upon information and belief, Venetec knowingly, willfully, and with intent to deceive the public, marked and continues to mark its StatLock® PICC Stabilization line of products, including, but not limited to, its "StatLock® PICC Plus Stabilization Device," with words that import that the "StatLock® PICC Plus Stabilization Device" is covered by the claims of the Falsely Marked StatLock® PICC Plus Stabilization Patents.

**Count VIII**
**False Markings as to Venetec's StatLock® Epidural Stabilization Line of Products**

96.    Nexus incorporates by reference and realleges paragraphs 1 through 95 of its counterclaim as if fully set forth herein.

97.    35 U.S.C. § 292 prohibits marking upon, or affixing to, or using in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the unpatented article is patented, for the purpose of deceiving the public.

98.    Venetec sells a StatLock® Epidural Stabilization line of products. Upon information and belief, Venetec uses and continues to use the same backing on its site securement products sold with this line of products resulting in each Venetec product bearing the

same patent markings such that Venetec's entire line of StatLock® Epidural Stabilization products is falsely marked.

99. For example, Venetec's "StatLock® Standard Anterior Pad" and "StatLock® Crescent Posterior Pad," are part of Venetec's line of StatLock® Epidural Stabilization products and are marked with the Patent Markings.

100. Attached as Exhibit K are true and accurate images of a "StatLock® Standard Anterior Pad" and a "StatLock® Crescent Posterior Pad" displaying the Patent Markings on said products.

101. No claim of the following patents encompasses Venetec's "StatLock® Standard Anterior Pad": U.S. Patent Nos. 5,192,274; 5,833,663; 5,855,591; 6,213,979; 6,224,571; 6,283,945; 6,413,240; 6,447,485; 6,572,588; D-377,831; D-393,903; and D-399,954 (the "Falsely Marked StatLock® Standard Anterior Pad Patents").

102. No claim of the following patents encompasses Venetec's "StatLock® Crescent Posterior Pad": U.S. Patent Nos. 5,192,274, 5,827,230; 5,833,663; 5,855,591; 6,213,979; 6,224,571; 6,283,945; 6,290,676; 6,413,240; 6,447,485; 6,572,588; D-347,060; D-364,922; D-377,831; and D-393,903 (the "Falsely Marked StatLock® Crescent Posterior Pad Patents").

103. Upon information and belief, Venetec knowingly, willfully, and with intent to deceive the public, marked and continues to mark its StatLock® Foley Stabilization line of products, including, but not limited to, its "StatLock® Standard Anterior Pad" and "StatLock® Crescent Posterior Pad," with words that import that the "StatLock® Standard Anterior Pad" and "StatLock® Crescent Posterior Pad" are covered by the claims of the Falsely Marked StatLock® Standard Anterior Pad Patents and Falsely Marked StatLock® Crescent Posterior Pad Patents, respectively.

**Count IX**
**False Markings as to Venetec's StatLock® Multipurpose Stabilization Line of Products**

104. Nexus incorporates by reference and realleges paragraphs 1 through 103 of its counterclaim as if fully set forth herein.

105. 35 U.S.C. § 292 prohibits marking upon, or affixing to, or using in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the unpatented article is patented, for the purpose of deceiving the public.

106. Venetec sells a StatLock® Multipurpose Stabilization line of products. Upon information and belief, Venetec uses and continues to use the same backing on its site securement products sold with this line of products resulting in each Venetec product bearing the same patent markings such that Venetec's entire line of StatLock® Multipurpose Stabilization products is falsely marked.

107. For example, Venetec's "StatLock® Multipurpose Stabilization Device" is part of Venetec's line of StatLock® Multipurpose Stabilization products and is marked with the Patent Markings.

108. Attached as Exhibit L are true and accurate images of a "StatLock® Multipurpose Stabilization Device" displaying the Patent Markings on said product.

109. No claim of the following patents encompasses Venetec's "StatLock® Multipurpose Stabilization Device": U.S. Patent Nos. 5,192,274; 5,827,230; 5,833,663; 6,213,979; 6,224,571; 6,283,945; 6,290,676; 6,413,240; 6,447,485; 6,572,588; D-347,060; D-377,831; and D-399,954 (the "Falsely Marked StatLock® Multipurpose Stabilization Patents").

110. Upon information and belief, Venetec knowingly, willfully, and with intent to deceive the public, marked and continues to mark its StatLock® Multipurpose Stabilization line of products, including, but not limited to, its "StatLock® Multipurpose Stabilization Device,"

with words that import that the "StatLock® Multipurpose Stabilization Device" is covered by the claims of the Falsely Marked StatLock® Multipurpose Stabilization Patents.

**Count X**
**False Markings as to Venetec's StatLock® Universal Plus Stabilization Line of Products**

111.    Nexus incorporates by reference and realleges paragraphs 1 through 110 of its counterclaim as if fully set forth herein.

112.    35 U.S.C. § 292 prohibits marking upon, or affixing to, or using in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the unpatented article is patented, for the purpose of deceiving the public.

