IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VENETEC INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-57 (***) |
| | ) | |
| NEXUS MEDICAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**VENETEC INTERNATIONAL, INC.'S ANSWERING BRIEF IN OPPOSITION TO
NEXUS' MOTION FOR LEAVE TO AMEND ITS ANSWER AND COUNTERCLAIM**

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiff*

*Of Counsel:*

Steven Cherny
Clement J. Naples
LATHAM & WATKINS LLP
885 Third Avenue
Suite 1000
New York, NY 10022-4834
(212) 906-1200

Maximilian A. Grant
Michael A. David
LATHAM & WATKINS LLP
555 Eleventh Street
Suite 1000
Washington, DC 20004
(202) 637-2200

November 29, 2007

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF THE PROCEEDING.............................................................1

II.     SUMMARY OF ARGUMENT ...................................................................................2

III.    ARGUMENT ..........................................................................................................3

     A.      Nexus Should Not Be Granted Leave to Amend To Assert Its Untimely
          False Marking Counterclaim..........................................................................3

          1.      Nexus Seeks to Amend the Court's Scheduling Order Pursuant to
               Rule 16(b) ............................................................................................3

          2.      Nexus Has Unduly Delayed Bringing Its False Marking
               Counterclaims .......................................................................................4

     B.      Nexus' Inequitable Conduct Counterclaim Is Futile ...........................................5

          1.      Amendment of Futile Claims Should Be Denied ........................................5

          2.      Venetec Was *Not* Required to Withdraw the '150 Patent From
               Issuance...............................................................................................7

          3.      The Information Nexus Contends is *Per Se* Material Is, Instead,
               *Per Se* Cumulative and "Does Not Meet the Threshold of
               Materiality That Is Predicate to a Holding of Inequitable Conduct"...........8

          4.      Nexus Fails to Plead Any Actual Deception and Its Allegations
               Are Insufficient to Support an Inference of Intent to Deceive...................10

IV.     CONCLUSION.......................................................................................................10

# TABLE OF AUTHORITIES

## Cases

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
 725 F.2d 1350 (Fed. Cir. 1984)..................................................................6, 9

*Cowell v. Palmer Township*,
 263 F.3d 286 (3d Cir. 2001)..................................................................5

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*,
 120 F.3d 1253 (Fed. Cir. 1997)..................................................................10

*Digital Control, Inc. v. Merlin Tech., Inc.*,
 437 F.3d 1309 (Fed. Cir. 2006)..................................................................9

*E. Minerals & Chems. Co. v. Mahan*,
 225 F.3d 330 (3d Cir. 2000)..................................................................3

*Foman v. Davis*,
 371 U.S. 179 (1962)..................................................................5

*Friedman v. Transamerica Corp.*,
 5 F.R.D. 115 (D. Del. 1946)..................................................................4

*Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*,
 973 F.2d 911 (Fed. Cir. 1992)..................................................................7-8, 10

*Liafail, Inc. v. Learning 2000, Inc.*,
 C.A. Nos. 01-599 GMS, 01-678 GMS,
 2002 U.S. Dist. LEXIS 22620 (D. Del. Nov. 25, 2002)...........................................8

*Lynch v. Coinmaster USA, Inc.*,
 Civil Action No. 06-365 JJF,
 2007 U.S. Dist. LEXIS 292 (D. Del. Jan. 4, 2007)..................................................................5

*Norian Corp. v. Stryker Corp.*,
 363 F.3d 1321 (Fed. Cir. 2004)..................................................................9

*Samick Music Corp. v. Delaware Music Indus., Inc.*,
 1992 U.S. Dist. LEXIS 2464 (D. Del. Feb. 12, 1992)...........................................3, 4

*Scripps Clinic & Research Found. v. Genetech, Inc.*,
 927 F.2d 1565 (Fed. Cir. 1991)..................................................................9-10

*Slip Track Systems, Inc. v. Metal-Lite, Inc.*,
 304 F.3d 1256 (Fed. Cir. 2002)..................................................................3

## FEDERAL RULES AND STATUTES

37 C.F.R. § 1.114(a)(1) ......................................................................................6

37 C.F.R. § 1.313 .............................................................................................5

37 C.F.R. § 1.56(b) ......................................................................................8, 9

FED. R. CIV. P. 16(b) ..................................................................................2, 3, 4

I.    **NATURE AND STAGE OF THE PROCEEDING**

Venetec filed this patent infringement action on January 29, 2007. (D.I. 1). Nexus filed an Answer and Counterclaim on March 22, 2007. (D.I. 10). Venetec replied on April 11, 2007. (D.I. 14).

