## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VENETEC INTERNATIONAL, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-cv-0057 *** |
| | ) | |
| NEXUS MEDICAL, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## NEXUS MEDICAL, LLC'S REPLY TO VENETEC INTERNATIONAL, INC.'S ANSWERING BRIEF IN OPPOSITION TO NEXUS MEDICAL, LLC'S MOTION FOR LEAVE TO AMEND ITS ANSWER AND COUNTERCLAIM

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
Telephone: 302-888-6800
Facsimile: 302-571-1750
mmatterer@morrisjames.com

Of Counsel:
Scott R. Brown (Admitted *Pro Hac Vice*)
Jennifer C. Bailey (Admitted *Pro Hac Vice*)
HOVEY WILLIAMS LLP
2405 Grand Boulevard, Suite 400
Kansas City, Missouri 64108
Telephone: 816-474-9050
Facsimile: 816-474-9057
srb@hoveywilliams.com
jcb@hoveywilliams.com

*ATTORNEYS FOR DEFENDANT*
*AND COUNTERCLAIM-PLAINTIFF*
*NEXUS MEDICAL, LLC*

Dated: December 10, 2007

# TABLE OF CONTENTS

I.    INTRODUCTION..............................................................................................................1

II.   ARGUMENT..................................................................................................................2

    A.    The Court Should Allow Nexus to Add the Proposed False
        Marking Claims, Counts IV - XI................................................................................2

        1.    Contrary to Venetec's Assertions, Good Cause Exists to Allow
            Nexus to Amend Its Pleadings and Add the False Marking Claims.................2

        2.    Nexus Should Be Granted Leave to Amend Because Nexus Has
            Not Unduly Delayed in Bringing Its False Marking Claims
            and Venetec Will Not Be Prejudiced ..............................................................4

    B.    Venetec's Assertion That Nexus's Inequitable Conduct Claim Is Futile
        Mischaracterizes the Proposed Pleadings and the Jurisprudence
        of Inequitable Conduct .............................................................................................5

III.   CONCLUSION.............................................................................................................11

# TABLE OF AUTHORITIES

## Statutes & Rules

Rule 9 .................................................................................................................................10

Rule 12 ...........................................................................................................................2, 10

Rule 15 ..................................................................................................................................2

Rule 16 ..........................................................................................................................1, 2, 3

## Cases

*Arthur v. Maersk, Inc.*,
  434 F.3d 196, (3d Cir. 2006)...........................................................................................4

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*,
  68 F.Supp.2d 508, (D.N.J. 1999).....................................................................................8

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*,
  120 F.3d 1253 (Fed. Cir. 1995) ....................................................................................6, 7

*Enzo Life Sciences, Inc. v. Digene Corp.*,
  270 F.Supp.2d 484 (D. Del. 2003)...................................................................................2

*Friedman v. Transamerica Corporation*,
  5 F.R.D. 115 (D. Del. 1946) .........................................................................................1, 4

*Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co., Inc.*,
  973 F.2d 911 (Fed. Cir. 1992)........................................................................................8, 9

*Li Second Family Ltd. Partnership v. Toshiba Corp.*,
  231 F.3d 1373, (Fed. Cir. 2000) .......................................................................................6

*Nilssen v. Osram Sylvania, Inc.*, No. 2006-1550, 2007 WL 2937322
  (Fed. Cir. Oct. 10, 2007) ..................................................................................................6

*Samick Music Corp. v. Delaware Music Industries, Inc.*,
  91-cv-23, 1992 WL 39052 (D. Del. Feb. 12, 1992)...................................................1, 3, 4

*Slip Track Systems, Inc. v. Metal-Lite, Inc.*,
  304 F.3d 1256 (Fed. Cir. 2002)......................................................................................1, 2

*Talecris Biotherapeutics, Inc. v. Baxter Int'l, Inc.*,
  No. 05-cv-349, 2007 WL 1670387 (D. Del. June 7, 2007) ...........................................................2

**Other**

MPEP § 609.04(b)(IV)......................................................................................................................7

MPEP § 2001.04 ..............................................................................................................................8

MPEP § 2001.06(c)..........................................................................................................................7

