**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

VENETEC INTERNATIONAL, INC.,      :
                                  :
                    Plaintiff,    :
                                  :
        v.                        :        C. A. No. 07-57-MPT
                                  :
NEXUS MEDICAL, LLC,               :
                                  :
                    Defendant.    :

## MEMORANDUM ORDER

### INTRODUCTION

This patent matter was initiated on January 29, 2007 in which Venetec

International, Inc. ("Venetec") alleges that Nexus Medical, LCC's ("Nexus") product,

"The Bone," infringes U.S. Patent Nos. 6,213,979 (the "'979 patent") and 6,447,485 (the

"485 patent").[1]   Venetec moved for partial judgment on the pleadings pursuant to

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(c) to dismiss Nexus' counterclaim

of inequitable conduct.   In its opposition brief and through a separate motion, Nexus

moved to amend its answer and counterclaim under Fed. R. Civ. P. 15(a) and 16(b).   In

its motion, Nexus moves to add false marking claims against Venetec, to further

expand upon its inequitable conduct claim and to plead an additional basis for

inequitable conduct due to Venetec's alleged fraudulent withholding notice of the

existence of the present litigation from the United States Patent and Trademark Office

---

[1] After its issuance on July 24, 2007, Venetec moved to add a claim for infringement of U.S. Patent No. 7,247,150 (the "'150 patent"), a continuation in part of the '979 and '485 patents.

("PTO").  Because the motions are interrelated, this Memorandum Order addresses both motions.

**FACTS**

The three patents asserted in this litigation are related in that the '150 patent is a continuation of U.S. Patent No. 6,929,625, which is a continuation of the '485 patent, which is a divisional of the '979 patent.  According to the record, during the prosecution of the '150 patent, on October 20, 2005 and November 21, 2006, Venetec disclosed to the PTO certain prior art references which Nexus alleges invalidates all three patents-in-dispute.[2]

As noted herein, the present action was instituted on January 27, 2007 which just asserted infringement of the '979 and '485 patents since the '150 patent had not yet issued.  Prosecution of the '150 patent continued during the pendency of the action.  On February 7, 2007, Venetec had an interview with the Examiner of the '150 patent application, during which amendments to the claims were discussed.  In March 2007, the PTO forwarded a Notice of Allowability which advised Venetec that the '150 patent application would be allowed over the prior art of record and that the patent would issue.  Venetec paid the issue fee in March 2007.[3]  On April 27, 2007, the court entered

---

[2] Those six prior art references disclosed are WO 96/10435 to Beirman ("Beirman"), U.S. Patent No. 4,193,174 to Stephens ("Stephens"); U.S. Patent No. 4,224,937 to Gordon; U.S. Patent No 4,250,880 to Gordon; U.S. Patent No. 4,397,647 to Gordon ("Gordon I, II, and III" respectively); and U.S. Patent No. 4,517,971 to Sorbonne ("Sorbonne").

[3] Venetec claims that the PTO issued the Notice of Allowability on March 2, 2007; Nexus claims this did not occur until March 16, the day after the date on which it appears that Venetec paid the issue fee, which is also the same date of Venetec's letter notifying the PTO that it was no longer entitled to status as a small entity.  It appears that March 15 is the date when corrections were made on the amount of the issue fee due (from $700.00 to $1,400.00 and the total fees due from $1,000.00 to $1,700.00).

a scheduling order which required that amendments to the pleadings be completed by September 7, 2007.  On May 30, 2007, Nexus responded to Venetec's first written discovery requests, alleging that the '979 and '485 patents are invalid based upon the six prior art references noted herein.[4]  On June 20, 2007, Venetec disclosed to the PTO the invalidity contentions and claim charts of Nexus for the '979 and '485 patents that were part of the discovery responses.  Since those materials were not submitted to the PTO until after the patent issue fee was paid, Nexus' contentions were not considered by the PTO during the prosecution of the '150 patent.[5]  All six prior art references, however, were cited to and before the PTO during the prosecution of the '150 patent.[6]  On June 25, 2007, Nexus filed an *inter parties* reexamination request of the '485 patent.

