**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

VENETEC INTERNATIONAL, INC.,

     Plaintiff,

     vs.

NEXUS MEDICAL, LLC,

     Defendant.

C.A. NO. 07-57 (MPT)

**NEXUS MEDICAL, LLC'S FIRST AMENDED ANSWER AND COUNTERCLAIM TO
VENETEC INTERNATIONAL, INC.'S
SECOND SUPPLEMENTAL COMPLAINT AND COUNTERCLAIM**

Pursuant to the Memorandum and Order dated March 28, 2008 (D.I. 135), Defendant Nexus Medical, LLC ("Nexus"), for its First Amended Answer and Counterclaim to Venetec International, Inc.'s ("Venetec") Second Supplemental Complaint, hereby states as follows, with each numbered answer corresponding to the numbered paragraph of the Second Supplemental Complaint:

<u>**Parties**</u>

1.    Nexus lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph and, on that basis, denies them.

2.    Admitted.

<u>**Jurisdiction and Venue**</u>

3.    Nexus admits this paragraph identifies the title and section of the United States Code under which Plaintiff's claims are based and that this Court has subject matter jurisdiction. To the extent that any further response is required, Nexus denies that it has infringed any valid claim of the asserted patents.

4.    Nexus denies that it sells products within this judicial district, but admits that this paragraph accurately states the statutes on which Plaintiff's venue allegations are based and that venue is proper.

**Count I**
**Patent Infringement – U.S Patent No. 6,213,979**

5.    Nexus incorporates by reference its responses to paragraphs 1 through 4 above as if fully set forth herein.

6.    Nexus admits that the face of U.S. Patent No. 6,213,979 ("the '979 Patent") indicates the '979 Patent is entitled "Medical Line Anchoring System," indicates it was issued on April 10, 2001, and that a copy of the '979 Patent is attached to the Second Supplemental Complaint as Exhibit A.  Nexus denies the '979 Patent was duly and legally issued and Nexus lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of this paragraph and, on that basis, denies them.

7.    Denied.

8.    Denied.

9.    Denied.

**Count II**
**Patent Infringement – U.S. Patent No. 6,447,485**

10.    Nexus incorporates by reference its responses to paragraphs 1 through 9 above as if fully set forth herein.

11.    Nexus admits that the face of U.S. Patent No. 6,447,485 ("the '485 Patent") indicates the '485 Patent is entitled "Medical Line Anchoring System," indicates it was issued on September 10, 2002, and that a copy of the '485 Patent is attached to the Second Supplemental Complaint as Exhibit B.  Nexus denies the '485 Patent was duly and legally issued and Nexus

lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of this paragraph and, on that basis, denies them.

    12.    Denied.

    13.    Denied.

    14.    Denied.

**Count III**
**Patent Infringement – U.S. Patent No. 7,247,150**

    15.    Nexus incorporates by reference its responses to paragraphs 1 through 14 above as if fully set forth herein.

    16.    Nexus admits that the face of U.S. Patent No. 7,247,150 ("the '150 Patent") indicates the '150 Patent is entitled "Medical Line Anchoring System," indicates it was issued on July 24, 2007, and that a copy of the '150 Patent is attached to the Second Supplemental Complaint as Exhibit C.  Nexus denies the '150 Patent was duly and legally issued and Nexus lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of this paragraph and, on that basis, denies them.

    17.    Denied.

    18.    Denied.

    19.    Denied.

**Count IV**
**False Marking As To The '396 Patent**

    20.    Nexus incorporates by reference its responses to paragraphs 1 through 19 above as if fully set forth herein.

    21.    Nexus admits that paragraph 21 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any

provision of 35 U.S.C. § 292.

22.    Nexus admits that a purported image of the packaging of "The Bone" is attached to the Second Supplemental Complaint as Exhibit D.  Nexus denies the remaining allegations of the paragraph.

23.    Nexus admits that the face of U.S. Patent No. 5,356,396 ("the '396 Patent") indicates the '396 Patent is entitled "Infusion Apparatus," indicates it was issued on October 18, 1994, and indicates it was assigned to Medical Associates Network, Inc. from an application filed by the named inventors Philip Wyatt, Gary Schaeffer, and Freddy Zinger.  Nexus further admits that a copy of the '396 Patent is attached to the Second Supplemental Complaint as Exhibit E.

24.    Denied.

25.    Denied.

**Count V**
**False Marking As To The '413 Patent**

26.    Nexus incorporates by reference its responses to paragraphs 1 through 25 above as if fully set forth herein.

27.    Nexus admits that paragraph 27 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

28.    Nexus admits that a purported image of the packaging of "The Bone" is attached to the Second Supplemental Complaint as Exhibit D.  Nexus denies the remaining allegations of the paragraph.

29.    Nexus admits that the face of U.S. Patent No. 5,360,413 ("the '413 Patent") indicates the '413 Patent is entitled "Needleless Access Device," indicates it was issued on

November 1, 1994, and indicates it was assigned to Filtertek, Inc. from an application filed by the named inventors Michael H. Leason, Rick R. Ruschke, and Ralph L. Davis.  Nexus further admits that a copy of the '413 Patent is attached to the Second Supplemental Complaint as Exhibit F.

30.     Denied.

31.     Denied.

## Count VI
## False Marking As To The '426 Patent

32.     Nexus incorporates by reference its responses to paragraphs 1 through 31 above as if fully set forth herein.

33.     Nexus admits that paragraph 33 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

34.     Nexus admits that a purported image of the packaging of "The Bone" is attached to the Second Supplemental Complaint as Exhibit D.  Nexus denies the remaining allegations of the paragraph.

35.     Nexus admits that the face of U.S. Patent No. 5,501,426 ("the '426 Patent") indicates the '426 Patent is entitled "Medical Coupling Site Valve Body," indicates it was issued on March 26, 1996, and indicates it was assigned to Vernay Laboratories, Inc. from an application filed by the named inventors Gordon E. Atkinson and Dennis A. Boehmer.  Nexus further admits that a copy of the '426 Patent is attached to the Second Supplemental Complaint as Exhibit G.