113.    Venetec sells a StatLock® Universal Plus Stabilization line of products.  Upon information and belief, Venetec uses and continues to use the same backing on its site securement products sold with this line of products resulting in each Venetec product bearing the same patent markings such that Venetec's entire line of StatLock® Universal Plus Stabilization products is falsely marked.

114.    For example, Venetec's "StatLock® Universal Plus Stabilization Device" is part of Venetec's line of StatLock® Universal Plus Stabilization products and is marked with the Patent Markings.

115.    Attached as Exhibit M are true and accurate images of a "StatLock® Universal Plus Stabilization Device" displaying the Patent Markings on said product.

116.    No claim of the following patents encompasses Venetec's "StatLock® Universal Plus Stabilization Device": U.S. Patent Nos. 5,192,274; 5,827,230; 5,833,663; 5,855,591; 6,224,571; 6,290,676; D-347,060; D-364,922; D-377,831; D-393,903; and D-399,954 (the "Falsely Marked StatLock® Universal Plus Stabilization Patents").

117.    Upon information and belief, Venetec knowingly, willfully, and with intent to deceive the public, marked and continues to mark its StatLock® Universal Plus Stabilization line of products, including, but not limited to, its "StatLock® Universal Plus Stabilization Device," with words that import that the "StatLock® Universal Plus Stabilization Device" is covered by the claims of the Falsely Marked StatLock® Universal Plus Stabilization Patents.

**Count XI**
**False Markings as to Venetec's StatLock® Huber Stabilization Line of Products**

118.    Nexus incorporates by reference and realleges paragraphs 1 through 117 of its counterclaim as if fully set forth herein.

119.    35 U.S.C. § 292 prohibits marking upon, or affixing to, or using in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the unpatented article is patented, for the purpose of deceiving the public.

120.    Venetec sells a StatLock® Huber Stabilization product.  Venetec's "StatLock® Huber Adhesive Well Pad" is a Venetec StatLock® Huber Stabilization product and is marked with the words "This securement device is protected by one or more of the following patents: U.S. Pat. Nos. 5,637,098; 5,578,013; 5,456,671; 5,354,282; 5,314,411; 5,290,248;  5,192,274; 5,192,273;  4,711,636;  D-377,831;  D-375,356;  D-375,355;  D-364,922;  D-347,060.  Other domestic and foreign patents pending." (the "Huber Patent Markings").

121.    Attached as Exhibit N are true and accurate images of a "StatLock® Huber Adhesive Well Pad" displaying the Huber Patent Markings on said product.

122.    No claim of the following patents encompasses Venetec's "StatLock® Huber Adhesive Well Pad": U.S. Patent Nos. 4,711,636; 5,192,273; 5,192,274; 5,290,248; 5,314,411; 5,354,282; 5,456,671; 5,578,013; 5,637,098; D-347,060; D-364,922; D-375,355; D-375,356; D-377,831 (the "Falsely Marked StatLock® Huber Adhesive Well Pad Stabilization Patents").

123. Upon information and belief, Venetec knowingly, willfully, and with intent to deceive the public, marked its StatLock® Huber Stabilization product, including, but not limited to, its "StatLock® Huber Adhesive Well Pad," with words that import that the "StatLock® Huber Adhesive Well Pad" is covered by the claims of the Falsely Marked StatLock® Huber Adhesive Well Pad Stabilization Patents.

**Prayer for Relief**

WHEREFORE, Nexus prays for the following relief:

1. That the Patents-in-Suit be declared not infringed by Nexus;

2. That the Patents-in-Suit be declared invalid and void;

3. That the '150 Patent be declared unenforceable;

4. That judgment on Plaintiff's Second Supplemental Complaint be rendered for Nexus, with costs of litigation awarded to Nexus;

5. That the Court find this case to be exceptional and award Nexus its reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285;

6. Judgment of false marking against Venetec for each of the Counts in this First Amended Answer and Counterclaim alleging violation of 35 U.S.C.§ 292;

7. A fine of $500 against Venetec for each offense of false marking, with one half of the levied fine awarded to Nexus and the other half going to the use of the United States pursuant to 35 U.S.C. § 292; and

**Deleted:** and

8. That the Court grant to Nexus such other, further, and different relief as the Court may deem just and proper.

Dated: November 7, 2007 __________/s/ Mary B. Matterer______

Richard K. Herrmann #(No. 405)
Mary B. Matterer #(No. 2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
Telephone: 302-888-6800
Facsimile: 302-571-1750
mmatterer@morrisjames.com

Of Counsel:
Scott R. Brown (Admitted *Pro Hac Vice*)
Jennifer C. Bailey (Admitted *Pro Hac Vice*)
HOVEY WILLIAMS LLP
2405 Grand Boulevard, Suite 400
Kansas City, Missouri 64108
T: 816-474-9050
F: 816-474-9057

*ATTORNEYS FOR DEFENDANT AND COUNTERCLAIM-PLAINTIFF NEXUS MEDICAL, LLC*

**Deleted:** _______________, 200__
**Inserted:** _______________, 200__
**Deleted:** September 19, 2007
**Deleted:** ___________________________