After a conference with the parties, the Court entered a Scheduling Order on April 27, 2007. (D.I. 23). That Order required any amendments or supplementations to the pleadings to be filed by September 7, 2007, a date that had been mutually agreed upon by the parties and accepted by the Court. (D.I. 21).

On July 25, 2007, Venetec filed a Supplemental Complaint to add a third patent that had just issued. (D.I. 71). Nexus filed its Answer and Counterclaim on August 8, 2007. (D.I. 78). Venetec replied on August 28, 2007. (D.I. 83.)

On September 5, 2007, Venetec filed a Second Supplemental Complaint to add false marking claims. (D.I. 84). On September 19, 2007, Nexus filed an Answer and Counterclaim. (D.I. 91). Venetec replied on September 27, 2007. (D.I. 92). On September 28, 2008, Venetec moved for partial judgment on the pleadings, directed at Nexus' counterclaim alleging inequitable conduct. (D.I. 94). That motion has been fully briefed and is pending.

On September 6, 2007, the parties submitted a joint status report the Court. (D.I. 85). In that report, Nexus asked to have the discovery cut-off date extended by three months, but said nothing about the deadline for amending the pleadings, which was the day after the submission of that report. (D.I. 85). The Court amended the Scheduling Order on September 13, 2007, but the date for amending the pleadings remained unchanged. (D.I. 90).

Then, on November 7, 2007, two months after the deadline for motions to amend the pleadings had passed, Nexus filed the instant motion to amend its Answer and

Counterclaims, which seeks to bolster its inequitable conduct allegations and to add eight new counts of false marking. (D.I. 105).

## II.    SUMMARY OF ARGUMENT

Nexus seeks leave to amend its counterclaims pursuant to Fed. R. Civ. P. 15(a). (D.I. 106 at 3-4). In light of this Court's Order setting September 7, 2007 as the deadline for amendment or supplementation of pleadings, however, Nexus' motion actually seeks to amend the Court's Scheduling Order. Consequently, Nexus' motion is properly governed by Fed. R. Civ. P. 16(b) concerning modifications to scheduling orders. Under those standards, Nexus must make a showing of good cause and must demonstrate that its newly proposed claims could not have been added earlier. *See* FED. R. CIV. P. 16(b) ("A schedule shall not be modified except upon a showing of good cause and by leave of district [or] magistrate judge."). In fact, Nexus' newly-proposed counterclaims alleging false marking could have been made long ago, and Nexus has made no "showing of good cause" demonstrating otherwise. Accordingly, the Court should deny its motion for leave to amend with respect to the false marking counterclaims.

The Court also should deny Nexus' motion for leave to amend its inequitable conduct counterclaim. For reasons discussed in Venetec's reply brief in support of its motion for partial judgment on the pleadings and summarized below, Nexus' proposed amendment regarding its inequitable conduct counterclaim is futile. Nexus' arguments that Venetec had to withdraw its '150 Patent application from issuance after payment of the issue fee, and that Venetec's non-disclosures were material, are baseless. In addition, even with the proposed additional allegations, Nexus still presents no specific allegations from which a finder of fact could conclude that anyone at Venetec acted with intent to deceive the Patent and Trademark Office ("PTO").