## I.    INTRODUCTION

Nexus's request for leave to amend and add its false marking claims must be granted because Nexus did not unduly delay in bringing the claims, Nexus is seeking leave to amend well before discovery is complete, Venetec cannot and has not argued it is prejudiced by the amendment, and Nexus has offered proof of its diligence.  Moreover, Venetec's opposition brief presents no facts or law that would compel a different conclusion.  Instead, Venetec's opposition brief cites inapplicable or distinguishable case law and misrepresents the facts.  For example, Venetec's brief opens with arguing that Nexus has not properly sought leave under Rule 16(b).  This is demonstrably false, as Nexus devotes an entire section to the good cause standard of Rule 16(b) in its opening brief. Additionally, Venetec's cases allegedly supporting denial of leave to amend either rely on Ninth Circuit law that is in conflict with established Third Circuit and District of Delaware precedent (*Slip Track Systems*); completely mischaracterize the law *(Samick)*; or present easily distinguishable facts from a sixty year old case (*Friedman*).  Venetec's attempts to oppose Nexus's Motion for Leave fall flat.

Venetec's argument regarding the merits of Nexus's inequitable conduct claim are also in vain. Nexus's amended claim seeks to add one additional basis for inequitable conduct, namely Venetec's failure to cite the existence of this litigation to the Patent Office, and to add additional facts supporting the already-plead bases for inequitable conduct.  In evaluating whether Nexus's claim of inequitable conduct is futile, the Court must assume the plead facts are true.  Venetec's argument regarding the merits of the claim completely misstates the law and misrepresents the facts. Regardless, for purposes of this Motion, the simple inquiry is whether Nexus has plead a claim that

would survive a motion for failure to state a claim under Rule 12(b)(6), and Nexus has undoubtedly done so.

## II.  ARGUMENT

### A.  The Court Should Allow Nexus to Add the Proposed False Marking Claims, Counts IV-XI.

#### 1.  *Contrary to Venetec's Assertions, Good Cause Exists to Allow Nexus to Amend Its Pleadings and Add the False Marking Claims.*

In its opening brief, Nexus addressed, as it must, why its request to amend its counterclaims comports with the requirements of both Rules 15 and 16(b). With respect to adding the false marking claims, Venetec limits its response to attacking whether good cause exists under Rule 16(b) to allow amendment after the deadline in the Court's scheduling order. Venetec implies that Nexus has not addressed Rule 16(b)'s good cause standard to amend the Court's scheduling order. Yet Nexus included an entire section devoted to this issue in its opening brief. (D.I. 106, pp. 9-10). Moreover, Venetec questions why Nexus discussed the Rule 15 factors of undue delay and prejudice. As explained in Nexus's opening brief, this District's precedent establishes that good cause under Rule 16 can exist based upon whether the movant has unduly delayed or the non-movant is prejudiced, both of which are Rule 15 factors. *See Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F.Supp.2d 484, 490 (D. Del. 2003) (finding good cause where the scheduling order was previously modified for the benefit of both parties, the non-movant was not prejudiced, and there was no undue delay); *see also Talecris Biotherapeutics, Inc. v. Baxter Int'l, Inc.*, No. 05-cv-349, 2007 WL 1670387, at *1 (D. Del. June 7, 2007).

Venetec resorts to citing a case based on Ninth Circuit law in preference to controlling Third Circuit and District of Delaware authority. Venetec's citation to *Slip Track Systems, Inc. v. Metal-*

2

*Lite, Inc.*, 304 F.3d 1256, 1270 (Fed. Cir. 2002), which applies Ninth Circuit law holding that prejudice is never examined under the good cause standard, is inapplicable given this District's established case law. Venetec also relies on *Samick Music Corp. v. Delaware Music Industries, Inc.*, 91-cv-23, 1992 WL 39052 (D. Del. Feb 12, 1992), as allegedly holding that good cause does not exist if a party could have sought to add the newly proposed claims earlier. (D.I. 109, p. 3). Venetec's characterization of *Samick's* holding is completely incorrect, however, and the court's denial of leave to amend was based on facts very different than the present case.

In *Samick* the defendant moved for leave to amend the pleadings *after* discovery was completed "with the exception of deposing one person." *Samick*, 1992 WL 39052, at *1. Further, the *Samick* Court found "substantial prejudice would result" if leave to amend was granted. *Id.* at *7. The movant in *Samick* also did not offer a reasonable explanation for the delay in seeking leave to amend. *Id.* Thus, contrary to Venetec's assertions, *Samick* does not require a finding of no good cause if the claims could have been added earlier.