The '150 patent issued on July 24, 2007, and the following day Venetec moved for leave to file its first supplemental complaint which added claims of infringement under that patent against Nexus.  Venetec's request was granted.  Nexus filed its answer and counterclaims on August 8, 2007, which included allegations of inequitable conduct of the '150 patent.  Venetec filed an answer to Nexus' counterclaims on August

---

[4] The Beirman, Stephens, Gordon I, II and II references were also disclosed during the prosecution of the '979 and '485 patents.  Only the Sorbonne reference was not disclosed prior to the issuance of those two patents.  Although Nexus alleges in its interrogatory response that the asserted claims are invalid based on the six prior art references, Venetec claims that Nexus only relies on the Beirman and Sorbonne references as allegedly invalidating in its answers to interrogatories..  Nexus does not refute that representation.

[5] The PTO advised in the Notice of Non-Compliant Information Disclosure Statement that because the IDS was filed after the issue fee was paid, it failed to meet the requirements of 37 CFR 1.97(d), and would not be considered.  *See* D.I. 91, Ex. B.

[6] Nexus' interrogatory responses allege invalidity of the '485 and 979 patents based on the prior art references contained in n.3.  The Sorbonne reference was identified on a separate Information Disclosure Statement ("IDS"), also known as PTO Form 1449, to the Examiner in relation to the '150 patent application in November 2006 and is noted by the Examiner as considered dated March 2, 2007.

28, 2007.  In its answer, Venetec did not assert the failure to state a claim for relief.

On September 5, 2007, Venetec filed a second supplemental complaint against Nexus which added the false marking claims.[7]  In the parties' joint status report to the court filed on September 6, 2007, Nexus asked for an extension in the discovery cut-off. There was no mention of the deadline for amending the pleadings.  A status teleconference was held with the court on September 11, 2007.[8]  On September 19, 2007, Nexus filed an answer and counterclaim to the second amended complaint, alleging that because Venetec failed to withdraw its patent application for the '150 patent to allow the PTO to re-consider the six prior art references, and consider Nexus' invalidity contentions and its '485 patent reexamination proceeding, such conduct evidences bad faith with an intent to deceive the Patent Office.[9]  On September 27, 2007, Venetec filed an answer to Nexus' counterclaim alleging for the first time that Nexus failed to state a claim for relief with respect to the inequitable conduct claim.[10] Venetec filed its motion for partial judgment on the pleadings on September 28, 2007. Nexus' motion for leave to amend followed on November 8, 2007, shortly after briefing

---

[7] No motion or briefing was required since the parties stipulated to that amendment.

[8] Although the scheduling order was discussed during the teleconference, there was no concern raised about the amendment to the pleadings cut-off date.

[9] Nexus' inequitable conduct defense focuses on Venetec's failure to timely notify the PTO of the existence of this lawsuit and Nexus' contentions of invalidity and its failure to advise of the '485 patent reexamination proceeding.  Nexus maintains that such conduct, combined with mysteriously quick payment of the issue fee before the Notice of Allowability, shows that Venetec was aware that the PTO would not consider the IDS unless the application for the '150 patent was withdrawn from issue – facts which evidence intent to deceive.

[10] According to Nexus, its unenforeability counterclaim in response to the second amended complaint remained as previously alleged.  Nexus also notes that Venetec added the failure to state a claim defense after the amendment to the pleadings cut-off date passed without first seeking leave of the court.

4

on Venetec's motion was completed on October 25, 2007.

## APPLICABLE LAW

### Rule 12(c)

Generally, judgment on the pleadings under Fed. R. Civ. P. 12(c) is appropriate when there are no material issues of fact, which requires the moving party to show that it is entitled to judgment as a matter of law.[11]  The court does not consider matters outside the pleadings, and it must accept the non-moving party's allegations as true, drawing all reasonable factual inferences in the non-movant's favor.[12]  The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference.[13]

### Rules 15(a) and 16(b)

Under Fed. R. Civ. P. 15(a), leave to amend pleadings is "freely given when justice so requires."[14]  In its analysis under Rule 15(a), it is within the discretion of the court to determine the appropriateness of the proposed amendment and to deny the amendment when considering the factors of undue delay, bad faith on the part of the party seeking the amendment, undue prejudice to the opposing party or futility of the

---

[11] *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005); *Inst. for Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991).

[12] *Mele v. Fed. Reserve Bank*, 359 F.3d 251, 257 (3d Cir. 2004); *Inst. for Sci. Info., Inc.*, 931 F.2d at 1005; *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 189 (3d Cir. 1998).

[13] Wright and Miller, *5C Fed. Prac. & Proc. Civ. 3d* § 1367 (1990).