36.     Denied.

37.     Denied.

**Count VII**
**False Marking As To The '708 Patent**

38.    Nexus incorporates by reference its responses to paragraphs 1 through 37 above as if fully set forth herein.

39.    Nexus admits that paragraph 39 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

40.    Nexus admits that a purported image of the packaging of "The Bone" is attached to the Second Supplemental Complaint as Exhibit D.  Nexus denies the remaining allegations of the paragraph.

41.    Nexus admits that the face of U.S. Patent No. 5,533,708 ("the '708 Patent") indicates the '708 Patent is entitled "Medical Coupling Site Valve Body," indicates it was issued on July 9, 1996, and indicates it was assigned to Vernay Laboratories, Inc. from an application filed by the named inventors Gordon E. Atkinson and Thomas J. Solomon.  Nexus further admits that a copy of the '708 Patent is attached to the Second Supplemental Complaint as Exhibit H.

42.    Denied.

43.    Denied.

**Count VIII**
**False Marking As To The '735 Patent**

44.    Nexus incorporates by reference its responses to paragraphs 1 through 43 above as if fully set forth herein.

45.    Nexus admits that paragraph 45 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

46.     Nexus admits that a purported image of the packaging of "The Bone" is attached to the Second Supplemental Complaint as Exhibit D. Nexus denies the remaining allegations of the paragraph.

47.     Nexus admits that the face of U.S. Patent No. 5,632,735 ("the '735 Patent") indicates the '735 Patent is entitled "Infusion Apparatus" and indicates it was issued on May 27, 1997, to named inventors Philip Wyatt and Gary Schaeffer. Nexus further admits that a copy of the '735 Patent is attached to the Second Supplemental Complaint as Exhibit I.

48.     Denied.

49.     Denied.

**Count IX**
**False Marking As To The '215 Patent**

50.     Nexus incorporates by reference its responses to paragraphs 1 through 49 above as if fully set forth herein.

51.     Nexus admits that paragraph 51 is a summary of an excerpt of 35 U.S.C. § 292(a). To the extent that any further response is required, Nexus denies that it has violated any provision of 35 U.S.C. § 292.

52.     Nexus admits that a purported image of the packaging of "The Bone" is attached to the Second Supplemental Complaint as Exhibit D. Nexus denies the remaining allegations of the paragraph.

53.     Nexus admits that the face of U.S. Patent No. 6,991,215 ("the '215 Patent") indicates the '215 Patent is entitled "Valve For Use With A Syringe And Which Prevents Backflow," indicates it was issued on January 31, 2006, and indicates it was assigned to Occupational & Medical Innovations, Ltd., from an application filed by the named inventor Bruce Leigh Kiehne. Nexus further admits that a copy of the '215 Patent is attached to the

Second Supplemental Complaint as Exhibit J.

54. Denied.

55. Denied.

## **Affirmative Defenses**

1. Plaintiffs Second Supplemental Complaint fails to state a claim for which relief may be granted.

2. Nexus has not infringed any valid claim of the Patents-in-Suit.

3. One or more of the asserted claims of each of the Patents-in-Suit is invalid and void under 35 U.S.C. §§ 102, 103, and/or 112.

4. The '150 Patent is unenforceable for inequitable conduct, as more fully set forth in Nexus's Count III of its counterclaim.

WHEREFORE, Nexus prays that Plaintiff take nothing by way of its Second Supplemental Complaint, that Plaintiff's claims be dismissed with prejudice, that Nexus be awarded its costs, expenses, and attorneys' fees in defending the matter, and such other and further relief as the Court deems just and proper.

## Counterclaim

COMES NOW Nexus Medical, LLC ("Nexus"), and for its Counterclaim against Plaintiff, alleges as follows:

## Parties

1.     Nexus is a Delaware limited liability company with its principal place of business at 11315 Strang Line Road, Lenexa, Kansas 66215.

2.     Upon information and belief, Venetec International, Inc. ("Venetec") is a Delaware corporation with its principal place of business in San Diego, California, 66215.

## Jurisdiction and Venue

3.     This is an action for Declaratory Judgment under 28 U.S.C. §§ 2201 and 2202 seeking adjudication that U.S. Patent No. 6,213,979 (the "'979 patent"), U.S. Patent No. 6,447,485 (the "'485 Patent"), and U.S. Patent No. 7,247,150 (the "'150 Patent") (collectively the "Patents-in-Suit") are not infringed and are invalid and void, and that the '150 Patent is unenforceable.

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 in that this action arises under the patent laws of the United States and an actual controversy exists between the parties.

5.     Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 139l(b).

## Count I
## Noninfringement of the Patents-in-Suit

6.     Nexus incorporates by reference and re-alleges paragraphs 1 through 5 of its counterclaim as if fully set forth herein.

7.     Venetec has alleged that it is the owner of the Patents-in-Suit.

8.      Venetec has charged Nexus with infringement of the Patents-in-Suit, and Nexus has denied that allegation.

9.      Nexus has not infringed any valid claim of the Patents-in-Suit.

10.     There is a substantial, justiciable, and continuing controversy between Nexus and Venetec as to Venetec's suit for infringement of the Patents-in-Suit and whether Nexus has infringed or is infringing any valid claim of the Patents-in-Suit.

11.     Nexus will be damaged in its business by the charges of infringement by Venetec in its Second Supplemental Complaint and will be irreparably harmed if the existing controversy between the parties is not promptly adjudicated.

12.     As a result, Nexus seeks a declaration that the Patents-in-Suit are not infringed by Nexus.

**Count II**
**Invalidity of the Patents-in-Suit**

13.     Nexus incorporates by reference and re-alleges paragraphs 1 through 12 of its counterclaim as if fully set forth herein.

14.     Venetec has alleged that it is the owner of the Patents-in-Suit.

15.     Venetec has charged Nexus with infringement of the Patents-in-Suit, and Nexus has denied that allegation.

16.     Upon information and belief, one or more of the claims of the Patents-in-Suit are invalid and void under 35 U.S.C. §§ 102, 103, and/or 112.

17.     There is a substantial, justiciable, and continuing controversy between Nexus and Venetec as to Venetec's suit for infringement of the Patents-in-Suit and the validity and scope of the Patents-in-Suit.

18.     Nexus will be damaged in its business by the charges of infringement by Venetec

in its Second Supplemental Complaint and will be irreparably harmed if the existing controversy between the parties is not promptly adjudicated.