## III.    ARGUMENT

### A.    Nexus Should Not Be Granted Leave to Amend To Assert Its Untimely False Marking Counterclaim

#### 1.    Nexus Seeks to Amend the Court's Scheduling Order Pursuant to Rule 16(b)

Nexus seeks leave to amend its counterclaim under Fed. R. Civ. P. 15(a).  (D.I. 106 at 3-4).  This Court's April 27, 2007 Scheduling Order, however, set September 7, 2007 as the deadline for amendment of pleadings.  (D.I. 23 at 1).  Accordingly, Nexus' motion for leave to amend is in reality a motion to amend this Court's Scheduling Order.  As such, it is governed not by Rule 15(a), but by the more stringent standards of Fed. R. Civ. P. 16(b).  *See, e.g., E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 & n.18 (3d Cir. 2000).

Rule 16(b) states that a court's Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district judge . . . ."  FED. R. CIV. P. 16(b).  To show "good cause" for amendment of a Scheduling Order, the moving party must demonstrate that, despite its diligence, it could not reasonably have sought to add its newly proposed claims in a timely manner.  *See Samick Music Corp. v. Delaware Music Indus., Inc.*, C.A. 91-23-CMW, 1992 U.S. Dist. LEXIS 2464, at *18-20 (D. Del. Feb. 12, 1992) (denying leave to amend counterclaim where the relevant facts underlying proposed counterclaim were earlier known).  The "good cause" standard of Rule 16(b) hinges on the question of diligence, and *not* on the question of prejudice to the non-moving party.  *Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1270 (Fed. Cir. 2002) ("Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment.") (quoting *Johnson v. Mammoth Recs., Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

As explained below, Nexus has not established its diligence in seeking to add its false marking counterclaims, and thus cannot make a showing of good cause.

### 2. Nexus Has Unduly Delayed Bringing Its False Marking Counterclaims

Nexus argues that it "diligently" pursued its false marking counterclaims once Venetec had raised its false marking claims in its Second Supplemental Complaint filed on September 5, 2007. (D.I. 106 at 5-6). But Nexus' false marking counterclaims are not factually related to Venetec's false marking claims. Nexus concedes that it did not even look into bringing false marking claims until *after* Venetec filed its claim for false marking. (*Id.*). The "tit for tat" diligence standard Nexus argues this Court should adopt is not the standard under Rule 16.

Nexus' false marking counterclaims are based on Venetec products that have been publicly available since before this lawsuit. (D.I. 105 at ¶¶ 68-123, Exhibits G-N). As a result, Nexus' delay in bringing those counterclaims dates back to when this suit was filed, not when Venetec's Second Supplemental Complaint evidently first inspired Nexus to investigate this claim. Nexus should have first considered potential false marking counterclaims in January of 2007, almost a year ago. On these facts, Nexus' motion for leave to amend reflects undue and unexcused delay. Nexus has failed to so much as proffer an explanation for its lack of diligence since January 2007. In sum, Nexus' motion fails to establish the requisite good cause necessary to amend this Court's Scheduling Order. FED. R. CIV. P. 16(b); *see also Samick Music Corp.*, 1992 U.S. Dist. LEXIS 2464, at *18-20; *Friedman v. Transamerica Corp.*, 5 F.R.D. 115, 116 (D. Del. 1946) (denying leave to amend where the subject matter of the amendment had been known for four months).

Nexus' motion for leave to add a counterclaim for false marking should be denied.

### B.    Nexus' Inequitable Conduct Counterclaim Is Futile

#### 1.    Amendment of Futile Claims Should Be Denied

Leave to amend should be denied if the amendment would be futile. *Lynch v. Coinmaster USA, Inc.*, Civil Action No. 06-365 JJF, 2007 U.S. Dist. LEXIS 292, at *5 (D. Del. Jan. 4, 2007) (*citing Satellite Fin. Planning Corp. v. First Nat'l Bank*, 646 F. Supp. 118, 120 (D. Del. 1986)); *Foman v. Davis*, 371 U.S. 179, 182 (1962). This principle has been upheld even in cases where, unlike this case, leave to amend does not require the amendment of a Scheduling Order. *See Cowell v. Palmer Twp*, 263 F.3d 286, 296 (3d Cir. 2001) (affirming denial of leave to amend where the additional factual allegations offered were insufficient to state a claim).