Nexus's Rule 16(b) analysis, like *Samick,* assesses good cause based upon Rule 15(a) factors. Applying those factors, the present facts demand a different conclusion than in *Samick*. First, unlike in *Samick*, discovery is still open and does not end until May 16, 2008. (D.I. 106, p. 6). Additionally, unlike in *Samick*, Nexus has demonstrated that Venetec will not be prejudiced by Nexus's proposed amendment, and ***Venetec does not rebut this fact***. (D.I. 106, § III.B.3, pp. 6 - 7). Finally, Nexus has offered a reasonable explanation for its delay and proof of its diligence. (D.I. 106, pp. 4 - 5). Thus, Venetec's assertion that Nexus has not addressed the pertinent issues under Rule 16(b) is without merit.

3

**2.    *Nexus Should Be Granted Leave to Amend Because Nexus Has Not Unduly Delayed in Bringing Its False Marking Claims and Venetec Will Not Be Prejudiced.***

Venetec provides no argument or law that compels denying leave to amend or that would overcome the sound judicial policy of allowing these disputes to be resolved on the merits. Nexus sought leave to amend only eight weeks after the Court's September 7th deadline established in the Court's Scheduling Order. (D.I. 23). Nexus's motion comes less than eight months after the institution of this litigation and well before the end of discovery. The timeliness of Nexus's proposed amendment is, without question, well within the Third Circuit's case law establishing that amendments up to eleven months after the beginning of a lawsuit are not presumptively unreasonable. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 205 (3rd Cir. 2006).

Moreover, the case law Venetec cites in support of its proposition that Nexus has unduly delayed is not applicable. *Samick* has already been distinguished. In the only other case Venetec cites, *Friedman v. Transamerica Corporation*, 5 F.R.D. 115 (D. Del. 1946), the movant was denied leave to amend because its motion was filed *sixteen months* after the case began and was the *fourth* attempt to state a cause of action. Additionally, the matter sought to be added had initially been plead in the movant's original and first amended complaint, removed from a subsequent amendment, and then re-introduced in the fourth amendment. In contrast, Nexus has sought leave to amend within a year after the suit has begun, has not tried the Court's patience with numerous motions for leave to amend or supplement the pleadings, and is not attempting to re-introduce allegations it had previously removed on its own accord. *Friedman* is thus simply inapplicable to the present case.

Venetec also argues that Nexus is requesting the Court adopt a "tit for tat" standard for allowing amendment of the pleadings. Nexus respectfully disagrees. Instead, Nexus is merely

4

requesting the Court apply the precedent of the Third Circuit and determine whether good cause

exists and whether Nexus had unduly delayed or Venetec will be prejudiced. Although Venetec's

"tit for tat" argument may sound clever, it is not grounded in any recognized law or in the facts.

**B.    Venetec's Assertion That Nexus's Inequitable Conduct Claim Is Futile Mischaracterizes the Proposed Pleadings and the Jurisprudence of Inequitable Conduct.**

In proposed amended Claim III, Nexus seeks to add charging allegations that allege an

additional basis for inequitable conduct, and, in particular, that Venetec failed to cite the existence of

this litigation to the Patent Office. This allegation is in addition to the timely plead allegations of

inequitable conduct for failure to cite the invalidity contentions in the interrogatory responses and the

Request for Reexamination of the '485 Patent. The remaining amendments to Claim III are further

facts supporting the already plead allegations relating to the invalidity contentions and Request for

Reexamination. Venetec's futility arguments must demonstrate that Nexus cannot state a claim of

inequitable conduct assuming all of these facts are true. Venetec's slight of hand argumentation

seeks to conflate citing the underlying references to the Patent Office without argumentation, with

apprising the Patent Office of the existence of the lawsuit and presenting Nexus's explanation of the

references. This argument must fail.

The merits of Nexus's claim of inequitable conduct of the '150 Patent were extensively briefed

in Venetec's Motion for Judgment on the Pleadings with respect to the claim[1]. (D.I. 95, 102, 104).