[14] *Foman v. Davis*, 371 U.S. 179, 182 (1962).

amendment.[15]

Generally, "[d]elay alone is not sufficient to justify denial of leave to amend."[16]  The more dispositive factor in determining whether leave should be granted is prejudice to the non-movant.[17]  "Moreover, leave to amend is particularly warranted when pleadings lack the requisite factual specificity for a particular cause of action."[18]

Balanced with Rule 15(a) is Rule 16(b) which governs modifications to the court's scheduling order.  Under Rule 16(b), a more stringent standard is applied which requires that a scheduling order only be modified for good cause and by the consent of the judge.  This jurisdiction recognizes that motions to amend which, in effect, operate to change the scheduling order are controlled by 16(b).[19]  The good cause element requires the movant to demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner.[20]  Unlike Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant and not on prejudice to the non-moving party.[21]

---

[15] *Id.*; *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006); *see also Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984); *Massarsky v. General Motors Corp.*, 706 F.2d 111 (3d Cir. 1983).

[16] *Arthur*, 434 F.3d at 204 (wherein the Third Circuit noted that "only one appellate court . . . has approved . . . denial of leave to amend based on a delay of less than one year").

[17] *Id.*

[18] *France Telecom S.A. v. Novell, Inc.*, 2002 WL 31355255, at*1 (D. Del. Oct. 17, 2002) (noting that amendments to the pleadings benefit the parties by providing notice of the nature and grounds of a defense and narrowing discovery).

[19] *E. Minerals & Chems. Co. v.Mahan*, 225 F.3d 330, 340 & n.18 (3d Cir. 2000).

[20] *See Samick Music Corp. v. Delaware Music Indus., Inc.*, C.A. 91-23-CMW 1992 U.S. Dist. LEXIS 2464, at *18-20 (D. Del Feb. 12, 1992).

[21] *Slip Track Sys., Inc. v. Metal-Lire, Inc.*, 304 F.3d 1256, 1270 (Fed. Cir. 2002).

6

**Rules 8 and 9(b) and Standard for Inequitable Conduct**

Because the patent application process is *ex parte,* patent applicants and their counsel, or those involved in the preparation and prosecution of patent applications, owe a duty of candor and good faith to the PTO. The breach of that duty may render a patent unenforceable for inequitable conduct.[22] To *prove* unenforceability by inequitable conduct, "the alleged infringer must provide clear and convincing evidence of (1) affirmative misrepresentations of a material fact, the failure to disclose material information, or submission of false material information and (2) an intent to deceive."[23] In analyzing whether inequitable conduct occurred, the court balances the levels of materiality and intent.

Because inequitable conduct is a claim sounding in fraud, Rule 9(b) applies which requires the elements of inequitable conduct to be pled with particularity.[24]

Inequitable conduct allegations, however, "remain subject to the liberal pleading standard of Rule 8, which requires only a 'short and plain' statement of a claim or defense," the purpose of which is to place the opposition on notice of the misconduct charged.[25] Therefore, "'pleadings that disclose the name of the [allegedly withheld] relevant prior art and disclose the acts of the alleged fraud fulfill the requirements of

---

[22] *M. Eagles Tool Warehouse, Inc. v. Fisher Tolling Co.*, 439 F.3d 1335, 1339 (Fed. Cir. 2006); 37 CFR § 1.56.

[23] *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 488 F.3d 1366, 1374 (Fed. Cir. 2006).

[24] *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990) ("'Materiality does not presume intent, which is a 0separate and essential component of inequitable conduct.'" (quoting *Allen Organ Co v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1557 (Fed. Cir. 1988)).

[25] *McKesson Information Solutions, LLC v. The Trizetto Group, Inc.*, 2005 WL 914776, at *3 (D. Del. Apr. 20, 2005); *TruePosition, Inc. v. Allen Telecom, Inc.*, 2003 WL 151227, at *5 (D. Del. Jan. 21, 2003).

Rule 9(b).'"[26]

**DISCUSSION**

The parties cross-referenced their respective arguments in the briefing on the

two motions.  In fact, their positions noted in a brief in support of one motion

considerably overlap and are very similar to their arguments contained in the other

motion.[27]  As a result, the court views the two motions on similar, if not the same,

subject matters, as one continuous discussion – two bites of the same apple.

Therefore, the court will address the motions together as a whole.