19.    As a result, Nexus seeks a declaration that the Patents-in-Suit are invalid and void.

### Count III
### Unenforceability of the '150 Patent

20.    Nexus incorporates by reference and re-alleges paragraphs 1 through 19 of its counterclaim as if fully set forth herein.

21.    Venetec has alleged that it is the owner of the '150 Patent.

22.    Venetec has charged Nexus with infringement of the '150 Patent and Nexus has denied that allegation.

23.    As used in Count III of Nexus's Counterclaim, "Venetec" is defined to specifically include one or more members of the group of individuals owing a duty of candor to the Patent Office, pursuant to 37 C.F.R. § 1.56(a).

24.    The '150 Patent is a continuation of the '485 Patent, and therefore, the '150 Patent is related to and claims priority to the '485 Patent.

25.    The '485 Patent is a divisional of the '979 Patent, and therefore, the '485 Patent is related to and claims priority benefit to the '979 Patent.

26.    The '150, '485, and '979 patents are related and disclose the same subject matter.

27.    The present litigation was filed on January 29, 2007, and asserted only the '485 and '979 Patents. (D.I. 1).

28.    Per MPEP § 2001.06(c), the Patent Office requires proper citation of the existence of this litigation and material information arising therefrom.

29.    The existence of this litigation is *per se* material to patentability of the '150 Patent

Application.

30.    On January 3, 2007, Venetec filed with the U.S. Patent Office an Amendment in the '150 Patent Application, attached as Exhibit A.

31.    On February 7, 2007, Venetec held an in-person interview with the patent examiner for the '150 Patent Application.  A copy of the Interview Summary filed by the Patent Office is attached as Exhibit B.

32.    During the interview, Venetec's representative and the patent examiner discussed Venetec's amendments to the claims submitted in the Amendment filed on January 3, 2007, in the '150 Patent Application. (See Exhibit B).

33.    Subsequent to the in-person interview, the patent examiner issued a Notice of Allowability and Examiner's Amendment, attached as Exhibit C, on March 16, 2007, for the '150 Patent Application.

34.    From January 3, 2007, through March 15, 2007, Venetec was actively prosecuting the '150 Patent Application to obtain allowance of claims, some of which have been asserted in the present litigation as infringing.

35.    Venetec paid the issue fee for the '150 Patent Application on March 15, 2007, a day prior to the Patent Office's mailing of the Notice of Allowance.  A copy of the Issue Fee Transmittal filed by Venetec is attached as Exhibit D.

36.    Venetec had from January 29, 2007, the date of filing of the present litigation, up to March 15, 2007, the date of payment of the issue fee in the '150 Patent Application, to inform the Patent Office of the existence of the present litigation, but failed to do so.

37.    Per MPEP § 2001.04 and 37 C.F.R. § § 1.56(a) and 1.97, after payment of the issue fee, information will only be considered if (1) the application is withdrawn from issue, a

Request for Continued Examination is filed, and the information is properly cited in an Information Disclosure Statement ("IDS"); or (2) the application is withdrawn from issue, the application is expressly abandoned, a continuing application is filed, and the information is properly cited in an IDS filed in the continuing application.

38.    Venetec listed this litigation on an IDS filed with the Patent Office on June 20, 2007.

39.    In the June 20, 2007, IDS (Exhibit E), Venetec stated that it was filing the IDS "in accordance with M.P.E.P. § 2001.06(c)," and therefore, Venetec knew of its obligations under § 2001.06( c) to cite the existence of litigation involving the same subject matter as an examined patent application.

40.    On June 25, 2007, the Patent Office responded to Venetec's filing of the IDS ("Patent Office Response"), attached hereto as Exhibit F.

41.    The Patent Office Response explains that the litigation listed on the IDS was not considered by the patent examiner in the prosecution of the '150 Patent Application because the issue fee had already been paid.

42.    The Patent Office Response advises Venetec to file a petition to withdraw the '150 Patent Application from issue to have the IDS considered by the Patent Office.

43.    Although Venetec had the opportunity to petition the Patent Office to withdraw the '150 Patent Application from issue and either (1) file a Request for Continued Examination and an IDS properly citing the existence of the litigation; or (2) expressly abandon the '150 Patent Application, file a continuing application, and file an IDS in the continuing application properly citing the existence of the litigation, Venetec failed to do so.

44.    The Patent Office did not consider the existence of this litigation in determining

patentability of the '150 Patent Application.

45.    In response to Venetec's First Set of Interrogatories in this litigation, Nexus served Venetec with invalidity contentions of the '485 Patent (the "Interrogatory Invalidity Contentions") on May 30, 2007, including invalidity claim charts.

46.    The Interrogatory Invalidity Contentions arise from the present litigation and therefore should have been properly cited to the Patent Office, pursuant to MPEP § 2001.06(c).

47.    The Interrogatory Invalidity Contentions are *per se* material to patentability of the '150 Patent Application.

48.    Venetec listed the Interrogatory Invalidity Contentions on the IDS filed with the Patent Office on June 20, 2007. (See Exhibit E).

49.    In the June 20, 2007, IDS (Exhibit E), Venetec stated that it was filing the IDS "in accordance with M.P.E.P. § 2001.06(c)," and therefore, Venetec knew of its obligations under § 2001.06(c) to cite material information arising from litigation involving the same subject as an examined application.

50.    On June 25, 2007, the Patent Office responded to Venetec's filing of the IDS (the afore-mentioned Patent Office Response), attached hereto as Exhibit F.

51.    The Patent Office Response explains that the Interrogatory Invalidity Contentions listed on the IDS were not considered by the patent examiner in the prosecution of the '150 Patent Application because the issue fee had already been paid.

52.    The Patent Office Response advises Venetec to file a petition to withdraw the '150 Patent Application from issue to have the IDS considered by the Patent Office.

53.    Although Venetec had the opportunity to petition the Patent Office to withdraw the '150 Patent Application from issue and either (1) file a Request for Continued Examination

and an IDS properly citing the Interrogatory Invalidity Contentions; or (2) expressly abandon the '150 Patent Application, file a continuing application, and file an IDS in the continuing application properly citing the Interrogatory Invalidity Contentions, Venetec failed to do so.