As discussed in Venetec's reply brief in support of its motion for judgment on the pleadings, Nexus cannot state a cause of action against Venetec for inequitable conduct. Consistent with its duty of candor, Venetec disclosed the existence of this litigation, as well as Nexus' interrogatory invalidity contentions, to the PTO.[1] (D.I. 104 at 2, note 1; *Id.* at 4). Nexus' inequitable conduct claim is premised on the argument that Venetec should have withdrawn its patent application after Nexus raised its invalidity contentions during discovery, although there is no PTO requirement to do so. (D.I. 105-2 at ¶ 30).[2] Nexus' "fraud" theory *assumes* that its

---

[1]    Nexus' proposed amended counterclaim alleging that Venetec's "delay" of disclosure of this litigation resulted in inequitable conduct is duplicitous. Incredibly, *Nexus*, in conjunction with its own December 21, 2005 patent application for an intravenous catheter site securement device, only disclosed the existence of this litigation to the PTO on November 19, 2007, nearly ten months after the commencement of this litigation. (Exhibit A).

[2]    Nexus' proposed amended counterclaim suggests that, as an alternative to withdrawing the '150 application, Venetec could have filed a Request for Continued Examination. (D.I. 105-2 at ¶ 43). In fact, a Request for Continued Examination made subsequent to the payment of an issue fee will only be granted if a petition under 37 C.F.R. § 1.313 (*i.e.*, a withdrawal) is

interrogatory invalidity contentions, which were based entirely on prior art references already before the patent examiner during prosecution, were material to the prosecution of the '150 application.  (D.I. 105-2 at ¶¶ 45-47).  But *assuming* materiality is insufficient to state a claim where the references relied on were – by definition (because they are the identical references) – cumulative with art considered by the PTO.  *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984) (party asserting invalidity based on references before the PTO has the "added burden ... of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and *whose duty it is to issue only valid patents*.") (emphasis added).[3]

Despite forty additional paragraphs, Nexus still has not satisfied the requirement that it plead alleged fraud with particularity or that Venetec has engaged in any deception, misrepresentation, or non-disclosure that could support a claim for inequitable conduct. Accordingly, amendment of that claim would be futile.

---

also granted.   37 C.F.R. § 1.114(a)(1).   Accordingly, Nexus' suggested alternative of a Request for Continued Examination is still predicated on the notion that Venetec should have withdrawn the issued '150 application.

[3]   Nexus also contends (in a conclusory manner bereft of factual support) that Venetec allegedly acted with intent to deceive the PTO in the course of prosecuting the '150 application.   (D.I. 105-2 at ¶ 63).   There is no requirement that Venetec withdraw its application from issuance and Nexus cannot base its allegations on a non-duty.   Given Venetec's *submission* of Nexus' interrogatory invalidity contentions (which were, in turn, based on cumulative references), Nexus (i) fails to articulate any theory on which the Court can infer any intent to deceive, and (ii) fails to identify any issue on which the PTO could have been allegedly deceived.

2.    **Venetec Was *Not* Required to Withdraw the '150 Patent From Issuance**

Nexus' claim of inequitable conduct is premised on the notion that Venetec was somehow *required* to withdraw the '150 application in light of "the existence of the litigation" regarding the related '485 and '979 patents (D.I. 105-2 at ¶ 43) and in light of Nexus' Interrogatory Invalidity Contentions regarding the '485 patent. (D.I. 105-2 at ¶ 53). But as of Venetec's payment of the issue fee on March 15, 2007, Nexus had yet to respond substantively to Venetec's original complaint in any way, much less in a way that implicated issues of invalidity or unenforceability with respect to the '485 or '979 patents, or the '150 patent application. Instead, Nexus concedes, as it must, that Venetec did not have Nexus' Invalidity Contentions until two months *after* Venetec had paid the issue fee on the '150 Patent application. (D.I. 105-2 at ¶¶ 35, 45).