Contrary to this being a question of futility, Nexus has plead a very strong case of inequitable

conduct, as the law is clear that Venetec's actions in prosecuting the '150 Patent, as set forth in the

---

[1]    Although Venetec opposes the present Motion, a proper response would be for this Court to grant Nexus leave to amend. (*See* D.I. 102, pp. 19-20).

proposed amended Claim III, were completely improper. Venetec's stubborn refusal to acknowledge the law, to mischaracterize to this Court its actions during prosecution, and to argue the merits with such vehemence are telling. Notwithstanding that Venetec is improperly using Nexus's Motion for Leave as a springboard for yet more argument on the merits of the inequitable conduct claim[2], there can be no question about whether Nexus's inequitable conduct claim is futile.

Inequitable conduct is established when a patent applicant or attorney fails to properly disclose material information to the Patent Office and such failure is with an intent to deceive the Patent Office. *Li Second Family Ltd. Partnership v. Toshiba Corp.*, 231 F.3d 1373, 1378 (Fed. Cir. 2000). The existence of litigation involving a patent on related subject matter and any matters arising therefrom, specifically patent invalidity contentions, are *per se* material information that should be cited to the Patent Office. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1995). Inequitable conduct exists if the patentee fails to cite to the Patent Office, with deceptive intent, the existence of litigation involving patents related to the patents-in-suit. *Nilssen v. Osram Sylvania, Inc.*, No. 2006-1550, 2007 WL 2937322, at *9 (Fed. Cir. Oct. 10, 2007).

Nexus's amended Claim III pleads that Venetec failed to properly cite the existence of this litigation, Nexus's invalidity contentions, and the Request for Reexamination of the '485 Patent to the Patent Office. Venetec only cited these materials to the Patent Office *after* the payment of the

---

[2] Venetec also inappropriately attacks Nexus's prosecution of its own patents before the Patent Office. Discounting the fact that Nexus's patent prosecution practice is *not* at issue in this case and therefore irrelevant, Nexus has, unlike Venetec, properly cited *for consideration* the existence of this litigation to the Patent Office.

'150 Patent's issue fee. The Patent Office rules are clear that if information is cited after payment of the issue fee, then the information is not considered. (D.I. 102, p. 15). If the information is not considered, then the patentee has not complied with its duty of candor. (D.I. 102, pp. 14-15). Moreover, the duty of candor exists *up to issuance of the patent*. (D.I., pp. 14-15). Thus, Venetec's failure to provide the information to the Patent Office *for consideration*, coupled with Venetec's intent, constitutes inequitable conduct, regardless of whether Venetec disclosed the information to the Patent Office after the Office would no longer consider it. Under similar circumstances as those plead in the proposed amendments, the Federal Circuit has inferred an intent to deceive. (D.I. 102, p. 23).

Venetec's assertion that the relevant litigation material was expressly considered by the Patent Office is simply not true. Information disclosed in an IDS after the payment of the issue fee is *not* considered by the Patent Office. MPEP § 609.04(b)(IV). If a patentee wants the information considered, the patentee must withdraw the patent from issuance. (D.I. 102, p. 15). Moreover, Nexus does more than merely "assume" materiality of the existence of litigation, invalidity contentions, or reexamination requests. Each of these materials, which pertained to patents related to the '150 Patent and which Venetec failed to properly cite to the Patent Office, is *per se* material to patentability. *Critikon*, 120 F.3d at 1258-59; MPEP § 2001.06(c). Venetec's statement that this litigation was not material to patentability of the '150 Patent prior to its issuance defies the law of the Federal Circuit and the Patent Office's procedures set forth in MPEP § 2001.06(c) and is factually incorrect.

Further, while Venetec vainly equates invalidity contentions with the prior art upon which they are based, invalidity contentions are independent of the prior art because invalidity contentions

contain analyses of the prior art in view of the patent. *See Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 68 F.Supp.2d 508, 550-51 (D. N.J. 1999)[3]. Thus, invalidity contentions based upon prior art, even if the prior art has *already* been considered by the Patent Office, are material, and not merely cumulative, to patentability. Finally, for Venetec to properly cite the litigation material to the Patent Office *for consideration*, Venetec must have either withdrawn the application from issue or abandoned the application. MPEP § 2001.04. Nexus has plead facts sufficient for the Court to conclude that Venetec failed to withdraw the application from issue with the intent to prevent the Patent Office from reviewing the damaging litigation materials constituting inequitable conduct rendering the '150 Patent unenforceable.