**Nexus' Motion to Amend**

Although Nexus' motion to amend its answer and counterclaims by augmenting

its inequitable conduct defense and to add seven new false marking claims against

certain lines of Venetec's products was filed after briefing on Venetec's motion for

partial judgment on the pleadings on Nexus' original counterclaim of inequitable

conduct of the '150 patent, the court will address these *two* issues first.[28]  The court

analyzes the issues in light of the pertinent federal civil rules contained herein,

---

[26] *France Telecom S.A. v. Novell, Inc.*, 2002 WL 31355255, at *3 (D. Del. Oct. 17, 2002) (quoting *EMC Corp. v. Storage Tech. Corp.*, 921 F. Supp. 1261, 1263 (D. Del. 1996)).

[27] There is considerable overlap between the motion for partial judgment on the pleadings and the motion to amend regarding the claim of inequitable conduct of the '150 patent with the parties' referencing their positions in the second motion to their arguments in the first motion.  Moreover, in the closing section in its answering brief to Venetec's motion, Nexus requests leave to amend its inequitable conduct counterclaim and outlines what it intends to charge in its proposed amended inequitable conduct claim. Although Venetec did not respond to "this unalleged and new argument," it provided a footnote as to why the proposed, yet unfiled motion, for leave to amend was meritless and subsequently fully briefed the issue in response to Nexus' motion.

[28] Nexus' motion to amend includes both the changes to the inequitable conduct defense and the additional new counterclaims; however, the court views those two parts of the proposed amendment differently.

specifically Rules 8, 9(b), 15(a) and 16(b).

Proposed Amendment on Inequitable Conduct

Venetec argues that to meet the requirements of Rule 9(b), Nexus must plead with particularity how the withheld information is material to the prosecution of the patent and also must identify with particularity facts establishing the deliberate intent to mislead the PTO.  In this jurisdiction, the standard for Rule 9(b), in light of Rule 8, is not as severe or as specific as Venetec suggests.  As noted previously herein, to meet the requirements of Rule 9(b), Nexus need only disclose the relevant material information and the acts of the alleged fraud to apprise Venetec of "'what is being alleged in a manner sufficient to permit responsive pleadings.'"[29]

Nexus' proposed counterclaim on inequitable conduct discloses at least that much.  In paragraphs 23 through 64 of the proposed amendments to the unenforceability counterclaim, Nexus alleges that Venetec intentionally and with the intent to deceive failed to cite for consideration the request for reexamination of the '485 patent; failed to timely notify the PTO of the present litigation and submit material information, that is, Nexus' invalidity contentions and subsequently its interrogatory responses relating to those contentions; and did not withdraw the '150 patent from issuance.  It further alleges that Venetec was aware of its obligations to advise the PTO of material information during the prosecution of the patent, which Nexus contends includes information regarding the present action.  Nexus alleges that Venetec was clearly aware that the aforementioned information was material under 37 CFR 1.56

---

[29] *France Telecom*, 2002 WL 3135525, at *3 (quoting 5 *Wright & Miller* § 1296 (1990)); *see also McKesson*, 2005 WL 914776, at *3.

9

(also known as Rule 56). Nexus also emphasizes in its argument the requirements under the Manual of Patent Examining Procedure ("MPEP") section 2001.06(c). Although "it is certainly true that allegations of 'date, place or time' satisfy the pleading requirements, nothing in [Rule 9] requires them."[30] Therefore, Nexus proposed amendment suffices to place Venetec on notice of the misconduct with which it is charged.

Regarding Venetec's argument that the amendment is futile, a review of the applicable law on inequitable conduct and the application of that law to the contentions is required.

A patent applicant has the duty to disclose material information to the PTO, which arises under the general duty of candor, good faith, and honesty as embodied in 37 CFR § 1.56(a). Under § 1.56(a), "applicants have a duty to disclose to the PTO information of which they are aware which is material to the examination of the application."[31] Breach of the disclosure duty alone is not enough to render the patent unenforceable; inequitable conduct must exist. Inequitable conduct is the failure to disclose material information with an intent to deceive or mislead the PTO.[32] Direct evidence of intent is rarely available, but may be inferred from the surrounding circumstances.[33] Moreover, the duty to disclose is not limited to prior art. Under Rule

---

[30] *Seville Industrial Machinery v. Southwest Machinery*, 742 F.2d 786, 791 (3d Cir. 1984).

[31] *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997).

[32] *J.P. Stevens & Co. v. Lex Tex, Ltd.*, 747 F.2d 1553, 1559-60 (Fed. Cir. 1984).

[33] *Id.* at 1560.