54.    The Patent Office did not consider the Interrogatory Invalidity Contentions in determining patentability of the '150 Patent Application.

55.    Nexus filed a Request for Reexamination of the '485 Patent ("the '485 Reexamination") with the Patent Office on June 25, 2007, and a copy of the '485 Reexamination was provided to Venetec at or about that time.

56.    The '485 Reexamination sets forth four prior art references that invalidate claims 1-3, 5-8, 11-13, 15-18, and 21-22 ("the Reexamined Claims") of the '485 Patent.

57.    The '485 Reexamination contains no less than twenty-four arguments for invalidity (the "Reexamination Invalidity Contentions") of the Reexamined Claims that are detailed in no less than twenty-four claim charts.

58.    The Reexamination Invalidity Contentions include, but are not limited to, assertions that the Reexamined Claims of the '485 Patent are invalid as anticipated and/or obvious in view of, and in combination with, certain prior art references.

59.    Because the '485 Patent is related to the '150 Patent, the Request for Reexamination of the '485 Patent and the Reexamination Invalidity Contentions in the '485 Reexamination are material to patentability of the '150 Patent Application.

60.    The Request for Reexamination of the '485 Patent and the Reexamination Invalidity Contentions in the '485 Reexamination arise from the present litigation and therefore should be properly cited to the Patent Office, pursuant to MPEP § 2001.06(c).

61.    The Request for Reexamination of the '485 Patent and the Reexamination

Invalidity Contentions in the '485 Reexamination are *per se* material to patentability of the '150 Patent Application.

62.    The claim charts and Reexamination Invalidity Contentions set forth in the '485 Reexamination were neither cited by Venetec in the '150 Patent Application nor considered by the Patent Office during prosecution of the '150 Patent.

63.    Upon information and belief, Venetec's failure to cite for consideration by the Patent Office the existence of this litigation, the Interrogatory Invalidity Contentions, the Request for Reexamination of the '485 Patent, and/or the Reexamination Invalidity Contentions, was with bad faith and an intent to deceive the Patent Office.

64.    Venetec breached its duty of candor before the Patent Office, as prescribed in 37 C.F.R. § 1.56, for failing to cite for consideration by the Patent Office with an intent to deceive the Patent Office, the existence of this litigation, the Interrogatory Invalidity Contentions, the Request for Reexamination of the '485 Patent, and/or the Reexamination Invalidity Contentions, and such breach resulted in inequitable conduct of the '150 Patent Application.

65.    There is a substantial, justiciable, and continuing controversy between Nexus and Venetec as to Venetec's suit for infringement of the '150 Patent and whether the '150 Patent is unenforceable.

66.    Nexus will be damaged in its business by the charges of infringement by Venetec in its Second Supplemental Complaint and will be irreparably harmed if the existing controversy between the parties is not promptly adjudicated.

67.    As a result, Nexus seeks a declaration that the '150 Patent is unenforceable.

**Prayer for Relief**

WHEREFORE, Nexus prays for the following relief:

1.      That the Patents-in-Suit be declared not infringed by Nexus;

2.      That the Patents-in-Suit be declared invalid and void;

3.      That the '150 Patent be declared unenforceable;

4.      That judgment on Plaintiff's Second Supplemental Complaint be rendered for Nexus, with costs of litigation awarded to Nexus;

5.      That the Court find this case to be exceptional and award Nexus its reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285;

6.      That the Court grant to Nexus such other, further, and different relief as the Court may deem just and proper.


Date:  March 10, 2008

___*/s/ Richard K. Herrmann*_____
Richard K. Herrmann #405
Mary B. Matterer #2696
Amy Arnott Quinlan #3021
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware   19801-1494
302-888-6800
rherrmann@morrisjames.com

Patrick A. Lujin (Admitted *Pro Hac Vice*)
Robert T. Adams (Admitted *Pro Hac Vice*)
SHOOK HARDY & BACON L.L.P
2555 Grand Boulevard
Kansas City, MO   64108
816-474-6550

Peter A. Strand (Admitted *Pro Hac Vice*)
SHOOK HARDY & BACON L.L.P.
Hamilton Square
600 14th Square, NW, Suite 800
Washington, D.C.   20005-2004
202-783-8400

Robert H. Reckers (Admitted *Pro Hac Vice*)
SHOOK HARDY & BACON L.L.P.
JPMorgan Chase Tower
600 Travis Street, Suite 1600
Houston, Texas   77002-2911
713-227-8008

*ATTORNEYS FOR DEFENDANT AND COUNTERCLAIM
PLAINTIFF NEXUS MEDICAL, LLC*

# EXHIBIT A

VINTL.26FCPD1CC                                                      PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant | : | Steven F. Bierman |
| Appl. No. | : | 11/204,586 |
| Filed | : | August 16, 2005 |
| For | : | MEDICAL LINE ANCHORING SYSTEM |
| Examiner | : | Manuel A. Mendez |
| Group Art Unit | : | 3763 |

### SUPPLEMENTAL AMENDMENT AND RESPONSE

MAIL STOP AMENDMENT
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

Further to the Response filed on November 21, 2006, please enter the following amendments and consider the following remarks in connection with the above-captioned application. Changes to the pending claims have been identified with underlining to indicate insertions and by strikethrough to indicate deletions.

**Amendments** to the claims begin on page 2 of this paper.

**Remarks** begin on page 7 of this paper.

Appl. No.          :          11/204,586
Filed              :          August 16, 2005

### AMENDMENTS TO THE CLAIMS

**Please amend Claims 1, 2, 9, 12, 23, 25, and 26 as follows:**

**Please add new Claims 28 through 34 as follows.**

1.          (Currently Amended) An anchoring system for securing a medical line to the body of a patient, the medical line including a fitting, the system comprising:

a fitting on a medical line, the fitting having at least one hole; and

a retainer including a base that defines a receiving area for receiving a portion of the fitting of the medical line, a cover permanently coupled to the base, the cover being movable between a closed position, in which at least a portion of the cover extends over at least a portion of the receiving area, and an open position, in which the receiving area is at least partially open, a coupling mechanism operating between the base and the cover to releasable releasably connect a portion of the cover to the base with the cover in the closed position, and interacting structure which is adapted to engage at least a portion of the fitting and to limit inhibit longitudinal movement of the fitting through the retainer when the fitting is placed within the receiving area, the interacting structure being located at least partially beneath the cover with the cover in the closed position.