There is no authority – *none* – requiring a party to withdraw a patent from issuance after it has paid the issue fee following a notice of allowance. Indeed, the Federal Circuit has held the contrary. In *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, the alleged infringer asserted inequitable conduct based on a reference (the Lawson patent) previously brought to the attention of the patent applicant after the issue fee had been paid but before the patent issued. 973 F.2d 911, 917-18 (Fed. Cir. 1992).[4] The Federal Circuit held:

> While prudence might have dictated telling the Patent and Trademark Office about the [prior art Lawson] patent immediately, there is **no evidence of an intent to deceive in letting** [the] **patent go to issuance**.

---

[4]    Unlike the situation here, in *Kimberly-Clark Corp.* the prior art at issue **had not** been previously considered by the PTO. Thus, Nexus' alleged basis to infer an "intent to deceive" stands on a weaker factual foundation than what was alleged in *Kimberly-Clark,* where the Federal Circuit refused to allow for such an inference.

*Id.* at 918 (emphasis added). Importantly, the Federal Circuit did *not* require the patent applicant to withdraw its application from issuance where it became aware of an arguably material reference after it had paid the issue fee, regardless of the applicant's "opportunity" to do so. *Id.*

As Nexus concedes, Venetec disclosed Nexus' Invalidity Contentions (and therefore, the existence of this litigation) to the PTO. (D.I. 105-2 at ¶¶ 48-49). Under the controlling law, Venetec was not required to withdraw its patent application from issuance. *Kimberly-Clark Corp.*, 973 F.2d at 918.

### 3. The Information Nexus Contends is *Per Se* Material Is, Instead, *Per Se* Cumulative and "Does Not Meet the Threshold of Materiality That Is Predicate to a Holding of Inequitable Conduct"

Nexus contends that the "[t]he existence of this litigation" and the invalidity contentions set forth in its Interrogatory Responses are *per se* material to the '150 Patent application. (D.I. 105-2 at ¶¶ 29, 47). Nexus' contention misconstrues the law regarding the materiality of information relevant to patent prosecution.

First, in its opposition to Venetec's motion for partial judgment on the pleadings, Nexus relied on 37 C.F.R. § 1.56(b) (Rule 56) for the proposition that "[i]nformation is material if, by itself or in combination with other information, it establishes a *prima facie* case of unpatentability." (*Id.* at 9). Nexus left out the remaining portion of Rule 56, which states that "information is material to patentability *when it is not cumulative to information already of record.*" 37 C.F.R. § 1.56(b) (emphasis added).[5] Nexus' Invalidity Contentions were based

---

[5] Curiously, in its recently proposed amended counterclaim, Nexus does not repeat the above misleadingly selective quotation of the C.F.R., but instead provides conclusory assertions that the allegedly non-disclosed information was *per se* material. (D.I. 105-2 at ¶¶ 29, 47). Such conclusory assertions are insufficient under Rule 9(b). *Liafail, Inc. v. Learning 2000, Inc.*, C.A. Nos. 01-599 GMS, 01-678 GMS, 2002 U.S. Dist. LEXIS 22620, at *12 (D. Del. Nov. 25, 2002).

solely on prior art previously disclosed *and expressly considered* by the Patent Examiner. Such information is – by definition – cumulative to the patent application process. *See Digital Control, Inc. v. Merlin Tech., Inc.*, 437 F.3d 1309, 1319 (Fed. Cir. 2006) ("a withheld otherwise material prior art reference is *not* material for the purposes of inequitable conduct if it is merely cumulative to that information considered by the examiner.") (emphasis in original); *Scripps Clinic & Research Found. v. Genetech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991) ("A reference that is simply cumulative to other references does not meet the threshold of materiality that is predicate to a holding of inequitable conduct.") (citing *Halliburton Co. v. Schlumberger Tech. Corp.*, 925 F.2d 1435, 1440 (Fed. Cir. 1991)).

Second, Nexus' argument that Venetec failed to disclose the "existence of the litigation," is meritless. *Prior* to payment of the issuance fee, this litigation was not material to the patentability of the '150 Patent application. *After* payment of the issuance fee – after Nexus first provided its interrogatory invalidity contentions – Venetec *did disclose the existence of the litigation* by providing the interrogatories themselves.