Venetec's reliance on *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co., Inc.*, 973 F.2d 911 (Fed. Cir. 1992) is misplaced. In *Kimberly-Clark*, the Federal Circuit analyzed whether a patent attorney's failure to investigate for a period of ten weeks[4] whether an issued patent (the Lawson patent) was material to a pending application (the Enloe application) and whether such failure to investigate demonstrated an intent to deceive the Patent Office. By the time the attorney did review the Lawson patent to determine if it was material to the Enloe application, *the Enloe application had already issued into a patent*. The Federal Circuit concluded that the ten weeks from the time the attorney learned of the Lawson patent to the time he reviewed it for materiality was not unreasonably

---

[3] Indeed, as the Court is aware, presentation of these invalidity contentions to the Patent Office on closely related claims in the '485 Patent-in-Suit, and despite the fact that several of the underlying references were already of record in the issuance of that patent, has resulted in the Patent Office finding that substantial new questions of patentability are raised by them and instituting a reexamination on that basis.

[4] The patent attorney learned of the Lawson patent while it was still an application. Thus, the Lawson patent had only become a patent four weeks into the ten weeks that the attorney knew about the Lawson application/patent.

long given his "relative inexperience as a patent lawyer, his heavy workload, and the nature of the question."

*Kimberly-Clark* does not announce a rule that precludes a finding of inequitable conduct under the facts of the proposed amendment. It analyzes evidence produced to the trial court and applies the law in those circumstances. Here, the Court must determine that the pleading is futile if the allegations are assumed true. The Federal Circuit thus requires an attorney to meet his duty of candor all the way to issuance of the patent, as the question before the Court was whether the attorney had an intent to deceive by failing to notify the Patent Office of the Lawson patent, even once the issue fee had been paid in the Enloe application. Payment of the issue fee in an application does not cut-off the duty of candor to the Office. The analysis by the Federal Circuit alone negates Venetec's legally unsupported argument that an applicant is not required to withdraw an application from issuance so as to have information considered by the Patent Office. If such was the case, then there would have been no question of inequitable conduct in *Kimberly-Clark*, as there would not have been an issue of whether the attorney was required to withdraw the Enloe application from issuance (i.e., after payment of the issue fee), so as to have the Lawson patent considered.

Thus, contrary to Venetec's assertions, the question before the Federal Circuit was not whether the attorney was required to withdraw the Enloe application from issuance, as the application ***had already issued*** by the time the attorney reviewed the materiality issue. Instead, the question was whether the attorney had an intent to deceive the Patent Office when he waited ten weeks to determine if the already-issued Lawson patent was material to the Enloe application he was examining. The Federal Circuit even noted that "prudence might have dictated telling the Patent and Trademark Office about the [Lawson] patent immediately," but because of the reasons discussed

9

above, there was no intent to deceive.

Finally, Nexus reiterates that it has plead upon information and belief that Venetec intended to deceive the Patent Office when it withheld material information. Nexus intends to and will develop through discovery evidence supporting its claim of intent to deceive. Pleading with particularity under Rule 9(b) does not require pleading every known fact, and with respect to intent, such would often be impossible at the pleading stage of litigation. Thus, Nexus met its burden of pleading with particularity when it originally plead intent to deceive upon information and belief.

Nexus has unquestionably alleged facts sufficient to withstand a motion for failure to state a claim under Rule 12(b)(6). Therefore, Nexus's proposed amendment is not futile, and leave to amend should be granted.

10

## III.  CONCLUSION

For the foregoing reasons, Nexus respectfully requests the Court grant Nexus's Motion for

Leave to Amend Its Answer and Counterclaim to Venetec's Second Supplemental Complaint and

Counterclaim.

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware  19801-1494
Telephone: 302-888-6800
Facsimile: 302-571-1750
mmatterer@morrisjames.com

*Of Counsel:*
Scott R. Brown
Jennifer C. Bailey
HOVEY WILLIAMS LLP
2405 Grand Boulevard, Suite 400
Kansas City, Missouri  64108
Telephone: 816-474-9050
Facsimile: 816-474-9057

*ATTORNEYS FOR DEFENDANT*
*AND COUNTERCLAIM-PLAINTIFF*
*NEXUS MEDICAL, LLC*

11