10

56, any *material information* must be disclosed.[34]  Rule 56 is not the exclusive section

pertinent to materiality of information.  Pursuant to MPEP 2001.06(c),[35] "where the

subject matter for which a patent is being sought is . . . involved in litigation, the

existence of such litigation and any other material information arising therefrom must be

brought to the attention of the Patent and Trademark Office. . . ."  Relevant information

regarding litigation includes defenses raised against the validity or unenforceability of

the patent, which may be found in the pleadings, admissions and discovery.[36]  Such

information is material "because it signals to the examiner that other material

information relevant to patentability may become available through litigation

proceedings."[37]  Clearly, inequitable conduct is material to patentability, and at a

minimum the PTO should be advised of the "existence and/or nature of any allegations

relating to validity and/or . . . 'inequitable conduct' relating to the original patent, and the

nature of the litigation materials relating to these issues."[38]  Since the "PTO obviously

considers such information material," there is no basis for this court to assume

otherwise.[39]

It is undisputed that the present litigation initially involved patents having the

---

[34] *Critikon*, 120 F.3d 1258.

[35] MPEP 2001.06(c) is not binding law, but a "useful tool to inform the Court of the USPO's official interpretation of C.F.R. 1.56(b)" regarding what type of information is material.  *Boehringer Ingelheim Vetmedia, Inc. v. Schering-Plough Corp.*, 68 F. Supp. 2d 508, 548 (D.N.J. 1999).

[36] *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1234 (Fed. Cir. 2008).

[37] *Id.*

[38] MPEP 2001.06(c) (1994) (regarding a reissue application).

[39] *Nilssen*, 504 F.3d 1234.

same subject matter as the application under examination that lead to the '150 patent. It is not refuted that, initially, litigation involved two patents related to and having identical disclosures as the '150 patent application  It is undisputed that Venetec did not advised the PTO of Nexus' reexamination proceedings of the '485 patent.  Although Venetec did eventually advise the PTO of the present litigation, it did so in June 2007, approximately five months after this action was instituted and over three months after the issue fee was paid.  Venetec was clearly aware that its June 2007 IDS would not be considered by the PTO from the notice of non-compliant information disclosure statement dated June 25, 2007.  In that form notice, the PTO suggested for Venetec to consider filing a petition to withdraw the application from issue to have the IDS considered.  Therefore, there is sufficient support for the amendment of unenforceability of the '150 patent.

Venetec contends that the absence of case law mandating that it withdraw the '150 patent application from issue makes Nexus' proposed amendment futile, relying on *Kimberly-Clark Foundation v. P&G Distributing Co., Inc.*[40]  In that case, the Federal Circuit reviewed a finding by the lower court of no inequitable conduct after discovery and motion practice had been completed, evidence had been presented to the court on the issue and a final judgment entered based upon findings of fact and conclusions of law.  The Federal Circuit reviewed the evidence before the district court under an abuse of discretion standard to determine whether there was an intent to deceive and found none.  Unlike *Kimberly-Clark*, the present matter is not at that advanced stage.

---

[40] 973 F.2d 911 (Fed. Cir. 1992).  Venetec also argues that case in support of its motion for partial judgment on the pleadings.

Further, Nexus initially raised inequitable conduct of the '150 patent in August 2007. Its proposed amendment adds flesh to those allegations. As a result, Nexus' motion to amend its unenforceability defense is granted.

Proposed Amendment on False Marking

A thornier issue relates to Nexus' attempt to amend its answer and counterclaim to add seven new false marking claims after the due date in the Scheduling Order for amendment of the pleadings – a due date chosen and proposed by the parties and subsequently ordered by the court. Nexus' motion, in essence, is requesting that the Scheduling Order be modified. As contained in Rule 16(b)(4), "a schedule may be modified *only* for good cause and with the judge's consent."[41] Venetec maintains that Nexus has unduly delayed in bringing its false marking counterclaims and has failed to establish its diligence in seeking to add such claims. Nexus argues that since it is attempting to add the claims within ten months of the filing of the lawsuit, such conduct proves its diligence and the cases relied upon by Venetec are distinguishable. Nexus also notes that it sought leave to amend only eight weeks after September 7, 2007, the dealine for amendments to pleadings.