2.          (Currently Amended) The anchoring system of claim 1, wherein the fitting comprises a wing clamp and a rigid box clamp engaged with the wing clamp, and the at least one hole extends through corresponding wings of the box clamp and the wing clamp.

3.          (Original) The anchoring system of claim 2, wherein a first portion of the at least one hole in the wing of the rigid box clamp is greater in size than a second portion of the at least hole in the corresponding wing of the wing clamp.

4.          (Original) The anchoring system of claim 2, wherein the rigid box clamp includes an elongated body having a longitudinal groove sized to receive the wing clamp, and wherein the wing clamp includes an elongated body defining an inner cavity sized to surround the medical line in a frictional manner.

5.          (Original) The anchoring system of claim 1, wherein the fitting comprises a rigid clamp having a longitudinal groove sized to receive the medical line.

6.          (Original) The anchoring system of claim 1, wherein the cover is smaller than the base.

-2-

Appl. No.    :    11/204,586
Filed        :    August 16, 2005

7.    (Original) The anchoring system of claim 1, wherein the cover has a width sufficient to stabilize a section of the fitting located within the retainer.

8.    (Original) The anchoring system of claim 1, wherein the interacting structure comprises at least one post extending at least partially between the cover and the base with the cover in the closed position.

9.    (Currently Amended) The anchoring system of claim 1, wherein the interacting structure comprises at least one post disposed on the base and configured to extend into ~~the~~ at least one hole of the fitting.

10.    (Original) The anchoring system of claim 9, wherein the post comprises a shaft and a radial extension, the shaft engaging with the fitting and the radial extension engaging with a cover surface with the cover in the closed position.

11.    (Original) The anchoring system of claim 9, wherein the cover has width in a longitudinal direction that is wider than a width of the at least one post.

12.    (Currently Amended) The anchoring system of claim 9, wherein the coupling ~~mechanism~~ comprises the at least one post and at least one opening sized to receive at least a portion of the post with the cover in the closed position.

13.    (Original) The anchoring system of claim 1, wherein the interacting structure includes at least two posts disposed on the base.

14.    (Original) The anchoring system of claim 13, wherein the cover has length in a lateral direction sufficient to extend at least between the posts.

15.    (Original) The anchoring system of claim 1 additionally comprising an adhesive layer coupled to the retainer and adapted to adhesively secure the retainer to the body of a patient.

16.    (Original) The anchoring system of claim 15 additionally comprising a flexible anchor pad interposed between the retainer and the adhesive layer.

17.    (Original) An anchoring system for securing a medical line to the body of a patient, said anchoring system comprising a fitting on a medical line, the fitting having at least one hole, and a retainer being configured to receive at least a portion of the fitting and comprising a base and at least one post extending from the base and arranged to interact with the hole of the fitting, a cover movably coupled to the base so as to be moved between an open position and a closed position, and a latching mechanism operating between the cover and the base to releasably latch the cover to the base in the closed position.

Appl. No.        :        11/204,586
Filed            :        **August 16, 2005**

18.    (**Original**) The anchoring system of claim 17, wherein the fitting includes a plurality of holes and the base includes a plurality of posts.

19.    (**Original**) The anchoring system of claim 17, wherein the latching mechanism comprises the at least one post and at least one opening sized to receive at least a portion of the post with the cover in the closed position.

20.    (**Original**) The anchoring system of claim 19, wherein the at least one opening is formed on the cover and includes a central aperture and a slot, the aperture being sized and shaped to receive the at least one post, and the slot extending from the central aperture.

21.    (**Original**) The anchoring system of claim 19, wherein the at least one opening is formed on the cover and aligns generally with the at least hole in the fitting, the cover and the fitting each receiving at least a portion of the at least one post when the cover is in the closed position.

22.    (**Original**) The anchoring system of claim 19, wherein the fitting comprises a rigid box clamp engaged with a wing clamp, and the at least one hole extends through corresponding wings of the box clamp and the wing clamp.

23.    (**Currently Amended**) An anchoring system for securing a medical line to the body of a patient, comprising:

  an adaptor having an adaptor body with a longitudinal axis defined between first and second ends, a first connector at the first end for connection to a first medical line, and a second connector at the second end for connection to a second medical line; and

  a retainer attachable to the adaptor, including a base, a cover ~~permanently~~ coupled to the base, the cover movable between an open position and a closed position, a coupling ~~mechanism~~ for releasably connecting a portion of the cover to the base in the closed position, and a <u>receiving space</u> ~~channel~~ arranged to lie between the base and the cover in the closed position, the <u>receiving space</u> ~~channel~~ shaped to retain the adaptor between the cover and the base with the cover in the closed position to inhibit movement of the adapter in a direction generally parallel to the longitudinal axis of the adaptor.

24.    (**Original**) The anchor system of claim 23, further comprising an adhesive layer attached to the retainer and adapted to adhesively secure the retainer to the body of a patient.

-4-

Appl. No.        :        11/204,586
Filed           :        August 16, 2005

25.    (**Currently Amended**) The anchor system of claim 23, wherein the coupling mechanism comprises a plurality of posts extending from the base and a corresponding plurality of openings in the cover.

26.    (**Currently Amended**) The anchor system of claim 23, wherein the receiving space channel is defined by opposed inner faces of a pair of extensions positioned between the base and the cover with the cover in the closed position.

27.    (**Original**) The anchoring system of claim 23, wherein the first medical line is a catheter and the second medical line is a medical tube.

28.    (**New**)  An anchoring system for securing a medical line to the body of a patient, the system comprising:

a fitting on a medical line, the fitting having a pair of wings; and

a retainer including a base that defines a receiving area for receiving a portion of the fitting, a cover, and first and second pairs of posts, the cover being movable between a closed position in which at least a portion of the cover extends over at least a portion of the receiving area and an open position in which the receiving area is at least partially open, the first and second pairs of posts extending between the base and the cover at least when the cover is in the closed position, at least two of the posts of the first and second pairs of posts being disposed on the receiving area and spaced apart so as to receive at least a portion of one of the wings there between, and at least two other posts of the first and second pairs of posts being disposed on the receiving area and spaced apart so as to receive at least a portion of the other one of the wings there between, at least a portion of each of the first and second pairs of posts being located at least partially beneath the cover when the cover is in the closed position.