Regardless, Nexus cannot base its assertion of materiality on prior art expressly considered by the PTO on the theory that the PTO failed to understand the information before it. *Norian Corp. v. Stryker Corp.*, 363 F.3d. 1321, 1329 (Fed. Cir. 2004) ("Introspection and speculation into the examiner's understanding of the prior art or the completeness or correctness of the examination process is <u>not</u> part of the objective review of patentability." (emphasis added)). The PTO is presumed to have understood the references before it and correctly done its job issuing the '150 Patent over such prior art. *Am. Hoist*, 725 F.2d at 1359.

Simply put, Nexus' invalidity contentions are cumulative with prior art before the PTO and thus not material under 37 C.F.R. § 1.56(b). They cannot be used to form the basis for

a claim of inequitable conduct. *Scripps Clinic*, 927 F.2d at 1582. Having failed to identify any information that exceeds "the threshold of materiality that is a predicate to a holding of inequitable conduct," Nexus' allegation fails as a matter of law.

### 4. Nexus Fails to Plead Any Actual Deception and Its Allegations Are Insufficient to Support an Inference of Intent to Deceive

Nexus accuses Venetec of "intent to deceive the Patent Office" on the basis of its alleged non-disclosures. (D.I. 105-2 at ¶ 64). An inference of intent to deceive must be based on a combination of (1) *"non-disclosure"* and (2) *"a high level of materiality"* of the allegedly withheld information. *See, e.g., Critikon, Inc. v. Becton Dickinson Vasc. Access, Inc.*, 120 F.3d 1253, 1257 (Fed. Cir. 1997) (emphasis added). Venetec's (1) *disclosure* of (2) *cumulative* "non-material" information cannot support an inference of intent to deceive. *Kimberly-Clark Corp.*, 973 F.2d at 918 (disclosure of information in a related patent application after payment of issuance fee is "is not consistent with an intent to deceive."). Nexus' allegations allegedly supporting its claimed "intent to deceive" is flawed as a matter of law. For this distinct and separate reason, amendment of Nexus' claims on this theory would also be futile.

## IV.    CONCLUSION

For the foregoing reasons, Nexus' motion for leave to amend its answer and counterclaim should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiff*

*Of Counsel:*

Steven Cherny
Clement J. Naples
LATHAM & WATKINS LLP
885 Third Avenue
Suite 1000
New York, NY  10022-4834
(212) 906-1200

Maximilian A. Grant
Michael A. David
LATHAM & WATKINS LLP
555 Eleventh Street
Suite 1000
Washington, DC  20004
(202) 637-2200

November 29, 2007

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on November 29, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Richard Hermann, Esquire
> Mary Matterer, Esquire
> MORRIS JAMES

I also certify that copies were caused to be served on November 29, 2007 upon the following in the manner indicated:

> **BY ELECTRONIC MAIL**
> **and HAND DELIVERY**
>
> Richard Hermann, Esquire
> Mary Matterer, Esquire
> MORRIS JAMES
> 500 Delaware Avenue
> Suite 1500
> Wilmington, DE 19801
>
> **BY ELECTRONIC MAIL**
>
> Scott R. Brown, Esquire
> Jennifer C. Bailey, Esquire
> HOVEY WILLIAMS LLP
> 2405 Grand Boulevard
> Suite 400
> Kansas City, MO  64108

Maryellen Noreika (#3208)
mnoreika@mnat.com

# EXHIBIT A

PTO/SB/08a (08-03 )
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | | 11306289 |
| Filing Date | | 2005-12-21 |
| First Named Inventor | | W. Cary Dikeman |
| Art Unit | | 3763 |
| Examiner Name | | |
| Attorney Docket  Number | | 36296 |