Nexus relies on the declaration of Jennifer C. Bailey to show its good faith and diligence.[42] Therein is noted the litany of Nexus' efforts in researching and investigating false marking claims against Venetec and preparing the motion for leave to amend

---

[41] Rule 16(b)(4) (emphasis added). Since the parties' briefing, "the language of Rule 16 was amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent through the rules." The changes were stylistic only. *Advisory Committee Notes 2007.*

[42] D.I. 107.

which began on *September 5, 2007*, apparently in response to Venetec's filing of its second supplemental complaint, which alleged false marking claims for the first time against Nexus.  Obviously, since Venetec filed its second supplemental complaint on September 5, 2007, two days before the deadline, it began its research and investigation of those claims before the eve of the amendment to the pleadings cut-off date.  The declaration shows that Nexus took various measures *at that time* to ascertain whether it could bring valid false marking claims against Venetec.  Those efforts include that Nexus researched the false marking case law and reviewed Venetec's products by examining Venetec's website for product pictures and brochures.  When the website information was inadequate, Nexus obtained certain Venetec products, specifically eight available specimens, and compared the claims of the fourteen separate patents listed on each to those products.  After completing that analysis of Venetec's products and their corresponding markings, Nexus prepared its proposed amended answer and counterclaims to Venetec's second supplemental complaint.  Nexus accomplished its research, investigation and analysis and preparation of the proposed amendment within sixty-three days.  Although the court is impressed with Nexus' efforts, sorely lacking in any of its submissions on the issue is the earnest or conscientious activity, if any, by Nexus to determine the appropriateness of a false marking claim *before* September 5, 2007.

Nexus complains that Venetec added its false marking claims (to which Nexus stipulated) at nearly the last minute, and therefore, it should be allowed to add similar claims after the due date.  What Nexus is requesting is relief from a due date to which it

agreed and for which it never notified the court of a need to modify before its passing.[43]

Moreover, it is the responsibility of each party to determine what claims are appropriate

to bring in a timely fashion.  Nexus purported diligence came too late, and its motion to

amend to add the false marking claims is denied.[44]

### Venetec's Motion for Partial Judgment on the Pleadings

The court's focus on Venetec's motion for partial judgment on the pleadings is

accepting Nexus' allegations as true and drawing all reasonable factual inferences in its

favor, there are no material issues of fact and Venetec is entitled to judgment as a

matter of law.  At the present stage of the litigation, the court cannot reach that

conclusion.  Venetec asks the court to evaluate its conduct during the prosecution of

the '150 patent and to determine as a matter of law that its conduct was not deceitful.

The facts, however, which demonstrate that the proposed amendment is not futile, also

show that Nexus' counterclaim on unenforceability is viable.  The allegations, which this

court has to accept as true, assert that Venetec failed to timely notify to PTO of the

present litigation and submit material information of this litigation with the intent to

deceive.  Nexus also alleges that Venetec never cited for consideration the request for

reexamination of the '485 patent and that Venetec could have, but did not withdraw the

'150 patent from issuance to allow the PTO to consider the additional material

---

[43] As noted previously herein, there was no mention of any concern with the amendment to the pleadings' cut-off date in the status report to the court.  Nexus addressed the cut-off date for discovery *due to* Venetec's new false marking claims in that report and during the teleconference on September 11, 2007.

[44] Since it took Nexus about two months to complete its investigation and research after the deadline while also addressing Venetec's motion for partial judgment on the pleadings, it had sufficient time to do the same before the cut-off date.

information.  Nexus maintains that Venetec's delayed action and inaction was done, not only with the knowledge of its obligations under 35 CFR § 1.56 and MPEP 2001.06(c), but also with an understanding that the PTO would not consider the IDS filed in June 2007 in light of the status of the '150 patent application.  Further, due to the present status of this matter, the court finds the *Kimberly-Clark* case distinguishable as previously discussed herein.  Despite Nexus' anemic presentation of its unenforceability counterclaim of inequitable conduct, the facts alleged and the obligations under Rule 56 and MPEP 2001.06 suffice to state a disputed claim and to deny Venetec's motion for partial judgment on the pleadings.

Therefore, consistent with the findings contained herein,

IT IS ORDERED and ADJUDGED that:

1.  Venetec's motion for partial judgment on the pleadings (D.I. 94) is DENIED.

2.  Nexus' motion for leave to amend its answer and counterclaim to the second supplemental complaint and counterclaim (D.I. 105) is GRANTED in part and DENIED in part.

3.  Nexus shall file an amended answer and counterclaims to the second supplemental complaint and counterclaim on or before **April 10, 2008.**


Dated:  March 28, 2008                    /s/ Mary Pat Thynge
                                          UNITED STATES MAGISTRATE JUDGE

16