29.    (**New**)  An anchoring system according to Claim 28, wherein the first and second pairs of posts are arranged at the corners of a rectangle.

30.    (**New**)  An anchoring system according to Claim 28, wherein the first and second pairs of posts extend in an upward direction from the base.

31.    (**New**)  An anchoring system for securing a medical article to the body of a patient, the medical article having an irregularly shaped fitting, the anchoring system comprising:

an anchor pad having an upper surface and a lower surface; and

a retainer comprising,

-5-

Appl. No.          :          11/204,586
Filed              :          August 16, 2005

a base being coupled to the anchor pad;

a plurality of walls extending generally perpendicular to the base and being arranged relative to each other so as to receive between at least portion of the walls the irregularly shaped fitting of the medical article; and

a cover movable coupled to the base so as to move between a first position and a second position, the cover lying above at least part of the base when in the first position.

32.    (New) An anchoring system according to Claim 31, wherein the cover is coupled to the base by a flexible coupling.

33.    (New) An anchoring system according to Claim 31 further comprising at least one post arranged between the base and the cover when the cover is in the first position, wherein the post extends generally upward from the base.

34.    (New) An anchoring system according to Claim 33, wherein the cover includes a receptacle for receiving at least a portion of the post when the cover is in the first position.

Appl. No.        :        11/204,586
Filed           :        August 16, 2005

## REMARKS

Claims 1-27 were rejected under the judicially created doctrine of obviousness type double patenting. Applicant had responded to the double patenting rejection in the Response filed by Applicant on November 21, 2006. Upon further reflection and by this paper, Applicant is now adding new Claims 28-34 to present claims of differing scope. Thus, Claims 1-34 are pending in the application and are presented for reconsideration and further examination in view of the amendments and the following remarks. Applicant respectfully requests examination of new Claims 28 through 34.

### Obviousness Type Double Patenting Rejection

Claims 1-27 were rejected under the judicially created doctrine of obviousness type double patenting as being unpatentable over Claims 1-74 of U.S. Patent No. 6,213,979. To further distinguish the subject matter claimed in the two cases, the Applicant has further amended the claims as recited above. Applicant previously submitted a Terminal Disclaimer in compliance with 37 C.F.R. § 1.321(c) on August 16, 2005 at the time the patent application was filed. Applicant had included a courtesy copy of the filed Terminal Disclaimer with the Response filed by Applicant on November 21, 2006. Applicant respectfully submits that the filed Terminal Disclaimer overcome the obviousness type double patenting rejection. Thus, allowance of Claims 1-27 is respectfully requested.

### New Claims 28 through 34

New independent Claims 28 and 31 have been added to present claims of differing scope. Claim 28 recites several limitations that are also found in allowed independent Claim 1, *inter alia*, "a fitting," a "retainer including a base that defines a receiving area," and "a cover." Claim 28 further recites "first and second pairs of posts." Allowed Claim 8, which depends from Claim 1, recites a post limitation. Applicant respectfully submits that the applied prior art fails to disclose at least the recited structure.

New independent Claim 31 recites, *inter alia*, "an anchor pad" and a "retainer." Claim 31 further recites that the retainer comprises "a base," "a plurality of walls extending generally perpendicular to the base and being arranged relative to each other so as to receive between at

-7-

Appl. No.          :          11/204,586
Filed              :          August 16, 2005

least portion of the walls the irregularly shaped fitting of the medical article," and "a cover" "lying above at least part of the base when in the first position." The anchor pad limitation is also recited in allowed dependent Claim 16. Applicant respectfully submits that the applied prior art fails to disclose at least the recited structure. Consideration and allowance of new independent Claims 28 and 31 are respectfully requested.

Applicant respectfully submits that new dependent Claims 29-30 and 32-34, which depend from independent Claims 28 and 31, are allowable over the applied prior art for at least the reasons stated above in connection with the respective independent claim.


## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the rejection set forth in the outstanding Office Action is inapplicable to the present claims. Accordingly, early issuance of a Notice of Allowance is most earnestly solicited.

Any remarks in support of patentability of one claim should not be imputed to any other claim, even if similar terminology is used. Additionally, any remarks referring to only a portion of a claim should not be understood to base patentability on solely that portion; rather, patentability must rest on each claim taken as a whole.

The undersigned has made a good faith effort to respond to all of the noted rejections and to place the claims in condition for immediate allowance. Nevertheless, if any undeveloped issues remain of if an issue requires clarification, the Examiner is respectfully requested to call Applicant's attorney in order to resolve any such issue promptly.

| Appl. No. | : | **11/204,586** |
|-----------|---|----------------|
| Filed | : | **August 16, 2005** |

Please charge any additional fees, including any fees for additional extension of time, or credit overpayment to Deposit Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: 1/3/07                By: _____
                                 James F. Herkenhoff
                                 Registration No. 51,241
                                 Attorney of Record
                                 Customer No. 20,995
                                 (619) 235-8550

3184452

# EXHIBIT B

| | Application No. | Applicant(s) |
|---|---|---|
| ***Interview Summary*** | 11/204,586 | BIERMAN, STEVEN F. |
| | Examiner | Art Unit |
| | Manuel Mendez | 3763 |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Examiner  Manuel Mendez*.            (3)_____

(2) *Mr. James F. Herkenhoff*.            (4)_____

Date of Interview: *07 February 2007*.

Type:  a)☐  Telephonic   b)☐  Video Conference
      c)☒ Personal [copy given to:  1)☐ applicant    2)☒ applicant's representative]

Exhibit shown or demonstration conducted:   d)☒ Yes   e)☐ No.
   If Yes, brief description: *Movable Post Retainer*.

Claim(s) discussed: *1-34*.

Identification of prior art discussed: *n/a*.