### U.S.PATENTS — Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button.    Add

### U.S.PATENT APPLICATION PUBLICATIONS — Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.    Add

### FOREIGN PATENT DOCUMENTS — Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button    Add

### NON-PATENT LITERATURE DOCUMENTS — Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 11306289 |
| Filing Date | 2005-12-21 |
| First Named Inventor | W. Cary Dikeman |
| Art Unit | 3763 |
| Examiner Name | |
| Attorney Docket Number | 36296 |

| | | | |
|---|---|---|---|
| | 1 | Complaint [dated January 29, 2007]. Venetec Int'l, Inc. v. Nexus Medical, LLC, USDC D.Del., Case No.: 1:07-CV-00057***. | ☐ |
| | 2 | Nexus Medical, LLC's Answer to Venetec International, Inc.'s Complaint and Counterclaim [dated March 22, 2007]. Venetec Int'l, Inc. v. Nexus Medical, LLC, USDC D.Del., Case No.: 1:07-CV-00057***. | ☐ |
| | 3 | Venetec International, Inc.'s Reply to Nexus Medical, LLC's Counterclaim [filed April 11, 2007]. Venetec Int'l, Inc. v. Nexus Medical, LLC, USDC D.Del., Case No.: 1:07-CV-00057***. | ☐ |
| | 4 | First Supplemental Complaint [dated July 24, 2007]. Venetec Int'l, Inc. v. Nexus Medical, LLC, USDC D.Del., Case No.: 1:07-CV-00057***. | ☐ |
| | 5 | Nexus Medical, LLC's Answer to Venetec International, Inc.'s First Supplemental Complaint and Counterclaim [dated August 8, 2007]. Venetec Int'l, Inc. v. Nexus Medical, LLC, USDC D.Del., Case No.: 1:07-CV-00057***. | ☐ |
| | 6 | Venetec International, Inc.'s Reply to Nexus Medical, LLC's Counterclaim [filed August 28, 2007]. Venetec Int'l, Inc. v. Nexus Medical, LLC, USDC D.Del., Case No.: 1:07-CV-00057***. | ☐ |
| | 7 | Second Supplemental Complaint [filed September 5, 2007]. Venetec Int'l, Inc. v. Nexus Medical, LLC, USDC D.Del., Case No.: 1:07-CV-00057***. | ☐ |
| | 8 | Nexus Medical, LLC's Answer to Venetec International, Inc.'s Second Supplemental Complaint and Counterclaim [filed September 19, 2007]. Venetec Int'l, Inc. v. Nexus Medical, LLC, USDC D.Del., Case No.: 1:07-CV-00057***. | ☐ |
| | 9 | Venetec International, Inc.'s Reply to Nexus Medical, LLC's Counterclaim [filed September 27, 2007]. Venetec Int'l, Inc. v. Nexus Medical, LLC, USDC D.Del., Case No.: 1:07-CV-00057***. | ☐ |
| | 10 | Request For Inter Partes Reexamination Under 37 C.F.R. 1.913 [filed June 25, 2007]. In re Bierman, USPTO, Reexamination No.: 95/000,271. | ☐ |
| | 11 | Civil Docket for Case Number 1:07-CV-00057*** [printed October 22, 2007]. | ☐ |

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 11306289 |
|---|---|---|
| | Filing Date | 2005-12-21 |
| | First Named Inventor | W. Cary Dikeman |
| | Art Unit | 3763 |
| | Examiner Name | |
| | Attorney Docket Number | 36296 |

| If you wish to add additional non-patent literature document citation information please click the Add button | Add |
|---|---|

## EXAMINER SIGNATURE

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Application Number | 11306289 |
| | Filing Date | 2005-12-21 |
| | First Named Inventor | W. Cary Dikeman |
| | Art Unit | 3763 |
| | Examiner Name | |
| | Attorney Docket Number | 36296 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐    That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐    That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐    See attached certification statement.

☐    Fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒    None

### SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Andrew G. Colombo/ | Date (YYYY-MM-DD) | 2007-11-19 |
| Name/Print | Andrew G. Colombo | Registration Number | 40565 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.    The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.    A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.    A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.    A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.    A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.    A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.    A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.    A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.    A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.