Agreement with respect to the claims f)☒ was reached.   g)☐ was not reached.   h)☐ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: *It was agreed that the pending claims as disclosed in the supplemental amendment dated January 3, 2007 are allowable; however, the examiner will conduct another search to ensure patentability. Additionally, the examiner agreed to amend claim 31 and add new claim 35 as disclosed in a proposed amendment attached to this form*:

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MPEP Section 713.04).  If a reply to the last Office action has already been filed, APPLICANT IS GIVEN A NON-EXTENDABLE PERIOD OF THE LONGER OF ONE MONTH OR THIRTY DAYS FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

Examiner Note: You must sign this form unless it is an
Attachment to a signed Office action.                    Examiner's signature, if required

## Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews**
**Paragraph (b)**
In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

**37 CFR §1.2 Business to be transacted in writing.**
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

———

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
– Application Number (Series Code and Serial Number)
– Name of applicant
– Name of examiner
– Date of interview
– Type of interview (telephonic, video-conference, or personal)
– Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
– An indication whether or not an exhibit was shown or a demonstration conducted
– An identification of the specific prior art discussed
– An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
– The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
   (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

2

# EXHIBIT C

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | |
|---|---|
| 20995          7590          03/16/2007 | **EXAMINER** |
| KNOBBE MARTENS OLSON & BEAR LLP | MENDEZ, MANUEL A |
| 2040 MAIN STREET | ART UNIT / PAPER NUMBER |
| FOURTEENTH FLOOR | 3763 |
| IRVINE, CA 92614 | DATE MAILED: 03/16/2007 |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/204,586 | 08/16/2005 | Steven F. Bierman | VINTL.26FCPD1CC | 3904 |

TITLE OF INVENTION: MEDICAL LINE ANCHORING SYSTEM

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $700 | $300 | $0 | $1000 | 06/18/2007 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.

**Complete and send this form, together with applicable fee(s), to:** Mail Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or Fax (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

| 20995 | 7590 | 03/16/2007 |

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/204,586 | 08/16/2005 | Steven F. Bierman | VINTL.26FCPD1CC | 3904 |

TITLE OF INVENTION: MEDICAL LINE ANCHORING SYSTEM

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $700 | $300 | $0 | $1000 | 06/18/2007 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| MENDEZ, MANUEL A | 3763 | 604-174000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and State OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.      ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____        Date _____

Typed or printed name _____        Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

 UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/204,586 | 08/16/2005 | Steven F. Bierman | VINTL.26FCPD1CC | 3904 |

| | |
|---|---|
| 20995    7590    03/16/2007 | **EXAMINER** |
| KNOBBE MARTENS OLSON & BEAR LLP | MENDEZ, MANUEL A |
| 2040 MAIN STREET | |
| FOURTEENTH FLOOR | ART UNIT    PAPER NUMBER |
| IRVINE, CA 92614 | 3763 |
| | DATE MAILED: 03/16/2007 |

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702.  Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101    or (571)-272-4200.

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.

NT

| *Notice of Allowability* | Application No. 11/204,586 | Applicant(s) BIERMAN, STEVEN F. |
|---|---|---|
| | Examiner Manuel Mendez | Art Unit 3763 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *Interview dated February 7, 2007.*

2. ☒ The allowed claim(s) is/are *1-35.*

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
      a) ☐ All    b) ☐ Some*   c) ☐ None  of the:
          1. ☐ Certified copies of the priority documents have been received.
          2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
          3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the
             International Bureau (PCT Rule 17.2(a)).
    * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached
        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.
    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
        Paper No./Mail Date _____.
    Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Attachment(s)
1. ☐ Notice of References Cited (PTO-892)
2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3. ☒ Information Disclosure Statements (PTO/SB/08),
    Paper No./Mail Date 10/2005 and 11/2006
4. ☐ Examiner's Comment Regarding Requirement for Deposit
    of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☒ Interview Summary (PTO-413),
    Paper No./Mail Date _____
7. ☒ Examiner's Amendment/Comment
8. ☒ Examiner's Statement of Reasons for Allowance
9. ☐ Other _____.

## REASONS FOR ALLOWANCE

The following is an examiner's statement of reasons for allowance:

The prior art of record does not disclose or suggest an anchoring system for securing a medical line to the body of the patient with the limitations disclosed by the independent claims of this application. Accordingly, claims 1-35 are allowable over the prior art of record.

## EXAMINER'S AMENDMENT

An examiner's amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in a telephone interview with James F. Herkenhoff on February 7, 2007. The application has been amended as follows:

In claim 31, line 7, after the word "to", the word "receive" has been deleted and substituted by the word - - secure - -.  Additionally, in line 8, after the word "article", the phrase - -, at least a portion of the secured irregularly shaped medical article having a lateral width greater than a distance between said irregularly shaped walls - -.

The following claim has been added as claim number 35:

- - 35. The anchoring system of claim 1, wherein the coupling comprises a post extending from the base and a corresponding opening in the cover - -.

Application/Control Number: 11/204,586                                          Page 3
Art Unit: 3763

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Manuel Mendez whose telephone number is 571-272-4962. The examiner can normally be reached on 0730-1800 hrs.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Mr. Nicholas D. Lucchesi can be reached on 571-272-4977. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Manuel Mendez
Primary Examiner
Art Unit 3763

# EXHIBIT D

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 11204586 |
| **Filing Date:** | 16-Aug-2005 |
| **Title of Invention:** | MEDICAL LINE ANCHORING SYSTEM |
| First Named Inventor/Applicant Name: | Steven F. Bierman |
| **Filer:** | James F. Herkenhoff/Luis Jaramillo |
| **Attorney Docket Number:** | VINTL.26FCPD1CC |
| Filed as Large Entity | |

## Utility    Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| Post-Allowance-and-Post-Issuance: | | | | |
| Utility Appl issue fee | 1501 | 1 | 1400 | 1400 |
| Publ. Fee- early, voluntary, or normal | 1504 | 1 | 300 | 300 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | 1700 |

## Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 1597323 |
| **Application Number:** | 11204586 |
| **International Application Number:** | |
| **Confirmation Number:** | 3904 |
| **Title of Invention:** | MEDICAL LINE ANCHORING SYSTEM |
| **First Named Inventor/Applicant Name:** | Steven F. Bierman |
| **Customer Number:** | 20995 |
| **Filer:** | James F. Herkenhoff/Nicole Lauer |
| **Filer Authorized By:** | James F. Herkenhoff |
| **Attorney Docket Number:** | VINTL.26FCPD1CC |
| **Receipt Date:** | 15-MAR-2007 |
| **Filing Date:** | 16-AUG-2005 |
| **Time Stamp:** | 20:47:49 |
| **Application Type:** | Utility |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment was successfully received in RAM | $1700 |
| RAM confirmation Number | 1123 |
| Deposit Account | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes) | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| 1 | | VINTL26FCPD1CC_ISSUEFEE.pdf | 128350 | yes | 2 |
|---|---|---|---|---|---|
| | **Multipart Description/PDF files in .zip description** | | | | |
| | **Document Description** | | **Start** | **End** | |
| | Issue Fee Payment (PTO-85B) | | 1 | 1 | |
| | Miscellaneous Incoming Letter | | 2 | 2 | |

| Warnings: | | | | | |
|---|---|---|---|---|---|
| Information: | | | | | |
| 2 | Fee Worksheet (PTO-06) | fee-info.pdf | 8286 | no | 2 |

| Warnings: | | | | | |
|---|---|---|---|---|---|
| Information: | | | | | |
| **Total Files Size (in bytes):** | | | 136636 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

# EXHIBIT E

Docket No.: VINTL.26FCPD1CC                                    **Customer No. 20,995**

---

## INFORMATION DISCLOSURE STATEMENT

| | | |
|---|---|---|
| Applicant | : | Steve F. Bierman |
| App. No | : | 11/204,586 |
| Filed | : | August 16, 2005 |
| For | : | MEDICAL LINE ANCHORING SYSTEM |
| Examiner | : | Manuel A. Mendoza |
| Art Unit | : | 3763 |

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

Enclosed for filing in the above-identified application is a PTO/SB/08 Equivalent listing 3 references.  Also enclosed are 3 foreign patent references and/or non-patent literature as listed on the Information Disclosure Statement.

This Information Disclosure Statement is being filed after payment of the issue fee. Please place the references in the file according to 37 C.F.R. §1.97(i).

Ongoing Litigation

In accordance with M.P.E.P. § 2001.06(c), Applicant hereby informs the Patent Office that U.S. Patent No. 6,213,979 (the '979 patent) and U.S. Patent No. 6,447,485 (the '485 patent), from which the present application claims priority, are the subject of ongoing litigation.  Venetec International, Inc., which is the owner by assignment of the '979 and '485 patents, and the present application, has filed a lawsuit for patent infringement.  Venetec International, Inc. filed suit against Nexus Medical, LLC alleging infringement of the '979 and '485 patents.  The suit was filed in the U.S. District Court for Delaware, and was assigned Civil Action No. 07-CV-0057 (***).  The lawsuit is currently in the discovery phase.

**Appl. No.** :  11/204,586                                    **Docket No. VINTL.26FCPD1CC**
**Filed**    :  August 16, 2005                                      **Customer No. 20,995**

Copies of Nexus Medical, LLC Answer to Complaint and Counterclaim, Venetec International, Inc.'s Reply to Nexus Medical, LLC's Counterclaim, and Nexus Medical, LLC's Objections and Responses to Venetec International, Inc.'s First Set of Interrogatories are included in the IDS.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: _June 20, 2007_          By: _____
                                    James F. Herkenhoff
                                    Registration No. 51,241
                                    Attorney of Record
                                    Customer No. 20,995
                                    (619) 235-8550

3899468
061807

-2-

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 11/204,586 |
|---|---|---|
| | Filing Date | August 16, 2005 |
| | First Named Inventor | Steven F. Bierman |
| | Art Unit | 3763 |
| *(Multiple sheets used when necessary)* | Examiner | Manuel A. Mendez |
| SHEET 1 OF 1 | Attorney Docket No. | VINTL.26FCPD1CC |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Foreign Patent Document Country Code-Number-Kind Code Example: JP 1234567 A1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |
|---|---|---|---|
| | 1 | Venetec International, Inc.'s Reply to Nexus Medical, LLC's Counterclaim, Venetec International, Inc. v. Nexus Medical, LLC, U.S. District Court for Delaware, Case No. 07-CV-0057***, pgs 1 - 4 | |
| | 2 | Nexus Medical, LLC's Answer to Complaint and Counterclaim, Venetec International, Inc. v. Nexus Medical, LLC, U.S. District Court for Delaware, Case No. 07-CV-0057***, pgs 1 - 6 | |
| | 3 | Nexus Medical, LLC's Objections and Responses to Venetec International, Inc's First Set of Interrogatories, Venetec International Inc. v. Nexus Medical, LLC, U.S. District Court for Delaware, Case No. 07-CV-0057***, pgs 1-47. | |
| | | | |
| | | | |

3899380
061807

| Examiner Signature | Date Considered |
|---|---|
| | |

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

# EXHIBIT F

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/204,586 | 08/16/2005 | Steven F. Bierman | VINTL.26FCPD1CC | 3904 |

20995      7590      06/25/2007
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| MENDEZ, MANUEL A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3763 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 06/25/2007 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

jcartee@kmob.com
eOAPilot@kmob.com

PTOL-90A (Rev. 04/07)



**UNITED STATES DEPARTMENT OF COMMERCE**
**U.S. Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450

| APPLICATION NO./ CONTROL NO. | FILING DATE | FIRST NAMED INVENTOR / PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 11/204 586 | | | |

| | EXAMINER |
|---|---|

| ART UNIT | PAPER |
|---|---|
| | |

DATE MAILED:

## NOTICE OF NON-COMPLIANT INFORMATION DISCLOSURE STATEMENT

An Information Disclosure Statement (IDS) filed _10/20/07_ in the above-identified application fails to meet the requirements of 37 CFR 1.97(d) for the reason(s) specified below. Accordingly, the IDS will be placed in the file, but the information referred to therein has not been considered.

The IDS is not compliant with 37 CFR 1.97(d) because:

☑ The IDS lacks a statement as specified in 37 CFR 1.97(e).

☐ The IDS lacks the fee set forth in 37 CFR 1.17(p).

☑ The IDS was filed after the issue fee was paid. Applicant may wish to consider filing a petition to withdraw the application from issue under 37 CFR 1.313(c) to have the IDS considered. See MPEP 1308.

initials

PTO-XX (02-08)